1   ROB BONTA
    Attorney General of California
2   R. MATTHEW WISE
    Supervising Deputy Attorney General
3   JANE REILLEY
    Deputy Attorney General
4   KATRINA UYEHARA
    Deputy Attorney General
5   State Bar No. 349378
      1300 I Street, Suite 125
6     P.O. Box 944255
      Sacramento, CA 94244-2550
7     Telephone: (916) 210-7867
      Fax: (916) 324-8835
8     E-mail: Katrina.Uyehara@doj.ca.gov
    *Attorneys for Defendant Rob Bonta, in his*
9   *official capacity as Attorney General of the*
    *State of California*

10

            IN THE UNITED STATES DISTRICT COURT
11
            FOR THE SOUTHERN DISTRICT OF CALIFORNIA
12

13

14

15  **KNIFE RIGHTS, INC., ELIOT**          3:23-cv-00474-JES-DDL
    **KAAGAN, JIM MILLER,**
16  **GARRISON HAM, NORTH**
    **COUNTY SHOOTING CENTER,**
17  **INC., and PWGG L.P.,**                **EXPERT REPORT AND**
                                            **DECLARATION OF BRENNAN**
18                          Plaintiffs,     **RIVAS**

19          v.                              Dept:      4B
                                            Judge:     The Honorable James E.
20  **CALIFORNIA ATTORNEY**                            Simmons, Jr.
    **GENERAL ROB BONTA,**                  Action Filed: 3/15/2023
21
22                          Defendant.

23

24

25

26

27

28

## EXPERT REPORT AND DECLARATION OF BRENNAN RIVAS

I, Brennan Rivas, declare under penalty of perjury that the following is true and correct:

The California Department of Justice has asked me to provide an expert opinion in the above-captioned matter. My declaration and report below presents and explicates that opinion in detail. This report and declaration is based on my own personal knowledge and experience, and if I am called to testify as a witness, I could and would testify competently to the truth of the matters discussed in this report and declaration.

## BACKGROUND AND QUALIFICATIONS

1.   I am a professional historian and independent scholar. During the 2021-2022 academic year, I was the Lloyd Lewis Fellow in American History at The Newberry Library. From 2020 to 2021, I was a Bill & Rita Clements Fellow for the Study of Southwestern America within the Clements Center for Southwest Studies at Southern Methodist University. From 2019 to 2020, I was a Lecturer in American History at Texas Christian University (TCU). My educational background includes a Ph.D. in History from TCU, where my dissertation explored the development, evolution, and enforcement of gun and weapon policy in Texas from the era of Mexican independence to the 1930s.

2.   I have studied historical laws restricting the carrying, sale, and possession of certain weapons. Part and parcel of that process is examining the historical justifications and purposes of these laws and seeking to understand how Americans from previous eras balanced weapon regulation in response to urgent societal problems with the right to bear arms for constitutionally protected, lawful purposes.

3.   I have authored multiple publications on this topic, including a peer-reviewed article in the *Southwestern Historical Quarterly*, a chapter in an edited collection published in 2023 by Oxford University Press entitled *New Histories of Gun Rights and Regulation: Essays on the Place of Guns in American Law and*

1  *Society*, and a 2022 article, "Enforcement of Public Carry Restrictions: Texas as a
2  Case Study (June 2022), published in the *UC Davis Law Review*.

3       4.   I am currently completing a book manuscript based upon my dissertation
4  research, which traces the development and implementation of weapon and firearm
5  policies in Texas across a century-long period. This manuscript has undergone the
6  first round of peer-review and is currently under contract with an academic press.

7       5.   I have provided expert witness testimony in *Miller v. Bonta*, No. 19-cv-
8  01537 (S.D. Cal.); *Angelo v. District of Columbia*, No. 22-cv-01878 (D.D.C.);
9  *Duncan v. Bonta*, 17-cv-1017 (S.D. Cal.); *Brumback v. Ferguson*, No. 1:22-cv-
10  03093 (E.D. Wash.); *Christian v. Nigrelli*, No. 22-cv-00695 (W.D.N.Y.); *Frey v.
11  Nigrelli*, Case No. 21 Civ. 5334 (NSR) (S.D.N.Y.); *Sullivan v. Ferguson*, No. 3:22-
12  cv-5403 (W.D. Wash); *Siegel v. Platkin*, No. 22-cv-7463 (RMB) (AMD) (D.N.J.);
13  *NAGR v. Campbell*, No. 1:22-cv-11431-FDS (D. Mass.); *Oregon Firearms
14  Federation, Inc. v. Kotek*, No. 22-cv-01815-IM (D. Or.); *NSSF v. Jennings*, No. 22-
15  cv-01499-RGA (D. Del.); *Jones v. Bonta*, No. 3:19-cv-01226-L-AHG (S.D. Cal.);
16  *Weise v. Bonta*, No. 2:17-cv-00903-WBS-KJN (E.D. Cal.); *Nguyen v. Bonta*, No.
17  3:20-cv-02470-WQH-BGS (S.D. Cal.); *Rupp v. Bonta*, No. 8:17-cv-00746-JLS-
18  JDE (C.D. Cal.); *May v. Bonta*, No. 8:23-cv-01696 (C.D. Cal.); *Carralero v. Bonta*,
19  No. 8:23-cv-01798 (C.D. Cal.); *Baird v. Bonta*, No. 2:19-cv-00617-KJM-AC (E.D.
20  Cal.); *Nichols v. Bonta*, No. 3:11-cv-09916-SJO-SS (C.D. Cal.); *Wolford v. Lopez*,
21  No. 1:23-cv-00265-LEK-WRP (D. Haw.); *Kipke v. Moore*, No. 1:23-cv-01293-
22  GRL (D. Mar.); *State of Ohio v. City of Columbus*, No. 22-cv-00657 (Com. Pleas,
23  Fairfield County, OH); *Rocky Mountain Gun Owners v. Polis*, No. 23-cv-01077-
24  JLK (D. Col.); and *Schoenthal v. Raoul*, No. 3:22-cv-50326 (N.D. Ill.).

25       6.   A true and correct copy of my current curriculum vitae is attached as
26  **Exhibit 1** to this declaration.

27
28

Expert Report and Declaration of Dr. Brennan Rivas (3:23-cv-00474-JES-DDL)

**RETENTION AND COMPENSATION**

7.   I am being compensated for services performed in the above-entitled case at an hourly rate of $200/hour for research, $250/hour for document preparation, and $350/hour for deposition and trial testimony. My compensation is not contingent on the results of my expert analysis or the substance of my opinions or any testimony in this matter.

**BASIS FOR OPINION AND MATERIALS CONSIDERED**

8.   Counsel for Defendant provided me with the operative Complaint in this matter, copies of the relevant statutes being challenged, and other case-related documents pertinent to this matter. Other than these documents, my report is based on my own independent research.

9.   In my report, I cite to a variety of scholarly articles, laws, cases, popular and learned commentaries, and various other related materials on which I based my opinions. For this report and declaration, I also consulted numerous publications related to the history of knife manufacture in the United States.

**OPINIONS**

**I.   DEFINING DEADLY WEAPONS**

10. Over the course of the nineteenth century, the technology and availability of weapons changed profoundly. It is therefore unsurprising that nineteenth-century Americans regulated weapons through state laws and local ordinances. A fundamental feature of their regulatory approach was to distinguish between two types of weapons: arms suitable for militia service or hunting, versus concealable weapons associated with interpersonal violence and known as *deadly weapons*.[1]

---

[1] There are some exceptions to this tendency, such as sales restrictions that applies to all firearms rather than just pistols, or certain sensitive place laws that prohibited all firearms in addition to deadly weapons. *See* Ohio 1880 at 78-90, **Exhibit 2**, establishing a minimum age for the sale of "any air-gun, musket, rifle-gun, shot-gun, revolver, pistol, or other firearm, of any kind or description whatever, or ammunition for the same." *See also* John A. Hockaday, et al, *Revised Statutes of the State of Missouri* (Jefferson City: Carter & Regan, State Printers, 1879), 224 § 1274, **Exhibit** 3, prohibiting the carrying of "any firearms, bowie-

11. In the decentralized, agricultural environments that characterized early American life, hunting knives, rifles, muskets, and shotguns were important tools present in most rural homes. Men used these arms for militia service and for the occasions when they were required to participate in local policing efforts through the *posse comitatus*; but otherwise, they would have much more frequently used such weapons for hunting—be it killing predatory animals, driving birds away from their crops, or hunting for meat. Firearms borne for these purposes were carried openly, by a shoulder strap or attached to a saddle. Various accoutrements necessary for them to function, such as powder flasks, were also visible. Rifles, muskets, and shotguns that could not readily be concealed on a person were not likely to be used in the commission of crimes, especially crimes of passion that resulted in murder or manslaughter. Those offenses were much more likely to be committed with bare hands, blunt instruments, or other types of deadly weapons such as concealable knives and pistols.[2]

12. A series of socio-economic and political factors caused Americans of the nineteenth century to be more likely to publicly carry and use deadly weapons such as dirks, bowie knives, and pocket pistols. Rates of homicide, violence, and crime were rising in many parts of the country, and the lethality of weapons rose in tandem. The greater prevalence of deadly weapons in public spaces, and the bloody consequences, prompted American people across the country to turn to weapon regulations as a solution. These regulations tended to focus upon readily concealable "deadly weapons" like knives and pistols rather than the firearms used for militia and hunting purposes. Deadly weapons were associated with crime and

---

knife, dirk, dagger, slung-shot, or other deadly weapon" at "public assemblages." Nonetheless, this distinction between deadly weapons and militia or hunting weapons was foundational to nineteenth-century regulatory policies.

[2] Guns were used in less than half of the murders of unrelated adults, and less than ten percent of martial murders during the seventeenth and eighteenth centuries. See Randolph Roth, *American Homicide* (Cambridge: Belknap Press of Harvard University Press, 2009), 115.

needless bloodshed, and the people habitually carrying them were presumed to be ruffians, burglars, and assassins—those ready to settle personal difficulties with blood rather than by reason and law.

13. The other feature shared by deadly weapons was their suitability for concealment, and in fact, deadly weapons were often referred to as "concealed weapons" for the straightforward reason that they were designed to be carried concealed.[3] An 1886 law journal synthesized this point by saying:

> A statute making it indictable for one to carry concealed about his person any 'pistol, bowie-knife, razor, or other deadly weapon of the like kind,' embraces a butcher's knife. The words 'other deadly weapon of the like kind' imply similarity in the deadly character of weapons, such as can be conveniently concealed about one's person, to be used as a weapon of offence and defense.[4]

## II. LARGE KNIVES

14. For much of the nineteenth century, the carrying of large knives posed a serious threat to American communities. Even though the revolver was patented in 1836, it did not circulate in numbers sufficient to saturate the American consumer market until the latter 1800s. Prior to the mid- to late nineteenth century when revolvers began to circulate, handguns were single-shot devices useful only as a small club after their lone round had been fired. Fighting knives, on the other hand, worked in both dry and wet conditions and never needed to be reloaded. There were so many different styles and names of knives that Americans sometimes struggled to distinguish them from one another. To make matters even more complicated,

---

[3] For example, see "What They Think of It: The State Press on the Carrying of Concealed Weapons," *Daily Constitution* (Atlanta, Georgia), April 11, 1879, 4, **Exhibit 4**; and "Concealed Weapons: What Is Thought of the Practice by the Press of the State," *Daily Constitution* (Atlanta, Georgia), March 27, 1879, 1, **Exhibit 5**. The articles quote numerous other newspapers from Georgia which condemn carrying deadly weapons in terms that associate going armed and carrying deadly weapons with the habit of carrying concealed weapons.

[4] "Concealed Weapons," *Criminal Law Magazine and Reporter* 8, no. 4 (October 1886), 410, **Exhibit 6**. This was quoted in *State v. Erwin*, 91 N. C. 545 (1884).

Expert Report and Declaration of Dr. Brennan Rivas (3:23-cv-00474-JES-DDL)

these definitions might vary geographically, change over time, and were not set in stone during the nineteenth century.[5]

15. One of the most common terms for these knives in the eighteenth and early nineteenth centuries was *dirk*. The "dirk knife" originated in Scotland as a knife carried into battle or for martial ornamentation by soldiers. It has come to be identified as having a straight blade.[6] A variation of this knife, known as the naval dirk, tended to be curved for a brief period during the late eighteenth and early nineteenth centuries.[7]

16. Dirks were Scottish variations of European daggers, which connoted double-edged blades and could vary in length. Some daggers lent themselves to concealment while others were quite large and designed for defensive use in a swordfight.[8] Stiletto knives—which were slender, sharply tapered blades—also evolved from the dagger. These knives have historically been considered weapons because they are designed for stabbing and are not conducive for hunting or other purposes.[9]

---

[5] Worthen, *Arkansas Made*, I:267-268. See also *Haynes v. State*, 24 Tenn. 120 (1844), in which the case revolved around whether carrying a so-called "Mexican pirate knife" was indictable under a law pertaining to bowie knives, Arkansas toothpicks and "any knife or weapon that shall in form, shape or size resemble" them. The defendant was indicted and convicted for carrying a knife *resembling* a bowie, and the appellate court upheld the conviction as within the spirit and meaning of the law. See also 1838 Tenn. ch. 137, **Exhibit 7** (discussed below at Paragraph 32 and accompanying notations).

[6] Harold Leslie Peterson, *American Knives: The First History and Collectors' Guide* (New York: Scribner, 1958), 19 ("The blade was straight, single-edged and triangular in cross section.").

[7] Peterson, *American Knives*, 96-101 (Curved blade supplanted straight blades around the year 1800, but were subsequently replaced by a straight-bladed standard naval model known as the "model of 1869.").

[8] On European daggers, see Chris McNab, ed., *Knives and Swords: A Visual History* (New York: DK Publishing, 2010), 76-83, 156-165. The quillon dagger, in which the user's hand was protected by large quillons protruding between the handle and the blade, was an old design. A modification emerged in the early modern period by which the quillons faced forward and could be used to parry sword thrusts from an enemy. This "left-hand dagger" was called a *maingauche*.

[9] On knives as weapons, including stilettos, see Norman Strung, *An Encyclopedia of Knives* (Philadelphia: J. B. Lippincott Company, 1976), 94-100.

## A. Hunting Knives, Bowie Knives, and Arkansas Toothpicks

17. In North America, hunting knives were popular among both Europeans and Native Americans. Colonial and later traders, like the Hudson's Bay Company, included large knives in their transactions with Indigenous groups. Cartouche knives were long and single-bladed, similar to a butcher knife. Buffalo knives had a clipped tip, meaning that they had double-sided blades only near the tip.[10] The secondary edge, known as the *swedge*, allows the blade to penetrate flesh more effectively. This style of knife blade allowed hunters to deliver an efficient death blow to wounded large game, like buffalo.[11]

18. Bowie knives and Arkansas toothpicks, which became the best-known of the nineteenth-century fighting knives, derived from the older blade types discussed above. The bowie knife took its name from a man named Jim Bowie who was born in Kentucky in 1796 and died at the Alamo during the Texas Revolution in 1836.[12] He began carrying a large hunting knife in a leather scabbard in 1826, after an enemy tried to assassinate him in the street.[13] The following year, Bowie used it to great effect in a duel that turned into a melee and became the subject of nationwide news coverage.[14] His death at the Alamo cemented the legend of his namesake knife, which became one of the most widely denounced deadly weapons of the antebellum nineteenth century. Though the shape and length of the original bowie knife remains a mystery, the term came to describe a large knife with clipped

---

[10] On cartouche and buffalo knives in the Indian trade, see James A. Hanson et al, *The Encyclopedia of Trade Goods: Volume 2: Gun Accessories and Hand Weapons of the Fur Trade* (Chadron, NE: Museum of the Fur Trade, 2021), 176-186.

[11] Hanson et al, *Encyclopedia of Trade Goods*, II: 176-186; on swedges, see Strung, *An Encyclopedia of Knives*, 59-61.

[12] William R. Williamson, "Bowie, James," *Handbook of Texas Online*, accessed February 25, 2023, https://www.tshaonline.org/handbook/entries/bowiejames. Published by the Texas State Historical Association.

[13] Clifford Hopewell, James Bowie, Texas Fighting Man: A Biography (Austin: Eakin Press, 1994), 25-30.

[14] "Terrible Recontre," *Niles' Register* (Baltimore, Maryland), November 17, 1827, 182: https://archive.org/details/sim_niles-national-register_1827-11-17_33_844/page/182/mode/1up.

blade—one with a sharpened swedge that made it more lethal. Bowie knives had long blades, often measuring 8 to 12 inches, and the point of the knife was generally aligned with the handle to make it a more effective weapon.[15] The phrase "Arkansas toothpick" could be used interchangeably with "bowie knife" during the nineteenth century, but when used today it generally refers to a knife that was generally similar to a bowie but double-edged and tapered.[16]

19. Fighting knives did exist prior to the 1830s, and the exact styling of the original Bowie knife remains unknown, but Bowie's life story became a vehicle for Americans to discuss and address the growing problem of knife-violence. As rates of violence rose during the nineteenth century, people were more likely to carry and use large knives; the increased presence of knives—even if ostensibly carried for personal defense—had the regrettable consequence of exacerbating the problem.[17] This was especially notable in southern areas, where bowie knives were quite common and known to be associated with needless bloodshed.[18]

---

[15] On bowie knives having tips aligned with their handles, see Strung, *An Encyclopedia of Knives*, 96.

[16] For more information on the mysterious origins of the bowie knife, see Peterson, *American Knives*, 26-27; Sid Latham, *Knives and Knifemakers* (New York: Winchester Press, 1973), 104-112. On the interchangeable use of "bowie knife" and "Arkansas toothpick" during the nineteenth century, see Peterson, *American Knives*, 59. For an explanation of these knife styles as understood by modern collectors, see Strung, *An Encyclopedia of Knives*, 95-97.

[17] See "Another Victim of the Bowie Knife," Cheraw Gazette (Cheraw, South Carolina), September 6, 1837, 3: https://chroniclingamerica.loc.gov/lccn/sn88084121/1837-09-06/ed-1/seq-3/.

[18] For examples, see "Carrying Concealed Weapons," *Daily Picayune* (New Orleans, Louisiana), July 25, 1840, **Exhibit 8** (denouncing those who ""go habitually armed, making an arsenal of their persons" and that "where offence is given or injury sustained, even the code of *honor* has laid down other means of redress than an instant appeal to the Bowie knife," and questioning "incessantly carrying concealed weapons."); "The Bowie Knife," *Southern Argus* (Columbus, Mississippi), June 7, 1842, **Exhibit 9** ("The small dagger worn in former times, has given place to this more formidable invention, and the Bowie knife, throughout the West, is now the most common weapon of attack or defence."); and "Bowie Knife," *The Slave's Friend* 3, no. 2 (1838), 17, **Exhibit 10** ("People in slave states often carry such knives about them," and "When they get angry they draw the knife, and sometimes *stab one another!*").

## B. Folding Knives and Pocketknives

20. Folding knives are inherently weaker than fixed-blade weapons. In fixed-blade knives, the steel which forms the blade extends into the handle to provide strength and stability. This is referred to as the *tang*. In order to fold into the handle, folding blades cannot have a long tang. Instead, a *bolster* must support the hinge that connects the base of the blade to the handle. This style has been more useful for pocketknives and penknives that are small, lightweight, and utilitarian for everyday purposes.[19]

21. In addition to their weakness in comparison to fixed blades, folding blades are significantly more complex to design, craft, and assemble. There are more component parts, and they have to enable efficient movement of the blade and the spring. The spring of a folding knife is a metal piece that uses tension to assist the blade in staying either open or closed rather than slipping open or shut based upon movement, gravity, etc. This is a safety feature that prevents the knife from sliding open within a pocket or collapsing shut during use.[20] Prior to industrialization and mass production, specialized cutlers handmade blades and springs that had to fit and function in harmony together. This process required the specialized knowledge and tools of properly trained craftsmen.[21]

22. Some large folding knives were produced during the nineteenth century, including some folding bowie knives. One example from the mid-nineteenth century features a 6 3/8-inch blade that does not fit entirely within the handle when folded shut. The folded knife was inserted within a metal-tipped leather scabbard, which protected the user from the portion of the blade that extended beyond the

---

[19] On the design features and relative weakness of folding blades, see Strung, *An Encyclopedia of Knives*, 25-27, 99-100. On the various types of folding knives and their historical uses, see Peterson, *American Knives*, 129-142.

[20] On the design and complexity of folding blades, see Latham, *Knives and Knifemakers*, 94-96; Strung, *An Encyclopedia of Knives*, 25-27, 38-39. See also "Understanding Bias Toward Closure and Knife Mechanisms," *American Knife and Tool Institute*, https://www.akti.org/resources/additional-definitions/.

[21] Peterson, *American Knives*, 146.

handle when folded. Such a knife was likely defined as a bowie knife in the nineteenth century as a result of its blade size rather than classified separately based upon its folding style. Even today, this blade is described as "[a]n English folding bowie knife."[22] An 1820 Alabama law taxed various deadly weapons like dirks, pistols, and sword canes, and included within that list any "dirk knife with a spring to prevent it from shutting."[23] Based upon blade length and overall size, folding knives could be categorized into dirks, bowies, etc. versus pocket knives.[24] These folding knives might use springs to lock the blade into an open or closed position, but they were not automatic opening knives, and those sharing essential features with fighting knives were likely to be regulated as such.

### C. The Manufacturing of Knives

23. From the medieval period through much of the nineteenth century, the center of knife-making in the Anglophone world was Sheffield, England. The cutlery trade was divided into smiths, strikers, grinders, and hafters who hammered, tempered, sharpened, and polished knives in a time-consuming craftwork process that remained largely unchanged until the nineteenth century. Sheffield workers were so well-known for the quality of their products and their specialized knowledge that American smiths and cutlers struggled to turn out knives of a comparable quality. Though American smiths and cutlers produced knives, imports from Sheffield dominated the knife market until the approximately the mid-nineteenth century.[25]

---

[22] Frederick John Stevens, *Fighting Knives: An Illustrated Guide to Fighting Knives and Military Survival Weapons of the World* (New York: Arco Publishing Company, 1980), pictured 10-11.

[23] 1820 Ala. 10, § 3, **Exhibit 11** ("for every dirk, one dollar: for every sword cane, one dollar; for every pocket or side pistol, one dollar: for every dirk knife with a spring to prevent it from shutting, one dollar,").

[24] Some nineteenth-century laws specifically distinguished between regulated knives and pocket knives, further indicating that knives were classified based upon blade length and overall size rather than folding style versus fixed-blade. For example, see 1846 Fla., ch. 75, **Exhibit 12** (cited below, see Paragraph 28 and accompanying notations).

[25] On the Sheffield process and dominance of Sheffield knives in the early

24. Industrialization in the nineteenth century dramatically altered the method of making knives and transformed the cutlers' trade from one of highly skilled craftsmen to a mechanized process that employed less skilled workers. In the United States, the path to mechanization went through the John Russell Manufacturing Company of Deerfield, Massachusetts. Facing significant competition from Sheffield manufacturers and a consumer bias in favor of Sheffield-made products, Russell turned to steam and water power to streamline knife-making. Eventually, he "set up a true assembly-line production."[26] Competitors embracing new methods of mechanized, mass production emerged, and the trade oriented itself primarily around New England.[27]

25. Russell and his American competitors struggled to find workers with the proper training. He recruited Sheffield cutlers to share trade secrets about tempering and other aspects of the industry. Beginning in the 1840s, the company manufactured a useful outdoor knife that was popular among western trappers, travelers, and mountain-men called the Green River knife. This "ruggedly constructed hunting knife" featured a blade of 8¾ inches and unadorned wood handle. Green River knives "were often shipped dull so that individual owners could sharpen them as they wished."[28] The success of this knife burnished the reputation of Russell Manufacturing, and the company eventually produced a full array of cutlery for dining, cooking, and other purposes. This included a series of hunting knives, some of which featured clipped blades, swedges, and other characteristics of fighting knives.[29]

United States, see Peterson, *American Knives*, 143-147; Robert L. Merriam et al, *The History of the John Russell Cutlery Company: An Illustrated Story of the Famous Green River Knives* (Bete Press, 1976), 6-7.
    [26] On the innovations of John Russell, and quotation, see Peterson, *American Knives*, 148.
    [27] Peterson, *American Knives*, 148-149.
    [28] Merriam et al, *John Russell Cutlery*, 13. The intended purpose of a knife could dictate the way in which the edge would need to be sharpened, especially for knives used in skinning animal hides.
    [29] A complete reprinting of the company's 1884 catalog can be found in

11

### D.  Switchblade Manufacture in the United States

26.  Switchblade knives were, for the most part, a product of the industrial revolution and were not produced in significant numbers prior to the turn of the twentieth century. Though well-trained European craftsmen appear to have made a handful of "spring-fired folding blade" knives in the latter eighteenth century, the rarity of these devices shows that they were not produced in numbers at all comparable to regular folding blades or fixed blades.[30] Mechanization and interchangeable parts made the manufacture of delicate componentry achievable on a scale never seen before. In the United States, the first patent for a switchblade knife was issued in 1877, and production did not begin in noteworthy numbers until approximately the 1890s.[31]

27.  These early switchblades swung open from a folded position, and many were essentially automatic-opening pocketknives.[32] The stiletto-style dagger was not unheard of in the United States, but the sturdier and more popular bowie knife overshadowed it as a weapon of choice for those going armed, and therefore as an object of societal concern.[33] It appears as though Italian stiletto-style switchblades

---

Merriam et al., *John Russell Cutlery*, with hunting knives, sheath knives, skinning knives, and fish scaling knives on pp. 105-109, and barlows and pocket knives on pp. 116-118.

[30] In the published works about switchblades that I was able to locate and consult for this report, the earliest recorded switchblade is dated to the latter 1700s. According to Zinser et al., "The first spring-fired blade that can be authenticated appeared in Europe, probably Italy, in the late eighteenth century, with knifemakers in other countries, especially France and England, not far behind." Mark Erickson says: "The origins of the switchblade knife go back much farther than one might imagine. I know that they were being manufactured in England in the mid 1800s and France and Italy were making them well before that. I am very confident that they were brought to this country from Europe by the mid 1800s, and quite possibly before that." These statements show that few examples of automatic opening knives dated prior to the nineteenth century exist, with even fewer examples in the United States than in Europe. See Tim Zinser et al, *Switch Blades of Italy* (Nashville: Turner, 2003), 7-9, quotation at 7; Mark Erickson, *Antique American Switchblades: Identification and Value Guide* (Iola, WI: Krause Publications, 2004), 6.

[31] Erickson, *Antique American Switchblades*, 22-24.

[32] On the size and styling of early switchblade knives produced in the United States, see Erickson, *Antique American Switchblades*, 25-143.

[33] Some nineteenth-century regulations specifically named *stiletto* knives. See 1821 Tenn. ch. 13, **Exhibit 13** ("a dirk, sword cane, French knife, Spanish

became much more widely available in the twentieth century, largely as a result of soldiers' exposure to European-made weapons during World War II.[34] The relative rarity of automatic opening knives meant that restrictions from that period generally did not specifically name automatic-opening knives. But nineteenth-century Americans did regulate the knives that posed a societal danger—especially fighting knives like bowies and dirks—and these regulations applied to what few automatic-opening dirks and bowie knives existed at that time just as much as the more common fixed-blade versions.

## III.   KNIFE REGULATIONS IN THE NINETEENTH CENTURY

28. The response on the part of Americans confronting knife-violence was the regulation of such weapons. Because fighting knives were associated with personal rather than militia use, and they were readily concealable beneath a coat or within a waistband, they fell under regulations pertaining to deadly weapons. Americans restricted the presence of deadly weapons in public spaces through various mechanisms, including public carry laws. In 1801, a Tennessee law prohibiting "privately" carrying "any dirk, large knife, pistol or any other dangerous weapon."[35] Similar laws existed in numerous states during the antebellum nineteenth century, including: Kentucky, which restricted the carrying of "a pocket pistol, dirk, large knife, or sword in a cane,"[36]; Louisiana, which prohibited "any concealed weapon, such as a dirk, dagger, knife, pistol, or any other deadly weapon,"[37]; Indiana, which restricted "any dirk, pistol, sword in cane, or any other unlawful weapon,"[38]; and Mississippi, which restricted the carrying of "any pistols,

---

stiletto, belt or pocket pistols. . .").

[34] Zinser et al, *Switch Blades of Italy*, 5 ("Considering that both the term [switchblade] and the knife [Italian stiletto] arrived in this country almost simultaneously in the years after World War II, it is perhaps not surprising that the two are essentially synonymous.").

[35] Tenn. 1801 ch. 22 § 6. **Exhibit 14**.

[36] 1812 Ken., ch. 89, **Exhibit 15**.

[37] 1813 La., ch. 5, **Exhibit 16**.

[38] 1819 Ind., ch. 23, **Exhibit 17**.

13

dirk or other such offensive weapons."[39] Laws enacted later used the specific phrase "bowie knife," such as Virginia, which regulated the carrying of "any pistol, dirk, bowie knife, or any other weapon of the like kind, from the use of which the death of any person might probably ensue,"[40]; and Alabama, whose laws pertained to "a bowie knife, or knife or instrument of the like kind or description, by whatever name called, dirk or any other deadly weapon, pistol or any species of fire arms, or air gun."[41] The state of Florida did not use the term "bowie knife," but distinguished restricted knives from regular pocket knives; an 1846 law regulated the public carrying of "any dirk, pistol or other arm or weapon, except a common pocket knife."[42]

29. Deadly weapon laws curtailing the carrying of large knives in public spaces were not the only regulations adopted by nineteenth-century Americans. Some states taxed their possession while others prohibited their sale. Alabama, North Carolina, and Mississippi taxed the personal possession of certain weapons, including large knives like dirks and bowies.[43] In some instances, these taxes were relegated to such knives that had actually been worn or carried in public, but that was not universally the case.[44] The rates themselves could be quite high. For instance, Alabama's 1866 tax upon pistols, revolvers, and knives such as bowie knives was $2 and provided no exceptions.[45] The immediate postbellum South was

---

[39] 1821 Miss., ch. 49, **Exhibit 18**.
[40] 1838 Vir., ch. 101, **Exhibit 19**.
[41] 1840 Ala., ch. 7, **Exhibit 20**.
[42] 1846 Fla., ch. 75, **Exhibit 12**.
[43] 1820 Ala. 10, § 3, **Exhibit 11**; 1838 Fla. 36, **Exhibit 21**; 1844 Miss. ch. 8, Art. 16, § 1, **Exhibit 22**; 1850 N. C. ch. 121, § 5, **Exhibit 23**; 1851 Ala. ch. 1, § 1, **Exhibit 24**; 1856 N. C. ch. 34, § 23 (4), **Exhibit 25**; 1858 N. C. ch. 25, § 27 (15), **Exhibit 26**; 1866 Ala. ch. 260, § 2 (10), **Exhibit 27**; A. J. Walker, ed., *Revised Code of Alabama* (Montgomery: Reid & Screws, 1867), 169, **Exhibit 28**. The Mississippi tax was repealed in 1861. See 1861 Miss. ch. 125, **Exhibit 29**.
[44] 1856 N. C. ch. 34, § 23 (4), **Exhibit 25**; 1858 N. C. ch. 25, § 27 (15), **Exhibit 26**.
[45] 1866 Ala. ch. 260 § 2 (10), **Exhibit 27**.

a tremendously cash-poor society, so this tax—which amounts to approximately $38 today—was quite high.[46]

30. Florida Territory presents an apt illustration of how taxes could be used in conjunction with carry restrictions to create a comprehensive deadly weapon policy. In 1835, the territorial government enacted a public carry law with a steep fine of $50 to $500 for violations and an exemption for "carrying arms openly, outside of all their clothes."[47] Unsatisfied with the policy—which appears to have resulted in widespread open-carry of deadly weapons—leaders established a new series of prohibitive taxes designed to further reduce the presence of deadly weapons in public. This 1838 enactment held that anyone who chose "to vend dirks, pocket pistols, sword canes, or bowie knives" had to first pay an annual tax of $200, "and all persons carrying said weapons openly shall pay . . . a tax of ten dollars annually."[48]  In 2023 dollars, the annual occupation tax would amount to approximately $6,300, and the annual open carry tax would amount to approximately $320.[49] In a sparsely populated, rural environment, these taxes were clearly designed to discourage trade in and public carry of deadly weapons. The architects of the statute saw it as intrinsically connected to the previously enacted concealed carry restriction—as a way of more effectively reducing the number of weapons carried in public spaces.[50] Later in the nineteenth century, municipalities

---

[46] See: https://www.in2013dollars.com/us/inflation/1866?amount=2
[47] John P. Duval, Compilation of the Public Acts of the Legislative Council of the Territory of Florida, Passed Prior to 1840 Page 423, Image 425 (1839) available at The Making of Modern Law: Primary Sources.
[48] 1838 Fla., ch. 24. This tax is not included within the Duke Repository, indicating that that database captures only a portion of the occupation and personal taxes in force, even at the state/territorial level, during the nineteenth century. More research remains to be done on the subject.
[49] The amounts reach $319.14 and $6,382.73. See: https://www.in2013dollars.com/us/inflation/1838?amount=200.
[50] The title of the 1838 tax was "An Act in addition to An Act, (approved January 30, 1835,) entitled An Act to prevent any person in this Territory from carrying arms secretly."

Jesup, Georgia and Cedartown, Georgia also imposed personal taxes on the value of residents' dirks and bowie knives.[51]

31. Jurisdictions also levied occupation taxes upon dealers in deadly weapons, including large knives. Alabama, Georgia, and Mississippi did so in revenue bills, meaning that they were reenacted time and time again.[52] A tax of $100 per year upon dealers in pistols, toy pistols, shooting cartridges, dirks, and bowie knives was included in Georgia revenue bills in 1884, 1886, 1888, 1890, 1892, and 1894.[53] Alabama's occupation tax applied to dealers in pistols, bowie knives, and dirks (and sometimes firearm cartridges). The policy first emerged in 1876 and built upon a previous policy of taxing personal possession of deadly weapons.[54] The personal taxes, which appear to have been used through the 1860s,

[51] The municipal charters of Jesup, Georgia and Cedartown, Georgia assessed taxes based upon a questionnaire that included the prompt, "What is the value of your guns, pistols, bowie knives and such articles?" 1888 Ga. ch. 103, "Amending Charter of Jesup," § 46, Art. 30, **Exhibit 30**; 1889 Ga., ch. 640, "New Charter for Cedartown," §36, Art. 30, **Exhibit 31**.

[52] The town of Leicester, North Carolina also assessed "privilege taxes" upon "professions, callings, trades, occupations, and all other business carried on in said town," which appears to have included the sale of pistols, dirks, bowie knives, and sword canes. The organization of the article makes it somewhat unclear whether the tax upon these items was assessed based upon personal possession or trade. See 1891 N. C., ch. 327, "An Act to charter the town of Leicester in the county of Buncombe, North Carolina," § 44. **Exhibit 32**.

[53] For the purposes of this report, I did not extend research beyond the year 1900. It is possible that this revenue requirement continued in Georgia beyond 1894, but additional research would be required to confirm that. See 1884 Ga., ch. 52 "For Support of State Government, 1885-86," § 2, Art. 18, **Exhibit 33**; 1886 Ga., 14 "General Tax Act for 1887 and 1888," § 2, Art. 18, **Exhibit 34**; 1888 Ga., ch. 123 "General Tax Act for 1889 and 1890," § 2, Art. 17, **Exhibit 35**; 1890 Ga., ch. 131 "General Tax Act," § 2, Art. 16, **Exhibit 36**; 1892 Ga., ch. 133 "General Tax Act," § 2, Art. 16, **Exhibit 37**; 1894 Ga., ch. 151 "General Tax Act for 1895 and 1896," § 2, Art. 16, **Exhibit 38**. The Georgia occupation tax appears to have started in 1882 with an annual tax of $25 per place of business, which was subsequently raised to $100. See 1882 Ga. ch. 18, "For Support of State Government, 1883-84," § 2, Art. 18, **Exhibit 39**.

[54] See: Wade Keyes et al, eds., *Code of Alabama 1876* (Montgomery: Barrett & Brown, printers for the State, 1877), 292, **Exhibit 40**; 1886 Ala., ch. 3, § 5 (17), **Exhibit 41**; Robert C. Brickell et al, eds., *Code of Alabama* (Nashville: Marshall & Bruce), 194; William L. Martin, ed., *Code of Alabama* (Atlanta: Foote & Davies, 1897), 1137 and accompanying notation, **Exhibit 42**; 1898 Ala. ch. 903, § 16, (66), **Exhibit 43**. The presence of these taxes in state statutes pertaining to taxation and licensing indicates that they are annual taxes that remained in force unless modified or repealed. On Alabama personal taxes, see above at Paragraph 29 and

specifically exempted "regular dealers holding them for sale."[55] The occupation taxes, however, applied to all dealers "whether principal stock in trade or not."[56] Shortly afterward, a group of hardware merchants faced charges for selling pistols without paying the tax and obtaining the proper paperwork. The state supreme court upheld the occupation tax as applying to any business that sold any of the enumerated weapons without obtaining the required license.[57] Alabama law allowed municipalities to levy local taxes upon any occupation that the state already taxed, meaning that additional local taxes may have applied in towns and cities across the state.[58]

32. The state of Tennessee went so far as to prohibit the sale of certain kinds of knives during the nineteenth century. An 1838 law criminalized "any merchant, pedlar, jeweller, confectioner, grocery keeper, or other person or persons whatsoever" who "shall sell or offer to sell, or shall bring into this State, for the purpose of selling, giving or disposing of in any manner whatsoever, any Bowie knife or knives, or Arkansas tooth picks, or any knife or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick."[59] The law was suspended[60] during the Civil War, but Tennessee did not abandon sales prohibitions as a form of weapon regulation. In 1879 the state prohibited the sale of pocket pistols altogether—as did Arkansas in 1881.[61]

---

accompanying notation; see also below, n. 51.

[55] 1866 Ala. ch. 260, § 2 (10), **Exhibit 27**; A. J. Walker, ed., *Revised Code of Alabama* (Montgomery: Reid & Screws, 1867), 169, **Exhibit 28**.

[56] *Code of Alabama 1876*, 292; 1886 Ala., ch. 3, § 5 (17), **Exhibit 41**.

[57] *Porter & Co. v. State*, 58 Ala. 66 (1877).

[58] Robert C. Brickell et al., eds., *Code of Alabama* (Nashville: Marshall & Bruce, 1887), 191 n 11 (Describing an amendment to Section 499 to read in part "but no city (except Mobile, Montgomery, Marion, Brewton, Cullman and Selma), or town, or county shall assess, levy or collect any license tax on any business or occupation, upon which the state does not assess, levy, or collect such license tax."), **Exhibit 44**.

[59] 1838 Tenn. ch. 137, **Exhibit 7**.

[60] 1862 Tenn. ch. 23, **Exhibit 45**.

[61] 1879 Tenn. ch. 96, **Exhibit 46**; Ark. 1881 ch. 96 §3, **Exhibit 47**.

**CONCLUSIONS**

33. Switchblade knives were not available in significant numbers in the United States until the closing years of the nineteenth century at the earliest. Though there are few or no examples of nineteenth-century restrictions that specifically name "switchblades," the absence of such specific regulations is the result of an absence of such knives rather than an unwillingness to regulate dangerous fighting knives. To the contrary, the knives to which nineteenth-century Americans were exposed and which concerned them—like bowie knives, dirks, daggers, and Arkansas toothpicks—were subject to regulation. These regulations took the form of public carry restrictions, personal taxes, occupation taxes, and sales restrictions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 19 , 2023, at Fort Worth, Texas.

_Brennan Rivas_

Dr. Brennan Rivas

# EXHIBIT 1

# Brennan Gardner Rivas
## Curriculum Vitae · Oct 2023

## Employment

Lloyd Lewis Fellow in American History, The Newberry Library, 2021-2022

Bill & Rita Clements Fellow for the Study of Southwestern America, Southern Methodist
University, Clements Center for Southwest Studies, 2020-2021

Lecturer in American History (full-time), Texas Christian University, Department of History,
2019-2020

## Education

Ph.D., History, Texas Christian University, 2019
Thesis: "The Deadly Weapon Laws of Texas: Regulating Guns, Knives, & Knuckles in
the Lone Star State, 1836-1930"
Advisor: Gregg Cantrell

M.A., History, Texas Christian University, 2013
Thesis: "Texas Antitrust Law: Formulation and Enforcement, 1889-1903"

B.A. with Honors, History, Oklahoma State University, 2010

## Publications

*Refereed Journal Articles*

"An Unequal Right to Bear Arms: State Weapons Laws and White Supremacy in Texas, 1836-
1900," *Southwestern Historical Quarterly* 121 (Jan 2018): 284-303.

*Law Articles*

"Strange Bedfellows: Racism and Gun Rights in American History and Current Scholarship"
in Joseph Blocher and Jake Charles, eds., *New Histories of Gun Rights and Regulation: Essays
on the Place of Guns in American Law and Society* (New York: Oxford University Press,
2023)

"Enforcement of Public Carry Restrictions: Texas as a Case Study," *U.C. Davis Law Review*
(May 2022)

"The Problem with Assumptions: Reassessing the Historical Gun Policies of Arkansas and
Tennessee," *Second Thoughts*, Duke Center for Firearms Law (Jan 2022)

*Short Pieces*

"Reflections on the American Gun Control Culture," *The Panorama: Expansive Views from the
Journal of the Early Republic*, October 17, 2023.

"Charles F. Cooley," in *Wanted in America: Posters Collected by the Fort Worth Police
Department, 1898-1903*, edited by LeAnna Schooley and Tom Kellam. Fort Worth: TCU
Press, 2019.

Review of David R. Berman, *George Hunt: Arizona's Crusading Seven-Term Governor*, in
*Southwestern Historical Quarterly* 114, no. 3 (January 2016): 327-329.

1

## Public History

"In the Past, Americans Confronted Gun Violence by Taking Action," *Washington Post: Made by History Blog* (Jun 2022)
>   ~ Op-ed showcasing open-mindedness of 19th century Americans about experimenting with new gun control measures

"The Origin of Public Carry Laws in Texas," *Texas Gun Sense Blog* (Feb 2021)

"Texas Gun Laws," Online Primary Source Collection, hosted by Omeka
>   ~ Online collection featuring primary sources from my research; feature exhibit titled "Crafting a Public Carry Law"

"The Deadly Weapon Laws of Texas," Preserving Our Past: Community History Workshop, Center for Texas Studies at TCU (Nov 2020)
>   ~ Public lecture featuring special insights for genealogical researchers

"The Deadly Weapon Laws of Texas," Graduate/Undergraduate Public History Seminar, Tarleton State University (Sept 2020)
>   ~ Research presentation focusing on interpretation of county court records

"When Texas Was the National Leader in Gun Control: How the Land of Gunslinger Mythology Regulated Weapons to Reduce Violence," *Washington Post: Made by History Blog* (Sept 2019)
>   ~ Op-ed highlighting long history of weapon regulation in Texas

## Fellowships and Awards

Firearm Issues Research Grant, 2023-2024
>   ~ Awarded by the Harvard Injury Control Research Center, from grant funding from the Robert Wood Johnson Foundation, for research related to firearm issues

Lloyd Lewis Fellowship in American History, 2021-2022
>   ~ Awarded by the Newberry Library to scholars using its collection to research topics in American history

Bill & Rita Clements Fellowship for the Study of Southwestern America, 2020-2021
>   ~ Awarded by the SMU Clements Center for Southwest Studies to two scholars of Texas, the Southwest, or the U.S.-Mexico borderlands who are developing first books

The Benjamin W. Schmidt Memorial Scholarship, 2018-2019
>   ~ Awarded by the TCU Department of History to a PhD candidate who shows exceptional professional promise; highest departmental prize for graduate students

Texas Christian University Department of History, Shinko and Thomas McDonald Research Prize in Texas History, 2019, 2017
>   ~ Awarded by the TCU Department of History to a graduate student with the best research on antebellum Texas history

## Works in Progress

*The Revolver Must Go: The Rise and Fall of a Gun Control Movement in Texas*

Aim: Scholarly monograph exploring the rise of a gun control movement in nineteenth-century Texas and the regulatory strategies which it embraced. Widespread acceptance of strict, ambitious gun control laws in the "Wild West" belies current assumptions about Texas and challenges the reigning interpretation of the Second Amendment as a guarantor of expansive gun rights.

Status: Editing manuscript

2

"Going Armed: The Law and Culture of Carrying Deadly Weapons in the Nineteenth Century"
Aim: Scholarly article uncovering the ways in which nineteenth-century gun-toters carried their deadly weapons, and why they generally did so concealed.
Status: Writing in progress

## University Teaching Experience

*Instructor of Record*

Lecturer in American History, Texas Christian University                    2019-2020
    "American History to 1877: Social Movements & the Politics of Slavery" (HIST 10603)
    "American History since 1877: The Quest for Equality" (HIST 10613)
    "History of Texas: A Transnational Look at the American Southwest" (HIST 40743)

*Graduate Student Instructor*

Teaching Assistant, Texas Christian University                    2017-2018
    American History to 1877 (HIST 10603)
    American History since 1877 (HIST 10613)

*Teaching Interests*

American History, Legal History, Southwestern Borderlands, Civil War Era, American West, Gilded Age & Progressive Era, Women's History

## Conference Presentations & Invited Talks

Panelist, "Use and Abuse of History in Second Amendment Litigation," and "Going Armed: Nineteenth Century Views on Open Carry," Current Perspectives on the History of Guns and Society, Wesleyan University, Middletown, Connecticut, October 2023

"Masculinity, Honor-Violence, and Gun Reform in the Early U.S.," Race, Gender, and Firearms in the Early Republic, Society for Historians of the Early American Republic Annual Meeting, Philadelphia, Pennsylvania, July 2023

"Second Amendment Panel—Issues in Cases Post-*Bruen*," Strategic Litigation Convening: Anti-Democracy Efforts and Political Violence Post-*Bruen*, Institute for Constitutional Advocacy and Protection, Georgetown Law, Washington, D. C., June 2023

"A Case for More Case Studies," Originalism, the Supreme Court, Gun Laws, and History, Late-Breaking Roundtable, American Historical Association Annual Meeting, Philadelphia, Pennsylvania, January 2023

"Military Disarmament Orders and the Role of Reconstruction Historiography after *Bruen*," Current Perspectives on the History of Guns and Society Symposium, Wesleyan University, Middletown, Connecticut, October 2022

"Reassessing Assumptions about Historical Arkansas and Tennessee Handgun Regulations," Race and Guns Roundtable, Duke Center for Firearms Law, Durham, North Carolina, November 2021

"Enforcement of Public Carry Restrictions: Texas as a Case Study," The Second Amendment at the Supreme Court: 700 Years of History and the Modern Effects of Guns in Public, Davis, California, October 2021

"Race & Guns," Newberry Library Colloquium, Chicago, Illinois, October 2021

"Unlawful Carrying: Enforcing the Pistol Law in Texas, 1870-1920," Texas State Historical Association Annual Meeting, Corpus Christi, Texas, February 2019

3

"Regulating Deadly Weapons in Nineteenth-Century Texas," Invited Lecturer, Los Bexareños
    Hispanic Genealogical and Historical Conference, San Antonio, Texas, September 2018
"Impregnable Citadels of Capital: American Monopolies in the British Radical Press," Southern
    Conference on British Studies Annual Meeting, St. Pete Beach, Florida, November 2016
"Dating Violence in Texas: Why the State Family Code Obstructs Accurate Reporting about
    Sexual Assault," TCU Women & Gender Studies Research Symposium, 2015


## Service

Invited Guest, "How to Make the Most of Your Time in Graduate School," Dept. of History
Orientation Day, 2020
    ~ Advise incoming graduate students on strategies for success in the PhD program,
        emphasizing importance of intellectual development
Panelist, "Everything You Wanted to Know about TCU but Were Too Afraid to Ask," Dept. of
History Orientation Day, 2016
    ~ Provide honest and confidential information to prospective graduate students
Graduate Student Mentor, 2015
    ~ Informal departmental program designed to ease the transition for incoming graduate
        students


## Second Amendment Subject Matter Expert

*Duncan et al v. Bonta*, California, Case No. 17-1017-BEN-JLB, S.D. Cal.

*Miller et al v. Bonta*, California, Case No. 3:19-cv-01537-BEN-JLB, S.D. Cal.

*Angelo et al v. District of Columbia et al*, Washington, D.C., Civ. Act. No. 1:22-cv-01878-RDM,
    D. D.C.

*Hanson et al v. District of Columbia et al*, Washington, D.C., Civ. Act. No. 1:22-cv-02256-RC,
    D. D.C.

*Christian et al v. Nigrelli et al*, New York, No. 22-cv-00695 (JLS), W.D. N.Y.

*Frey et al v. Nigrelli et al*, New York, Case No. 21 Civ. 5334 (NSR), S.D. N.Y.

*Brumback et al v. Ferguson et al*, Washington, No. 1:22-cv-03093-MKD, E.D. Wash.

*Sullivan et al v. Ferguson et al*, Washington, Case No. 3:22-cv-5403, W.D. Wash.

*Siegel v. Platkin,* New Jersey, No. 22-CV-7463 (RMB) (AMD), D. N.J.

*NAGR v. Campbell*, Massachusetts, No. 1:22-cv-11431-FDS, D. Mass.

*Oregon Firearms Federation, Inc. v. Kotek*, Oregon, No. 2:22-cv-01815-IM, D. Ore.

*NSSF v. Jennings*, Delaware, No. 22-cv-01499-RGA, D. Del.

*Chavez v. Bonta*, California, No. 3:19-cv-01226-L-AHG, S.D. Cal. (f/k/a *Jones v. Bonta*)

*Nguyen v. Bonta*, California, No. 3:20-cv-02470-WQH-BGS, S.D. Cal.

*Baird v. Bonta*, California, No. 2:19-cv-00617-KJM-AC, E.D. Cal.

*Nichols v. Bonta*, California, No. 3:11-cv-09916-SJO-SS, C.D. Cal.

*Wiese v. Bonta*, California, No. 2:17-cv-00903-WBS-KJN, E.D. Cal.

*Rocky Mountain Gun Owners v. Polis*, Colorado, No. 23-cv-01077-JLK, D. Col.

*Wolford v. Lopez*, Hawaii, No. 1:23-cv-00265-LEK-WRP, D. Haw.

*Novotny v. Moore*, Maryland, No. 1:23-cv-01295-GRL, D. Mary.

*Kipke v. Moore*, Maryland, No. 1:23-cv-01293-GRL, D. Mary.

*Ohio v. Columbus*, Ohio, No. 2022-cv-00657, Ct. Com. Pleas, Fairfield Cty, Ohio

4

## Professional Memberships

Society for Historians of the Gilded Age and Progressive Era
Texas State Historical Association
Southern Historical Association
American Historical Association

5

# EXHIBIT 2

## 79

conformity to law; or, with the consent and approbation of the probate court, in productive real estate within this state, the title to which shall be taken in the name of the guardian as such; and to manage such investments, and when deemed proper, change the same into any other investment of the above classes; but no real estate so purchased shall be sold by the guardian, except with the consent and approbation of the probate court; and if said guardian fail to loan or invest the money of his ward within such reasonable time, he shall account on settlement for such money and interest thereon, calculated with annual rests; and also to settle and adjust, when necessary or desirable, the assets which he may receive, in kind, from an executor or administrator, as may be most advantageous to his wards, but before such settlement and adjustment shall be valid and binding, it shall be approved by the probate court, and such approval entered on its journal; and with the like approval, to hold the assets as received from the executor or administrator, or what may be received in the settlement and adjustment of said assets.

Eighth—To obey and perform all orders and judgments of the proper courts touching the guardianship.

SEC. 3. That sections six thousand one hundred and eighty-nine and six thousand two hundred and sixty-nine be and the same are hereby repealed. <span style="float:right">Repeals.</span>

SEC. 4. This act shall take effect and be in force from and after its passage.

THOS. A. COWGILL,
*Speaker of the House of Representatives.*
R. G. RICHARDS,
*President pro tem. of the Senate.*

Passed March 25, 1880.

---

[Senate Bill No. 1.]

### AN ACT

Supplementary to chapter eight (8), title one (1), part four (4), of the revised statutes of Ohio.

SECTION 1. *Be it enacted by the General Assembly of the State of Ohio,* That the following section be enacted as supplementary to chapter 8, title 1, part 4, of the revised statutes with sectional number as herein provided:

Section 6986a. That whoever sells, barters, or gives away to any minor under the age of fourteen years, any air-gun, musket, rifle-gun, shot-gun, revolver, pistol, or other fire-arm, of any kind or description whatever, or ammunition for the same, or whoever being the owner, or having charge or control of any such air-gun, musket, rifle-gun, shot-gun, revolver, pistol or other fire-arm knowingly permits the same to be used by such minor, shall be deemed guilty of a misdemeanor, and <span style="float:right">Penalty for selling or giving, etc., fire-arms to minors.</span>

60

upon conviction thereof shall be fined in any sum not exceeding one hundred dollars, or be imprisoned in jail not exceeding thirty days or both.

SEC. 2.   This act shall take effect and be in force from and after its passage.

THOS. A. COWGILL,
*Speaker of the House of Representatives.*
R. G. RICHARDS,
*President pro tem. of the Senate.*

Passed March 25, 1880.

---

[Substitute for House Bill No. 72.]

AN ACT

To amend section 3897 of the revised statutes.

SECTION 1.   *Be it enacted by the General Assembly of the State of Ohio,* That section three thousand eight hundred and ninety-seven of the revised statutes be so amended to read as follows:

Section 3897.   In city districts of the first class, the board of education shall consist of two members for each ward, except in districts organized under a law providing for one member only for each ward, in which districts the board may at any time, by a vote of a majority of its members, provide that thereafter each ward shall be represented by two members, and thereupon proceed to choose one additional member for each ward, to serve until the next annual election for city officers, and until the election and qualification of his successor; and each member of the board shall be an elector of the ward for which he is elected or appointed: provided, that in city districts of the first class, having a population, according to the last federal census, of one hundred and fifty thousand and over, the board of education shall consist of thirty-seven members, twelve of whom shall be elected at the April election of the current year, to hold office as follows:   The four members who receive the highest number of votes for three years, the four who receive the next highest number of votes for two years, the four who receive the next highest number of votes for one year: and thereafter there shall be elected, annually, four members to serve for three years.   In case of a tie vote the choice of terms shall be determined by lot.   And the remaining twenty-five members shall consist of those members of the board of education elected at the April election in 1879, and whose terms of office do not expire until April, 1881; that, beginning with the April election of 1881, one member shall be elected from each ward of said cities; and such of said members as shall have been elected by wards having an odd numerical

*(marginal note:)* Board of education in city districts of the first class; how constituted.

# EXHIBIT 3

SEC. 1271. *Abandonment of children.*—If any father or mother of any child under the age of six years, or any other person to whom such child shall have been confided, shall expose such child in a street, field or other place, with intent wholly to abandon it, he or she shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months.  (G. S. 781, § 39.)

SEC. 1272. *Mistreatment of apprentices.*—If any master or mistress of an apprentice or other person having the legal care and control of any infant, shall, without lawful excuse, refuse or neglect to provide for such apprentice or infant, necessary food, clothing or lodging, or shall unlawfully and purposely assault such apprentice or infant, whereby his life shall be endangered, or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not exceeding one year, or by a fine of not more than one thousand dollars, or by both such fine and imprisonment. (New section.)

SEC. 1273. *Abandonment of wife or child.*—If any man shall, without good cause, abandon or desert his wife, or abandon his child or children under the age of twelve years born in lawful wedlock, and shall fail, neglect or refuse to maintain and provide for such wife, child or children, he shall, upon conviction, be punished by imprisonment in the county jail not more than one year, or by a fine of not less than fifty, nor more than one thousand dollars, or by both such fine and imprisonment.  No other evidence shall be required to prove that such husband was married to such wife, or is the father of such child or children, than would be necessary to prove such fact or facts in a civil action. (Laws 1867, p. 112, amended—*m.*)

SEC. 1274. *Carrying deadly weapons, etc.*—If any person shall carry concealed, upon or about his person, any deadly or dangerous weapon, or shall go into any church or place where people have assembled for religious worship, or into any school room or place where people are assembled for educational, literary or social purposes, or to any election precinct, on any election day, or into any court room during the sitting of court, or into any other public assemblage of persons met for any lawful purpose, other than for militia drill or meetings called under the militia law of this state, having upon or about his person any kind of firearms, bowie-knife, dirk, dagger, slung-shot, or other deadly weapon, or shall, in the presence of one or more persons, exhibit any such weapon in a rude, angry or threatening manner, or shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks, or shall, directly or indirectly, sell or deliver, loan or barter to any minor, any such weapon, without the consent of the parent or guardian of such minor, he shall, upon conviction, be punished by a fine of not less than five nor more than one hundred dollars, or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment.  (Laws 1874, p. 43; laws 1875, p. 50, and laws 1877, p. 240, amended.)

SEC. 1275. *Above section not to apply to certain officers.*—The next preceding section shall not apply to police officers, nor to any officer or person whose duty it is to execute process or warrants, or to suppress breaches of the peace, or to make arrests, nor to persons moving or traveling peaceably through this state, and it shall a good defense to the charge of carrying such weapon, if the defendant shall show that he has been threatened with great bodily harm, or had good reason to carry the same in the necessary defense of his person, home or property.  (New section.)

SEC. 1276. *Fire arms not to be discharged near court house.*—Hereafter it shall be unlawful for any person in this state, except he be a sheriff or other officer in the discharge of official duty, to discharge or fire off any

ART. 3.]                CRIMES AND CRIMINAL PROCEDURE.                **225**

gun, pistol or fire arms of any description, in the immediate vicinity of any court house, church or building used for school or college purposes. (Laws 1879, p. 90, § 1.)

SEC. 1277. *Punishment.*—Any person, guilty of a violation of the preceding section, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than five dollars nor more than twenty dollars, or by imprisonment in the county jail not exceeding twenty days. (Laws 1879, p. 91, § 2.)

SEC. 1278. *Immediate vicinity defined.*—The term immediate vicinity, as used in this article, shall be construed and held to mean a distance not exceeding two hundred yards. (Laws 1879, p. 91, § 3.)

SEC. 1279. *Intoxicated stage driver.*—Every person who, whilst actually employed in driving any stage, coach, wagon, omnibus, hack or other vehicle, shall be intoxicated to such a degree as to endanger the safety of any person therein, shall be deemed guilty of a misdemeanor, and shall, upon conviction, be punished by fine not less than twenty nor more than one hundred dollars. (G. S. 814, § 31.)

SEC. 1280. *Intoxicated pilot or engineer.*—Every person who, whilst actually employed in discharging the duties of a pilot or engineer on any steamboat, or of a conductor or engineer on railroad cars, shall be intoxicated to such a degree as to endanger the safety of such steamboat or cars, or of any person or passenger therein, shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, or by fine not exceeding one thousand dollars. (G. S. 814, § 32.)

SEC. 1281. *Drunken conductor, whilst in charge of train.*—If any person shall, while in charge of a locomotive engine running upon the railroad of any such corporation, or while acting as the conductor of a car, or train of cars, on any such railroad, be intoxicated, he shall be deemed guilty of a misdemeanor. (G. S. p. 342, § 40.)

SEC. 1282. *Punishment for certain offenses.*—Every person who shall be convicted of murder in either degree, or manslaughter in the first degree, or who shall be convicted and sentenced to the penitentiary for any of the offenses specified in sections twelve hundred and fifty-three, twelve hundred and fifty-four, twelve hundred and fifty-five, twelve hundred and fifty-six, twelve hundred and fifty-seven, twelve hundred and fifty-eight, twelve hundred and fifty-nine, twelve hundred and sixty, twelve hundred and sixty-one, twelve hundred and sixty-two and twelve hundred and sixty-six, shall be forever disqualified from voting at any election, or holding any office of honor, trust or profit under the laws of this state, or of any city, or town thereof, or sitting as a juror in any case. (G. S. 782, § 40, am'd.)

---

# ARTICLE III.

### OFFENSES AGAINST PUBLIC AND PRIVATE PROPERTY.

| SECTION | | SECTION | |
|---|---|---|---|
| 1283. | Arson in first degree. | 1296. | Burglary, second degree, continued. |
| 1284. | Dwelling house, defined. | 1297. | Burglary, second degree, continued. |
| 1285. | Arson in second degree. | 1298. | Burglary, second degree, continued. |
| 1286. | Building containing public records. | 1299. | What breaking not burglary. |
| 1287. | Arson in third degree. | 1300. | Burglary in first and second degrees, how punished. |
| 1288. | Burning brewery, etc. | | |
| 1289. | Burning boat or vessel. | 1301. | Burglary and larceny. |
| 1290. | Arson in fourth degree. | 1302. | Robbery in first degree. |
| 1291. | Punishment for arson. | 1303. | Robbery in second degree. |
| 1292. | Burglary in first degree. | 1304. | Robbery in third degree. |
| 1293. | Burglary in second degree. | 1305. | Robbery, how punished. |
| 1294. | Burglary, second degree, continued. | 1306. | Attempt to blackmail, how punished. |
| 1295. | Burglary, second degree, continued. | 1307. | Grand larceny defined. |

R S—15

# EXHIBIT 4

WHAT THEY THINK OF IT.: THE STATE PRESS ON THE CARRYING OF <EM><SPAN ...
*The Daily Constitution (1876-1881);* Apr 11, 1879;
ProQuest Historical Newspapers: The Atlanta Constitution
pg. 0_4

## WHAT THEY THINK OF IT.

### The State Press on the Carrying of Concealed Weapons.

NEWNAN LEADER: The fact is, this country needs more judges of Judge Lester's grit.

COLUMBUS ENQUIRER: Public opinion rightly formed can make men do their duty justly and legally, and it is sadly needed.

"DEXTER" IN GWINNETT HERALD: When, oh, when, will the cowardly practice of carrying concealed weapons come to an end?

TALBOTTON REGISTER: We condemn boldly and unreservedly the practice of carrying concealed weapons as dangerous to life and demoralizing in its tendencies.

SOUTH GEORGIAN: Carrying a pistol will make any man a coward. It will lower him in his own estimation, and should lower him in the estimation of others.

CARTERSVILLE EXPRESS: Double the severity of the penalty and enforce it strictly, and let society enforce its condemnation of this unmanly and illegitimate practice.

MACON TELEGRAPH: The present laws, if rigidly enforced in all instances, would go very far towards checking the exceedingly pernicious and cowardly habit of carrying concealed weapons.

CRAWFORDVILLE DEMOCRAT: We should endeavor to create a public opinion that would discountenance the carrying of weapons altogether. It is a practice as foolish as it is dangerous.

THOMASVILLE TIMES: The sword of justice should speedily fall. Let it fall, swift, sure and unerringly. It is the only way to check the crime. Penitentiaries will not do it. The rope is the only remedy. Let it be used unsparingly. A life for a life.

DEKALB COUNTY NEWS: Let the general assembly make the penalty for this offense punishment by imprisonment in the penitentiary. The wearing of a deadly weapon is a continued threat; therefore let the law imply malice when that weapon is used.

DOUGLASVILLE STAR: The pulpit and the press are both speaking out against the practice of carrying concealed weapons. They march up squarely to the subject and confront the great evil in no unmistakable terms. This is just as it should be.

GAINESVILLE ARGUS: We started to write an article upon the pernicious practice of carrying concealed weapons, but we stop. A man who habitually carries a pistol upon his hip will kill anybody. We might as well talk to a bloood hound.

THOMASVILLE ENTERPRISE: We would like much to see the custom of carrying concealed weapons put down and stamped out of existence by public sentiment. It is wrong and a habit that produces great evils, and one that the law seems powerless to wipe out.

SAVANNAH RECORDER: It is the spirit of lawlessness, the disregard for law, a contempt for authority and the cheap regard in which human life is held, that induces men to go armed. No law-abiding citizen will carry arms. No man who loves order and peace will carry about his person the instruments to commit violence.

ELLIJAY COURIER: There is no act that shows such cowardice on the part of anyone as to be always going round with a pistol in his pocket. Legislators who fail to do all in their power to suppress the pistol traffic are certainly guilty, to say the least of it, of sheer neglect of duty.

DAHLONEGA SIGNAL: The law can never be executed while solicitors are employed to prosecute pistol-carriers, while they themselves keep the waist-band of their pants fortified with a perfect armory. Some of the public officials are walking arsenals, and expect nobody else to fortify themselves against strong enemies.

ALBANY NEWS: This crime of carrying concealed weapons is one which should receive the constant and persistent condemnation of the press, courts and people. Imprisonment would prove the most effectual remedy. The practice of imposing fines upon monied men is unequitable and unjust to the poorer classes.

BUTLER HERALD: Let us take a "new departure" with reference to this matter. Let every law-abiding citizen come to the fixed determination that he will, regardless of persons or consequences, report to the grand jury every offense of this class that comes to his knowledge. This, and this alone, will suppress this perilous practice.

ATHENS WATCHMAN: We trust the next session of the legislature will adopt rigorous measures to secure the utter abolition of the carrying of pistols and other deadly weapons, and we feel sure that the people of the state will heartily indorse their action. It has become an evil which is beyond endurance, and must be stopped at all hazards.

DALTON CITIZEN: The practice of carrying concealed weapons is not only cowardly, but uncivilized and barbarous, and we are rejoiced to see that it is condemned by the press and good people everywhere. Let the law upon this subject be more rigidly enforced and there will be fewer blood tragedies in the land.

AUGUSTA EVENING SENTINEL: If murderers are to escape the legal penalty of crime, they should at least not be made heroes of after they evade the gallows. If human justice fail the vindication of divine law remains. The murderer may stalk forth from the court-room a free man; but his punishment is not omitted; it is only changed and deferred.

CARTERSVILLE FREE PRESS: The recent tragedies have aroused public sentiment on this subject. We only wish that its discussion may be continued until it shall take proper and efficient shape in the complete reformation of the people on the subject. The practice is not only cowardly and unmanly, but it is a disgrace to the civilization of the age.

GRIFFIN SUN: Experience has demonstrated that, under a republican form of government at least, laws are of very little force or practical utility unless backed by the hearty good will and energetic co-operation of the people who elect officers whose duty it is to carry out their provisions. It is folly to talk about laws prohibiting the sale of pistols or spirituous liquors so long as a majority of a community wink at the evils intended to be corrected.

NORTHEASTERN PROGRESS: Let the sentiment be instilled in the minds of all that murder is murder; and that when a man kills another the penalty of the law will be sure and certain to follow, and then—and not till then—will there be a cessation of this inhuman thirst for blood. Carrying concealed weapons has its part in the terrible drama, we admit; but there are other considerations of equal weight with this, not the least of which is, that he who lets his devilish intentions overcome his better judgment, in counting up the cost of his crime, relies upon going "scott free" through hook or crook, because hundreds of murderers have done the same thing.

GRAND JURY OF CHATHAM: We unqualifiedly condemn the practice of carrying concealed weapons, and as a step towards lessening this pernicious habit, we would urge that all officers of the law, who may find it necessary to be armed in the discharge of duty, shall bear their arms openly. We call attention to the proper authorities to the indiscriminate sale of fire arms to minors and other irresponsible persons. If there is no existing law against the practice, we request our representatives in the legislature to use their efforts to have such a law passed. The general and promiscuous use of arms and fireworks in the public streets on holiday occasions is an element of danger to life and property, and should be prevented by the authorities.

MONROE ADVERTISER: What we contend for is the sure punishment of crime. Let the men who carry deadly weapons upon their persons, and shoot others in the heat of passion, once know that punishment is sure to follow, then will men control their passions and resort to milder means for settling disputes. We have no reference to any particular case of recent happening; we are speaking of any and all violations of the laws. We would not say one syllable to influence the hanging of an innocent person. But we do say that when a murder is clearly proven, and jurors allow their sympathies to be so aroused by the powerful appeals for mercy by the lawyers defending the criminals, a fatal blow is inflicted upon the safety of the citizen. This is the very reverse of blood-thirstiness. When the people know that bloodshed without sufficient provocation will be followed by death upon the scaffold, then will blood cease to flow for imaginary insults.

—SAVANNAH NEWS: Public opinion is at last beginning to make itself felt. The demand is daily growing more and more strong that legal technicalities shall no longer, so readily as heretofore, shield the perpetrators of crime from the consequences of their misdeeds. It is at length being fully recognized that public safety requires that such pleas as emotional insanity, drunkenness, fancied or even real wrong, shall no longer be regarded as a justification for setting the laws of God and man at defiance, and shedding man's blood by man on any and every provocation. The gallows will, therefore, no doubt speedily be called into active requisition. Nothing but an epidemic of hangings will prove an effective remedy against this epidemic of crime. And if this principle is adopted and firmly adhered to we shall hear less of murders, and the blood of Judge Elliott and the other victims of man's brutality and uncontrolled passion will not have been shed altogether in vain.

WALKER COUNTY MESSENGER: The press of the state have of late very generally denounced the practice of carrying concealed weapons, so that there is very little upon that subject that has been left unwritten and unsaid, yet there is another custom or practice which, if it is not as bad and wicked in motive and intent as the other, it is prolific of evil results and must be abandoned before the carrying of concealed weapons can be stopped. This custom or practice is largely indulged in by very many good, law-abiding citizens; we refer to the habit of speaking of those who do carry concealed weapons as brave and gallant. There is nothing more common than to hear men, and even woman, who are church members and professedly law-abiding themselves, in commenting upon the character of some desperado, who has slain his man and has escaped justice, or it may be is on trial for his life, speak of him as a brave, gallant fellow. Now, this is all wrong. Does anybody doubt the bravery and gallantry of General Joseph E. Johnston, or of the lamented General Robert E. Lee; well; think you either of these would carry a concealed weapon about their person, with which to slay their fellow man in the quiet, peaceable walks of life? No! The carrying of concealed weapons is base and cowardly to the last degree, and no truly brave man will carry them, and the man who does do it, and who is ready, on the smallest or gravest pretense, to kill his man, may be brave and gallant; but his bravery is of that damnable kind that stains its hands in the blood of his fellow-man; that robs the wife of her husband; that makes orphans of the children of the father; that often sends, without a moment's warning, the spirit of a fellow being, uncalled and unprepared, into the presence of its God; a bravery that robs, blights and blasts forever the fairest creature and brightest prospects of God's best creation. Away with such bravery and gallantry; it is a disgrace to mankind. Let him who indulges in this most despisable practice know it and feel it; let him be shunned, denounced and spurned from the society of all decent, respectable people, and let all such bravery and gallantry as that referred to above be banished as worthy only the eulogies of fiends and the devil, with whom it originated.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# EXHIBIT 5

CONCEALED WEAPONS.: WHAT IS THOUGHT OF THE PRACTICE BY THE PRESS OF TH
*The Daily Constitution (1876-1881);* Mar 27, 1879;
ProQuest Historical Newspapers: The Atlanta Constitution
pg. 0_1

## CONCEALED WEAPONS.

### What is Thought of the Practice by the Press of the State.

VALDOSTA TIMES: The Alston tragedy has put the press to discussing the habit of carrying concealed weapons. It is a cowardly practice, and unbecoming a man who pretends to honor and bravery. Our observation has been that cowards alone strut around with pistols in their pockets.

FRANKLIN REGISTER: Since the murder of Colonel Bob Alston, the press of the state is heavily down on the carrying of concealed weapons. It should be, and if there is any law by which this dangerous and cowardly practice can be suppressed, it should be enacted and enforced.

SAVANNAH RECORDER: In the Gibson trial is was a clear case of voluntary manslaughter. If we only had a law allowing two thirds of the jury to bring in a verdict, we would have fewer mistrials, and more speedy justice. Perjurers do sit upon juries, and no oath with them is sacred.

SAVANNAH NEWS: Several brutal murders which have occurred in various portions of the state within the past few months have started the friends of law and order and impressed all good citizens with the necessity for a more certain and rigid enforcement of the criminal laws, and it is to be hoped that public sentiment will be brought to bear in such a manner as will secure that result.

MONTEZUMA WEEKLY: There is no protection for the law-abiding portion of the community against the "pistol toters," except in the enforcement of the laws made to fit just such cases, and a grand juryman who will not assist in getting a "true bill" against every person violating this law should have his name withdrawn from the jury-box. It is the duty of every good citizen to aid in putting down the nefarious practice of carrying concealed weapons.

COVINGTON STAR: Public opinion must frown it down, and every citizen must keep a watchful eye on all suspicious persons and report to the proper officers every infringement of the law that comes within their knowledge. When you do this, no one will be fool-hardy enough to brave public opinion, besides laying himself liable to the heavy penalties of the law. Let every good citizen do his duty in this matter and the evil and pernicious practice of carrying concealed deadly weapons may soon be entirely broken up.

ELBERTON GAZETTE: In the unsettled portion of the country where desperadoes abound, and on the poorly protected Texas border, it is proper that men should arm themselves to defend person and property, but in a civilized country it is no act of bravery or gentility for a man to carry a deadly weapon concealed about his person. The man who does so takes the first step in the commission of a crime, and the sooner our laws are shaped in that direction the sooner will the pernicious habit be broken up.

COLUMBUS ENQUIRER: A law badly executed, or not at all, is worse than no law, It licenses crime. It gives freedom to the bully and the assassin. When public opinion is such that duty is required of all, it has a most salutary and beneficial effect. Sometimes, because of the lack of this strong, powerful sentiment, we are of the opinion that murder is the safest crime a man can commit. Often the more brutal the deed is, the plea of insanity is more forcibly made. Death on the gallows will stop much of this insanity, and also the carrying of weapons.

HARTWELL SUN: The root of the evil should be reached. The axe should be laid at the very root of the tree. The facilities for disseminating these dangerous instruments should be diminished, and, if it can be done constitutionally, the sale or advertisement of these dangerous weapons should be restricted, as well as the carryi g of them punished. Then the young bloods would cool off before they had time to send off to get their instruments of death and if they would fight, they could use just such arms as God and nature has supplied them with. And ere long human blood would flow less freely, and the business of the courts would be considerably diminished.

GAINESVILLE SOUTHRON: The way to prevent the recurrence of murders is, first, fine every man who is caught with a pistol or bowie-knife concealed about his person $1,000 if he is rich, and $500 if he is poor, or one day on the chain-gang for every dollar of delinquent fine. Second, hang by the neck until he is dead, dead, dead, every man who commits the crime of murder; and don't brag quite so much about the skill of attorneys when they, through fraud, strategy and big fees, or money used in other ways, manage to let one after another cold-blooded murderer go scot-free. This is the way to put a stop to bloodshed upon the merest pretense or provocation in Georgia, and there is no other way to rid the state of blustering, murderous, cowardly bullies.

"FEARLESS" IN HARTWELL SUN: Let the good honest citizens of every county form vigilance committees and hang judges, lawyers, preachers, loafers, or any one else found with a pistol in their pocket. The time has come for a desperate remedy for a desperate disease. After the war, the kuklux were a necessity and did much good in keeping down lawless, murderous villains—the only trouble, they held on a little too long. But in sixty days the pistol "toters" can be swung up in every county. If a boy fifteen years old should be caught with a pistol, hang him; for pigs will make hogs. This thing has to be stopped before prosperity, morality, or genuine religion can ever have the ascendency in this demoralized country.

DALTON ENTERPRISE: It was not alone the corruption of rulers that bowed imperial Rome to the dust and made her people, as Tacitus termed it, "fit only to fill their bellies with husks and turn on their backs to die," but it was a debased public sentiment that accomplished the work. And so it will be with us. A degenerated feeling prompts people to carry concealed weapons until a mad dog on the street will be the sesame for a hundred pistols to flash in the air from pockets long accustomed to their company. This popular contempt for the law in this enlightened country and century is surely an evil worthy of the closest attention. It is a foul blot upon the escutcheon of our state, and should be dealt with promptly, summarily, and frowned down by law-abiding people everywhere.

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# EXHIBIT 6

manner should be abused, the party would be liable to indictment
at common law."

## IV. DANGEROUS AND DEADLY WEAPONS.

A statute making it indictable for one to carry concealed about
his person any " pistol, bowie-knife, razor, or other deadly weapon
of like kind," embraces a butcher's knife. The words "other
deadly weapon of like kind" imply similarity in the deadly char-
acter of weapons, such as can be conveniently concealed about
one's person, to be used as a weapon of offence and defence.[1]

## V. DEFECTIVE WEAPONS.

1. *No justification or excuse.*—One who carries concealed about
his person all the pieces of a pistol, which could readily be put to-
gether so as to make an effective weapon, is guilty of carrying
concealed weapons, though at the time he carried them concealed
the pieces were separated and incapable of use as a fire-arm until
put together.[2]

In *Atwood* v. *State*,[3] it was held that carrying a pistol, the
tubes of which were battered, and the lock so out of order that it
could not be discharged by the trigger, is within the act, and the
court say, " Until the pistol has lost so many of its parts that it
has ceased to be a fire-arm, and is incapable of use as such, carry-
ing it concealed, in the absence of the exculpatory circumstances
mentioned in the statute, is an indictable offence. A fire-arm is
a weapon acting by the force of gunpowder, and a pistol is a small,
light fire-arm. The pistol earliest in use was a matchlock arm,
and yet a fire-arm, the lock containing a match for firing it. This
was succeeded by the ' flint and steel ' lock, and this by the per-
cussion lock. The manner in which the weapon can be fired does
not enter into its definition, however it may affect its value and
utility. The ' flint and steel ' lock had not entirely disappeared
when the first statute against carrying concealed weapons was
enacted. Carrying such a pistol concealed, though it was with-
out a flint, or other appliance by which it could be fired, was, and

[1] *State* v. *Erwin*, 91 N. C. 545.     [3] 53 Ala. 508.
[2] *Hutchinson* v. *State*, 62 Ala. 3; *S. C*, 34 Am. Rep. 1.

Digitized by **Google**                    Original from
                                    UNIVERSITY OF MICHIGAN


# EXHIBIT 7

to perform the duties enjoined on them by the second section of an act, passed at Nashville, the 19th of February, 1836, chapter XLVIII, that it shall be the duty of the several county surveyors to do and perform said services within their respective counties, and that said county surveyors shall be allowed the same fees, and be subject to the same penalties that said principal surveyors were entitled to, and liable for, in processioning said lands, and that said county surveyors shall return a plat and certificate of each tract so processioned by them to the entry taker of the county, who shall forthwith record the same in his survey book, for which services the said entry taker shall be allowed the same fees as for other services of the same kind, and that said several tracts of land shall be liable to attachment and final judgment for all expenses in processioning and recording the same.

JOHN COCKE,
*Speaker of the House of Representatives.*
TERRY H. CAHAL,
*Speaker of the Senate.*

Passed January 18th, 1838.

---

## CHAPTER CXXXVII.

An Act to suppress the sale and use of Bowie Knives and Arkansas Tooth Picks in this State.

Knives not to be sold or given away

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That if any merchant, pedlar, jeweller, confectioner, grocery keeper, or other person or persons whatsoever, shall sell or offer to sell, or shall bring into this State, for the purpose of selling, giving or disposing of in any other manner whatsoever, any Bowie knife or knives, or Arkansas tooth picks, or any knife or weapon that shall in form, shape or size resemble a Bowie knife or any Arkansaw tooth pick, such merchant, pedlar, jeweller, confectioner, grocery keeper, or other person or persons for every such Bowie knife or knives, or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick so sold, given or otherwise disposed of, or offered to be sold, given or otherwise disposed of, shall be guilty of a misdemeanor, and upon conviction thereof upon indictment or presentment, shall be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail for a period not less than one month nor more than six months.

Not to be worn

SEC. 2. That if any person shall wear any Bowie knife, Arkansas tooth pick, or other knife or weapon that shall in

form, shape or size resemble a Bowie knife or Arkansas tooth pick under his clothes, or keep the same concealed about his person, such person shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than two hundred dollars, nor more than five hundred dollars, and shall be imprisoned in the county jail not less than three months and not more than six months.

Sec. 3. That if any person shall maliciously draw or attempt to draw any Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape or size resemble a Bowie knife or Arkansas tooth pick, from under his clothes or from any place of concealment about his person, for the purpose of sticking, cutting, awing, or intimidating any other person, such person so drawing or attempting to draw, shall be guilty of a felony, and upon conviction thereof shall be confined in the jail and penitentiary house of this State for a period of time not less than three years, nor more than five years. *Penalty of drawing a knife*

Sec. 4. That if any person carrying any knife or weapon known as a Bowie knife, Arkansas tooth pick, or any knife or weapon that shall in form, shape or size resemble a Bowie knife, on a sudden rencounter, shall cut or stab another person with such knife or weapon, whether death ensues or not, such person so stabbing or cutting shall be guilty of a felony, and upon conviction thereof shall be confined in the jail and penitentiary house of this State, for a period of time not less than three years, nor more than fifteen years. *Penalty for using knife*

Sec. 5. That this act shall be in force from and after the first day of March next. And it shall be the duty of the several judges of the circuit courts in this State to give the same in charge to the grand jury every term of the respective courts, and any civil officer who shall arrest and prosecute to conviction and punishment any person guilty of any of the offences enumerated in this act, shall be entitled to the sum of fifty dollars, to be taxed in the bill of costs, and the attorney general shall be entitled to a tax fee of twenty dollars in each case, when a defendant shall be convicted, and no prosecutor required on any presentment or indictment for any of the offences enumerated in this act. *Of prosecutions*

JOHN COCKE,
*Speaker of the House of Representatives.*
TERRY H. CAHAL,
*Speaker of the Senate.*

Passed January 27th, 1838.

26

Digitized from Best Copy Available

# EXHIBIT 8

## Carrying Concealed Weapons.

When Cæsar was advised by his friends to be more cautious of the security of his person, and not to walk among the people without arms or any one to defend him, he always replied to the admonitions, "He that lives in fear of death every moment feels its tortures: I will die but once."

Why brave men—citizens whose duty it is to cultivate the arts of peace, should go habitually armed, making an arsenal of their persons, has always appeared to us an inscrutable mystery—we could never divine it. We see but two horns to the dilemma—such a man is momentarily afraid of his own life, and his mind is therefore eternally on the rack, or, he but pants for an opportunity to act the assassin, and is therefore little better than a fiend in human form, to be despised by the truly brave man and to be abhorred by the man governed by religious principles. It is not characteristic of brave nations to carry concealed weapons, nor is it, so far as our observation has extended, indicative of brave men.— Concealed weapons are the insignia of the footpad, the burglar and the mercenary bravo; and by the man unconscious of wrong and fearless of danger they never should be worn. It is as unmanly to inflict a wanton injury, as it is not to resent a premeditated offence; and he who would do the one or submit to the other is but a cowardly poltroon who deserves to be scouted from society.; but where offence is given or injury sustained, even the code of *honor* has laid down other means of redress than an instant appeal to the Bowie knife.

The South is accounted chivalrous, truly chivalrous, and well has she earned that proud distinction. Her sons never faultered in the charge, nor retreated before the enemy, but were always first to do battle for their rights—last to lay down their arms while these rights were withheld from them. Now the question which Southrons should ask themselves is, "Will the habit of incessantly carrying concealed weapons about our persons preserve to us that brave and chivalrous character which we have gained in many a well fought field—or rather, is it not calculated to degrade us and sink us down to the level of Spanish brigands or piratical assassins?" To this last interrogatory the breast of every brave American must beat a responsive *yes*. We do hope to see the time when every man who carries concealed weapons will be looked upon in the degraded light of a loafer, or worse—we wish to see the potential voice of public opinion frown the system down, for "it is more honored in the breach than the observance;" and with Cæsar we believe that "he who lives in fear of death every moment feels its tortures."

Reproduced with permission of the copyright owner.  Further reproduction prohibited without permission.

# EXHIBIT 9

# SOUTHERN ARGUS.

VOL. VIII.] COLUMBUS, MISSISSIPPI, JUNE 7, 1842. (NO.XXXVII.

PUBLISHED EVERY TUESDAY MORNING BY S. DAVIS, AT FOUR DOLLARS PER ANNUM IN ADVANCE--OR FIVE WITHIN THE YEAR.

**The Southern Argus,**
IS PUBLISHED EVERY TUESDAY MORNING AT Four dollars per annum payable in advance, or Five at the end of the year. No subscription received for less time than six months, nor any discontinued, until all arrearages are paid, unless at the option of the Publisher.

ADVERTISEMENTS, will be inserted at $1 per square, (ten lines or less,) for the first insertion and fifty cents for each continuance.

ADVERTISEMENTS, when not marked with the number of insertions, will be published until forbid and charged as above.

### *Liabilities of those who take* NEWS-PAPERS.

The Law is, and so the courts decide, that all persons to whom a paper is sent is responsible for the payment, if he receives the paper, or make use of it—even though he never subscribed for it. His duty in such case, is not to take the paper from the office or place where it is left, but to notify the publisher that he does not wish for it. If papers are sent to a Post-Office, Store, Tavern, or other place, and are not taken by the person to whom they are sent the Post-Master, Store or Tavern keeper, &c. is responsible for the payment unless he immediately gives notice, to the publisher, that they are not taken from the officer or place where they are sent.

Extract from the Post-Office Regulations, page 50, section 118: "In every instance in which papers come to your office that are not taken out by the person to whom they are sent, you will give immediate notice to the publisher, adding the reasons, if known, why the papers are not taken out."

### REMITTANCES BY MAIL.

FROM THE POST MASTER GENERAL.

*"A Postmaster may enclose money in a letter to the Publisher of a Newspaper, to pay the subscription of a third person, and frank the letter, if written by himself."*

NOTE.—Some subscribers may not be aware of the above regulation. It will be seen, that by requesting the Post Master where they reside, to frank their letters containing money, he will do so upon being satisfied that the letters contain nothing but what refers to the subscription.

THE BOWIE KNIFE.—The Washington (Ark.) Telegraph, gives us some facts connected with the history of this terrible instrument, and its inventor, a man named Black:—

This far-famed deadly instrument had its origin, we believe, in Hempstead county. The first knife of the kind was made in this place, by Mr. Jas. H. Black, for a man named James Bowie who was killed at the Alamo, in Texas, and hence it is sometimes called the *Black* knife, and sometimes called the *Bowie* knife. The small dagger worn in former times, has given place to this more formidable invention, and the Bowie knife, throughout the West, is now the most common weapon of attack or defence. Could each of these knives speak for itself, a catalogue of bloody deeds would be unfolded! One would tell of assassinations and lawless assaults–another of murders committed in secret, to gratify revenge or avarice and another of unavoidable violence and unfortunate rencounters. What acts, of infamy and moral degradation –what scenes of domestic sorrow heart-rending distress would be exhibited! One would inform us how it was plunged, at the dead hour of night, into the bosom of its sleeping victim, and another tell us how it leaped forth to take sudden satisfaction for some fancied insult. Some would point to the penitentiary and gallows--others to mourning, and afflicted families, and friends and exclaim, "We have been the instruments of men's passions—behold the fruits!"

But terrible as have been the uses of the Bowie knife, we cannot say that if it had not been invented, the dark consequences of the passions of men would have been in any great degree prevented. As long as those passons are unsubdued, they will be liable to outbreaks, and would have found other instruments of vengeance, if there had never been a Bowie knife; and when we have improved our minds, and learned to govern our passions, and to confine them in their proper channels, we will have no use for Bowie knives and pistols.

Whilst on this subject, we cannot forbear mentioning the sad dispensation with which Mr. James H. Black, the inventor of this knife has been visited. Several years since he lost his eyesight and the green earth and the shining heavens are to him alike, unchangeable dark. The events of the past must give employment to his mind, nor do we imagine that the thought of his having invented the Bowie knife will for a moment disturb his bosom's lonely quietude; for whilst the manufacturer of the article afforded the means of a comfortable subsistance, its appearance did *not* create, nor would its suppression have destroyed the stormy passion of the soul.

A BEUTIFUL SENTIMEMT.—However dark and disconsolate the path of life may to be any man, there is an hour of a deep and undisturbed repose at hand when the body may sink into a dreamless slumber. Let not the imagination be startled, if his resting place instead of being a bed of down, shall be a bed of gravel, or the rocky pavement of a tomb. No matter where the poor remains of a man may be the repose is deep and undisturbed, the sorrowful bosom heaves no more, the tears are dried up in their fountains, the aching head is at rest. and the stormy waves of earthly tribulation unheeded over the place of graves. Let armies engage in fearful conflict, over the very bosom of the dead not one of the sleepers hear the spirit stirring triumph or respond to the rending shouts of victory.

"How quiet those countless millions slumber in the arms of their mother earth! The voice of thunder shall not awaken them the loud cry of the elements—the wind—the waves—nor even the giant tread of the earthquake, shall be able to cause an inquietude in the chamber of death. They shall rest and pass away, the lats great battle shall be fought, and then a silver voice at first heard shall raise to a tempest and penetrate the voiceless grave For the trumpets shall sound and the dead shall hear his voice.',

BANK LYRICS.—We found the following yesterday written on the back of a bank note:

Hark, from the banks an awful crash,
Ye patriots hear the cry;
Here is a note that calls for cash,
But, oh, "tis all in my eye!"

## SOUTHERN ARGUS.

***Columbus, Miss. June. 3, 1842.***

THE LION'S SKIN TORN FROM THE BACK OF A BRAYING ASS.

WISE AND STANLY—The Hon. Henry A. Wise, after having blustered and roared so furiously as to keep the nation in a constant state of excitement, has at length very quietly confessed himself a coward in apologizing to Mr. Stanly for ungentle-manly violence which he has offered him. We do not object to a gentleman making an apology to another, when he is satisfied that he has done him injustice, but we do most decidedly despise that bullying and dastardly spirit, which will induce a man to commit the grossest violence upon the feelings of another and withhold all reparation until it is a reluctantly squeezed out of by his apprehension of a fight.

Some few weeks since, we published a short extract of a speech said to have been delivered before the General Conference held at the city of Baltimore in 1826,–by Rev. T. Griffin, one of the delegates from Mississippi,—which we clipt from the Natchez Free Trader. Mr. Griffin has written a letter to the Editor of the Free Trader in reply to said report, giving an outline of the original. In order to 'set Mr. Griffin right before the public,' as well as to give publicity to the same, we cheerfully copy. Read it:

From the Natchez Free Trader.

*An old fashion Methodist—Letter from Rev. Thomas Griffin—His Speech in the General Conference.*

The following pithy letter will explain itself. A few weeks since, we adverted to Mr. Griffin's speech and quoted him as having said that the abolitioinists should be "rammed, crammed, jammed and double damn into a forty-four pounder and shot into h-ll." This, it will be seen, was an error, though we can scarcely regret it, as it has been the means of drawing from him an outline of his famous speech. What he says on the subject of *abolition* is admirable-more pointed than any thing we have ever seen in print, and we hope the eastern papers, and particularly the, *Cincinnati Anti-Abolitionist*, will give it an extensive cirulation. We are sure the *Picayune*, and other papers that have copied our article will set Mr. Griffin right before the public. Our venerable correspondent may be assured, we had no wish to disturb his retirement for we have known him from childhood and many of his nearest relatives have ever been among our most valued friends; but we quoted his remarks for the moral influence that the words of an old and faithful Preacher of the Gospel always evert. Writing from the impression of an interview that accurred seven years ago, we made an error which his letter will now correct.

MADISON COUNTY, 5th May, 1842.

Mr. Editor--In the language of Chas V. of Germany I thought I had "grown old before my time." For several years I have been in private life, and was willing to let my body and name descend in silence to the grave, and I courted neither slab nor willow to tell where I lay. But you have deemed in pro per to draw me from my beloved retirement, and my name is in the *Free Trader* and the New Orleans *Picayune*, and yesterday I learned it was in another of the public prints! The reason I notice this is because my words have been made to say what I never intended to say. The statement you have made is true in part. If you publish this, you will have the true state of the case. It is known to you that Missouri had formed a constitution and come forward for admission into the Union.---It is to well known, the commotion and discussion thus produced for me to detail the cause. I passed through Washington city soon after this case was disposed of, but it was obvions the *excitement* had not subsided. On the 1st May, 1826, the Methodists held their General Conference in Baltimore. We had not been in session but a few days, when a resolution was introduced to *prohibit slave-holders from filling official stations in the church in future*. The delegates from some of the non-slaveholding States began to come down upon the subject in a manner very new and unexpected. A man would have thought there was scarcely any crime on earth *but slavery*. A variety of *new coined* expresions were employed, to render those connected with slavery as ridiculous as possible. In fact it appeared as if we southernors would be blown away like chaff before the tempest. Dr. Capers of South Carolina, made a powerful sympathetic appeal. Some few others from the south made speeches. But they were too much like suppliants for my feelings. It was the first time I ever had a seat in so learned a body of men. Though not very old, I knew I was old enough to be wiser than I was, I was sensible of my defective education, and the few years of my ministerial action had been spent on the frontiers of the Union. But I knew that was not the time to flinch from responsibility. If I had tried I could not have made *a set speech*. It was neither more nor less than the vent of my natural feelings--*an off hand shot*. I well remember the outlines and point I sprung upon them. Bishop Roberts was in the chair. I had spoken but a few words before there was a call, "*Speak louder—speak louder!*" With excited feelings, I told them if they would only be still, they should *hear* me. (Yes! and we warrant they did *hear* him, if they could hear *thunder*. EDITOR.)

I began by observing, "that I was willing to concede, that I had lived longer than I had lived to profit, and many things have passed me unimproved. But among the few I had noticed, *northern men coming to the South*. Sir, said I, when they first come among us, it seems as if THEY could see us *all damn'd and double-damn'd, ramn'd, cramn'd, and jamn'd into a forty six pounder, and blown into the fiery vaults of a deep damnation*!! Nay, pious zeal will not stop *there*. It seems *they would get on their knees and invoke the thunder bolts of an avenging God*, TO SINK OUR SIN MURDERED SOULS TO THE LOWEST HELL!!! But ☞in twelve months time they become a *leetle* smoother on the subject, and if they contemplate a *permanent stay*—if they have either worth, or merit, or *intrigue*, they are sure to form alliances with our *slave-holding* families. We have young ladies in the south—charming ones too—owning no slaves and entirely unconnected with slavery. But *northern* gentleman always seem, some how or other, to see peculiar charms in *those* young ladies whose parents possess *the largest number of "niggers."*—Who ever heard of a Mississippi yankee fancying a girl that owned no slaves? Sir, if a stranger was in that gallery, he would conclude that we southerners were a pack of cannibals, who kill and eat their slaves. We have heard much about blood-stained hands. I am almost startled, and look around for them.—*Where are they*? I would ask a question—how came slaves in this country!—*northern men, northern* money and *nothern* ships, brought them to America. They kept them *at home* until they cut down their forest and so exhausted their farms that they would scarcely grow a crop of sedge, and *then*, with shrewdness and foresight, peculiar to the north, they sent them to us *on speculation*, just as they sent us rum, and staves and wooden nutmegs. Our fathers gave them value received, and now *we* are to be condemned, without mixture of mercy, for holding the *same* property these northerners once possessed. It is possible, should the period arrive in the south when our lands are worn out, and slaves become a bill of cost to us, we shall become *very patriotic, moral and religious*, like our northern bretheren, and wash our hands of slavery. We are told here that it is one of the most heaven daring, God-provoking, hell-deserving crimes that man can commit. But I wonder, when Jesus Christ came from heaven to earth to set men right, that he did not touch the subject. I wonder that the Apostles, who denounced the smallest transgression, should have entirely passed over *this* ENORMOUS OFFENCE! And if it be offensive and sinful, I wish some one would just put their finguer on the place, in Holy Writ. *We* have no difficulty in pointing to the passages where slavery is recorded and sanctioned, and rules prescribed for the owner and the owned. We are told the time has come, that something must be done. The venerable man, whose remains lay under that pulpit, (Bishop Asbury,) and Dr. Coke, thought so, many years ago, and made such a move as they thought prudence dictated, and what was the consequence? Laws were made more rigorous, and every avenue to information closed to the negro—and while he remained in the same or a worse condition in body, his mind was void of that instruction that might have saved his soul from sin. That was the result of *intermeddling*. Some of our bretheren seem to take pride that they labor in free communities. Sir, why this *ministerial* pride? What have *the church or ministry done*? Nothing, literally nothing.—Policy and the Legislature have, in all cases, moved in advance. The church should *stand aloof*. In conclusion, Mr. President, I see there is strength enough in this assembly to pass any resolution they please. But here, in my place, as one of the representatives of Mississippi, I tell you *I never will aid in executing it*. And if the resolution should be adopted, you may send ship loads of northern men to execute it, but permit me to say in advance, whenever they come to the south and meddle with southern institutions, they will find their situations very delicate, *if not perilous in the extreme*."

This is the substance of what I said, though I may have said much more.—Judge Lane of Vicksburg, was present and heard me. Mr. Editor, you make me say that at the close of an hour's speaking, I said *they* ought to be damned &c, whereas you will see from the above, that I represented them as willing to see *us* damned, &c. I throw the mantle over your mistake, as no doubt you followed the best light you were possessed of. I should be willing that you give this a place in your paper as it will correct the error. I *have* made many a rough speech in my time. For all the errors I have committed, I ask compassion of God and man; and if I have done no good, I carry with me into retirement, a consciousness that I have wished to injure no man. Our actions are public property, but our conscience is private, which we may enjoy if it is what it should be. I should be glad if those prints that have transcribed the article from the Free Trader, would correct it, if in accordance with their feelings; if not, I shall not complain, as it is a trifle to what I have encountered.—You will pardon me, Mr. Editor, for this long letter. That prosperity may accompany you in life, peace and quietude in death, and on the wings of Seraphs may your flight be from a world of gloom to glory, is the sincere prayer of an old fashioned Methodist Preacher.

THOMAS GRIFFIN.

☞ We are authorised to announce **Alexander M. Clayton**, Esq. of Holly Springs, as a candidate for the office of Judge of the High Court of Errors and Appeals, to fill the vacancy occasioned by the resignation of Judge Trotter. Election to take place on the first Monday in August next.

For the Southern Argus.

A MOUNTAIN IN LABOR.—The Editor of the Natches Free Trader of the 16th inst., must have been in severe labor, and brought forth—not a mouse, but about half a column of philipic against Henry Clay, which for falsity, "out herods Herod," and is worthy only of its paternity--and only because, *a committee of the House of Representatives* in Congress had said that it appeared from the *facts* embodied in that report, "to have become *a part* of the tactics of the army of the United States to squander the public treasuries for the benefit of *favorites and contractors*," his ire is aroused to a pitch, which reminds me of knight errantry.—I do not think him *exactly* a Don Quixotte,–but I believe he would make an excellent *squire*,—why not publish the "*facts*" and let your readers know what they were—is there anything astounding in them, that they must be kept back, or are these "*favorites and contractors*," too good locofocos to have it known who they were, and what was the amount of their population.

No doubt our *valiant squire* is doing good battle for his champion be he Benton, be he Calhoun, or, be he Buchanan—or, perhaps Van Buren—and expects when the field is won, to pick up some crumbs from his masters table.

That the whole sum and substance of this was intended as a philipic against Mr. Clay is evident from the following extract "For if there is any one thing that seems peculiar in the policy of Mr. Clay, it is his unscrupulous and indiscriminate hostility to military men."

I will inform the writer that if falsehood admits of comparison, that this assertion out lies lying, I have no other term to use.

Mr. Clay an enemy to military men—where was Mr. Clay in 1811 '12. Did not his zeal call patriotism to the field,—his eloquence aroused the nation to arms —his votes in congress for rewarding merit shew his desire to create emulation in the army,—his appointment as minister to negotiate the treaty of peace by Madison, and a democratic Senate shew in what manner his talents and patriotism were then appreciated,—and in the presidential canvass of 1828 the manner in which his services in that negotiation were applauded by those who now cry crucify him! crucify him! are matters of history, and fresh in the recollection of every one who was an attentive observer of that exciting election. But where then was your Bentons,—your Buchanans,—your Ingersolls,— your Wrights,—your Woodburys,—and a host of others, now flaming democrats; either openly espousing the cause of our enemies and glorying in their success, or *fencemen*. Where was Mr. Van Buren in that dark day,—did not he as State Senator in New York coalesce with the "Hartford convention," to supercede Madison, and place Clinton in his place? If there was any one theory "that seems peculiar to" *their* "policy," then, "it was their unscrupulous hostility to military men.—Witness Bentons attack on Gen Jackson in the streets of Nashville, and his pompous card then published,—recollect the resolution of a legislature "that it was inconsistant with a moral and religious people to rejoice at our victories."—Where was Buchanan, Wright, Ingersoll,—*rank and leading federalists, of blue light stamp*.—Woodbury was *a fence man*, and Mr. Van Buren "for consistency's sake" did all he could to elect Clinton in 1812. And failing in that in 1813, "for consistency's sake" come out an advocate of the war;—a peace man in 1812 and a war man in 1813, and all "for consistency's sake."— Well he *was* consistent,—he had his eye on the main chance, to pander on the spoils of office,—to arrive at the highest dignity and retire with a fortune.

He has accomplished his object,—was *he* a friend of military men when be persecuted Gov. Tompkins the then patriotic Gov. of New York, to the death.–

But our redoubtable Sancho says, "he (Clay) endeavored to tear the well earned laurels from the brow of Gen. Jackson." Ask Mr. Calhoun, then Secretary of war,—if any "tearing of laurels," was performed, was not be the father of it,–did not he in his official capacity demand in Cabinet council that Gen. Jackson *should be tried before a court martial* for his seizing on the fortress of St. Mark in Florida, making prisoner of the Governor, and taking into his possession, the archives of a nation at amity with us,–and was not John Q. Adams the then Secretary of State, the advocate of Gen. Jackson, and by his masterly correspondence with the Spanish minister quieted the affair.

Shew me, I ask you the instance whenever Mr. Clay assailed the fame of Gen. Jackson as a warrior. No sir, it is not to be found, as an opposer of his policy, as President of the United States, he never lisped a sylable against his high and honorable fame as a general.

But again, "he (Mr. Clay) was the rival of Gen. Harrison," and, had *he* lived 'he would have become 'his reviler and persecutor." Pandemonium with its skilful vulcan could not have forged a baser falsehood. Mr. Clay the rival of Gen. Harrison—Did not he contrary to the remonstrances of many friends voluntarily withdraw from the canvass,–did he not on all occasions display his eloquence in hurling a deserved censure on the detractors from the fame of that departed hero,—and where was *you Mr. Redoubtable squire then, armed cap-a-pie*. Were your columns then devoted to *vindicating* 'the well earned fame of 'military men" or were they denouncing one of our bravest, and lauding a citizen, who in all his multifarious somersetts has acted "for consistency's sake."

It was said by a celebrated writer in the early history of our republic that "the paladium of liberty may pull down the piliars of freedom,—a licentious press like the unruly tongue is full of deadly poison," the recklessness with which some of our [illegible]als assail every theory opposed to the men they wish to elevate to power, has been proverbial.

Let me tell the authors of these slanders these "Jack Cades" of our country, who s[illegible] so feeling notes to the *dear* [illegible] time will come when the [illegible] torn from their hypo[illegible] indignation of an abused nati[illegible] hurl them down, down to conte[illegible] and ignominy. Where has the re[illegible]es of the nation evaporated dur[illegible] the last seven years?—Where w[illegible] national credit then? and where is it now?—compare it even with the credit of our republic in 1792 and where is it? Where Mr. Editor of the Free Trader is the credit of your own State[illegible] specie you have none, ex[illegible] and then an "*accidental*" dol[illegible] ping from one pocket to an[illegible] at last detected, is seized an[illegible] to foreign countries at 20 to 25 [illegible]ent premium.

[illegible]go on a little while, put the [illegible] chaliced cup to your confiding [illegible] citizens lips a little longer,--heap [illegible] on burden and give it the sweet [illegible] name of democracy,—Jack C[illegible] did it, Cromwell did it, and we kn[illegible] *their* fate.

LACON.

Columbus Miss. May 30, 1842.

EAST INDIA COTTON.—As there have been of late many contradictory statements, throughout the U. States. as to the success or failure of the culture of cotton in the East Indies, we publish the following letter from Mr. FINNIE addressed to a correspondent of the Natchez Courier; and leave those interested, to judge for themselves. Mr. F. says the correspondent, was the principle of an emigrating company, under captain Bayless, who left the city of Natchez in the spring of 1840, for the purpose of introducing the culture of cotton into the different presidencies of India.

"Kootramucksanpoor, Jan. 11, 1842. Banks of the Junna. }

Yours, under date of August 7th 1841, was received on Christmas day, when surrounded by my American companions at our first meeting since we separated in April last. All of the number present had enjoyed good health.—We numbered at our festive board, six Americans, (two of whom are American Missionaries,) four Englishmen and one Scotchman, and one lady, Mrs. B. I send you some of my published articles relative to our prospects here. The young men that were at Bombay and Madras Presidencies, are, I believe on the eve of returning home—those from Bombay I know are; I do not believe, however, it is because they could not succeed; one of them has been sick; they were, I believe in some respects disappointed. But an Englishman might as well go to the United States to plant Cotton, and attempt it in New York, and give it up, and say it would not grow in America, as for those who have only been to Madras and Bombay to say that cotton would not grow in India, because they failed in their attempts, I am just as sure of making cotton here, as if I were on the banks of the Mississippi. Our late arrival in the country, a misunderstanding of what we required, and the drouth here, has prevented us from making it profitable this year, yet we have made some. I have made about 20 bales on my own account. There has been two showers of rain lately—one on the 18th December, the other on the 1st of January. I called out the ploughs (200 in number) for four or five days and have now upwards of 1000 acres ploughed and cross-ploughed at a cost of 12½ cents per day for each plough, the natives finding themselves and bullocks. The wages of a laboring man is $1 62½ cts. per month, he furnishing his own subsistence. There are large qualities of native cotton grown here, it is sown broad cast like oats, and not cultivated at all.

The land here is laid out in a manner similar to our townships, each containing some 5000 acres. I am now constituted a "Zemendar" or Landlord, and have control of a tract of land as above mentioned, containing a village of 2000 inhabitants, and although this number of people derive their subsistence from my tract, yet not more than one third of it is cultivated.

I have a large quantity of Burgs, (wild land,) grown up in grass, which has not been tilled within the memory of the oldest inhabitants upon it, and some of my tenants are 90 years old. There are millions of acres in my neighborhood uncultivated,—the people being naturally indolant. At the commencement of the rains, I offered them this good land one one year for nothing, them and also offered to loan money to assist them to bring the land into cultivation, but they wholly declined making an effort. I accordingly hired them to do for me what they would not attempt for themselves, and that too at a price that would not purchase a negro a single meal. They do not understand the management of horses, but plough with bullocks. The native plough is of rude construction, but acts admirably in the place of our Coulter plough in tough land; until theirs has passed through it once or twice it is almost impossible to use our ploughs.

There has been a great drouth this year; the rain ceased in August, just a month sooner than usual, and consequently our crop did not turn out as it otherwise would have done,–but had we been prepared in time, and been able to plant a full crop, it would have made a handsome profit this year. I see that the papers in the South are rejoicing at what they call our failure, and that a letter of one of our party has been published; the opinions it contained were evidently formed before the writer had an opportunity of forming a correct one. Notwithstanding all these unfavorable expressions, I beg leave to exercise an opinion, and I now assert, as a few years will prove, that cotton can be produced here fifty per cent cheaper than in the United States. It requires more energy, industry and perseverance here than in the States to get things under way, but after we have once learned the people how to use our implements, they handle them with a good deal of dexterity. When I first commenced ploughing with our ploughs, it took three of the natives to manage a single plough and the bullocks: then I got two of them to manage it, and finally one man, after some practice, manages both the plough and bullocks with ease. The natives are afraid of horses unless it is those whose profession or cast it is to take care of them. The bullocks here are a fast walking and a fast trotting animal, and capable of enduring any degree of heat without injury, and will trot in a carriage all day.

I have six natives and one white man as overseers, (but the natives will perform double the work for 'Burra Saib,' as they call me, than for any one else,) and I have been very successful in training the natives in my way of doing business; that I can give an order and have it executed expeditiously without going near them. I cannot describe the thrilling sensations I experienced, while my Arab Steed was bounding to and fro among 200 ploughs which I had in operation at one time; to me it was a scene peculiarly interesting. I am so well convinced of what can be done that I shall plant 500 acres or more on my own responsibility, though there are individuals of our own number so disheartened that they will not risk any thing in that way. The English are not planters, and will not plant themselves, and the people of India are not hasty in adopting new modes, but if all the people here were to commence a good system of cotton cultivation immediately, the world would be filled with cotton bales; but they are not going to adopt any new thing hastily, but they will gradually, and no doubt in another century India will furnish the English and China markets, if not the whole of Europe, with cotton; but years must elapse before the market can be influenced by Indian produce. Our good friends of the "*Free Trader*" forget that the consumption is increasing almost in the same ratio with the production of the article.

From my preceeding remarks upon the low rents of lands and cheapness of labor, you may judge whether or not this is the country for a poor but industrious man; you can, in my opinion, start business here with what two or three negroes would cost in Mississippi, and in ten years be better off than nine-tenths of the planters there. You can live in greater luxury, at infinitely less cost, than in any part of the world.

Government has built me a large comfortable house, which is furnished in a plain substantial manner. I am situated in an out of the way place for Europeans to visit, but can soon reach an English station upon an Arab Steed. We travel as far on horseback in one day, as an Englishman or native would in three. They generally move with their tents, and whole household establishment, which requires them to go slowly; or if they wish to go to any place expeditiously, they go by "Duk" in a Palanquin, borne on men's shoulders. In the Palanquin, you can recline at full length, or sit upright just as you please, and in this way be carried 100 miles in 24 hours and perfectly at your ease. Twelve or sixteen men go with the Palanquin and change alternately, and fresh sets of bearers take you about ten miles each. I came from Calcutta in this way; it is of course expensive.

I have found the climate delightful, so much so, that if my friends were here, I would not exchange it for any part of the world I have yet seen.—There are two or three months in the year that are disagreeable, during the prevalence of the hot winds; at those periods no European is expected to do anything but make themselves as comfortable as possible, and there are such conveniences for comfort that you can enjoy almost any degree of temperature that you may wish.—For instance, we have a lattice formed of truss-truss grass, at the the door on the side of the house the wind comes in at, usually the west; this the "Beatly," or water carrier, keeps constantly wet with water, and the air is thus preserved gratefully cool, and diffuses a delightful odour through the house; and then, there is a "Panker" suspended from the ceiling, and reaches entirely across the room, and is kept in motion by a man pulling a rope which is attached to the Panker and passes through the wall to the outside of the house. Every room has a Panker, which in our sleeping apartments are kept in motion through the night. Even during the hot months, the mornings and evenings are delightfully cool and pleasant, and those periods are devoted to business or pleasure as we choose.

What is called the rainy season commences about the middle of June.—Do not imagine that it rains constantly far from it, but very much like your April showers, only more violent. It has rained but little this year, but enough for me to form a pretty correct idea of what it will be in ordinary seasons. The rains usually cease about the middle of September, and the nights and mornings are pleasant but the weather pretty warm during the month of October, but not unbearable even to Europeans unless they are very effeminite. November, December, January and February, are delightfully cool and pleasant, no shivering freezing, but cold enough to dress in cloth, and to render a fire, mornings and evenings agreeable. With regard to the healthiness of the climate here, this section of the country is not to be compared to Mississippi for the violence of its diseases. When we all met at Christmas, each exclaimed to the other "how well you are looking," and none of us had been in the least sick, although we lived in tents during the last hot winds. I am delighted with the country and climate, and intend bringing my brother out as soon as he completes his collegiate course at La Grange, Ala.

My friends here are situated as follows: Mr. Mercer is at Rhat, about 60 miles distant from me; I have only seen him once since we parted. Mr. Terry is at Chonk, about 35 miles from me.—Mr. Blount of Georgia, is at Summuspere, about 20 miles and Captain Bayles is 10 miles distant.

Our society here are English, Irish, and Scotch officers and their families, than whom there are not a more honorable class of men. The military and civil servants of government, are the only persons with a few exceptions, in the country; a few merchants, and a few large land-holders and indigo planters, are all that reside here.

In my next, I will say something of Egypt. I visited every thing worthy of note in that part of the country, and old Mahomed Ali was not the least among the curiosities at that time.

THOS. J FINNIE.

### A GOOD JOKE.

We clip the following extract from the "Mobile Ledger" by which it appears that Mississippi is about distinguishing herself again in the financial world; not, however, by repudiating a debt, but by negotiating a loan! aye, and with the General Government too! and for the modest sum of *only* 'Twelve Millions of Dollars!!' As far as our information extends, we are unable to learn that such a firm as that of "Fulcher Rickards & Co." now exists in Aberdeen or elsewhere. It is true that the renowned city of Aberdeen once rejoiced in a *shinplaster* shop which graced its issues with the above flaming signature, but like many other "promising institutions," it has long since gone the way of all flesh. There is no telling, however, (as Shocco would say when lecturing 'Hiram' on finance) what the 'recuperative energies or the elastic powers of our institutions are'; and therefore it may be possible, however improbable, that some great financial character, heretofore unknown to public fame, has "*waked up*" this defunct "*paper mill*," and now has it in full tide of operation.—If it is so, and that the patriotism of the individual prompts him to furnish "Capting Tyler" and the "Guard" with Twelve Millions of what General Cocke would call "*quawzi cash*," merely for the purpose of preventing the balance of trade being too heavy against our beloved country, we can only say, that we have no "constitutional scruples." But now to the extract:—SO. ARGUS.

### IMPORTANT NEGOTIATION.

We are informed on the highest authority, that a member of the highly respectable firm of Fulcher Rickards & Co. (private bankers) of Aberdeen, Mississippi, is now in this city, on his way to Washington, for the purpose of taking the balance of the "*Twelve Million Loan*," recently authorised by the General Government. One of the partners of said firm (Mr. Rickards) went post haste to the seat of government some two weeks ago, with the view of preventing Hope & Co. of Amsterdam, from taking said loan until Mr. Oliver, the member of said firm of Fulcher, Rickards & Co., now in this city, should reach Washington with all the surplus capital that said firm have been unable to invest in the great valley of the Mississippi.

# EXHIBIT 10

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3219   Page 46 of 317

# THE
# SLAVE'S FRIEND.

Vol. III. No. II.                    Whole No. 26.



## BOWIE KNIFE.

These horrid weapons are usually called *Bowie* knives. They were invented by a man who lived in the state of Louisiana. His name was Buie. It is a French name, and is pronounced *Bóo-e*. Afterwards he went to Texas, and was killed there in battle.

People in slave states often carry such knives about them. When they get angry they draw the knife, and sometimes *stab one another !*

A man who keeps a shop in Broadway, New York city, sells Bowie knives.

# EXHIBIT 11

poll tax : for all pleasure carriages, two per centum, on every hun-   carriage.
dred dollars of their estimated value, to be ascertained by the oath of   Horse or saddle or
the party giving in the same to the assessor : for every horse kept ex-   carriage.
clusively for the saddle or pleasure carriage, one dollar : for every   Race horse
race horse, five dollars : for every public race tract, twenty dollars :   Race tract
for every stud horse or jack-ass, the amount for which said stud or   Studs and Jacks.
jack may stand by the season : for every head of neat cattle,   Cattle.
(oxen used in the yoke excepted) which may be owned by   Billiard ta-
any one man, over and above twenty-five head, four cents : for every   bles.
billiard table kept for play, two hundred dollars : for each licence   Pedlars.
granted to hawkers or pedlars, fifty dollars for each county in which
they trade, to be paid to the clerk of the court at the time of taking   Auctions.
out the same : on all goods sold at auction, other than those which are
exempted by law, two per centum on the amount of sale : on every
practising attorney, five dollars : on every practising physician, five   Attornies.
dollars : for every gold watch kept for use one dollar : for every   Physicians
silver or other watch kept for use, fifty cents : and for every clock   Watches. Clocks.
kept for use, one dollar : for money loaned at interest, twenty-five   Money at
cents for every hundred dollars : for every dirk, one dollar : for every   interest.
sword cane, one dollar : for every pocket or side pistol, one dollar :   Dirks,
for every dirk knife with a spring to prevent it from shutting, one dol-
lar : and on the sale of every pack of playing cards, an additional tax of   Cards.
one dollar.

Sec. 4. *And be it further enacted,* That on every original writ, and
subpoena in chancery, there shall be paid at the time of taking out
the same, to the clerks of the circuit courts in each and every county,
the sum of fifty cents, and on every writ of error and appeal one dollar :
and it shall be the duty of the clerks aforesaid, respectively to make a   tax on writ
return of the same, and pay over the money thus collected to the
tax collectors of their respective counties, on or before the day on
which the said tax collectors may be required to settle their accounts,
with the Treasury of this State.

Sec. 5. *And be it further enacted,* That for every tavern license in
any city or town, there shall be paid as tax twenty dollars : for keep-   Tax on ta-
ing a house of public entertainment in any city or town without retail-   vern licen-
ing spirituous liquors, ten dollars : on every retailer of spirituous li-   ces and re-
quors in any city or town, twenty-five dollars : on every retailer of spi-   tailers.
rituous liquors in the country, or on the road or highways, without keep-
ing accommodations for man and horse, fifteen dollars : and on all
houses of public entertainment on the roads and highways, retailing spi-
rituous liquors, ten dollars, which tax shall be paid to the clerk issuing
the license, and by him immediately to the tax collectors, and the clerk
shall receive for his services the fees heretofore allowed for issuing li-
censes : and no county tax shall be paid on licenses except such as may
be levied by the county court of such county.

Sec. 6. *And be it further enacted,* That on all shares of Bank stock
in any bank in the state, held by any individual, partnership, or body
corporate, there shall be levied and collected yearly a revenue at the   Bank stock
rate of fifty cents on each share of one hundred dollars : *Provided*   taxable.
*nevertheless,* that if any bank in this state shall refuse to pay specie for
their notes after the first day of July next, then and in that case, there
shall be levied and collected an additional tax of fifty cents on each
share held as aforesaid in any bank or banks so refusing to pay spe-
cie for their notes : And the President and Directors or Cashier, on   When to
making out their last dividend for each preceding year shall return the   pay over.

# EXHIBIT 12

1846.

lowing manner, and not otherwise, that is to say—In all criminal prosecutions, the Solicitor's fee shall be taxed in the bill of costs and collected by the Sheriff with the other costs of the case, and be by him paid over to the Solicitor : *Provided,* That in all instances

Proviso.

where said fee or any part thereof cannot be so collected, and it shall so appear by the return of the Sheriff, then the same shall be a charge upon the Treasury of the State.

Repeal.

SEC. 2. *Be it further enacted,* That all acts or parts of acts conflicting with the provisions of this act, be, and the same are hereby repealed.

[Passed the Senate, December 22, 1846.  Passed the House of Representatives, December 26, 1846.  Approved, December 29, 1846.]

## CHAPTER 75.—[No. 5.]

AN ACT amendatory of the Criminal Laws now in force in this State.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Florida in General Assembly convened,* That

Punishment of certain offences.

hereafter, if any person shall be convicted, whether upon indictment now pending or hereafter to be presented, of any of the offences, the punishment of which under the provisions of an act approved, February 27th, 1839, entitled, an act to amend an act entitled, an act relating to crimes and misdemeanors, approved, February 10th, 1832, is prescribed to be a fine not exceeding fifteen hundred dollars nor less than two hundred dollars, and imprisonment not exceeding six months, nor less than thirty days, at the discretion of the court, he shall be fined in any sum not exceeding fifteen hundred dollars and not less than ten dollars, and imprisoned for any time not exceeding six months and not less than one month, at the discretion of the court.

SEC. 2. *Be it further enacted,* That if any person or persons

Selling liquor to slaves.

shall either himself or by his servant, or agent, sell or barter to any slave or slaves, any vinous or spirituous liquors of any description, without an express license in writing from the person having control

Trading with slaves.

of said slave or slaves authorising said slave to purchase the same, or buy or barter with any slave or slaves any article whatever, without license as aforesaid, he, she, or they so offending, on conviction thereof before the Circuit court, shall be fined in a sum not less than twenty-five dollars nor more than two hundred dollars, or imprisoned not exceeding three months, at the discretion of the Judge.

SEC. 3. *Be it further enacted,* That hereafter it shall not be law-

Carrying arms secretly.

ful for any person in this State to carry arms of any kind whatsoever secretly, on or about their person, and if any dirk, pistol or other arm or weapon, except a common pocket knife, shall be seen or known to be secreted upon the person of any one in this State, such person so offending, shall on conviction, be fined not exceeding five hundred dollars and not less than five dollars, or imprisoned not exceeding six months and not less than ten days, at the discretion of

*Criminal Laws. Criminal Cases. Chancery.*   CHAP. 75—76—77.   **21**

1846.

the court:  *Provided, however,* That this law shall not be so construed as to prevent any person from carrying arms openly, outside of all their clothes; and it shall be the duty of the Judges of the Circuit courts in this State to give the matter contained in this act in special charge to the Grand Juries in the several counties in this State, at every session of the courts.

SEC. 4. *Be it further enacted,* That all laws or parts of laws, so far as the same conflict with the foregoing section, be and the same are hereby repealed:  *Provided, however,* That no conviction or sentence already rendered or pronounced under the acts referred to in the preceding sections, shall be in anywise affected by this act.

Repeal.

[Passed the House of Representatives, January 5, 1847.  Passed the Senate, January 6, 1847.  Approved, January 6, 1847.]

---

## CHAPTER 76.—[No. 6.]

### AN ACT relative to Costs in Criminal cases.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Florida in General Assembly convened,* That in all cases of a conviction for crimes or misdemeanors under the laws of this State, the costs of prosecution shall be included and entered up in the judgment rendered against the convicted person, unless the jury trying the cause expressly find otherwise.

Costs of prosecution.

SEC. 2. *Be it further enacted,* That in all cases not capital, when it shall be made to appear from due proof made in open court, that the person convicted is wholly unable to pay costs, and that the judgment has in other respects been complied with, the court before which such person was convicted shall have power to discharge him or her without the payment of costs.

When party unable to pay costs.

SEC. 3. *Be it further enacted,* That no defendant in a criminal prosecution who shall be acquitted or discharged therefrom, shall be liable for any costs or fees of the court, or of any Justice of the Peace, or any ministerial officer, or for any charge of subsistence while detained in custody.

When defendant not liable for costs.

[Passed the House of Representatives, December 19, 1846.  Passed the Senate, December 26, 1846.  Approved, December 29, 1846.]

---

## CHAPTER 77.—[No. 7.]

### AN ACT to amend the several acts relative to proceedings in Chancery.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the State of Florida in General Assembly convened,* That it shall be the duty of the defendant, unless the time shall be otherwise enlarged for cause shown by a Judge of the court, upon motion for that purpose, to file his plea, demurrer or answer to the bill in the Clerk's office, on the rule day next succeeding that of entering his

Plea, demurrer, answer when filed.

# EXHIBIT 13

13

equity in this state, where any person or persons *take the bene-* may be surrendered by his or their bail in discharge *fit of prison* of themselves, it shall and may be lawful for the per- *rules.* son or persons so surrendered to take the benefit of the prison rules of the county, under the same rules, regulations, and restrictions prescribed for the bene- fit of defendants arrested and in custody under a writ of *capias ad satisfaciendum.*

JAMES FENTRESS,
Speaker of the House of Representatives,
W. HALL,
Speaker of the Senate, *pro tem.*

October 18, 1821.

## CHAPTER XII.

*An Act prescribing certain duties of Sheriffs in this state.*

Be it enacted by the General Assembly of the State *Sheriff to,* of Tennessee, That hereafter it shall not be law- *appoint not* ful for any sheriff within this state to appoint more *more than two* than two deputies within the county for which he *Justice to be a* shall have been appointed sheriff, nor shall it be law- *deputy.* ful for a Justice of the Peace to act as deputy sheriff during his continuance in office : *Provided* nothing herein shall be so construed as to apply to, or prohib- it special deputations on urgent occasions, and depu- tations for the purpose of holding elections.

JAMES FENTRESS,
Speaker of the House of Representatives.
W. HALL,
Speaker of the Senate, *pro tem.*

October 19, 1821.

## CHAPTER XIII.

*An Act to prevent the wearing of dangerous and unlawful weapons.*

Be it enacted by the General Assembly of the State *Fine for* of Tennessee, That from and after the passage of *carrying wea-* this act, each and every person so degrading himself, *pons.* by carrying a dirk, sword cane, French knife, Span- ish stiletto, belt or pocket pistols, either public or private, shall pay a fine of five dollars for every such offence, which may be recovered by warrant before any Justice of the Peace, in the name of the county and for its use, in which the offence may have been committed ; and it shall be the duty of a Justice to issue a warrant on the application on oath of any

Digitized from Best Copy Available

16

person applying ; and that it shall be the duty of every Judge, Justice of the Peace, Sheriff, Coroner and Constable within this state to see that this act shall have its full effect : *Provided nevertheless*, That nothing herein contained shall affect any person that may carry a knife of any size in a conspicuous manner on the strop of a shot pouch, or any person that may be on a journey to any place out of his county or state.

*Exception as to travellers and the strop of a shot pouch.*

JAMES FENTRESS,
Speaker of the House of Representatives.
W. HALL,
Speaker of the Senate, *pro tem.*

October 19, 1821.

## CHAPTER XIV.

*An Act directing the proceedings in cases of forcible entry and detainer.*

SEC. 1. *Be it enacted by the General Assembly of the State of Tennessee*, That no person or persons shall enter upon or into any lands, tenements or other possessions, and detain or hold the same but where entry is given by law, and then only in a peaceable manner.

*What shall be a forcible entry and detainer.*

SEC. 2. *Be it enacted*, That if any person shall enter upon or into any lands, tenements, or other possessions and detain and hold the same with force or strong hand, or with weapons, or by breaking open the doors, windows or other part of a house whether any person be in it or not, or by any kind of violence whatsoever, or by threatening to kill, maim, or beat the party in possession, or by such words, circumstances or actions as have a natural tendency to excite fear or apprehension of danger, or by putting out of doors or carrying away the goods of the party in possession, or by entering peaceably, and then turning by force or frightening by threats or other circumstances of terror, the party out of possession, in such case every person so offending shall be deemed guilty of a forcibly entry and detainer, within the meaning of this act.

*Whatever makes an entry forcible, makes a detainer forcible.*

SEC. 3. *Be it enacted*, That no person who shall lawfully or peaceably enter upon, or into any lands, tenements, or other possessions, shall hold or keep the same unlawfully, and with force or strong hand, or weapons, or violence, or menaces, or terrifying words, circumstances or actions aforesaid, and it is

Digitized from Best Copy Available

# EXHIBIT 14

( 259 )

grants, deeds, or mesne conveyances not being proved and registered within this state, it shall and may be lawful for such person or persons to prove and register his, her, or their grants, deeds or mesne conveyances.

Sec. 2. *Be it enacted,* That this act shall be in force until the end of the next stated session of the general assembly.

CHAP. XXI.

An ACT *to amend an act, entitled,* "An act to ascertain the boundaries of land, and for perpetuating testimony.—PASSED NOVEMBER 6, 1801.

BE it enacted by the General Assembly of the State of Tennessee, That all the privileges, benefits, and advantages arising under or accruing to others, by virtue of an act, entitled, "An act to ascertain the boundaries of land, and for perpetuating testimony, passed at Knoxville in the year 1799, shall extend to the citizens resident south of French Broad and Holston, and between the rivers Big Pigeon and Tennessee, holding or claiming, or that may hold or claim land by right of occupancy, so far as may respect their rights to, or the conditional or boundary lines of their respective claims or rights of occupancy and pre-emption in that tract of country, any thing in the proviso to the fourth section of said recited act to the contrary notwithstanding.

CHAP. XXII.

An ACT *for the restraint of idle and disorderly persons.*—PASSED NOVEMBER 13, 1801.

WHEREAS it becomes necessary for the welfare of the community, to suppress wandering, disorderly and idle persons :

Section 1. BE *it enacted by the General Assembly of the State of Tennessee,* That any person or persons who have no apparent means of subsistence, or neglect applying themselves to some honest calling for the support of themselves and families, every person so offending, who shall be found sauntering about neglecting his business, and endeavoring to maintain himself by gaming or other undue means, it shall and may be lawful for any justice of the peace of the county wherein such person may be found, on due proof made, to issue his warrant for such offending person, and cause him to be brought before said justice, who is hereby empowered, on conviction, to demand security for his good behaviour, and in case of refusal or neglect, to commit him to the goal of the county, for any term not exceeding five days, at the expiration of which time he shall be set at liberty if nothing criminal appears against him, the said offender paying all charges arising from such imprisonment ; and if such person shall be guilty of the like offence from and after the space of thirty days, he, so offending, shall be deemed a vagrant, and be subject to one month's imprisonment, with all costs accruing thereon, which if he neglects or refuses to pay, he may be continued in prison until the next court of the county, who may proceed to try the said offender, and if found guilty by a verdict of a jury of good and lawful men, said court may proceed to hire the offender for any space of time not exceeding six months, to make satisfaction for all costs, but if such person or persons so offending, be of ill fame, so that he or they cannot be hired for the costs, nor give sufficient security for the same and his future good behaviour, in that case it shall and may be lawful for the said court to cause the offender to recive not exceeding thirty nine lashes, on his bare back, after which he shall be set at liberty, and the costs arising thereon shall become a county charge ; which punishment may

Digitized from Best Copy Available

Case 3:23-cv-00474-JES-DDL Document 36-2 Filed 04/08/24 PageID.3230 Page 57 of 317

be inflicted as often as the person may be guilty, allowing thirty days between the punishment and the offence.

Sec. 2. *Be it enacted*, That it shall not be lawful for any person or persons of ill fame or suspicious character, to remove him or themselves from one county to another in this state, without first obtaining a certificate from some justice of the peace of said county or captain of his company, setting forth his intention in removing, whether to settle in said county, or if travelling, to set forth his business and destination, and if such traveller should be desirous to stay in any county longer than ten days he shall first apply to some justice of said county for leave, and obtain a certificate for that purpose, setting forth the time of his permission, and if such person shall be found loitering in said county after the expiration of his permit, or fail to obtain the same agreeable to the true intent and meaning of this act, such person or persons so offending, may be apprehended by any person or persons, and carried before some justice of the peace, who may enquire into his character and business; and fine him at his discretion, not exceeding ten dollars: but if said traveller shall be found on examination, to be a person of ill fame, and there is reason to suspect he is loitering in said county for evil purpose, attempting to acquire a living by gambling, or other bad practices, such justice shall have power to commit any person of like character, until he shall find good and sufficient security for his good behaviour, for any time not exceeding ten days, and said justice of the peace or court of the county shall proceed against such offender, in the same manner as is heretofore prescribed for vagrants.

Sec. 3 *Be it enacted*, That all and every keeper or keepers, exhibitor or exhibitors, of either of the gaming tables commonly called A. B. C. or E. O. tables, or faro bank, or of any other gaming cloth table, or bank of the same, or like kind, under any denomination whatever, shall be deemed and treated as a vagrant, and moreover it shall be the duty of any judge or justice of the peace, by warrant under his hand, to order such gaming table or cloth to be seized and publicly burned or destroyed; said warrant shall be directed to some one constable within the county, whose duty it shall be, forthwith to execute the same: *Provided*, That nothing herein contained, shall be so construed as to extend to billiard tables.

Sec. 4. *Be it enacted*, That it shall not be lawful for any house keeper to harbor any idle person of the character aforesaid, for any longer time than is heretofore specified, under the penalty of twenty dollars for every such offence, to be recovered by warrant before any justice of the peace of the county where the offence is committed.

Sec 5 *Be it enacted*, That it shall be the duty of each justice of the peace, on information being made on oath to him or them, that there is a person or persons of the aforesaid description, loitering in his or their county, then and in that case he or they shall issue his or their warrant against such person or persons agreeable to this act: *And provided*, he or they shall neglect or refuse so to do, it shall be deemed a misdemeanor in office, for which he or they shall be impeachable, and on conviction be removed from office.

Sec 6 *Be it enacted*, That if any person or persons shall publicly ride or go armed to the terror of the people, or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person, it shall be the duty of any judge or justice, on his

Digitized from Best Copy Available

( 261 )

own view, or upon the information of any other person on oath, to bind such person or persons to their good behaviour, and if he or they fail to find securities, commit him or them to goal, and if such person or persons shall continue so to offend, he or they shall not only forfeit their recognizance, but be liable to an indictment, and be punished as for a breach of the peace, or riot at common law.

Sec 7. Be it enacted, That if any person or persons shall unlawfully cut out or disable the tongue, put out an eye, slit a nose, bite or cut off a nose, ear or lip, or cut off or disable any limb or member, or stab any person whatsoever, in doing so, to maim, wound or disfigure in any of the manner: before mentioned, such person or persons so offending their counsellors, aiders and abettors, knowing of, and privy to the offence, shall be and are hereby declared to be felons, and shall suffer as in case of felony : Provided nevertheless, he or they shall be entitled to benefit of clergy, and be further liable to an action of damages to the party injured.

Sec 8. Be it enacted, That all fines inflicted by this act, shall be one half to him that will sue for the same, and the other half to the use of the county.

Sec. 9  Be it enacted, That all laws and parts of laws, which come within the meaning and purview of this act, are hereby repealed.

## CHAP. XXIII.

AN ACT to authorise the several county courts of pleas and quarter sessions to remit and mitigate fines and forfeitures on recognizances as therein mentioned —(PASSED OCTOBER 12, 1801.)

Section 1. BE it enacted by the General Assembly of the State of Tennessee, That the several courts of pleas and quarter sessions in this state, shall have power to remit or mitigate all fines by them inflicted, and all forfeitures on recognizances, previous to entering final judgment thereon : Provided, a majority, or any number not less than nine of the justices of said county be present when such remittance or mitigation shall be made.

Sec 2. Be it enacted, That so much of any other act as comes within the purview and meaning of this act is hereby repealed.

## CHAP. XXIV.

AN ACT concerning administrations granted on the estates of persons dying intestate, therein mentioned —(PASSED NOVEMBER 10. 1801.)

WHEREAS heretofore the courts of pleas and quarter sessions, during the being of the temporary government called Franklin, granted administrations on the estates of persons who died intestate, and have issued letters of administration accordingly, in virtue and by authority of which, the persons so administering, have proceeded to administer upon the goods and chattels, rights and credits of their intestates respectively : And whereas it will contribute to the peace and quiet of families, that administrations on such estates, so as aforesaid granted, be deemed and declared valid,

Sec 1.   BE it enacted by the General Assembly of the State of Tennessee, That all administrations granted by any of the said courts of pleas and quarter sessions, and letters of administration by any of the aforesaid courts issued, on the estate or estates of any person who died intestate, and all proceedings in virtue of such letters of administration had and done, of, and concerning any such estate, agreeably to, and in conformi-

Digitized from Best Copy Available

# EXHIBIT 15

[ 100 ]

Governor to accept the services of any volunteer company or compa-
accept of ies (not exceeding three thousand as aforesaid) who shall
the services tender their services within such time, and for such term,
of volunteer not exceeding six months, as the Governor in his discre-
companies & tion, shall proclaim and appoint. And the Governor shall
to commissi on officers designate and commission for that purpose, all officers ne-
cessary and proper for the command of such volunteers.

Sec. 3. *Be it further enacted,* That all volunteer officers,
non-commissioned officers, musicians and privates, whose
service may be tendered and accepted under the provisions
of this act, shall, at such place or places of redezvous as the
Volunteers to Governor shall appoint within this state, be entitled to re-
to receive mo ceive in advance, the sum of ten dollars, to be taken and
ney in advance considered as a part of their pay.

Sec. 4. *Be it further enacted,* That the forces to be raised
and organized, as provided by this act, shall be disposed of
according to the discretion of their Governor (that discretion
Forces when subject only to the requisitions of the general government)
raised how to and shall be liable to be marched to any place, and engaged
be diposed of in the service of the U. States, as the exigencies of the pres-
ent war may, in the opinion of the executive, require.

Sec. 5. *Be it further enacted,* That the governor of this
TheGovernor commonwealth, for the purpose of carrying into effect the
authorized to third section of this act, shall be authorized to draw from the
draw money Treasury of this state, any sums of money that may be
from the trea necessary therefor; or in case of deficiency in the public
sury or bor funds, to borrow from any Bank or individuals, upon the
row from best terms he can obtain such additional sums as may be
banks necessary for the purpose aforesaid.

Sec. 6. *Be it further enacted,* That the powers vested in
the Governor by the first and second sections of this act,
shall be exercised and carried into effect by him to such ex-
tent, and in such a manner and time, as his own discretion
and the emergency of public affairs may dictate.

---

## CHAP. LXXXIX.

*AN ACT to prevent persons in this Commonwealth from*
*wearing concealed Arms, except in certain cases.*

Approved, February 3, 1813.

Sec. 1. $B$ E it enacted by the general assembly of the com-
monwealth of Kentucky, That any person in
this commonwealth, who shall hereafter wear a pocket
pistol, dirk, large knife, or sword in a cane, concealed
as a weapon, unless when travelling on a journey, shall be
fined in any sum, not less than one hundred dollars; which

[ 101 ]

may be recovered in any court having jurisdiction of like sums, by action of debt, or on the presentment of a grand jury—and a prosecutor in such presentment shall not be necessary. One half of such fine shall be to the use of the informer, and the other to the use of this commonwealth.

This act shall commence and be in force, from and after the first day of June.

---

## CHAP. XC.
### AN ACT to amend the Militia Law.
Approved February 3, 1813.

Sec. 1. BE it enacted by the General Assembly of the Commonwealth of Kentucky, That if any non-commissioned officer, musician or private, failing to march, or furnishing an able bodied substitute in his place, when ordered and lawfully called on, or leaving the service without a discharge from the proper officer, shall be considered as a deserter, & treated as followeth, to wit: Any person may apprehend such deserter, and deliver him to the officer commanding such detachment, or any recruiting officer within this commonwealth, and take his receipt for the same ; which receipt shall describe the name of such deserter, and the length of time he was to serve, and by whom he was delivered—which receipt shall be assignable ; and the reward for taking and so delivering such deserter, as aforesaid, shall be a credit for a tour or tours of duty for the length of time such deserter was bound to serve ; and said deserter shall serve out the term of time aforesaid before he shall be discharged, in addition to the time he was to serve, if such term of time is then required ; otherwise shall serve said tour or tours, when required so to do. And any person holding such receipt, when he is called on to perform a tour or tours of duty, and producing the same to the captain calling on him, it shall be the duty of said captain to receive the same, and give the owner thereof a credit for as many tours as is therein contained.

Sec. 2. And where any delinquent militia-man shall belong to any society who hold a community of property, the sheriff shall call on the agent or superintender of the common stock, or firm of said society, or compact, for the same ; and if he fails to pay the same as before described, the sheriff shall make distress, and sell so much of the property belonging to said stock, as will satisfy the fine, cost, &c. as is before directed.

Sec. 3. And be it further enacted, That brigade inspectors and brigade quarter masters, when not taken from the line, shall each be entitled to the rank, pay, and emoluments

*Persons failing to perform tour of duty considered a deserter*

*Brigade inspectors quarter masters, adjutants and pay-masters*

# EXHIBIT 16

**172**

greeable to the assessment; and the said trustees shall at the end of the time for which they were elected, render an account of the same to the parish judge, and should any sums be unappropriated, the same shall be paid into the hands of the parish judge in trust for the succeeding trustees, and in case of default of the trustees whose term of time is thus expired, it shall be the duty of the parish judge to summon them to a settlement, enter judgment and issue execution for arrearages if necessary.

*Render account*

*Penalty for default.*

SECT. 3. *And be it further enacted,* That the trustees shall appoint one clerk and one collector, whose term of service shall expire at the same time with that of the trustees, which said officers shall be entitled to such fees as the said trustees may deem proper to allow them.

*Clerk and collector.*

*Fees.*

STEPHEN A. HOPKINS,
*Speaker of the house of representatives.*
J. POYDRAS,
*President of the senate.*
APPROVED, March 25th, 1813.
WILLIAM C. C. CLAIBORNE,
*Governor of the state of Louisiana.*

---

## AN ACT

*Against carrying concealed weapons, and going armed in public places in an unnecessary manner.*

*Preamble*

Whereas assassination and attempts to commit the same, have of late been of such frequent occurrence as to become a subject of serious alarm to the peaceable and well disposed inhabitants of this state; and whereas the same is in a great measure to be attributed to the dangerous and wicked practice of carrying about in public places concealed and deadly weapons, or going to the same armed in an unnecessary manner, therefore;

*Penalty for carrying concealed weapons.*

SECT. 1. *Be it enacted by the senate and house of representatives of the state of Louisiana, in general assembly convened,* That from and after the passage of this act, any person who shall be found with any concealed weapon, such as a dirk, dagger, knife, pistol or any other deadly weapon concealed in his bosom, coat or in any other place about him that do not appear in full open view, any person so offending, shall on conviction thereof before any justice of the peace, be subject to pay a fine not to exceed fifty dol-

## 173

esclaves) et pour son usage, d'une piastre sur chaque mille piastres, suivant le tableau des taxes; et lesdits administrateurs, à l'expiration du terme pour lequel ils auront été élus, en rendront compte au juge de la paroisse, et, s'il restait en caisse des fonds disponibles, ils seront versés entre les mains du juge de paroisse qui les gardera jusqu'à la nomination d'autres administrateurs, et si lesdits administrateurs, à l'expiration du terme pour lequel ils auront été élus, négligeaient de rendre le compte susdit, il sera du devoir du juge de paroisse de les sommer de rendre leurs comptes et de les poursuivre en justice et de lancer contre eux des mandats d'execution pour les sommes arriérées, s'il le juge necessaire. *[marginal: Redition de compte. Peines pour defaut.]*

SECT. 3. *Et il est de plus decreté,* Que lesdits administrateurs nommeront un commis et un collecteur de taxe, dont le tems de service finira en même tems que celui des administrateurs et qui auront droit à la compensation que les administrateurs jugeront à propos de leur accorder. *[marginal: Commis et collecteur. Compensation.]*

STEPHEN A. HOPKINS,
*Orateur de la Chambre des Représentans,*
J. POYDRAS,
*Président du Senat.*

Approuvé le 25 Mars 1813.
Wm C. C. CLAIBORNE,
*Gouverneur de l'Etat de la Louisiane.*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### ACTE

*Pour défendre de porter des armes cachées et de se présenter armé d'une manière inutile dans les endroits publics.*

Vu qu'il s'est commis dernièrement des assassinats et qu'il a eté essayé d'en commettre d'autres de manière à causer de sérieuses allarmes aux habitans paisibles et bien disposes de cet etat, et vu qu'on doit en grande partie attribuer la cause de ces assassinats à la coûtume pernicieuse et condamnable de porter dans des endroits publics, des armes cachées et dangereuses, ou de s'y rendre armé d'une manière inutile, *[marginal: Preambule.]*

SECT. 1ère. *Il est décrété par le sénat et la chambre des Représentans de l'Etat de la Louisiane réunis en Assemblée Générale,* Qu'à dater de la passation de cet acte, toute personne qui sera trouvée armée d'aucune arme cachée, tels que poignard, dague, couteau, pistolet ou toute autre arme meurtrière dans son habit ou ailleurs sur lui et qui ne seront point ostensibles, toute personne coupable de cette contravention, sera, sur conviction du fait, devant un juge-de-paix, condamné à une amende qui n'excédera pas *[marginal: Peines contre ceux qui portent des armes cachees.]*

174

How dis- lars nor less than twenty dollars, one half to the use
tributed. of the state, and the balance to the informer; and
should any person be convicted of being guilty of a
For the second offence before any court of competent jurisdic-
second of- tion, shall pay a fine not less than one hundred dol-
fence. lars to be applied as aforesaid, and be imprisoned for
a time not exceeding six months.

SECT. 2. *And be it further enacted*, That should
Penalty any person stab or shoot, or in any way disable ano-
for stabbing ther by such concealed weapons, or should take the
&c. life of any person, shall on conviction before any com-
petent court suffer death, or such other punishment
as in the opinion of a jury shall be just.

SECT. 3. *And be it further enacted*, That when
any officer has good reason to believe that any person
Suspect- or persons have weapons concealed about them, for
ed persons the purpose of committing murder, or in any other
may be way armed in such a concealed manner, on proof
searched. thereof being made to any justice of the peace, by
the oath of one or more credible witnesses, it shall
be the duty of such judge and justice to issue a war-
rant against such offender and have him searched,
and should he be found with such weapons, to fine
Fine. him in any sum not exceeding fifty dollars nor less
than twenty dollars, and to bind over to keep the
Sureties peace of the state, with such security as may appear
of the necessary for one year; and on such offender failing to
peace. give good and sufficient security as aforesaid; the
said justice of the peace shall be authorised to com-
mit said offender to prison for any time not exceeding
twenty days.

STEPHEN A. HOPKINS,
*Speaker of the house of representatives.*
J. POYDRAS,
*President of the senate.*
APPROVED, March 25th, 1813.
WILLIAM C. C. CLAIBORNE,
*Governor of the state of Louisiana.*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## AN ACT

*To establish a permanent seat of justice in and for
the parish of St. Tammany.*

SECT. 1. *Be it enacted by the senate and house of
representatives of the state of Louisiana, in general
assembly convened*, That Thomas Spell, Robert Ba-
Commis- dony, Benjamin Howard, Joseph Hertraire and Ben-
sioners.

## 175

cinquante piastres et qui ne sera pas moindre de vingt piastres, dont moitié au profit de l'état, et le reste au profit du dénonciateur; et toute personne convaincue de récidive devant toute cour de juridiction compétente, sera condamnée à une amende qui ne pourra être moindre de cent piastres dont il sera disposé comme ci-dessus et à un emprisonnement qui ne pourra excéder six mois.

*Distribution.*
*Récidive.*

SECT. 2. *Et il est de plus décrété,* Que toute personne qui poignardera, blessera ou tirera en aucune manière sur toute autre personne ou personnes avec des armes ainsi cachées, ou qui leur ôtera la vie, sur conviction du fait devant toute cour de juridiction compétente, sera condamnée à mort ou à toute autre peine que le jury pourra trouver juste dans son opinion.

*Peine de mort.*

SECT. 3. *Et il est de plus décrété,* Que lorsque tout officier public à des raisons suffisantes de croire qu'une ou plusieurs personnes portent des armes cachées dans l'intention de commettre un meurtre, ou que d'aucune manière cette personne ou personnes portent des armes cachées, sur preuve authentique du fait et sur le témoignage d'une ou plusieurs personnes dignes de foi, devant un juge-de-paix, il sera du devoir dudit juge-de-paix de faire conduire pardevant lui le coupable, le faire fouiller, et en cas qu'il soit trouvé sur lui des armes cachées, il aura le pouvoir de le condamner à une amende qui ne pourra excéder cinquante piastres, ni être moindre de vingt piastres et de lui faire donner telle caution qu'il pourra trouver convenable pour conserver la tranquillité de l'état pendant une année, et si ledit coupable ne fournit pas bonne et suffisante caution, ledit juge-de-paix est autorisé de le faire emprisonner pour un tems qui ne pourra excéder vingt jours.

*Pouvoir de fouiller.*
*Amende.*
*Caution,*

STEPHEN A. HOPKINS,
*Orateur de la Chambre des Représentans,*
J. POYDRAS,
*Président du Sénat,*

Approuvé 25 Mars 1813.
Wm. C. C. CLAIBORNE,
*Gouverneur de l'Etat de la Louisiane.*

~~~~~~~~~~~~~~~~~~~~~~~~~~~

ACTE

*Pour fixer d'une manière permanente le lieu des séances de la cour de paroisse de St.-Tammany.*

SECT. 1ère. *Il est décrété par le sénat et la chambre des représentans de l'état de la Louisiane réunis en assemblée générale,* Que Thomas Spell, Robert Badony, Benjamin Howard, Joseph Kerraire et

*Commissaires.*

# EXHIBIT 17

[ 39 ]

## CHAPTER XXIII.

*AN ACT to prohibit the wearing of conceal-
ed weapons.*

APPROVED, January 14, 1820.

SEC. 1.   BE it enacted by the General
Assembly of the State of Indiana, That
any person wearing any dirk, pistol,
sword in cane, or any other unlawful
weapon, concealed, shall be deemed
guilty of a misdemeanor, and on convic-
tion thereof, by presentment or indict-
ment, shall be fined n any sum not ex-
ceeding one hundred dollars, for the use
of county seminaries: *Provided however,*
that this act shall not be so construed as
to affect travellers.

*[margin note: Persons wearing concealed weapons indictable]*

*[margin note: Proviso]*

## CHAPTER XXIV.

*AN ACT supplemental to "an act for the
appointment of County Surveyors.*

APPROVED, January 14, 1820.

SEC. 1.   BE it enacted by the General
Assembly of the State of Indiana, That
whenever hereafter any dispute may
arise about the division of any land
within this state, wherein the county
surveyor of the county, where the lands
lie, may be a party, or in any manner
interested, it shall be lawful for the Cir-
cuit Court on application of either par-

*[margin note: County surveyor interested in partition Circuit court to appoint surveyor]*

Digitized from Best Copy Available

[ 40 ]

ty, to appoint some suitable person in
said county, whose duty it shall be to
proceed to divide the same, for which
service, the person so appointed, shall
be entitled to the same fees as county
surveyors are entitled to, for similar ser-
vices.

---

## CHAPTER XXV.

*AN ACT authorizing the arrest and secur-
ing fugitives from Justice.*

APPROVED, January 14, 1820.

Sec. 1.  BE it enacted by the General
Assembly of the State of Indiana, That
if any person shall commit any crime
in any of the United States, or the ter-
ritories thereof, and shall flee into this
state, it shall be lawful for any Judge of
the Supreme or Circuit Court, or justice
of the peace, within this state, on the
oath or affirmation of any person charg-
ing such fugitive with a crime, to issue
his warrant, and cause such fugitive to
be arrested, and brought before him,
and after hearing the proofs and allega-
tions for and against such fugitive, if in
the opinion of such Judge or justice, the
proof is evident, or presumption strong,
as to the guilt of the person charged, it
shall be the duty of such Judge or Jus-
tice, to commit such fugitive from jus-
tice, to the common jail of the county,
where such arrest may be made, for any
length of time, not exceeding one month,

Pugitives
from justice
to be appre-
hended

Justice to is-
sue his war-
rant and pro-
ceedings
thereon

Fugitive to
be commit-
ted

# EXHIBIT 18

1821

# CHAP. XLIX.

An Act, to prohibit the carrying or wearing of concealed weapons.

SEC. 1. *Be it enacted by the Senate and House of Representatives of the State of Mississippi, in General Assembly convened,* That from and after the passage of this act, any person or persons convicted before any magistrate of his or their wearing or carrying any pistols, dirk or other such offensive weapons, concealed about his or their persons, shall forfeit and pay the sum of fifty dollars for every such offence, to be applied to the use of the literary fund : *Provided,* That in all cases of persons travelling, they shall not be bound by the provisions of this act.

COWLES MEAD,
*Speaker of the House of Representatives.*
JAMES PATTON,
*Lieutenant-Governor and President of the Senate.*
APPROVED, NOVEMBER 28, 1821.
GEO. POINDEXTER.

---

# CHAP. L.

An Act, to regulate the salaries of the district attorneys of the third and fourth Judicial Districts.

Salaries fixed.

SEC. 1. *Be it enacted by the Senate and House of Representatives of the State of Mississippi, in General Assembly convened,* That the district attorneys of the third and fourth judicial districts of this State, shall hereafter receive for their services the sum of six hundred dollars per annum, payable quarter yearly, out of any money in the treasury, not otherwise appropriated.

Repealing clause.

SEC. 2. *And be it further enacted,* That so much of the acts as allows the district attorney of the third judicial district, the sum of four hundred dollars, and the district attorney of the fourth judicial district, the sum of eight hundred dollars, be, and the same is hereby repealed.

COWLES MEAD,
*Speaker of the House of Representatives.*
JAMES PATTON,
*Lieut. Gov. and President of the Senate,*
APPROVED, NOVEMBER 28, 1821.
GEO. POINDEXTER.

# EXHIBIT 19

CHAP. 99.—An ACT to prevent free persons of colour who leave the state from returning to it in certain cases.

( Passed April 7, 1838. )

Free negroes leaving state to be educated not permitted to return.

1. *Be it enacted by the general assembly*, That if any free person of colour, whether infant or adult, shall go or be sent or carried beyond the limits of this commonwealth for the purpose of being educated, he or she shall be deemed to have emigrated from the state, and it shall not be lawful for him or her to return to the same;

Infants so returning how dealt with.

and if any such person shall return within the limits of the state contrary to the provisions of this act, he or she being an infant, shall be bound out as an apprentice until the age of twenty-one years, by the overseers of the poor of the county or corporation where he or she may be, and at the expiration of that period, shall be sent out of the state agreeably to the provisions of the laws now in force, or which may hereafter be enacted to prohibit the migration of free

Adults how punished.

persons of colour to this state; and if such person be an adult, he or she shall be sent in like manner out of the commonwealth; and if any person having been so sent off, shall thereafter return within the state, he or she so offending shall be dealt with and punished in the same manner as is or may be prescribed by law in relation to other persons of colour returning to the state after having been sent therefrom.

Commencement.

2. This act shall be in force from and after the first day of August next.

---

CHAP. 100.—An ACT abolishing the punishment of burning in the hand in all cases.

(Passed February 8, 1838.)

Burning in hand abolished.

1. *Be it enacted by the general assembly*, That so much of any law of this commonwealth as authorizes or inflicts the punishment of burning in the hand in any case whatever, shall be, and the same is hereby repealed. And every person who may be hereafter convicted of any offence within the benefit of clergy, shall be punished in the mode now prescribed by law, except only the burning in the hand.

Commencement.

2. This act shall be in force from the passing thereof.

---

CHAP. 101.—An ACT to prevent the carrying of concealed weapons.

[Passed February 2, 1838.]

Penalty for carrying concealed weapons.

1. *Be it enacted by the general assembly*, That if any person shall hereafter habitually or generally keep or carry about his person any pistol, dirk, bowie knife, or any other weapon of the like kind, from the use of which the death of any person might probably ensue, and the same be hidden or concealed from common observation, and he be thereof convicted, he shall for every such offence forfeit and pay the sum of not less than fifty dollars nor more than five hundred dollars, or be imprisoned in the common jail for a term not less than one month nor more than six months, and in each instance at the discretion of the jury; and a moiety of the penalty recovered in any prosecution under this act, shall be given to any person who may voluntarily institute the same.

Courts to ascertain if murders or felonies be perpetrated by concealed weapons.

2. *And be it further enacted*, That if any person shall hereafter be examined in any county or corporation court upon a charge of murder or felony, perpetrated by shooting, stabbing, maiming, cutting or wounding, and it shall appear that the offence charged was

in fact committed by any such weapon as is above mentioned, and that the same was hidden or concealed from or kept out of the view of the person against whom it was used, until within the space of one half hour next preceding the commission of the act, or the infliction of the wound, which shall be charged to have caused the death, or constituted the felony, it shall be the duty of the examining court to state that the fact did so appear from the evidence; and if the court shall discharge or acquit the accused, such discharge or acquittal shall be no bar to an indictment for the same offence in the superior court having jurisdiction thereof, provided the same be found within one year thereafter.    And whether the accused shall be by such court sent on for further trial or discharged, it shall be lawful to charge in the indictment that the offence was committed in any of the modes herein before described; and upon the trial it shall be the duty of the jury (if they find the accused not guilty of the murder or felony) to find also whether the act charged was in fact committed by the accused, though not feloniously, and whether the same was committed or done with or by means of any pistol, dirk, bowie knife, or other dangerous weapon, which was concealed from or kept out of the view of the person on or against whom it was used, for the space before mentioned, next preceding such use thereof; and if the jury find that the act was so committed, they shall assess a fine against the accused, and it shall be lawful for the court to pronounce judgment as in cases of misdemeanor. *[margin: Acquittal no bar to indictment in superior court.]* *[margin: Offence how charged in indictment.]* *[margin: Verdict of jury what to contain.]* *[margin: Penalty.]*

3. This act shall be in force from and after the first day of June next. *[margin: Commencement.]*

---

CHAP. 102.—An ACT to extend the act for the temporary relief of the banks of this commonwealth.

(Passed February 20, 1838.)

1. *Be it enacted by the general assembly,* That the first, second and seventh sections of the act passed on the twenty-fourth day of June, eighteen hundred and thirty-seven, entitled, "an act for the temporary relief of the banks of this commonwealth, and for other purposes," shall be, and the same are hereby continued in force till the twentieth day of March next. *[margin: Laws for temporary relief of banks extended. See post, ch. 109. Acts extra session 1837, pp. 3, 4, §§ 1, 2, 7.]*

2. *Be it further enacted,* That so much of the provisions of the act, entitled, "an act increasing the banking capital of the commonwealth," passed March the twenty-fifth, eighteen hundred and thirty-seven, as relates to the Bank of Virginia, the Farmers bank of Virginia, and the Bank of the Valley of Virginia, shall be and the same is hereby suspended until the first day of April next. *[margin: Part of act increasing banking capital suspended. Acts 1836-7, pp. 68-74.]*

3. This act shall commence and be in force from the passage thereof. *[margin: Commencement.]*

---

CHAP. 103.—An ACT further to extend the act for the temporary relief of the banks of this commonwealth.

[Passed March 16, 1838.]

1. *Be it enacted by the general assembly,* That the first, second and seventh sections of the act passed on the twenty-fourth day of June, eighteen hundred and thirty-seven, entitled, "an act for the temporary relief of the banks of this commonwealth," be and the same is hereby continued in force till the expiration of the present session of the legislature, any law to the contrary notwithstanding. *[margin: Laws for temporary relief of banks further extended.]*

2. This act shall be in force from its passage. *[margin: Commencement.]*

# EXHIBIT 20

## CHAPTER SEVENTH.

### *Of Miscellaneous Offences.*

Section 1. It shall be unlawful for any person or persons, or any company, corporation, or unchartered banking association, to make, emit, issue, or put in circulation, any note, bill, bond, draft, check, or post note, or paper of any name or description whatsoever, to answer the purpose of money, or for general circulation, and for every such note, bill, bond, draft, check, post note, or other paper so made, emitted, issued, or put in circulation, such person or persons, and each and every individual of said company, corporation, or unchartered banking association, so making, issuing, emitting, or putting in circulation, such note, bill, bond, draft, check, post note, or other paper, shall be held to be guilty of a misdemeanor, and shall be liable to be indicted therefor, and, upon conviction, shall be fined for every such offence at the discretion of the jury trying the same, not less than one hundred, nor more than five hundred dollars, and that upon failure to pay the fine, shall be imprisoned in the county jail for a term not exceeding twelve months.

*Unchartered banking companies.*

Section 2. If any person or persons shall sign any note, bill, bond, draft, check, post note, or any paper of other name or description whatsoever, as cashier or president, or under any other name, or in the name of any company, incorporation, or unchartered banking association, to be put in circulation to answer the purposes of money, such president, or cashier, or other person, under any other name, so signing said note, bill, bond, draft, check, post note, or paper as aforesaid, shall be deemed guilty of a misdemeanor, and shall be liable to be indicted, and, upon conviction, shall be fined for every such offence, in a sum not less than one hundred, nor more than five hundred dollars, at the discretion of the jury trying the same, and the signatures of the person or persons so charged, to the note, bond, bill, draft, check, post note, or paper aforesaid, shall be taken and held to be proof of such signing, unless the fact of signing be denied on oath by the defendant.

*Signing notes or bills.*

Section 3. It shall be unlawful for any person or persons, within the limits of this State, to pass off, issue, emit, or put in circulation, any note, bill, bond, check, draft, or post note, of any incorporation, company, or unchartered banking association; and any person or persons violating the provisions of this section, shall be deemed guilty of a misdemeanor, and shall be liable to be indicted, and upon conviction, shall be fined for every such note, bill, bond, check, draft, post note, or other paper so issued, emitted, passed off, or put in circulation, not less than twenty, nor more than one hundred dollars, at the discretion of the jury trying said offence.

*Passing off or circulating notes or bills.*

Section 4. Every one who shall hereafter carry concealed about his person, a bowie knife, or knife or instrument of the like kind or description, by whatever name called, dirk or any other deadly

weapon, pistol or any species of fire arms, or air gun, unless such **Carrying concealed weapons.** person shall be threatened with, or have good cause to apprehend an attack, or be travelling, or setting out on a journey, shall on conviction, be fined not less than fifty nor more than three hundred dollars: It shall devolve on the person setting up the excuse here allowed for carrying concealed weapons, to make it out by proof, to the satisfaction of the jury; but no excuse shall be sufficient to authorize the carrying of an air gun, bowie knife, or knife of the like kind or description.

Section 5. If any person shall at the same election vote more than once for the same candidate for the same office, or for differ- **Illegal voting.** ent candidates for the same office, either in the same or in different precincts, or vote when he is not legally authorized so to do, he shall upon conviction, be adjudged guilty of a misdemeanor, and fined in the sum of two hundred dollars, and be imprisoned in the county jail not exceeding one year.

Section 6. Every apothecary, druggist, or other person, who **Apothecaries selling poisonous drugs without label.** shall sell and deliver any arsenic, corrosive sublimate, prussic acid, or other substance, either solid or liquid, usually denominated poisonous, without having the word 'poison,' written or printed on a label attached to the vial, box or parcel, in which the same is sold, or shall sell and deliver any tartar emetic, without having the true or common name thereof written or printed upon a label attached to the vial, box or parcel containing the same, shall upon conviction, be adjudged guilty of a misdemeanor, and punished by a fine not exceeding one hundred dollars.

Section 7. Every apothecary, druggist, or other person, who **Selling to slaves.** shall give, sell or deliver, any of the drugs described in the preceding section, or any other drug or medicine, poisonous in its nature, to any slave, without an order in writing from the owner or manager of such slave, designating the drug or medicine, either by name, or the effect to be produced by it, he or she so offending, shall on conviction, be held guilty of a misdemeanor, and punished by a fine not exceeding two hundred dollars, and may also be imprisoned not exceeding three months.

Section 8. Every person who shall buy, sell or receive from any **Trading with slaves.** slave, any commodity of any kind or description, without the leave or consent of the master, owner, or overseer of such slave, verbally or in writing, expressing the articles permitted to be sold or bartered, first obtained, shall on conviction, be fined in a sum not less than ten, nor more than one hundred dollars, and may be imprisoned not more than three months.

Section 9. Every sheriff, coroner, constable, clerk, or justice of **Officers failing to pay money collected.** the peace, who shall within three days after demand made, fail or refuse to pay over any money received or collected by him in his official capacity, shall be deemed guilty of a misdemeanor, and on conviction, shall be fined in a sum not less than one half, and not exceeding the entire amount received or collected: *Provided,* that **Proviso.** the party entitled to such money, shall remain in the county, or

# EXHIBIT 21

( 36 )

<span style="float:left">Widow may<br>make her elec-<br>tion of dower.</span>

the statute of which this is an amendment, she shall make her election either of dower or of a childs part, within twelve months after the probate of the will or granting letters of administration, or she shall be confined to her dower.

<span style="float:left">Fee simple title<br>in widow.</span>

Sec. 2. That if a widow take dower, she shall be entitled only to a life estate in the real property, to return at her death, to the estate of her deceased husband for distribution; if she takes a childs part, she shall have in the property set apart to her, a fee simple estate in the real property, and an absolute title to the personal property including slaves, with power to control or dispose of the same by will, deed or otherwise.

Passed February 6th 1838.—Approved 8th Feb. 1838.

———

No. 24. AN ACT in addition to An Act, (approved January 30th, 1835,) entitled An Act to prevent any person in this Territory from carrying arms secretly.

<span style="float:left">Venders to get<br>license.</span>

Section 1. Be it enacted by the Governor and Legislative Council of the Territory of Florida, That from and after the passage of this act, it shall not be lawful for any person or persons in this Territory to vend dirks, pocket pistols, sword canes, or bowie knives, until he or they shall have first paid to the treasurer of the county in which he or they intend to vend weapons, a tax of two hundred dollars per annum, and all persons carrying said weapons openly shall pay to the officer aforesaid a tax of ten dollars per annum; and it shall be the duty of said officer to give the parties so paying a written certificate, sta-

<span style="float:left">moneys how ap-<br>propriated.</span>

ting that they have complied with the provisions of this act. Four fifths of all monies so collected to be applied by the county courts to county purposes, the other fifth to be paid to the prosecuting attorney.

<span style="float:left">Penalty.</span>

Sec. 2. Be it further enacted, That if any person shall be known to violate this act, he or they so offending, shall be subject to an indictment, and on conviction, to a fine of not less than two hundred nor exceeding five hundred dollars, at the discretion of the court.

<span style="float:left">Judges to charge<br>grand juries.</span>

Sec. 3. Be it further enacted, That it shall be the duty of the several Judges of the Superior Courts of this Territory, to give this act in charge to the grand jurors of their respective districts at each term of the court.

Passed 5th Febuary, 1838.—Approved 10th Feb. 1838.

# EXHIBIT 22

182                            Ch. 8. *Revenue.*

Offices again separated, February 24, 1844 s. 12, a, 16.  But see March 5, 1846, a. 17, s 12.

The other sections of this act, of a general nature, have been re-enacted or superseded.  They make several provisions of local and particular relief.

### ART. 16. *An Act to Amend and Reduce into one the several Acts in relation to the Revenue of this State, and for other purposes —February* 4, 1844 . . 57 *to* 8 6.

§ 1. *Rates of Taxation.* The following taxes shall be assessed and collected within this state, to wit : An *ad valorem* tax of three-tenths of one per cent. on all lands of this state, not excepted by the ordinance admitting this state into the Union, or specially exempted by provisions of this act—on all money loaned at interest by individuals, or employed by them in the purchase of notes, bonds, checks, bills of credit of any description whatever as security for money advanced—on all goods, wares, and merchandize sold by any regular merchant—on all bank stock, subscribed for in any incorporated bank in this state, which shall not have paid a bonus for its charter, or been exempted by the provisions thereof (except stock subscribed for and owned by the state, or some incorporated literary or charitable institution.)  An *ad valorem* tax of two and one-half per cent. on all merchandize sold by an auctioneer or transient vender of goods ; an *ad valorem* tax of one per cent, on each pleasure-carriage, watch, and clock (except such as are kept for sale by merchants and artizans.)  A tax of ten dollars on each nine or ten pin alley, or any alley of the same kind kept for public play ; a tax of fifty dollars per annum on each theatre and each race track ; and one dollar on each and every Bowie knife ; a tax of one cent on each head of cattle over the number of twenty owned by any one individual ; a poll tax of fifty cents on every free free white male between the ages of twenty-one and fifty years; a tax of one dollar and a half on each and every free colored male between the age of twenty one and fifty years; and of seventy-five cents for each and every slave under sixty and over five years of age ; and on each slave under the age of five years, twenty-five cents ; an *ad valorem* tax of two per cent. on all gold or silver above the amount of fifty dollars manufactured otherwise than into coin, except jewelry worn about the person, and such as is kept for sale by merchants or artizans ; an *ad valorem* tax of three-tenths of one per cent., on each piano ; an *ad valorem* tax of one per cent. on each race, saddle, or carriage horse, and each horse kept by livery-stable keepers for hire : a *ad valorem* tax of one-fourth of one-per cent. on all public toll ferries, bridges, and turnpikes ; a tax of two dollars on each duelling or pocket pistol, except such as are kept for sale by merchants or artizans, or kept for use by military companies ; for each stallion or jackass, for whose services as such money or other valuable thing is received, a sum equal to the price of one mare, to be demanded and collected at any time during the season by the assessor, who shall pay over the same to the tax collector.

Tax on slaves and land changed a. 17, s. 1.

6. *In what County Person and Property Assessed.*  Every person shall be assessed in the county in which he resides at the time of assessment, for each and every article and item of taxation which he or she is liable to pay under the provisions of the first section of this act : and when the line between two counties divides a tract of land, it shall, if occupied, be assessed in the county in which the occupant resides ; if unoccupied, each part shall be assessed in the county in which the same may lie ; and all personal property owned by any person in any county other than that of his or her residence, shall be assessed in the county in which the same is situated ; and if he or she

# EXHIBIT 23

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3256   Page 83 of 317

REVENUE.

## CHAPTER CXXI.

AN ACT to provide for the increase of the Public Revenue,
and for other purposes.

Sec. 1.  *Be it enacted by the General Assembly of the
State of North-Carolina, and it is hereby enacted by the
authority of the same,*  That hereafter there shall be levied annually the sum of three cents upon every dollar of interest secured or actually due from or by any solvent debtor or debtors, whether from individuals, companies, corporations, or in any other way ; upon all sums of money at interest, whether in this State or out of it, at any time during the year next preceding the time the owner or owners thereof shall give in his, or her or their tax list : *Provided,* that guardians shall give in the money of each of their wards as a distinct and separate fund, and not as a fund held in common. <span>Tax on interest.</span>

Sec. 2.  *Be it further enacted,* That hereafter there shall be levied annually the sum of twenty cents upon every hundred dollars employed in buying and selling slaves, and that there there shall be levied annually the sum of ten cents upon every hundred dollars vested in every other species of trade ; and the sum of three cents upon every dollar of dividend or profit actually due or received upon sums of money vested in steam vessels (excepting the profits of such vessels as are under the burden of twenty tons,) or vested in stocks of any kind, or on shares of any incorporated or trading company, whether in this State or out of it, at any time during the year immediately preceding the time when the owner or owners thereof shall give in his, her or their tax list : *Provided,* that this act shall only authorize the taxing of such profits as the banks of this State shall make from trading in <span>On capital in trading for slaves, and other species of trade, vessels and trading companies.</span> <span>Proviso.</span>

stocks and bonds as distinguished from " bills receivable," *and provided further*, that every person shall have thirty dollars of interest, dividend or profit, and an amount equal to the sum of interest, which he, she or they owe, or pay, or secure to be paid on his, her or their own debt or debts, which shall not be subject to the tax imposed by this act; *and provided further*, that this act shall not extend to the interest or dividends accruing to any literary institution, or to funds appropriated for public or private charities, devoted to the purposes of education, or to the maintenance of the poor or afflicted.

Sec. 3.  Be *it further enacted*, That so much of the capital stock in trade of any merchant or jeweler, wholesale or commission merchant, as is now taxed by the 14th section of the 102 chapter of the Revised Statutes, shall be exempt from the provisions of this act: *Provided*, that the interest on all bonds, or notes, which any such merchant, jeweler, wholesale or commission merchant may own over and above the amount of the interest upon his own indebtedness and thirty dollars, shall not be considered as a part of his capital stock in trade, but shall be subject to the tax imposed by the first section of this act.

On merchants & jewellers.

Sec. 4.  Be *it further enacted*, That hereafter, there shall be imposed and levied annually the following taxes, to wit : On all Surgeon Dentists, all practicing Physicians, all practicing Lawyers and on all other persons, (except Ministers of the Gospel of every denomination, Governor of the State and Judges of the Supreme and Superior Courts) whose practice, salaries or fees, or all together, shall yield an annual income of five hundred dollars, the sum of three dollars for the first five hundred, and two dollars for every additional five hundred dollars.

On Dentists, Physicians and Lawyers.

Sec. 5.  Be *it further enacted*, That there shall be imposed and levied annually an *ad valorem* tax of one per centum on all gold and silver plate, and ornamental jewelry,

in use by the owner or owners thereof, of the value of fifty <span style="font-size:smaller">On plate, jewelry, vehicles, &c.</span> dollars or upwards; on all sulkies, gigs, buggies, barouches, carriages, and all other pleasure vehicles whatsoever, in use by the owner or owners thereof, of the value of seventy-five dollars and under one hundred dollars, fifty cents; on all of the value of one hundred dollars, and under two hundred dollars, one dollar; on all of the value of two hundred dollars and under three hundred dollars, two dollars; on all of the value of three hundred dollars and under four hundred dollars, three dollars; and on all of the value of four hundred dollars and upwards, four dollars; on all gold watches, one dollar, and on all silver watches twenty-five cents, in use, (except such of each as are kept in shops and stores for sale;) on all harps in use by the owner or owners thereof, two dollars; on all piano fortes in use by the owner or owners thereof, one dollar; on all pistols (except such as shall be used exclusively for mustering, and also those kept in shops and stores for sale,) one dollar each; on all bowie knives, one dollar each; and dirks and sword canes, fifty cents each; (except such as shall be kept in shops and stores for sale:) *Provided, however*, that only such pistols, bowie knives, dirks, and sword canes, as are used, worn or carried about the person of the owner, shall be subject to the above named taxes; on all retailers of wines, cordials, or spirituous liquors, *ten dollars*; on all billiard tables, *one hundred dollars*; on all bowling allies, whether called "nine pin," or " ten pin " allies, or by any other name, *twenty five dollars;* on every pack of playing cards, *twenty five cents;* and every merchant, shop keeper and public dealer, in goods, wares, merchandise, or other thing, shall be liable for the same, and shall state on oath how many packs he or she has sold within the year preceding the time he or she shall give in his or her tax list; on all mortgages and deeds of trust, which shall be registered, the sum of one dollar; and the register in each and every county shall be liable for the same, and

he is hereby required to give in to the justice taking the list of taxable property, the number of mortgages and deeds of trust by him registered in the preceding year, under a penalty of one hundred dollars, to be collected by the sheriff, and to pay the amount of taxes thereon, after deducting six per centum for his commissions; and the said register shall not be required to register any mortgage or deed of trust, until the person or persons presenting the same, shall have paid the tax hereby imposed, in addition to the fees now by law established.

Toll bridges, ferries.

Sec. 6. *Be it further enacted,* That the owner or owners of every toll-bridge or ferry in this State, shall hereafter pay annually a tax equal to five times the sum of the largest toll by him or them demanded and received.

Insurance companies.

Sec. 7. Be *it further enacted,* That the agent or agents of all insurance companies, not incorporated in this State, shall hereafter pay an annual tax of fifty dollars in every county where such agency shall be established, to be collected and accounted for by the sheriffs of the several counties as other taxes; and in case the said agent or agents shall fail to pay the tax hereby imposed, he or they shall be individually liable for a tax of one hundred dollars, to be collected by the sheriff of the county where such failure takes place, by distress and sale of the property of the said agent or agents, to be applied three-fourths to the use of the State and one-fourth to the use of the sheriff collecting the same.

Circus riders and the like.

Sec. 8. Each and every company of circus riders or equestrian performers, and each and every person or company who shall exhibit any collection of animals, commonly known as a menagerie, for reward, shall, previously to exhibiting or performing in any county in this State, pay to the sheriff thereof fifty dollars; and all Ethiopian serenaders, comic singers, and performers on musical instruments, who exhibit or perform for reward, five dollars, as a tax to the State, to be accounted for by the sheriff as other State taxes: and on paying such tax, the sheriff who receives the same shall give

a license to exhibit or perform in his county, which license shall contain a list of such animals, or personal performers, or other articles to be exhibited, and in that case, such company or person shall be authorized and permitted to perform and exhibit, as aforesaid, in such county, and no other, for the space of one year thereafter; and each and every company of circus riders or equestrian performers, or Ethiopian serenaders, comic singers and performers on musical instruments, or exhibiter of any collection of animals, commonly known as a menagerie, who shall perform or exhibit in any county in this State, without previously having paid the tax herein directed, shall be liable to a forfeiture of one hundred dollars, to be collected by the sheriff, by distress and sale of the property of such delinquent, and to be applied one half to the use of the State and the other half to the use of the sheriff.

Sec. 9.   *Be it further enacted,* That the taxes by this *How returned* act imposed, shall be returned on oath to the justices of the *and collected.* several counties in this State, appointed to take the list of taxables and taxable property; and shall be collected by the sheriffs of the several counties at the same time, and in the same manner in which they now collect other State taxes, and shall by them be paid into the treasury of the State at the same time and under the same penalties which are now prescribed by law, for the collection and payment of other State taxes.

Sec. 10.   Each and every person shall annually render to *Oath.* the justice of the peace appointed to take the list of taxables and taxable property, the amount of tax which he, either in his own right, or in the right of any other person or persons whomsoever, either as guardian, attorney, agent or trustee, or in any other manner whatsoever is liable for, under the revised[?] laws of this State; and it shall be the duty of the said justice to administer the following oath to each and every person giving a list of taxables and taxable prop-

erty: You, A. B., do solemnly swear, (or affirm, as the case
may be,) that you, either in your own right or the right of any
other person, or persons whomsoever, either as guardian, attor-
ney, agent or trustee, or in any other manner whatsoever, are
not liable for more taxes, under the laws of this State, than the
amount which you have now listed, and that in all other res-
pects, the list by you now delivered, contains a just and true ac-
count of all the property which by law you are bound to list
for taxation, to the best of your knowledge and belief: so
help you God.

Sec. 11.   *Be it further enacted,* That it shall be the du-

Justice to read over taxables.  ty of every justice of the peace who shall take a list of tax-
able property, before administering the oath aforesaid, to
call over to each person giving in his taxables, all the ar-
ticles and subjects of taxation which he may be bound to
list.

Sec. 12.   Each and every person liable to pay taxes by
and under the provisions of this act, who shall fail to list

Penalty for failing to list taxables.  their taxable property, or any part thereof, or refuse to take
the oath herein prescribed, shall, in addition to the payment
of a double tax, forfeit and pay into the public treasury the
sum of one hundred dollars for each year's failure or refusal;
and it shall be the duty of the several sheriffs aforesaid, to
levy, collect and account for the same, as in case of double
tax, unless the county court shall, within nine months there-
after, on satisfactory cause shown by such delinquent, order
said forfeiture to be released and remitted.

Duty of Sheriffs, Attorney General and So-licitors.  Sec. 13.   It shall be the duty of the several sheriffs to fur-
nish the Attorney General and the Solicitors of their respec-
tive circuits, at the first superior court which shall happen
after the tax lists are placed in their hands for collection,
with a list of all the persons liable for taxes under this act,
and who have failed to give in their taxable property or any
part thereof; and, upon such information, or any other in-
formation, or upon good reason to believe that any person

REVENUE.                                    1850-'51    247

has failed to list his taxable property, the Attorney General and Solicitors of the several circuits, shall have power and authority to file bills in the several courts of equity in this State, against each and every person failing to render a list of taxables and taxable property as by this act required, and compel a discovery upon oath, which discovery shall not be held and deemed evidence to convict such person for any penalty by this act annexed to such failure.

Sec. 14.  It shall be the duty of the Public Treasurer to have prepared and printed, on suitable paper, forms of tax-lists, with all the articles subject to taxation and to be listed under this act and all other laws now in force, mentioned *seriatim* over the heads of parallel columns, in which the amount or quantity of each article to be listed is to be set down; and shall furnish to each county court clerk in this State two copies of the same for each tax collection district in said county; and the cost of preparing and printing the same shall be paid out of the public treasury. *Forms, Treasurer to prepare*

Sec. 15.  It shall be the duty of the justice appointed to take the list of taxable property, to list the articles herein required to be listed in separate columns.   And the clerks of the several county courts shall record, advertise and return the same to the Comptroller's office, in the same manner, and in case of failure, under the same penalties, forfeitures and liabilities as are now prescribed by law in relation to other taxes. *Duty of justices and clerks.*

Sec. 16.  It shall be the duty of the register in each and every county, on or before the first day of September in each and every year, to furnish the Comptroller with a certificate of the name of the clerk of the county court, and the sureties to his bond for the faithful discharge of his duties in office; which certificate, when certified by the Comptroller, shall, on motion of the Treasurer, for judgment against any such clerk, and his sureties, be deemed equally valid in law, with the bond of such clerk, and the court shall give judgment and award execution thereon accordingly. *Certificate, register to furnish.*

Penalty.    Sec. 17. If any register shall fail to furnish the Comptroller with such certificate as directed in the last section, he shall forfeit and pay the sum of one thousand dollars, in each case, to be recovered by the Treasurer for the use of the State.

Court shall not tax.    Sec. 18. *Be it further enacted,* That all the persons and property herein taxed, shall not be liable to be taxed by the several county courts.

Repealing clause.    Sec. 19. *And be it further enacted,* That an act, entitled " An Act to increase the Revenue of the State " and ratified on the 29th day of January, 1819, and all other laws and clauses of laws coming within the meaning and purview of this act, be, and the same are hereby repealed: *provided,* that this repealing clause shall not affect the collection of any taxes now due under the revenue laws of this State.

[Ratified 28th January, 1851.]

REVISAL OF PUBLIC LAWS.

## CHAPTER CXXII.

### AN ACT for revising and digesting the Public Statute Laws of this State.

Sec. 1. *Be it enacted by the General Assembly of the State of North-Carolina, and it is hereby enacted by the authority of the same,* That three commissioners be appointed by the Governor, to collate, digest and revise, all the public statute laws of this State now in force, and including those which

# EXHIBIT 24

# LAWS OF ALABAMA.

[No. 1.]                    AN ACT                    1851-'52.

Further to equalize and improve the Revenue Laws.

SEC. 1. *Be it enacted by the Senate and House of Representatives of the State of Alabama in General Assembly convened,* That there shall also be annually assessed and paid on all passes, canals or channels, or property of the like kind, estimated in the manner of. mills, distilleries, manufacturing establishments, &c., the same tax as is paid on toll bridges, turnpikes and ferries, that is to say for each hundred dollars of the real value of property twenty-five cents,............................................... $0 25.   *Property taxed,*

On all money which is purposely kept out at interest, whether lent to persons, corporations or companies, in or out of this State, in any form or manner whatever, and whether the evidence of such indebtedness is annually or otherwise renewed or not, and on which tax is not paid in some other form or manner to the State annually, the same rate shall be annually assessed and paid as on money loaned out at or under the legal rate of interest, that is to say for each hundred dollars, and at that rate, twenty-five cents................................... 25   *Tax on money at interest.*

On every deck or part of a deck of playing cards sold or kept for use, ten cents...................... 10   *Cards.*

On every bowie knife or revolving pistol, two dollars .......................................... $2 00   *Bowie knive and pistols.*

SEC. 2. *Be it further enacted,* That hereafter, to provide against omissions and evasions, all lands shall be assessed and taxes paid thereon in the county in which it lies, whether a tract be divided by a county line or not.   *Whose land shall be assess*

SEC. 3. *Be it further enacted,* That the property of soldiers who served in the war with Mexico, and of those who served in the Florida war, as well as those who served in the war of 1812, and of their widows in case of their decease, is exempt from taxation to the extent the same is exempt from execution.   *Soldiers exempt*

SEC. 4. *Be it further enacted,* That licenses may hereafter be granted by judges of probate of the different counties to practice the daguerrean art at one station in the   *Daguerreotypists.*

county or in a village not having more than five hundred inhabitants on the applicant paying as a State tax.. $5 00

In towns with not more than four thousand inhabitants ....... ...... ...... ...... ...... ......$10 00

In cities with more than four thousand inhabitants. 25 00

To practice the art generally any where in the State ...... ...... ...... ...... ...... ...... 50 00

Circus companies. For the exhibition of a circus, feats of activity and slight of hand, for each exhibition not exceeding twenty-four hours ...... ...... ...... ...... 10 00

These provisions are to supersede rates prescribed in the code. A license may be obtained as aforesaid for a ten pin alley at any watering place for six months only by paying annually as heretofore, ten dollars ....:. ...... ...:... .:..... ......$10 00

Billiard tables. And for a billiard table...... ...... ......... ...... 25 00

But if used for a longer time during the year, under any pretence, the owner or proprietor of the alley or billard table shall be liable to indictment in the same manner as if no license had been granted. And it is

Duties of judge probate, treasurer, &c. hereby expressly made the duty of the judge of probate of each county by himself or agent to enquire of every person doing or offering to do any business for which a license is required under this or any other act, and ascertain whether the law has been complied with, and if not to cause the person to be bound over to court. When any citizen, assessor or other public officer may have information and believe that money due for the tax will be lost to the treasury by removals or otherwise, unless received immediately, the same may be paid to the county treasurer, who is required to give duplicate receipts therefor, one to the person paying, the other to the judge of probate, who shall endorse it to the collector. The treasurer shall pay the same over to the collector so soon as collections commence to be paid over by him as other money, and the treasurer charging himself with any portion thereof which belongs to the county treasury. And all moneys due the county treasury shall be paid over as soon as collections are completed to the county treasurer, or it shall be the duty of the treasurer as well as that of the solicitor of the district in his absence or default, in the name of the county, on three days,

How taxes may be collected. previous notice, to move for and obtain a judgment for the same, the interest and costs; and ten per cent. damages may be added by the court, if the circumstances require it, against any officer and his securities on their official bonds or other person holding the same.

5                                                    1851-'52.

SEC. 5. *Be it further enacted*, That instead of a transcript or copy of the assessment books by the assessor, the judge of probate is required to make out and forward to the comptroller of public accounts an abstract of the same in such form as said comptroller may prescribe and direct ; and the court of commissioners may make such allowance to said judge therefor as they may think adequate and just. And the judge and commissioners shall hereafter receive $2 50 per day (five cents per mile for travel and ferriage) while closely and necessarily engaged in examining the books and performing other duties in connection with the revenue ; but the judge and one commissioner only shall be competent to do all such duty in the event a fuller attendance is not deemed indispensable by the court. *[Judge of probate to make abstract.]* *[Per diem of judge and commissioners.]*

SEC. 6. *Be it further enacted*, That hereafter the tax collector shall pay the assessor his commissions or other dues, taking from him duplicate receipts, one to be received, allowed and filed by the comptroller if necessary and if the same be correct. And it shall hereafter be the duty of the tax collectors of the several counties to record the receipts they obtain from the comptroller as early as practicable in the office of the judge of probate of the respective counties, in such accessible form or place as the judge may prescribe, so as to readily detect, by reference to the different counties, any errors or deficiences in the comptroller's office. *[How assessor shall be paid.]* *[Tax-collectors to record receipts.]*

SEC. 7. *Be it further enacted*, That after either the assessor or collector shall have faithfully given the notices required by law to give in or pay taxes, if any person, without sufficient cause, fail or refuse to appear and give in or pay tax, and it thereby becomes necessary for such officer to visit the residence of such person, said officer is authorised to charge therefor (if in a city or town twenty-five cents, if in the country) fifty cents, to be charged and collected at the same time and in the same manner as taxes. But if either of said officers presume to charge or collect any such sum when the proper notice had not been given in good faith, or when from other cause it was improper, the same may be recovered back with costs before any justice of the county. *[Extra charges for failure to give in.]*

SEC. 8. *Be it further enacted*, That no higher nor additional tax shall be paid on account of the code adopted at the present session coming into operation and changing the tax year so as to make it end on the 31st of August or other time ; and to provide against that as well as to avoid *[New Code not to interfere with tax laws.]*

# EXHIBIT 25

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3269   Page 96 of 317

offer to take them on the most favorable terms to the company.

*President to make return.*

Sec. 5. *Be it further enacted*, That it shall become the further duty of the said president to make a full and fair return of the sale of said bonds to the next annual meeting of the stockholders of the company, in which return shall be stated the amount of bonds sold, the name of each purchaser and the rate of interest at which he purchased the bonds he holds on the company.

Sec. 6. *Be it further enacted*, That the bonds hereby authorized to be issued shall not be sold under par.

Sec. 7. *Be it further enacted*, That this act shall take effect from and after its ratification.  [*Ratified the 2d day of February*, 1857.]

---

*Chap. 33.*  AN ACT TO EXTEND THE TIME OF PAYMENT OT THE BONDS DUE FROM THE SEABOARD AND ROANOKE RAILROAD COMPANY TO THE STATE.

*Extends the time of payment five years.*

Sec. 1. *Be it enacted by the General Assembly of the State of North-Carolina, and it is hereby enacted by the authority of the same,* That the time of payment of the bonds held by the State against the Seaboard and Roanoke Company, be extended five years from the first day of January, 1857: *Provided,* Said company pays semi-annually the interest thereon, at the rate of six per cent. per annum.  [*Ratified the 2d day of February*, 1857.]

---

# REVENUE.

*Chap. 34.*                AN ACT ENTITLED "REVENUE."

Sec. 1. *Be it enacted by the General Assembly of the State of North-Carolina, and it is hereby enacted by the authority of the same:*

The following taxes shall be annually collected and paid by the citizens and other persons, and by owners of property situate in the State, besides the taxes which by any other

law may be imposed on them: unless the property in this chapter described shall be expressly exempt from taxation by this or some other law: the property and estate hereby exempted from taxation, are all such and their profits, as may belong to the State, or may belong to or be set apart for the University and colleges, institutes, academies and schools for the education of youth, or the support of the poor or afflicted, or specially set apart for and appropriated to divine worship.  *Exemptions.*

2. There shall be annually levied upon all real property, with the improvements thereon, including entries of land, fifteen cents on every hundred dollars value thereof.  *Land tax.*

3. If any person shall sell his real property and shall have no estate within reach of the sheriff to satisfy the taxes imposed thereon at the time when they become demandable, the land shall be bound for the same, and the land shall be bound in like manner for all the taxes, both real and personal, due from the original owner.  *Land bound.*

4. Upon every free male, between twenty-one and forty-five years of age, a tax of fifty cents; and upon every slave of either sex, between twelve and fifty years of age, a tax of fifty cents shall be paid by the owner, unless when the owner may be a non-resident, then the hirer shall list and pay the tax: *Provided, however,* That the county court may exempt from a poll tax such poor and infirm persons, and disabled and insane slaves as they may declare and record, to be fit objects for exemption: *Provided further,* That the tax imposed by law for the insane asylum of North-Carolina of one and three-fourth cents on every one hundred dollars worth of land, and five and one-fourth cents on every taxable poll, is hereby discontinued.  *Poll tax.*  *Proviso.*

5. Upon each toll gate of a turnpike road, a tax of fifteen dollars shall be paid by every owner, and a tax of five dollars per gate by every person who may be permitted to erect gates across a highway; and a tax equal to seven times the largest toll by the owner demanded upon every public ferry, and a tax of fifteen dollars on every toll bridge.  *Toll gat s.*

6. Upon every studhorse or jackass let to mares for a price, a tax of six dollars, unless the value of the highest season for one mare shall exceed that sum, in which case a  *Studs and Jacks.*

tax of the highest price shall be paid, and they shall be listed by resident owners.   Owners residing out of the State, of such as are kept within the same to be let to mares, shall pay the tax forthwith to the sheriff of any county in which the animal may stand, and in case of failure to do so the sheriff shall forthwith distrain and sell it for the tax.

On collateral descents.

7. Upon the value of all real and personal estate which shall descend upon, be devised or bequeathed to, or shall become distributable among other persons than lineal descendants, or to or for the benefit of the father or mother, or any lineal ancestor of the deceased, where the real estate descended or devised, or both descended and devised, on or to any heir or devisee, shall be of the value of three hundred dollars, or the personal estate bequeathed to any legatee, or distributive share, or both legacy and distributive share, shall be of the value of two hundred dollars; the following taxes shall be paid:

(1) When such collateral relation shall be a brother or sister of the deceased, or any descendant of a brother or sister, a tax of one per cent.

(2) When such collateral relation shall be a brother or sister of the father or mother of the deceased, or any descendant of a brother or sister of the father or mother of the deceased, a tax of two per cent.

(3) When such collateral relation shall be in any other degree of consanguinity to the deceased than is above described, or the legatee or devisee shall be a stranger in blood to the deceased, a tax of three per cent: *Provided however,* That no devise or bequest, or distributive share to the widow of the deceased, nor any devise or bequest to the wife or widow of a son of the deceased, nor to the husband of a daughter of the deceased, whether she be living or dead, shall be taxed; nor shall the husband of any deceased wife receiving her estate after her death, be subject to any tax therefor, unless the same would have been taxable had she been living.

Proviso.

Executor or administrator to retain.

8. The executor or administrator of every such deceased person, on his settlement of the estate, shall retain out of the legacy or distributive share of every such legatee, or next of kin, the tax properly chargeable thereon; and, in case he

may have sold any real estate and there shall be a surplus in his hands not needed to pay debts and charges, he shall retain the proper tax of each person entitled to such surplus; which taxes he shall pay to the clerk of the court of pleas and quarter sessions of the county wherein the will was proved or administration granted.

9. If the executor or administrator shall fail to retain and pay the tax to the clerk, it shall be deemed a breach of his bond, if one shall have been executed, and the same shall be put in suit, on behalf of the State, by the county solicitor; or such executor, or administrator, with his sureties may be sued in equity at the cost of the State, in case of failure. *On failure to retain may be sued.*

10. Whenever the personal property in the hands of such executor or administrator (the same not being needed to be converted into money in the course of administration) shall be of an uncertain value, he shall apply to the county court, to appoint three impartial persons of probity to assess the value thereof; and such assessment being returned to the court and confirmed, shall be conclusive of the value. *How to act when the value is uncertain.*

11. The executor or administrator, as soon as he may ascertain that the land of the deceased will not be needed to pay his debts, shall report to the clerk of the court who receives the tax on personalty, an account of such real estate, and the tax thereon shall be paid by the heirs and devisees thereof respectively, to the said clerk; the value of the real estate to be ascertained as provided in the preceding section in relation to personalty, and the heir and devisee being duly notified of the motion to appoint commissioners. *Executor or administrator to report.*

12. If they, or any of them, fail to pay said tax within twelve months after the report of the executor or administrator, the clerk shall report such default to the commissioner for the judicial circuit; who, thereupon, shall cause a *scire facias* to issue to the defaulting person, to show cause why judgment shall not be rendered against him for the tax, and the real estate be sold to pay the same; and the court shall render judgment and cause the tax to be collected and paid to the clerk. *Scire facias in certain cases.*

13. The clerk shall keep a record of the taxes on the real and personal estate received by him in virtue of the six pre- *Clerk to keep a record.*

ceding sections, and shall return to the comptroller a correct account of the same with his annual statement of other taxable property; and he shall annually return upon oath to the court of pleas and quarter sessions of his county, at the term next preceding the time at which the sheriff may settle with the comptroller, a correct account of the same, and immediately pay the money to the sheriff of the county, retaining three per cent. thereof for his services.

**Commissioners.** 14. The governor shall appoint in each judicial circuit, one or more commissioners, whose duty it shall be to institute and attend to all suits brought to enforce the collection of the tax laid in section *seven* of this chapter; and to bring suits and take such other steps as may be necessary to enforce the collection of all taxes due and unpaid, which have heretofore been laid on property real and personal, descended or devised to collateral relations'; and the commissioners shall receive such compensation for their services as the governor may allow.

**Intermeddlers in estates.** 15. In all cases where estates descend, or are devised to collateral relations, or strangers in blood, and the same shall be divided or settled, or an attempt be made to divide or settle them, without any lawful administration being had upon such estates, any person intermeddling in said estates, shall forfeit and pay the sum of five hundred dollars; to be sued for in the name of the State, in the superior court of the county wherein the testator or intestate had his domicil at the time of his death, and accounted for, when collected, as public tax.

**Administration.** 16. Whenever any person shall die, leaving no lineal descendants, and leaving property liable to the tax imposed by the *seventh* section of this chapter, and no administration shall be had on the estate, within three months thereafter, it shall be the duty of the county court, upon being informed of the fact, to grant administration thereof to the clerk of the county court, who shall retain and account for the tax according to the preceding sections of this chapter.

**Duty of commissioners.** 17. It shall be the duty of the commissioners to institute suit for all penalties incurred by clerks for failing to collect and account for the tax on collateral descents; which penalties shall be accounted for as public tax.

18. Every conveyance made by such deceased person **Fraudulent conveyance void.** with intent fraudently to evade the collection of said taxes, or any of them, shall, as against the State, be void ; and the same shall be chargeable at the suit of the State, on the property conveyed, in the hands of such vendee or donee, and his assignee.

19. Upon every dollar, more than six dollars, of net in- **Tax on interest.** terest, not previously listed, either received during the year, next preceding the first day of April, or during that time, accrued, or converted into principal so as to become an interest-bearing subject, (whether demandable or not) on money owed, by solvent debtors, wherever they may reside, a tax of four cents.

20. Upon every dollar, more than six dollars, of net div- **On dividends, profits, &c.** idend or profit, not previously listed, actually due or received during the year, ending on the said first day of April: upon money invested in steam vessels of twenty tons burden or upward, or in *stocks* of any *kind*, or in *shares* of any *incorporated* or *trading* company, whether in or out of the State, and herein shall be included all *bank* dividends, *bonds* and *certificates* of debt, of any other State, a tax of four cents.

21. Such net interest, dividend, or profit, shall be ascer- **How ascertained.** tained by deducting from the whole amount thereof, such interest as during that time had accrued against the payer of the tax.

22. Upon every hundred dollars employed in buying **Tax on capital.** and selling slaves, upon speculation, a tax of thirty-three and one-third cents: upon all sums of one hundred dollars and upward, employed in any other species of trade, for profit, by buying and selling, not in this chapter specially taxed, a tax of twenty cents; whether these trades be carried on with cash or upon credit.

23. Upon each sulky, gig, buggy, barouche, carriage, **Pleasure vehicles.** and other pleasure vehicles in use by the owner, or by his consent, of the value of fifty dollars, and upwards, there shall be paid a tax of one per cent. upon the value thereof.

(2) Upon all gold and silver plate and ornamental jewel- **Plate, &c.** ry in use, except ornamental jewelry worn by females, of as great a value as twenty-five dollars, one and one-fourth

3

1856–'57.——Chap. 84.

per cent. on the value: on each gold watch in use, one dollar and twenty-five cents; on each silver or other watch in use, thirty cents.

**Harps and pianos.**

(3) On each harp in use, two dollars and fifty cents; on each piano forte in use, one dollar and fifty cents.

**Pistols, &c.**

(4) On every pistol, except such as are used exclusively for mustering, and on every bowie-knife, one dollar and twenty-five cents; on dirks and sword canes, sixty-five cents: *Provided, however*, That of said arms, only such shall be taxable, as at some time within the year have been used, worn or carried about the person of the owner, or of some other, by his consent.

**Retailers and canes.**

(5) On all licensed retailers of wines, cordials, or spirituous liquors, thirty dollars; on all gold-headed walking canes, in use by the owner, fifty cents; on all silver-headed walking canes, in use by the owner, twenty-five cents.

**Tavern keepers.**

(6) All keepers of houses of public entertainment, whether in town or country, whose annual receipts amount to three hundred dollars or more, shall pay a tax of one-fourth of one per cent.: *Provided*, That nothing herein contained shall authorize the keepers of such houses to retail spirituous liquors, without taking a license to sell the same from the county courts, and paying tax for the same.

**Billiard tables.**

(7) On each public billiard table, one hundred and twenty-five dollars, except when there are more than one kept by the same individual in the same room; in that case, a tax of one hundred and twenty-five dollars, shall be paid on the first, and sixty-five dollars on each additional table; on each private billiard table, twenty-five dollars.

**Bowling alleys.**

(8) On each public bowling alley, commonly called nine pin or ten pin, or by what other name called, fifty dollars, and for each additional bowling alley, fifteen dollars.

**Livery stables.**

(9) On each livery stable, twenty-five dollars.

**Cards.**

(10) On each pack of playing cards, thirty-five cents, to be paid by the seller; and every merchant, shop-keeper, retailer, inn or ordinary or tavern-keeper, or public dealer in goods, wares and merchandise, or other thing, shall list the number of packs he may have sold during the year.

**Peddlers of patent medicines, &c.**

(11) On all peddlers of patent soap, medicines for killing crows, chinches and other vermin, for the curing of head-

# EXHIBIT 26

and 15th lines the words "first volume of public acts," and insert the words "each of the volumes embracing both the public and private acts."   [*Ratified the 16th day of February*, 1859.]

---

## REVENUE.

*Chap.* 25.                    AN ACT ENTITLED REVENUE.

**District board of valuation, how appointed.** SECTION 1. *Be it enacted by the General Assembly of the State of North-Carolina, and it is hereby enacted by the authority of the same,* That at the first Court of Pleas and Quarter Sessions for each county, held after the first day of July, 1859, and at the same term every four years thereafter, the court shall appoint one justice of the peace, and two freeholders, men of skill and probity, for each captain's district in the county, who shall be styled the district board of valuation of their respective districts.   The clerk shall issue a notice of his appointment to each man, within ten days, and the sheriff shall serve the same within twenty days after adjournment of the court.   Should the court fail to make the required appointments, or should, from any cause, a vacancy occur, any three justices of the peace may make the required appointments, or fill the vacancy.

**Board to ascertain value.** 2. This district board of valuation shall, as near as practicable, ascertain the cash value of every tract of land, or other real estate, with the improvements thereon, situate in their district, either by viewing the premises or otherwise.

**May call and swear witnesses.** 3. In estimating the value, the board may call and swear witnesses to testify thereto, and they shall take into the estimate any fishery appurtenant thereto or used with the land ; also all mines of metal, stone or coal, or other material discovered, or supposed to exist, whereby the price of land is enhanced ; also, all machinery and fixtures for manufacturing or mechanical purposes, that have been erected or used on the land.   When a tract of land shall be in one or more districts, the board of the district in which the owner resides shall ascertain the value of the whole tract ; and if the owner reside in neither of the districts, the board

of the district in which the larger part may lie, shall ascertain the value of the whole.

4. The owner of the land, or (if he be a non-resident) his agent shall furnish the district board with a list, including land entries, setting forth the separate tracts, and also the several contiguous bodies or tracts of land owned by him in the district, together with the names of the water courses, or other noted places on, or nearest to which they may be situated, and the number of acres in each separate tract or contiguous body of land. *Owner to furnish list.*

5. Town lots shall be listed separately, and each lot be numbered according to the plot of the town. Each separate body or tract of land, and each town lot shall be separately and distinctly valued and returned. *Town lots.*

6. The district boards shall, in each case, administer the following oath to the person furnishing the required list: "You, A. B., do solemnly swear that the list, by you furnished, contains a full statement of every tract of land and town lot in this district, for the taxes of which you are liable, either in your own right or the right of any other person, either as guardian, attorney, agent or trustee, or in any other manner whatsoever, to the best of your knowledge and belief, so help you God." *Oath.*

7. If any person shall refuse to furnish the list required above, or to take the oath prescribed in the preceding section, he shall be deemed guilty of a misdemeanor, and the justices of the peace of said board shall bind him over to appear at the next term of the Superior Court of the county to answer the charge; and, on conviction or submission, he shall be fined at the discretion of the court. *Refusal to take oath.*

8. When the owner of the land, or (if he be a non-resident of the State) his agent, be not a resident of the district where the land is situated, the required list, with affidavits of the same import as the above required oath, subscribed and sworn to before and certified by a justice of the peace, may be transmitted to the district board of valuation, and if received before the board shall be ready to value the land contained in the list, such list shall be received as though tendered and sworn to by the owner or agent in person. *Non-residents.*

**When list is not furnished.** 9. When the board of valuation are not furnished with a list sworn to as above required, or the owner or agent refuses to answer to the correctness of the statement as to the number of acres contained in any tract of land, they may procure a county or other surveyor, and have the same surveyed. And the surveyor may recover the amount of his fees and all expenses out of the owner of the land, before a justice of the peace, by warrant or attachment.

**Boards to value real property.** 10. The district boards of valuation shall, as soon as practicable after their appointment, proceed to value all real property in their respective districts, as above directed, complete the lists by the first of January, after their appointment, and annex the following affidavit, subscribed and sworn to before a justice of the peace, who shall certify the same : "We do solemnly swear that we have diligently enquired, and do not believe that there is any real property in the ——— district of ——— county, subject to taxation, that is not entered and valued in the above list, and the foregoing valuation of real property, with the improvements thereon, and privileges thereto attached, is in our judgment and belief the actual value thereof in cash; and that in assessing the same, we have endeavored to do equal justice to the public and to the individuals concerned, so help us God." This list and valuation shall remain in the hands of the justice of the peace of the board, and be open to the inspection of any one who wishes to examine it, until returned as hereinafter directed.

**Justices to meet.** 11. On the second Monday of January, after the appointment of the district boards of valuation, the persons who were appointed as justices of the peace to be members of the different district boards, shall meet at the court house, and organize themselves into a county board of valuation, by electing, by ballot, one of their number chairman, and another secretary. In case a justice of the peace of any district board, from any cause cannot attend, the older of the two members of the board shall take his place.

**Boards to make returns of lists.** 12. To this county board of valuation shall the district boards of valuation make returns of their lists. This board shall carefully examine and compare all the lists, and if, in their opinion, the real property throughout the county shall

not have been assessed by a uniform standard of value, they may re-assess any district or any separate tract or tracts or lots of land.

13. If any one deem that too high a valuation was put on his land, he may apply to the county board of valuation for redress, and they shall duly consider the case and decide as in their judgment is right. The board may call, swear and examine witnesses, or in person view the land about the value of which they are in doubt.

*When valued too high.*

14. Two-thirds of the entire number of the members, composing the county board of valuation, shall form a quorum for the transaction of business, and the decision of a majority of the members present shall stand as the decision of the board.

*Two-thirds to be a quorum.*

15. If in the opinion of the county board of valuation, any tract or tracts of land or town lots have been assessed at too low a value, they shall make lists of such tracts or lots, and post them in at least two conspicuous places in the court house, at the time of their adjournment. After they shall have examined and compared the lists, heard the complaints of all who may feel themselves aggrieved by the valuation of their property, the board shall post the lists as above required, and adjourn until the first Monday in April following, when they shall again meet at the court house, hear the complaints of all who may feel themselves aggrieved by their former action, or by the original valuation, and decide each case as to them may appear right; and from this decision there shall be no appeal.

*When valued too low.*

16. When the county boards of valuation shall have performed the duty on them imposed, they shall return the lists received of the district boards of valuation, as by them revised and corrected, to the clerk of the county court, before whom they shall subscribe and swear to the following affidavit annexed to the lists returned: "We solemnly swear that the foregoing lists have been carefully examined and compared, and, in our judgment and belief, they do, as now corrected, exhibit the actual cash value of every tract or lot of land in this county, with the improvements thereon and privileges thereto attached; and in the discharge of our duties we have endeavored to do equal justice to the public

*Lists to be returned to clerk.*

and the individuals concerned, so help us God." The clerk, on receiving the lists from the county board of valuation, shall record them in alphabetical order, keeping the return of each district separate from the other.

Compensation.

17. Each member of the county and district boards of valuation shall receive, out of the county treasury, such compensation as the county court may allow, which, however, shall in no case exceed two dollars a day for the time engaged in the discharge of his duties.

Takers of tax lists—how appointed.

18. At the first court of pleas and quarter sessions of each county, held after the first day of April in each year, the court shall annually appoint, for each captain's district, a justice of the peace or a freeholder of known skill and probity, to take the lists of taxable subjects, and the names of the appointees and of the districts for which they were appointed, shall, during the term, be advertised at the court house, by the clerk. Should the court fail to make such appointments, any three justices of the peace of the county may meet at the office of the county court clerk, on or before the first day of July, and appoint the takers of the lists of taxables, and the clerk shall record such appointments.

Appointments of takers of tax lists.

19. Notices of all appointments of takers of tax lists, as soon as made, shall be issued by the clerk to the sheriff, who shall serve them within ten days on each appointee, whose duty it shall be to advertise at three several places within the district, at least ten days before the time of listing, the places and times where and when he will attend for the purpose of receiving the lists of taxables; and the days thus determined on shall be between the second Monday in July and first Thursday in August.

Persons incapable of taking lists.

20. Should any person appointed to take the list of taxables, from any cause, become incapable to perform the duties, another shall be appointed by any three justices of the peace of the county, to be notified by the sheriff for that purpose, and the person thus appointed shall take the list of taxables.

Penalty for refusing to serve.

21. If any person appointed to assess the value of lands, or to take the lists of taxables, shall refuse or wilfully fail to discharge the duties of his appointment, he shall be deemed guilty of misdemeanor.

22. Every person appointed to take the list of taxables, shall, before he enters upon the discharge of his duties, take the following oath, administered by a justice of the peace: "I, A. B., do solemnly swear that I will well and faithfully discharge the duties imposed by law on me as the taker of the list of taxables in ——— district, ——— county, without prejudice or partiality, to the best of my skill and ability, so help me God." *Oath.*

23. Every person appointed to take the list of taxables, shall, on taking the above oath, be invested with full power to administer oaths, and with all the other powers of a justice of the peace, so far as the same may be necessary to the proper discharge of his duties. Every person so appointed shall receive such compensation for his services as the county court may in its discretion allow, to be paid out of the county treasury. *Powers of takers of tax lists.*

24. Every taker of the list of taxables shall be furnished, by the clerk of the county court, with a fair copy of the returns made by the last preceding board of valuation of the assessment of real estate in his district, and with the necessary number of printed forms of tax bills, furnished by the comptroller, under the provisions of this act. *Clerk to furnish copy of returns by preceding board.*

25. All the property and other subjects of taxation shall be annually taxed, as by this act enacted, unless such property be expressly exempt from taxation by this or some other act; and the property and estate hereby exempted from taxation, are all such and their profits as may belong to the United States, or to this State, or may belong to or be set apart and exclusively used for the university and colleges, institutes, academies and schools for the education of youth, or the support of the poor or afflicted, or specially set apart for and appropriated to the exercises of divine worship or the propagation of the gospel, or such as may be set apart and kept for grave yards belonging to churches, religious societies, cities, towns or counties. *To be taxed annually.* *Exemptions.*

26. The taxes shall be annually collected and paid: First, to the sheriffs, on all property and subjects of taxation required to be listed, as per schedule A; secondly, to the sheriffs, on all property and subjects of taxation which are not required to be listed, but an account of which is to be *How collected and paid.*

rendered on oath to the sheriffs, as per schedule B; thirdly, to the clerks of courts, and to the treasurer of the State, as per schedule C.

### Schedule A.

27. The following subjects shall be annually listed, and be taxed the amounts specified:

**Land.** (1) Real property, with the improvements thereon, (including entries of land,) twenty cents on every hundred dollars of its value.

**Polls.** (2) Every taxable poll eighty cents; *Provided*, That the county court may exempt from poll tax such poor and infirm persons, and disabled and insane slaves as they may declare and record fit objects of exemption.

**Gates, &c.** (3) Every toll gate on a turnpike road, and every toll bridge, five per cent. on the gross receipts, and every gate permitted by the county court to be erected across a highway, fifteen dollars.

**Ferries.** (4) Every ferry one per cent. on the total receipts of tolls during the year.

**Studhorses,&c.** (5) Every studhorse or jackass, let to mares for a price, belonging to a resident of the State, six dollars, unless the highest price demanded for the season for one mare shall exceed that sum, in which case the amount thus demanded shall be paid as tax. The subject shall be listed, and the tax paid in the county in which the owner resides.

**Interest, &c.** (6) Every dollar of net interest, not previously listed, received or accrued, (whether demandable or not,) on or before the first day of July of every year, on bonds or certificates of debt of the United States, of this State, (unless exempt by chapter 90 of the Revised Code, entitled "Public Debt,") or of any other State or government, or of any county or corporation, municipal or private, or on any bond, note, contract, account, or other claim or demand against solvent debtors, wherever they may reside, four cents.

**Dividend and profit.** (7) Every dollar of net dividend or profit, not previously listed, declared, received, or due on or before the first day of July in each year, upon money, or capital invested in steam vessels of twenty tons burden or upwards, or in shares in any bank or other incorporation or trading company, four cents.

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3284   Page 111 of 317

(8) Such net interest, dividend and profit shall be ascertained by deducting from the aggregate amount of interest, dividends and profits accrued in favor of the person listing, the amount of interest accrued against him during the year ending on the first day of July. *How ascertained.*

(9) Every note shaver, or person who buys any note or notes, bond or bonds made by individuals, shall list the profits made and received or secured on all such purchases made by him during the year ending on the first day of July, whether made for cash or in exchange for other notes or bonds, and pay a tax of ten per cent. on the aggregate amount of such profits, in addition to the tax imposed by this act on the interest he may receive on such notes or bonds; *Provided*, There shall be no deduction made from the profits in consequence of any losses sustained. *Note shavers.*

(10) Every person resident in this State, engaged in the business of buying and selling slaves, whether the purchases or sales be made in or out of the State, for cash or on a credit, one-half of one per cent. on the total amount of all his purchases, during the twelve months ending on the first day of July of each year. *Negro traders.*

(11) Every person resident in this State, not a regular trader in slaves, who may buy a slave or slaves to sell again, whether such purchase or sale be made in or out of the State, for cash or on credit, one-half of one per cent. on the total amount of his purchases during the twelve months ending on the first day of July of each year. *Not regular traders.*

(12) Every carriage, buggy or other vehicle kept for pleasure or for the conveyance of persons, of the value of fifty dollars or upwards, one per cent. on its value. *Carriages, &c.*

(13) All gold and silver plate, and gold and silver plated ware, and jewelry worn by males, including watch-chains, seals and keys, when collectively of greater value than twenty-five dollars, one per cent on their entire value. *Plate, &c.*

(14) Every watch in use one per cent. on the value; *Provided*, That all watches worn by ladies shall be exempt from taxation. Every harp in use, $2.50; every piano in use, $1.50. *Watches.*

(15) Every dirk, bowie-knife, pistol, sword-cane, dirk-cane and rifle cane, used or worn about the person of any one *Dirks, &c.*

1858–'59.  CHAP. 25.

at any time during the year, one dollar and twenty-five
cents.  Arms used for mustering shall be exempt from
taxation.

Dentists, phy-
sicians, &c.

(16) Every resident surgeon-dentist, physician, lawyer,
portrait or miniature painter, daguerrian artist, or other
person taking likenesses of the human face: every commis-
sion merchant, factor, produce broker, and auctioneer;
every State and county officer, and every person in the em-
ployment of incorporated or private companies, societies,
institutions or individuals, and every other person, (except
ministers of the gospel and judges of the superior and su-
preme courts) whose annual total receipts and income,
(whether in money or otherwise) in the way of practice,
salary, fees, wages, perquisites and emoluments, amount to,
or are worth five hundred dollars or upwards, one per cent.
on such total receipts and income.

Liquors, &c.

(17) Every resident of the State that brings into this State,
or buys from a non-resident, whether by sample or other-
wise, spirituous liquors, wines or cordials for the purpose of
sale, ten per cent. on the amount of his purchases.  Every
person that buys to sell again, spirituous liquors, wines or
cordials from the maker in this State, his agent, factor or
commission merchant, five per cent. on his purchases.

Collateral de-
scent.

(18) Upon all real and personal estate, whether legal or
equitable, above the value of one hundred dollars, situated
within this State, which shall descend, or be devised or be-
queathed to any collateral relation, or person, other than a
lineal ancestor or descendant, or the husband or wife of the
deceased, or husband or wife of such ancestor or descend-
ant, or to which such collateral relation may become entitled
under the law for the distribution of intestates' estates, and
which real and personal estate may not be required in pay-
ment of debts and other liabilities, the following per centum
tax upon the value thereof, shall be paid:

(*Class* 1) If such collateral relation be a brother or sister,
a tax of one per cent.

(*Class* 2) If such collateral relation be a brother or sister
of the father or mother of the deceased, or child of such
brother or sister, a tax of two per cent.

(*Class* 3) If such collateral relation be a more remote re-

# EXHIBIT 27

259                                    1866–7.

No. 259.]            AN ACT

To relieve the Trustees of Lagrange College, in Franklin
county.

SECTION 1. *Be it enacted by the Senate and House of
Representatives of the State of Alabama in General Assem-* **Relieved from**
*bly convened,* That the trustees of Lagrange college and liabilities.
their securities be and they are hereby relieved from any
and all liabilities which they or any of them may have
incurred under the provisions of an act entitled "An Act
to loan a certain fund to Lagrange college, in the county
of Franklin," and that all notes, bonds, deeds of trust,
or mortgage, or other security given by said trustees,
pursuant to the requirements of said entitled act, be can-
celled by the comptroller of public accounts.

Approved, January 29, 1867.

No. 260.]            AN ACT

To establish Revenue Laws of the State of Alabama.

CHAPTER I—*Exemptions.*

SECTION 1. *Be it enacted by the Senate and House of
Representatives of the State of Alabama in General Assem-* **Rules pre-**
*bly convened,* That the following rules as to the taxation scribed, and
of persons and property are hereby established, to-wit : exemptions.

1. All lands subject to taxation must be taxed in pro-
portion to their value.

2. All lands belonging to citizens of the United States
residing out of the State cannot be taxed higher than
lands belonging to persons residing therein.

3. No tax can be imposed on land the property of the
United States.

4. All the navigable waters within the State are to
remain forever public highways, free to the citizens of
the State and the United States, without any tax, impost
or toll thereon imposed by the State.

5. The following persons and property are exempt
from taxation :

All property belonging to the State, or any county,
city or town thereof, or the State Bank, or its branches.

All property of the United States.

**260**

All religious books kept by ministers of the gospel and colporteurs, for sale or gratuitous distribution, on hand at any one time, to an amount not exceeding in value five hundred dollars' worth in any one year.

All property of literary, scientific and benevolent institutions, actually used for the purposes for which said institutions were created, not exempting, however, any of such property when employed in any other than the regular business of such institutions.

Houses of religious worship, and their appurtenances.

Places and monuments of the dead, and implements of burial.

All tools and implements in actual use of any calling, occupation or trade, to the value of one hundred dollars.

All insane persons and their property, to the value of one thousand dollars.

All disabled or crippled persons, whose taxable property does not exceed five hundred dollars, from any poll tax.

All lands donated by acts of Congress to railroads in this State remaining unsold and uncultivated.

## CHAPTER II—*Subjects of Taxation.*

SEC. 2. *Be it further enacted*, That taxes are to be assessed by the assessor in each county on and from the following subjects, and at the following rates, to-wit:

Poll tax.

1. On every male inhabitant between the ages of eighteen and fifty, (except those persons between the ages of eighteen and twenty-one, the emoluments of whose labor go to parents or masters) the sum of two dollars; and to insure the payment of such tax, it shall be the duty

Corporations, &c., give number of employees.

of all partnerships, associations, corporations, officers or individuals to return to the assessor the number and names of persons in their employment on the first day of February of each year, as clerks, book-keepers, overseers, deputies, agents, workmen, journeymen, or laborers subject to such tax, which tax the assessor shall assess against such employer, by them to be deducted out of the hire, wages or salary of such employees as before enumerated; and upon the failure of any employer to make return of such employees when called upon by the assessor to do so, the assessor shall proceed to ascertain the number of such employees from the best sources of information practicable, and such employer so failing shall be held liable in double the amount of the tax.

261                                              1866–7.

2. On all real estate, to be estimated at its market **Real estate, 3.10 of 1 per cent.** value in money, according to the best judgment the assessor can form by information, inspection or otherwise, taking into consideration its location, whether in town, city or the country, its proximity to local advantages, its quality of soil, growth of timber, mines, minerals, quarries, or coal beds, and the amount and character of improvements, three-tenths of one per cent. *ad valorem.*

3. On all mills, foundries, forges, mining establishments, quarries, lime or marble works, gin and carriage **Articles taxed 3.10 of 1 per cent.** making shops, tanneries, and other manufacturing establishments.

On all wharves and wharf boats, toll bridges and ferries, turnpikes, and all passes, channels or canals, where tolls are charged.

On all stocks of goods, wares and merchandise on hand to be assessed upon not less than the largest amount on hand at any one time during the preceding year, and this shall include all merchandise kept on plantations for sale, or to be dealt out to laborers; *Provided,* That any goods, wares or merchandise offered for sale by any dealear or person, commencing business subsequent to the first day of January of the current tax year, shall become at once liable to the tax levied by this act, and must be estimated upon the maximum amount thereof.

On all horses and mules not used strictly for agricultural purposes, except studs, jacks and race horses.

On all cattle on the excess over five head.

On all household furniture, on the excess over three hundred dollars.

On all libraries not exempted by law, on the excess over three hundred dollars.

On all clocks kept for use, and

On all other property, real, personal, or mixed, not otherwise specified and taxed herein, or exempted therefrom—and this shall not be construed to tax the crops produced upon lands within this State taxed under the second paragraph of this section, as real estate—three tenths of one per cent. *ad valorem; Provided,* No hogs, sheep, goats, or poultry, kept or raised for the use of any family, or work oxen, or animals used for agricultural purposes exclusively, and no farming tools and implements of husbandry necessary on the farm, shall be taxed by this act.

4. On all vehicles not exclusively used for agricultural purposes.

1866–7.                        262

On all jewelry, plate and silver ware, ornaments and
*Articles taxed* articles of taste, pianos and other musical instruments,
½ of 1 per cent. and paintings, except family portraits.

On all cotton presses and pickeries.

On all studs, jacks, and race horses.

On all gold and silver watches, and gold safety chains.

On all money hoarded, or kept on deposit subject to
order, either in or out of the State, except funds held
subject to draft in the prosecution of a regular exchange
business, and except also money kept on hand to defray
current family expenses, for a period not exceeding one
year.

On all money loaned, and solvent credits bearing in-
terest, from which credits the indebtedness of the tax
payer shall be deducted, and the excess only shall be
taxed.

On all money employed in buying or trading in paper,
or in a regular exchange business, or invested in paper,
whether by individuals or corporations, except where
the money so employed or invested is otherwise taxed as
capital.

On the capital stock, actually paid in, of all incorpo-
rated companies, created under any law of the State,
whether general or special, (except railroads,) and not
exempted by their charter from such tax. except any
portion that may be invested in property and taxed oth-
erwise as property, one half of one per cent. *ad valorem.*

5. On the gross amount of all sales at auction, made
in or during the tax year preceding the assessment, ex-
*Auction sales* cept those made by or under the direction of executors,
½ of 1 per cent. administrators, and guardians, as such, by order of court
or under legal process, and under any deed, will, or
mortgage, at the rate of one fourth of one per cent *ad
valorem.*

6. On the gross amount of premiums, (after deducting
*Premiums 1* threfrom all return premiums,) received from their busi-
per cent. ness in this State during such tax year, by any insurance
company not chartered by this State, and doing business
herein by agents or otherwise, at the rate of one per
cent.

7. On the gross amount of commissions or sums
*Gross commis-* charged or received in or during such tax year, by any
*sions, &c., 1 per* factor, commission merchant, or auctioneer, in buying,
cent. selling, or any other act done in the course of their
business.

On the gross receipts, during such tax year, of all cotton pickeries, and from the storage of cotton, or other merchandise, or produce, at the rate of one per cent. <span style="float:right">Cotton pickeries 1 per cent.</span>

8. On every pack, or part of a pack of playing cards, sold by wholesale, retail, or otherwise disposed of, during such tax year, fifty cents. <span style="float:right">Playing cards 50 cents.</span>

9. On every legacy, where letters testamentary have not been taken out in this State, received by any person other than the child, adopted child, grandchild, brother, sister, father, mother, husband, or wife, and on all property given by deed or otherwise, to any such person, on the amount or value thereof, to be assessed to the beneficiary, guardian, trustee, or legal representative, at the rate of three per cent. <span style="float:right">Bowie knives 3 per cent.</span>

10. On all pistols or revolvers in the possession of private persons not regular dealers holding them for sale, a tax of two dollars each, and on all bowie knives, or knives of the like description, held by persons not regular dealers, as aforesaid, a tax of three dollars each; and said tax shall be collected by the assessor when assessing the same, on which a special receipt shall be given to the tax payer therefor, showing that such tax has been paid for the year, and in default of such payment, when demanded by the assessor, said pistols, revolvers, bowie knives, or knives of like description, shall be seized by him, and unless redeemed by payment in ten days thereafter, with such tax, with an additional penalty of fifty per cent., the same shall be sold at public outcry before the court house door, after five days notice; and the overplus remaining, if any, after deducting the tax and penalty aforesaid, shall be paid over to the person from whom the said pistol, revolver, bowie knife, or knives of like description, were taken, and the net amount collected by him shall be paid over to the collector every month, from which, for each such assessment and collection, the assessor shall be entitled to fifty cents, and when the additional penalty is collected, he shall receive fifty per cent. additional thereto. <span style="float:right">Pistols $2 00.<br/>Bowie knives.<br/>How collected.</span>

11. On all steamboats, vessels, and other water crafts plying in the navigable waters of the State, at the rate of one dollar per ton of the registered tonnage thereof, which shall be assessed and collected at the port where such vessels are registered, if practicable; otherwise, at any other port or landing within the State where such vessels may be; but this shall not include flat-bottom <span style="float:right">Steamboats $1 00 per ton.</span>

# EXHIBIT 28

4. All property of literary, scientific, and benevolent institutions, Societies.
actually used for the purposes for which said institutions were
created, not exempting, however, any of such property when em-
ployed in any other than the regular business of such institutions.

5. Houses of religious worship, and their appurtenances. Houses of worship

6. Places and monuments of the dead, and implements of burial. Burial places.

7. All tools and implements in actual use of any calling, occupa- Tools of trade.
tion or trade, to the value of one hundred dollars.

8. All insane persons and their property, to the value of one Insane persons.
thousand dollars.

9. All disabled or crippled persons, whose taxable property does Crippled.
not exceed five hundred dollars, from any poll tax.

10. All lands donated by acts of congress to railroads in this state Railroad lands.
remaining unsold and uncultivated.

————

## ARTICLE II.

*Subjects and rates of assessment by assessors as to property and persons.*

SECTION.
434.  Subjects and rates of assessment by assessors.

SECTION.
435.  Assessment of incomes, &c.

§ 434. *Subjects and rates of assessment by assessors.*—[a]Taxes must be a. 19 Feb'y, 67,
assessed by the assessor in each county on and from the following p. 269. § 2.
subjects, and at the following rates, to-wit:

1. On every male inhabitant between the ages of eighteen and
and fifty, (except those persons between the ages of eighteen and Polls.
twenty-one, the emoluments of whose labor go to parents or mas-
ters) the sum of two dollars; and to insure the payment of such tax,
all partnerships, associations, corporations, officers or individuals
must return to the assessor the number and names of persons in
their employment on the first day of February of each year, as
clerks, book-keepers, overseers, deputies, agents, workmen, journey-
men, or laborers subject to such tax, which tax the assessor shall as-
sess against such employers, by them to be deducted out of the hire,
wages or salary of such employees as before enumerated; and upon
the failure of any employer to make return of such employees when
called upon by the assessor to do so, the assessor must proceed to
ascertain the number of such employees from the best sources of
information practicable, and such employer so failing shall be held
liable in double the amount of the tax.

2. On all real estate, to be estimated at its market value in money, 3-10 of 1 per ct.
according to the best judgment the assessor can form by informa-
tion, inspection or otherwise, taking into consideration its location, Real Estate.
whether in town, city or the country, its proximity to local advan-
tages, its quality of soil, growth of timber, mines, minerals, quar-
ries, or coal beds, and the amount and character of improvements,
three-tenths of one per cent. *ad valorem.*

3. On all mills, foundries, forges, mining establishments, quarries, Mills.
lime or marble works, gin and carriage making shops, tanneries, and
other manufacturing establishments;

On all wharves and wharf boats, toll bridges and ferries, turn- Wharves, &c.
pikes, and all passes, channels or canals, where tolls are charged;

On all stocks of goods, wares and merchandise on hand to be as- Merchandise.
sessed upon not less than the largest amount on hand at any one

time during the preceding year, and this shall include all merchandise kept on plantations for sale, or to be dealt out to laborers; but any goods, wares or merchandise offered for sale by any dealer or person, commencing business subsequent to the first day of January of the current tax year, shall become at once liable to the tax levied by this act, and must be estimated by the maximum amount thereof;

*Horses.*     On all horses and mules not used strictly for agricultural purposes, except studs, jacks and race horses;

*Cattle.*     On all cattle on the excess over five head;

*Furniture.*     On all household furniture, on the excess over three hundred dollars;

*Libraries.*     On all libraries not exempted by law, on the excess over three hundred dollars;

*Clocks.*     On all clocks kept for use; and

*Other property.*     On all other property, real, personal, or mixed, not otherwise specified and taxed herein, or exempted therefrom—and this shall not be construed to tax the crops produced upon lands within the state taxed under the second subdivision of this section, as real estate—three-tenths of one per cent. *ad valorem;* but no hogs, sheep, goats, or poultry, kept or raised for the use of any family, or work oxen, or animals used for agricultural purposes exclusively, and no farming tools and implements of husbandry necessary on the farm, shall be taxed by this act.

*⅒ of 1 per cent. Vehicles. Jewelry, &c.*     4. On all vehicles not exclusively used for agricultural purposes; On all jewelry, plate and silver ware, ornaments and articles of taste, pianos and other musical instruments, and paintings, except family portraits;

*Cotton presses. Studs, &c. Watches, &c.*     On all cotton presses and pickeries; On all studs, jacks, and race horses; On all gold and silver watches, and gold safety chains;

*Money hoarded*     On all money hoarded, or kept on deposit subject to order, either in or out of the state, except funds held subject to draft in the prosecution of a regular exchange business, and except also money kept on hand to defray current family expenses, for a period not exceeding one year;

*Money loaned.*     On all money loaned, and solvent credits bearing interest, from which credits the indebtedness of the tax payer shall be deducted, and the excess only shall be taxed;

*Money employed.*     On all money employed in buying or trading in paper, or in a regular exchange business, or invested in paper, whether by individuals or corporations, except where the money so employed or invested is otherwise taxed as capital;

*Stock of corporations.*     On the capital stock, actually paid in, of all incorporated companies, created under any law of the state, whether general or special, (except railroads,) and not exempted by their charter from such tax, except any portion that may be invested in property and taxed otherwise as property, one-half of one per cent. *ad valorem.*

*⅒ of 1 per cent. Auction sales.*     5. On the gross amount of all sales at auction, made in or during the tax year preceding the assessment, except those made by or under the direction of executors, administrators and guardians, as such, by order of court or under legal process, and under any deed, will or mortgage, at the rate of one-fourth of one per cent.

*1 per cent.*     6. On the gross amount of premiums, (after deducting therefrom all return premiums,) received from their business in this state during such tax year, by any insurance company not chartered by this state, and doing business herein by agents or otherwise, at the rate of one per cent.

*Foreign insurance companies on premium. Gross commissions, &c.*     7. On the gross amount of commissions or sums charged or re-

ceived in or during such tax year, by any factor, commission merchant, or auctioneer, in buying, selling, or any other act done in the course of their business;

On the gross receipts, during such tax year, of all cotton pickeries, and from the storage of cotton, or other merchandise, or produce, at the rate of one per cent. *Cotton.*

8. On every pack, or part of a pack of playing cards, sold by wholesale, retail, or otherwise disposed of, during such tax year, fifty cents. *Cards, 50 cents.*

9. On every legacy, where letters testamentary have not been taken out in this state, received by any person other than the child, adopted child, grandchild, brother, sister, father, mother, husband, or wife, and on all property given by deed or otherwise, to any such person, on the amount or value thereof, to be assessed to the beneficiary, guardian, trustee, or legal representative, at the rate of three per cent. *Legacies, 3 per cent.*

10. On all pistols or revolvers in the possession of private persons not regular dealers holding them for sale, a tax of two dollars each; and on all bowie knives, or knives of the like description, held by persons not regular dealers, as aforesaid, a tax of three dollars each; and such tax must be collected by the assessor when assessing the same, on which a special receipt shall be given to the tax payer therefor, showing that such tax has been paid for the year, and in default of such payment when demanded by the assessor, such pistols, revolvers, bowie knives, or knives of like description, must be seized by him, and unless redeemed by payment in ten days thereafter, with such tax, with an additional penalty of fifty per cent., the same must be sold at public outcry before the court house door, after five days notice ; and the overplus remaining, if any, after deducting the tax and penalty aforesaid, must be paid over to the person from whom the said pistol, revolver, bowie knife, or knife of like description, was taken, and the net amount collected by him must be paid over to the collector every month, from which, for each such assessment and collection, the assessor shall be entitled to fifty cents, and when the additional penalty is collected, he shall receive fifty per cent. additional thereto. *Pistols, knives.*

11. On all steamboats, vessels, and other water crafts plying in the navigable waters of the state, at the rate of one dollar per ton of the registered tonnage thereof, which must be assessed and collected at the port where such vessels are registered, if practicable; otherwise, at any other port or landing within the state where such vessels may be; but this does not include flat-bottom sail boats, or other like craft, employed exclusively in the transportation of wood, lumber, or coal, which shall only be assessed at the rate of twenty-five cents per ton. *Steamboats.* *Other boats.*

12. On the gross profits of all banking associations, created under the laws of the United States, at the rate of two per cent. *Banking companies.*

13. On all acts of incorporation granted by the general assembly, other than acts incorporating cities or towns, and acts incorporating manufacturing companies, an *ad valorem* tax of one tenth of one per cent. on the estimated value of the interest involved, or capital authorized as a bonus, to be due and payable to the tax collector of the county in which the office of such incorporation may be located, whenever such corporation shall commence actual operation; and this shall apply to all such acts passed by the general assembly of 1866–7. *Acts of incorporation.*

14. On all dividends declared or earned and not divided by incorporated companies created under the laws of this state, (except rail- *Dividends.*

roads,) to be assessed to and paid by the companies earning or declaring the same, a tax of one per cent.

15. On the gross receipts of all railroads and horse railroad companies, for freight and passengers, within the limits of this state, a tax of one half of one per cent.; but upon any railroad extending beyond the limits of this state, this tax shall only be assessed upon such *pro rata* portion of the receipts of such company, as the length of the road within the state may bear to the entire length of the road upon which the earnings accrue.

**Gross receipts of railroads.**

16. On the gross receipts of all petroleum and oil companies, or distillers of coal oil, a tax of one per cent.

**Petroleum**

§ 435. *Assessment of incomes, salaries, &c.*—[b]There must be assessed and collected upon the annual gains, profits, or incomes, of every person residing within the state, from whatever sources derived, and upon all salaries and fees of public officers, and upon the salaries of all other persons, upon the excess of such gains, profits, incomes, fees, or salaries, over five hundred dollars, at the rate of one per cent. In estimating the annual gains, profits, or income, of any person, all national, state, county and municipal taxes assessed to and paid by such person within the year, except the tax assessed under this section, must be deducted therefrom; also, all income derived from dividends, or on shares in the capital stock of any incorporated company, (where such tax has been assessed and paid by such incorporated company;) also, the amount paid by any person for the rent of the homestead used, or the rental value of the same, if owned by himself or his family; also, when any person rents buildings, lands, or other property, or hires labor to cultivate such lands, or to conduct any other business from which such income is actually derived, or pays interest upon any actual incumbrance thereon, the amount actually paid for such rent, labor, or interest, or the rental value of any lands cultivated as above, if owned by the occupant thereof, must be deducted; also, the amount paid out for usual ordinary repairs, not including any new buildings or permanent improvements, must be deducted; *Provided,* That any person shall be exempted from the operations of this section, upon whose gross receipts, commissions, or profits, taxes are assessed under the provisions of the preceding section.

**b. 19 Feb'y, 67, p. 264, § 4.**

---

# ARTICLE III.

*Licenses and taxes to be collected by the probate judge.*

SECTION.
436.   Taxes collected by probate judge.
437.   Licenses issued by the probate judge.
438.   Tax on distilleries payable to probate judge, &c.

SECTION.
439.   To what time, person and place licenses are restricted.

§ 436. *Taxes collected by the probate judge.*—[a]Taxes must be assessed and collected by the judge of probate, as follows, to-wit:

**a. 19 Feb'y, 67, p. 265, § 4.**

1. On every legacy subject to assessment, left by any will on which letters testamentary are taken out in this state, there must be assessed and collected by the judge of probate of the county in which such letters are taken out, a tax of one-half of one per cent. *ad valorem,* and if not paid on the receipt of such legacy, such judge must issue execution for the amount of such assessment, against the exec-

**Legacy.**

# EXHIBIT 29

134    LAWS OF MISSISSIPPI,

## CHAPTER CXXV.

AN ACT to prohibit the assessment and collection of taxes on Bowie-knives, Sword-canes and Dirk-knives.

SECTION 1. *Be it enacted by the Legislature of the State of Mississippi,* That it shall not be lawful for any Sheriff or Tax-Collector to collect from any tax payer the tax heretofore or hereafter assessed upon any bowie-knife, sword-cane, or dirk-knife, and that hereafter the owner of any bowie-knife, sword-cane or dirk-knife, shall not be required to give in to the tax assessors either of the aforesaid articles as taxable property, any law to the contrary notwithstanding.

SEC. 2. *Be it further enacted,* That this act be in force and take effect from and after its passage.

Approved, December 19, 1861.

## CHAPTER CXXVI.

AN ACT to amend the laws in relation to the State University.

SECTION 1. *Be it enacted by the Legislature of the State of Mississippi,* That the State University at Oxford shall hereafter be under the control and management of a Board of Trustees—thirteen in number, of whom the Governor of the State for the time being shall be one, and shall be the President of said Board; in the absence of the Governor a President *pro tem.* shall be elected by the Trustees from among their number present. The remaining twelve Trustees shall be chosen by a joint convention of the two Houses of the Legislature during its present session.

Of trustees.

SEC. 2. *Be it further enacted,* That the said Trustees when elected shall be notified by the Governor to assemble at the University at an early day, to be fixed upon by him, and when so assembled they shall proceed to devide the twelve Trustees so elected by lot, into three equal classes and the members of the first class shall hold their

Tenure of office of trustees.

office for the term of two years from the day of
their election, those of the second class four years
and those of the third class six years, and four
Trustees shall be chosen by the Legislature in joint
convention at every regular session to supply the
places of the class whose term is about to expire.

SEC. 3. *Be it further enacted*, That vacancies
in said Board, happening in the recess of the
Legislature by non-acceptance, death, resignation,
removal from the State or otherwise, shall be filled
by the remaining Trustees, by election to continue
until the end of the next regular session of the
Legislature, the vacancy or vacancies shall be
filled by the Legislature in the mode above direc-
ted, at the session succeeding the same. *Of vacancies.*

SEC. 4. *Be it further enacted*, That the Board
of Trustees created in pursuance of this act, shall
possess all the powers vested in the present Board
of Trustees of said University, and it shall be
their duty to present to the Legislature at the
commencement of each regular session a full report
of the operation and condition of the University
and a detailed statement, of all expenditures of
money on account thereof, and also to recommend
such measures as they may think necessary for
the interest, improvement and efficiency thereof. *Powers of trustees.*

SEC. 5. *Be it further enacted*, That all laws in
conflict with the provisions herein contained are
hereby repealed, and that this act shall take effect
from its passage.

Approved, December 19, 1861.

## CHAPTER CXXVII.

AN ACT for the relief of the Register and Receiver of the
Land Office at Washington, Mississippi.

WHEREAS, By an ordinance, passed by the Con-
vention of the State of Mississippi, dated the 26th
day of January, 1861, entitled an ordinance sup-
plemental to an ordinance entitled an ordinance
concerning the jurisdiction and property of the
United States of America in the State of Missis-

# EXHIBIT 30

## AMENDING CHARTER OF JESUP.

### No. 103.

An Act to alter and amend an Act entitled '' An Act to incorporate the town of Jesup, and to confer certain powers on the Commissioners thereof, and for other purposes therein named,'' approved October 24, 1870, so as to increase the number of Aldermen of said town to six ; to enlarge, prescribe and define the·term of office of the Mayor and Aldermen of said town, and prescribe the salary of the Mayor thereof; create the office of Clerk, Treasurer, Marshal, Assistant Marshal, Policemen and Town Attorney and Town Physician, and Assessors of said town, and authorize the Mayor and Aldermen thereof, to define their duties and powers, term of office, oath, bond, costs and salary ; to fix a time for elections of all officers of said town; to designate the corporate name of said town ; to authorize the Mayor and Aldermen of said town to own and hold property for said town, both real and personal, as well beyond, as in its corporate limits ; to authorize the collection of *ad valorem* taxes, and all property in said town, not exceeding one and one half per cent. of its value ; to authorize the collection of licenses or business taxes on all businesses carried on in said town ; to pre- Heading. scribe for the working of the streets ·y certain inhabitants of said town, and authorize the discharge of that service by the payment of money ; to authorize the issuing of executions for unpaid taxes against person and property ; to prescribe the time for the sale of property under tax executions ; to authorize the Mayor and Aldermen of said town to buy in property at tax sales ; to provide for the registration of voters and the payment of registration fee ; to create a Board of Health ; to prescribe qualifications of voters in said town ; to more clearly define the limits of said town ; to authorize the Mayor and Aldermen of said town to pass ordinances regulating and preventing the running at large of certain animals in the streets of said town ; to prohibit and regulate the walking on the streets of said town of disreputable characters after nine o'clock at night ; to prevent and punish for the use of vulgar and obscene language ; to define, prohibit and punish lewd and disorderly conduct ; to establish and regulate markets ; to license and control all places of public amusement ; and to license performances, circuses and shows ; to prescribe fire limits ; to prohibit the discharge of fire arms and to pass all ordinances for the welfare of said town ; to abate nuisances, define fire proof buildings and regulate and control the erection of such within said town ; to borrow money and contract loans for the public good of said town ; to authorize the Mayor and Aldermen of said town to lay out streets,

Amending Charter of Jesup.

alleys and public squares in said town ; to widen or alter or close up any street, alley or public square of the same ; to provide for the taking and payment for property for that purpose, and prescribe the manner of doing the same ; to give the Mayor and Aldermen of said town complete jurisdiction over the streets, sidewalks, drains and public squares ; and to regulate license and control the sale of liquor in said town and to prescribe the amount of license therefor ; and to confer upon the Mayor and Aldermen of said town other and further powers and privileges and for other purposes as in this Act hereinafter specified."

SECTION I. *Be it enacted by the General Assembly of the State of Georgia, and it is hereby enacted by authority of the same,* That the above recited Act be, and the same is hereby, altered, changed and amended as hereinafter and to say.

*Former charter amended.*

SEC. II. *And be it further enacted by the authority aforesaid,* That on the first Saturday in January, 1889, an election by ballot shall be held in the council room in said town for a Mayor and six Aldermen, and that all male persons who are legal voters in the county of Wayne and residents of the town of Jesup for a space of thirty days next immediately preceding that time shall be entitled to vote at said election which shall be held by any three freeholders of said town who are not candidates and who shall be appointed by the Mayor in office at that time, and if he fails to appoint may act on request of any citizen ; and the person receiving the highest number of votes at said election for Mayor shall serve as such until the first Saturday in January, 1890 and the three persons receiving the highest number of votes for Aldermen at said election, shall serve as such until the first Saturday in January 1891, and the three persons receiving the next highest number of votes at said election shall serve as Alderman of said town until the first Saturday in January, 1890 ; and that an election in accordance with the provisions of this Act shall be held on the first Saturday in January of each and every year for a Mayor and three Aldermen to fill the seats of those whose terms shall expire that year, and that the Mayor so elected shall hold his office for the space of one year ; and the Aldermen so elected, for two years, and until their successors are elected and qualified.

*Election for Mayor and Aldermen.*

*Qualifications of electors.*

*Managers.*

*Respective terms.*

*Annual election.*

SEC. III. *And be it further enacted,* That no person shall be eligible to the office of Mayor of said town, who has not attained the age of thirty years, and no person shall be elected Alderman who has not attained the age of twenty-five years, and who is not a legal voter of said town and a resident thereof for at least one year previous to his election.

*ligibility.*

SEC. IV. *And be it further enacted,* That should the Mayor's office or that of Aldermen be made vacant by death, removal, resignation, or otherwise, the Mayor and Board, or Board of

*Election to fill vacancy.*

Aldermen, by resolution, shall order an election to fill such vacancy, which shall take place after ten days' notice has been given by publication in the paper where the legal advertisement of the said town of Jesup is done.

SEC. V. *Be it further enacted*, That the Mayor and Aldermen of said town in addition to the oath required of all civil officers of this State, shall take and subscribe the following oath of office: I ——————————— do solemnly swear, that I will truly and faithfully discharge all of the duties required of me as——————— of the town of Jesup, and will not vote for or encourage any measure or ordinance which is not, in my judgment, for the best welfare of the inhabitants of said town, and that when sitting as a Judge of the police court of said town, or trying cases on appeal therefrom, I will do equal justice between the rich and the poor, the high and the low, and the judgments render according to the opinion I entertain of the evidence and the law, as I understand it, so help me God. *Official oath.*

SEC. VI. *Be it further enacted*, That neither of the Aldermen of said town shall receive any salary or compensation for his services; and all meetings of the Mayor and Aldermen of said town shall be in public, except when engaged in executive business, and the Mayor and three Aldermen shall constitute a quorum for the transaction of business. *No salaries.* *Quorum.*

SEC. VII. *And be it further enacted*, That all elections for Mayor and Aldermen of said town, after the election herein provided to take place on the first Saturday in January, 1889, shall be held by the Clerk of the town of Jesup and a member of the Board of Aldermen and one freeholder, or by three freeholders, residents of said town, and shall be held at the place where the meetings of the Mayor and Aldermen are held. And the polls at such elections shall be opened at seven o'clock in the morning and closed at six o'clock in the evening; and that no person shall be entitled to vote at such elections who is not a qualified voter of the county of Wayne, a resident of the town of Jesup for six months next before the day of such election, who has not paid all taxes due to said town, county and this State, and who shall not have been registered as hereinafter provided. *Management of elections.*

SEC VIII. *Be it further enacted*, That it shall be the duty of the Clerk of the town of Jesup to open books for the registration of voters, on the first Saturday in September before each annual election, (after the first election herein provided for to be held on the first Saturday in January, 1889), at ten o'clock A. M., and keep the same open from day to day, from ten A. M. to six P. M. until the first Saturday in October, when the same shall at six P. M. finally close; in which shall be inscribed the name of the person entitled to vote in said town and his place of residence and occupation; and the said Clerk must not permit any one to register *Registration.*

who is not entitled to do so, and if he does so knowingly, he shall be discharged from office. Each person registered shall pay to **Fee.** the clerk of said town a registration fee of fifty cents, which shall be used as the Mayor and Aldermen of said town may prescribe. And no person who is not registered shall be allowed to vote at any election in said town for officers thereof, or for any measure or matter affecting the same.

SEC. IX. *Be it further enacted,* That the superintendents of all **Conduct of elections.** elections for Mayor and Aldermen held by authority of this Act, shall have the same conducted according to parts 1, 2, 3, 4, 6, 7 and 11 of section 1288 of the Code of 1882 of this State, and said parts of said section are hereby made applicable to such elections, and which are hereby adopted as a part of this amended charter, and the superintendents of such elections shall make return thereof to the Mayor and Aldermen of said town.

SEC. X. *Be it further enacted,* That any person who shall here- **Illegal voting.** after vote more than once at any election held in said town, and under authority of this Act, or who shall vote at any such election, when he has not resided in this State one year, in the county of Wayne and said town six months, next preceding the election at which he so voted; or who shall vote at such election, who has not paid all taxes, which, since the adoption of the present Constitution of the State, have been required of him previous to the year in which said election occurs, and which he has had an opportunity of paying agreeable to law; or who has not registered as provided by this Act; or who has been convicted in any court of competent jurisdiction in this State, of embezzlement of public funds, malpractice, bribery or larceny, or any crime involving moral turpitude and punishable by the laws of this State with imprisonment in the Penitentiary, unless such person shall have been pardoned; or any person who shall buy or sell at any such elec- **Indictment for, and punishment.** tion, or offer to buy or sell, a vote or votes, shall be indicted for a misdemeanor, and on conviction in any court in said county having jurisdiction, shall be punished as prescribed by section 4310 of the Code of Georgia.

SEC. XI. *And be it further enacted,* That any voter at such elec- **Challenges.** tions, may challenge any person who offers to vote, and any person so challenged shall take the following oath, to-wit: (and if he refuses to do so, his vote shall be rejected)    "I ——————— **Oath of person challenged.** swear that I am 21 years old; am a citizen of the United States; have resided the last twelve months in this State; six months in this county and town; have paid all taxes which have been required of me to pay, and which I have had an opportunity of paying agreeable to law, and have never been convicted of any offense against the laws of this State or the United States, which debars me from voting, so help me God."

Sec. XII. *And be it further enacted by the authority aforesaid*, That the Mayor and Aldermen of said town shall, at the first regular meeting in each year after their organization, elect a Clerk, a Treasurer, Marshal, assistant Marshal, such policemen as they see proper, three Assessors and a Town Attorney and a Town Physician of said town; and the said Mayor and Aldermen are hereby authorized and empowered to define and prescribe the powers and duties, the term of office, oath and bond of such officers when the same is not done herein, but they may, in their discretion, elect an assistant Marshal and policemen, Town Attorney and Physician only, when in their discretion it may be proper to do so, and fix at pleasure the number of policemen, and may remove any of such officers, at their discretion, for breach of duty, and establish their fees and salaries; and any such salary, fees and compensation can, at any time, be reduced, increased or abolished at any regular meeting of the Mayor and Aldermen.

*Town officers.*

*Powers of Mayor and Aldermen as to.*

Sec. XIII. *Be it further enacted by the authority aforesaid*, That said Mayor and Aldermen shall be known as the Mayor and Aldermen of the town of Jesup, and shall, by such, their corporate name, plead and be impleaded, sue and be sued, and do all other acts relative to their corporate capacity; shall have and use a corporate seal; shall be capable in law to purchase, hold, receive and possess and retain for the use and benefit of the town of Jesup, forever or for any number of years, any estate, real or personal, either within or without the limits of said town, and whether the same be necessary for the administration of the government of said town or not.

*Corporate name and powers of Mayor and Aldermen.*

Sec. XIV. *And be it further enacted*, That said Assessors to be appointed by the Mayor and Aldermen of said town, shall, at the first appointment of Assessors be appointed, one for one year, one for two years, and one for three years, and ever thereafterwards one Assessor shall be elected and qualified annually, and shall hold his office for the term of three years and until his successor is elected and qualified, except when an appointment is made to fill a vacancy, and shall take the following oath: "I——— ——— do solemnly swear that I will faithfully perform the duties of Assessor for the town of Jesup, and will make a true and just valuation of all property assessed;" and it shall be the duty of the Assessors to assess and value annually, all real estate in said town liable for taxation, at a true and just valuation, and to enter their assessment of the same in a book to be kept for that purpose, and return the same to the Mayor and Aldermen of said town, and file it with the Clerk of Council of said town on or before the 1st day of March of each and every year; in which return they shall describe the property assessed, by number, metes and bounds or other sufficient description, so as to give a sufficient identification thereof; and after said return is made and filed, and on or before

*Assessors.*

*Terms.*

*Oath.*

*Their duties.*

*Property digest.*

Amending Charter of Jesup.

the 1st day of May in each and every year, every person, or agent of every person claiming said assessed real estate or any part of the same, shall return his name, or the name of his principal when the return is made by an agent, to the Clerk of Council of the town of Jesup, and write the same opposite the property claimed or owned by him, or the name of the person for whom he is agent, and as such agent make such return ; and where the person or agent claims a portion only of any particular piece of property assessed, he shall specify in writing, and clearly describe the portion he claims and the interest of the claimant therein ; and if the person making such return, makes the same as trustee, he shall specify in the return for whom he is trustee, giving the names of the *cestui que trusts*.

<span style="float:left">Returns.</span>

<span style="float:left">How regulated.</span>

SEC. XV. *And be it further enacted by authority aforesaid,* That if, on the first day of May of any year there is any such real estate assessed in said town which has not been so returned by the owner or claimant thereof, it shall be the duty of the Clerk of Council of said town to issue an execution against said real estate which has not been so returned by the owner or owners thereof, as non-returned property, which execution shall plainly describe the property against which it is issued so as to sufficiently, and with reasonable certainty identify the same, and shall be directed to the Marshal of the town of Jesup, requiring him to levy upon that particular property, and out of the same to make, by levy and sale, the amount of the taxes due on said property for that year, and that the sale of non returned property shall be advertised once a week for twelve weeks before the day of sale, and that when any property is sold as non-returned property as aforesaid, when the same was not returned and the terms of this Act authorizing such sale shall have been fully complied with, and the same is not redeemed within the time hereinafter mentioned, that then and in that case the sale of the same shall absolutely and entirely divest the claim and title to the same from all persons before and at the time of such sale, claiming or owning the same or any interest therein, and shall vest the title thereto absolutely and unconditionally in the purchaser at such sale, and his heirs and assigns ; and that any person who will make oath before any officer authorized by the laws of this State to accept an affidavit, that he is the owner, or agent of the owner, stating the name of the real owner, (and if such affidavit is made by a trustee, he shall state who are the *cestui que trusts* for whom he claims) of such property and that he desires to get a re-conveyance of the same, he may do so on paying the amount of the purchase money at such sale and all costs and charges and ten per cent. on all the same at any time within twelve months from the day of the sale ; and that whenever property is sold as non-returned property, as aforesaid, and brings more than the amount of the taxes and costs attending such sale, the

<span style="float:left">Failure to return.</span>

<span style="float:left">Execution for.</span>

<span style="float:left">Levy.</span>

<span style="float:left">Advertisement and sale.</span>

<span style="float:left">If not redeemed, absolute title to vest in purchaser.</span>

<span style="float:left">Re-conveyance.</span>

<span style="float:left">Limit to.</span>

Amending Charter of Jesup.

Marshal shall pay the excess to the Treasurer of said town and take his receipt for the same, which balance shall be held by said Treasurer for the space of two years, from the date of the sale, when, if no person has made claim to the same as hereinafter provided, the same shall become the property of the said Mayor and Aldermen, and be by them used for the best wel are of said town, and no suit at law or in equity shall be brought to recover such excess, after said period of two years, and when any person within said period of twelve months shall redeem such non-returned property as aforesaid, it shall be the duty of the Treasurer to pay any such excess as aforesaid over to the person redeeming the same, and his receipt on the back of such affidavit, and if such excess is claimed after a period of one year and within said period of two years by any owner or claimant, then it shall only be necessary for such owner or claimant or agent of such, to make an affidavit that he was the owner of such non-returned property, or the agent of the owner, and name in his affidavit the owner, and stating that the time in which to redeem the same having elapsed, he desires to have paid to him such excess, and on his receipt on the back of such affidavit, the Treasurer shall pay him the same. *Surplus to be held two years.* *Covered into town treasury.* *Regulation as to refunding.*

SEC. XVI. *Be it further enacted by authority aforesaid,* That when any property, real or personal, has been returned, as in this Act required, and the person returning the same shall make default in the payment of any prescribed taxes for that year, then it shall be the duty of the Treasurer to issue his tax executions against such person, which shall be directed to the Marshal, requiring him to make the amount of such taxes out of the person making such return by seizure of the property of such person. And it shall be the duty of the Marshal to levy such execution first upon the personal property of said defaulter, if any is to be found, and if not, to make return of that fact and then levy on the real estate of such person; and the sale of such property shall be advertised once a week for four weeks preceding the day of sale of such property; and such sale shall pass the title to the same as effectually and as absolutely as would the deed of the person or persons against whom such execution was issued.   Whenever property has been sold as aforesaid for non-payment of taxes, and when return has been made, the person against whom the execution is issued may redeem the same at any time within twelve months from the day of the sale, on paying the amount for which it is sold and the costs and charges aforesaid, and ten per cent. on all the same. *Default of taxes.* *Execution to issue.* *Levy.* *Advertisement and sale.* *Redemption.*

SEC. XVII. *Be it further enacted by the authority aforesaid,* That all sales herein provided for in this Act shall take place on a regular Sheriff's sale day, between the regular hours of Sheriffs' sales provided for in this State.   And on the day of sales herein provided for it shall be the duty of the Marshal to offer the property *Time of sales.* *Conduct of.*

252     PART III.—TITLE I.—Municipal Corporations.

levied, the same being realty, first for rent for one year, and if an amount is not offered sufficient to pay the taxes and costs, then for rent for five years, then for rent for ten years, then for twenty years; and if he receives no such sufficient bid, then to offer for sale one-fourth undivided interest, and if he then receives no bid sufficient as aforesaid, he shall then offer the whole for sale and shall knock it off to the highest bidder, after crying the same according to the laws of the land; and that the amount to be charged for advertising the sale of such property shall be the same as now prescribed by the general laws of this State, and ₁ fee of one dollar for levy, one dollar for selling and five per cent. commission on the amount realized at the same and one dollar for signing the deed, shall be paid the Marshal for his costs in that behalf; and the Clerk shall receive fifty cents for each execution issued.

**Fees for.**

SEC. XVIII. *Be it further enacted by the authority aforesaid,* That any person not a party to any such execution claiming property levied on may file his claim to the same, as claims are now filed to property levied on under mean or ordinary process in the State, a ₁d as by the practice now obtaining generally in the courts of this State; and when property so levied on is so claimed, it shall be the duty of the Marshal to return the execution and claim to the Superior Court of said county, where it shall be tried and disposed of as other claim cases.

**Claims— how filed and returned.**

SEC. XIX. *And be it further enacted by the authority aforesaid,* That the corporate limits of said town shall be defined and are hereby prescribed to be all the area lying within the measurements and limits to say: Within the square described within a line drawn parallel with and one mile southward of a line drawn through the center of Cherry street in said town, and parallel with the same and at right angles with Broad street, and a line running parallel with and one mile northward of the said center line of said Cherry street, and parallel with said first described line; and a line drawn parallel with and one mile eastward of the center line of Broad street, and at right angles with said Cherry street, and said first two described lines; and a line drawn parallel with and one mile westward of the center line of Broad street, and the line last above described, which is hereby declared to be what is meant in the above recited Act, by the term "one mile in all directions from the depot in said town." The area of said town forming a square with sides two miles long and embracing four square miles within its corporate limits.

**Corporate limits.**

**Area.**

SEC. XX. *Be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have power and authority from time to time to make, ordain and establish such by-laws, ordinances, rules and regulations as shall to them appear necessary for the security, welfare, convenience and interest of said town and the inhabitants thereof, and for preserving the health, morals, peace, order and good government of the same.

**By-laws.**

PART III.—TITLE I.—MUNICIPAL CORPORATIONS.      253

SEC. XXI. *Be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town may, by ordinance, prohibit all intoxicated persons, tramps and lewd women from walking or idling in the streets, squares and alleys of said town, after the hour of 9 o'clock at night, and to provide a penalty by ordinance for the use of vulgar and obscene language, and to punish lewd and disorderly conduct within the limits of said town, and to pass ordinances establishing and regulating markets, and licensing and controlling all places of public amusement, and all performances, circuses and shows of every nature, and defining the meaning of the words "intoxicated persons," "tramps," and "lewd women," as used in this section of this Act. *{Vicious characters. Obscenity and lewdness. Public places.}*

SEC. XXII. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town are hereby authorized and empowered, whenever they see fit to do so, to create a Board of Health for said town, to consist of any number not over ten male persons, twenty-one years of age, and shall have and are hereby given power to define their term of office, which shall not be over five years; their oath, duties, qualifications and bond, if any, and prescribe their fees, if any, and confer on them, by ordinances, such powers as are usually and generally conferred upon such bodies. *{Board of Health.}*

SEC. XXIII. *And be it further enacted by the authority aforesaid,* That no ordinance, by-law or resolution of said Mayor and Aldermen of a public character shall be binding within the limits of said town or person within the same, natural or artificial, until the same shall have been published for the space of once a week for four weeks in the newspaper in which the proceedings of the Mayor and Aldermen of said town and the legal advertising of said town is done. And it shall be the duty of the Mayor and Aldermen of said town to select as the official organ of said town any paper which has a general circulation in the county of Wayne and said town. And the Mayor and Aldermen of said town shall cause the proceedings of each meeting of Council to be published in such paper, and no ordinance or by-law shall pass the Board of Aldermen of said town and become a by-law or ordinance thereof until the same shall have been introduced and read once at the regular meeting of said Mayor and Aldermen when the same is introduced, and twice at the next regular meeting of said Mayor and Aldermen, before the same passes and becomes a law ; and the regular meetings of the Mayor and Aldermen of said town shall be on the first and third Mondays in each and every month. *{Publication of ordinances, etc. Official organ. Passage of ordinances, etc.}*

SEC. XXIV. *And be it further enacted by the authority aforesaid,* That all ordinances, by-laws and resolutions shall be spread at length upon the minutes of the Council at the meeting when the same are adopted, and before the next regular meeting, by the Clerk of Council; and he shall also keep a full and explicit minute *{Minutes of proceedings.}*

book of all regular, special or call meetings of the Mayor and Aldermen of said town, in which he shall give a detail minute of all their actings and doings, and shall specify the Mayor and Aldermen who are present, giving their names, and those who are absent, giving their names.

**Executions and sales for taxes.**

SEC. XXV. *And be it further enacted by the authority aforesaid,* That all executions for taxes shall be signed by the Clerk of Council of said town, which shall be directed to the Marshal of said town, and shall be returnable before the Mayor and Aldermen of said town, and the proceeds of all such shall be paid to the Treasurer of said town, and that at all tax sales under executions for

**How regulated.**

taxes due said Mayor and Aldermen, the Mayor and Aldermen of said town may bid in the property so offered for sale in the name of the Mayor and Aldermen of said town, and have a deed of realty or a bill of sale of personalty of the same made by the Marshal of said town to them, and shall hold the same for the use of said town, provided the same does not bring more at such sale than the amount of the taxes and cost due on said execution.

**General tax.**

SEC. XXVI. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have the authority and power to levy and collect a tax upon all taxable property within the limits of said town, upon real and personal property, money, stock in corporations, choses in action, incomes and commissions derived from the pursuit of any profession, faculty, trade or calling, upon dividends, banks, insurance, and other like companies or their agencies; and upon all other sources of profit, not expressly prohibited or exempt by the laws of this State; thus to raise such sum of money as may be necessary for the safety, convenience, benefit and interest of said town, the maintaining the municipal government and the payment of the

**Limit to rate.**

debts thereof: *Provided,* the rate of taxation shall not exceed one and one half per centum upon a fair valuation of the property taxed: *Provided,* that nothing in this Act shall be construed to

**Exemptions.**

authorize the said town, nor the Mayor and Aldermen of said town, to levy or collect any tax of any kind upon the property of any railroad or express company not subject to taxation for county purposes under the laws of this State as they existed on the 4th day of December, 1888, nor shall they levy any tax whatever upon the business, income, or agencies of either class of said corporations.

**Liquor licenses.**

SEC. XXVII. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have the sole and exclusive right to grant licenses to sell or retail liquors within the limits of said town, and of fixing the rates and amounts of such licenses, and the terms and conditions upon which they shall issue, and to declare such licenses void when said terms and conditions are not complied with.

Amending Charter of Jesup.

SEC. XXVIII. *And be it further enacted by the authority aforesaid,* That if any assessment of any estate authorized by this Act shall be deemed erroneous, the owner or agent of any such real estate who may be dissatisfied with such assessment shall have the privilege of making complaint to the said Mayor and Aldermen of said town within twenty days after the date of the report of the Assessors, which complaint must be made in writing ; and upon such complaint being made, the assessment complained of shall be immediately referred to three arbiters, one chosen by the Mayor and Aldermen of said town, one by the party complaining and the third by the two so chosen, whose award in the matter shall be made within ten days, and shall be conclusive and final. *Complaint from assessment.* *How referred.*

SEC. XXIX. *And be it further enacted by the authority aforesaid,* That all taxes and assessments due the said town of Jesup shall rank as debts due the public, whether in the administration of the assets of the decedent or otherwise, and tax executions in favor of said town of Jesup shall have the same lien on property as judgments have by law. *Taxes and assessments to rank as primary liens.*

SEC. XXX. *And be it further enacted by the authority aforesaid,* That the said Mayor and Aldermen of said town shall be vested with authority and power of a Justice of the Peace, so as to suppress all riots, breaches of the peace, and commit for violations of the criminal laws of Georgia within the limits of said town, and to arrest, confine or bind over all offenders against the laws of this State to answer for such offenses before the proper tribunal, and may issue warrants on affidavits made before them, and may hold courts of inquiry as other Justices of this State, when the offense was committed in said town. *Judicial functions of Mayor and Aldermen.*

SEC. XXXI. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have power to compel all male persons within the corporate limits of said town, between the ages of sixteen and fifty years, except those hereinafter exempted, to work on the public streets of said town not more than ten days during each year : *Provided,* that any person subject to work on said streets may commute the services so required by the payment, to the officer of said town authorized to receive and receipt for the same, the sum of fifty cents for each day he is required to work. *Street work.* *Commutation tax.*

SEC. XXXII. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have the authority and power to widen, straighten or alter any street, alley, lane, way or square in said town, and to open, lay out and establish any new street, alley, lane, way or square of whatever nature ; but whenever said Mayor and Aldermen shall exercise the power to widen, extend or straighten a street, alley, lane, way or square, or to open, lay out and establish any new street, alley, lane, way or square to the injury of private rights, there shall be appointed *Improvement of streets, etc.*

Amending Charter of Jesup.

*Damages—how assessed.*

five freeholders, two by the Mayor and Aldermen, two by the owner of said land, and the other by the arbitrators so chosen, of character and responsibility, who shall assess the damages sustained by the owner or owners of the lot or lots, over and through which pass the said streets, lanes, alleys, ways or squares so widened, extended, straightened, opened, laid out or established,

*Appeal from award.*

and from which award an appeal can be had to the Superior Court of said county of Wayne by either party: *Provided*, private prop-

*Proviso.*

erty shall not be so taken for such public purposes, until the damages so assessed shall be first paid by the authorities of said town.

SEC XXXIII *And be it further enacted by the authority aforesaid,*

*Work-houses etc.*

That the Mayor and Aldermen of said town shall have the power and authority to establish work-houses and to cause labor and confinement therein, and also on the streets, drains, squares and commons in said town, by all persons who shall have been convicted of any offense against the ordinances, by-laws, rules and regulations of said town, and so sentenced by the proper tribunal.

SEC XXXIV. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have the author-ity and power by ordinances or resolutions or either, to order the

*Paving.*

occupant of any lot to make such pavements or sidewalks, and repairs of the same, as they may deem necessary, and upon the failure of any person to comply with such order within the time prescribed, the said Mayor and Aldermen may cause the same to be done, and shall levy and collect the expenses thereof, by exe-cution issued, directed and returned as tax executions against the lands, goods and chattels of the owner or owners of such.

SEC. XXXV. *And be it further enacted by the authority aforesaid,*

*Stock law.*

That the Mayor and Aldermen of said town shall have the author-ity to regulate and control, or prohibit the running at large of any dogs, horses, mules, cattle, hogs or other stock within the limits of said town.

SEC. XXXVI. *And be it further enacted by the authority aforesaid,*

*Abatement of nuisances.*

That the Mayor and Aldermen of said town shall have the au-thority and power, by ordinances, resolutions or order, to cause to be abated, within the limits of said town, any nuisance which may tend to the immediate annoyance of the citizens generally, and which may be manifestly injurious to the public health and safety, which may tend greatly to corrupt the manners and morals of the people of said town, or any considerable portion thereof, whether the same be a nuisance at common law, or by statute of this State, or by ordinances of said town passed in conformity with law, and to enforce the order of the abatement and the re-moval of such nuisances by the Marshal, or other civil force of said town.

Amending Charter of Jesup.

Sec. XXXVII. *And be it further enacted by the authority afore-* *said*, That the Mayor and Aldermen of said town shall secure a just and proper accountability, by requiring bonds, with sufficient penalties and securities, from all persons entrusted with the receipt, custody or disbursement of money, and shall, as often as once a year, cause to be published for the use of the inhabitants, a particular account of the receipts and expenditures, and a schedule of town property and of the town debts. *(margin: Indemnity bonds.)*

Sec. XXXVIII. *And be it further enacted by the authority afore-* *said*, That it shall be the duty of the Clerk of the Mayor and Aldermen of said town, to furnish the superintendents presiding at all elections for Mayor and Aldermen of said town, at the time of opening the polls on the day of said elections, a complete list of the names, arranged in alphabetical order, which shall have been registered according to the provisions heretofore set forth, together with the occupation or business, and place of residence in said town, certified under the hand of said Clerk or other officer, and the seal of said town, which list shall be kept before the said Superintendents during such elections, and afterward deposited by them in the office of said Clerk, to be safely kept by him. *(margin: Registration lists.)*

Sec. XXXIX. *And be it further enacted by the authority aforesaid,* That it shall be the duty of said Superintendents to allow no one to vote at said elections unless he be qualified to do so under the provisions of this Act; and to that end they shall be authorized to administer the oath prescribed in section 11 of this Act. *(margin: Duty of election superintendents.)*

Sec. XL. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have power to borrow money and contract loans for the public good when, in their judgment, it shall be for the interest of said town to do so, and to issue bonds and pledge the property, faith and credit of said town for the payment of debts so incurred, where now allowed by law *(margin: Authorities may borrow money and issue bonds.)*

Sec. XLI. *And be it further enacted by the authority aforesaid,* That the Mayor's Court of said town is hereby established and declared to be a court of record, and shall be presided over, and its sessions shall be held by the Mayor or the Mayor *pro tempore* of said town, and shall be held as often as the presiding officer of said court may determine ; and the Clerk of Council of said town is hereby declared to be Clerk of the Mayor's Court ; said court shall have jurisdiction and cognizance of and over all offences against any violations of the ordinances and by-laws and rules and regulations of said town committed within its limits, and shall have power to impose on each person convicted thereof, such punishment as may be prescribed in the ordinance, rules and regulations of said town, and not inconsistent with the provisions of this Act, for violations of the same, and shall have the power to fine or imprison or fine and imprison for contempt, and may enforce the col- *(margin: Mayor's Court a court of record. Its jurisdiction and powers)*

17

Amending Charter of Jesup.

lection of fines by execution issued, directed and returned as **tax executions** are provided to issue in this Act, and shall enforce all such imprisonments by *mittimus* directed to the Marshal or Assistant Marshal of said town, and in all prosecutions in said town, and the same shall be commenced by affidavits as prescribed in section 4715 of the Code of Georgia, upon which a warrant shall issue and be signed by the presiding officer of said Mayor's Court which shall be in form of warrant described in section 4716 of the Code of Georgia, except that it shall be directed only to the Marshal or Assistant Marshal or Policeman of said town, and shall require the person therein named to be taken before the said Mayor's Court of the town of Jesup for trial, and on this warrant an affidavit, the issue of guilty or not guilty shall be formed and the trial proceed whenever the case is sounded in open court, unless continued under the rules of law as far as they can be applied to said court, and it shall only be necessary in such affidavit to describe the offence alleged with sufficient particularity as that the Judge of said court may readily understand the nature of the charge and no more ; and if such affidavit and warrant should be dismissed for want of informality, either on *demurrer* before trial, or be detected afterwards and at any time before judgment, and whether the case is pending before the Mayor's Court on appeal before the Mayor and Aldermen, the same be *nolle prosequied*, and another and another, and another sued out, and so on, from each dismissal until one should be drafted sufficient for the purpose, and from the judgment of said Mayor's Court there shall be an appeal within ten days, to the Mayor and Aldermen of said town, in council assembled, which shall be tried at the next regular meeting of said Mayor and Aldermen of said town after it is entered, unless continued under the rules of law granting ———— continuance in this State, as far as the same can be applicable, and before such appeal is received the defendant shall pay all costs and give bond for his personal appearance to abide the final judgment in said case, and whenever a person is arrested by authority of this Act, it shall be lawful for him to enter into a bond to be approved by the Marshal of said town, conditioned for the faithful appearance of such person to answer such charge, when the same shall be heard, and shall be payable to the Mayor and Aldermen of said town of Jesup, which bond shall be forfeited on the non-appearance of the defendant in the same manner in said court as penal bonds are forfeited in Superior Courts of this State.   And no *certiorari* shall be allowed or granted to the decision of said Mayor's Court, until the same has been appealed before the Mayor and Aldermen and the decision there confirmed or sustained in whole or in part, and until all costs have been paid to the Clerk of Council of said town, and bond given for the appearance of the petitioner in *certiorari* to

*Proceedings before Mayor's Court.*

*Absolute formality unnecessary.*

*Trial.*

*Continuance. Appeal.*

*Appearance bond.*

*Certiorari.*

answer the final judgment of the court in that matter, but there shall be no appeal or *certiorari* from a fine or commitment for contempt, but such fine for contempt shall not exceed five dollars or imprisonment for contempt, not exceeding five days, and the presiding officer of said Mayor's Court, or the presiding officer over the Council, when sitting on appeal cases shall have the power to summon any witness residing in the county of Wayne or in said town, to appear and testify for either prosecution or defense. But the Mayor, or Mayor *pro tempore*, who heard the case in the Police Court, shall not be allowed to sit in the trial of the said case in appeal before the Mayor and Aldermen of said town. *Not to is-sue—when.*

Sec. XLII. *And it is further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have the power and authority to impose and inflict such fines, penalties and forfeitures for the violation of any ordinance, by-law, rule or regulation of said town as shall, in their judgment, be conducive to the interest, welfare, good order of and proper government of said town, and may for such violations of such ordinances, by-laws, rules and regulations, punish by a fine, not to exceed one hundred dollars or imprisonment in the guard house of said town not to exceed thirty days, or work on the chain gang on the public works, streets, alleys, and so forth, of said town of Jesup, not to exceed sixty days; or if said town of Jesup has no chain gang, to work for the space of sixty days on any chain gang under control of the authorities of Wayne county; and if said town has no established guard-house, to be confined in the jail of Wayne county for thirty days; and any one or more of these penalties may be ordered, in the discretion of the presiding officer of said Mayor's Court, or the Mayor and Aldermen when sitting to try appeals; that is to say, they may fine one hundred dollars and sentence to labor for sixty days on any such public works, and sentence to imprisonment for thirty days in any such prison, or may fine a less sum than one hundred dollars, and imprisonment in such prison for a term less than thirty days, and sentence to labor for a term less than sixty days, or may impose any one of said penalties or put the sentence in the alternative—that is, sentence to labor or confinement, to be discharged on payment of a fine not exceeding one hundred dollars and costs; and it shall be sufficient description of the punishment to be inflicted for the violation of any ordinance of said town for the Mayor and Aldermen thereof to say in such ordinance that the violation of such ordinance shall be punished as prescribed in this section of this charter, referring to it by number, without setting it out in full in the ordinance, if they so choose. *Fines, pen-alties and forfeitures.* *Maximum of fines.* *Imprison-ment and chain-gang —maxi-mum sen-tence.* *Both pen-alties per-missible.* *Sentence may be al-ternative.*

Sec. XLIII. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town are authorized, and it is their duty and power to prescribe by ordinance annually, and within thirty days after the assessment of said Assessors' is filed, *Taxes.*

Amending Charter of Jesup.

**Payments of.** as in this Act provided, the amount of taxes for that year; and they may, in their judgment, collect said taxes in semi annual payments, or they may collect the whole in one yearly payment, and they shall prescribe in said ordinance fixing the taxes yearly, when and how it shall be paid.  If collected in semi-annual payments, the first payment shall be collectible on the first of June **Time of collection.** and the second payment on the first of December.  If collected in annual payments it shall be due and collectable on the first of September, and execution may issue for such taxes thirty days after they are due and payable.

**Licenses.** SEC. XLIV. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town shall have power, and it is their duty annually to prescribe the annual license for each and every year and what, as provided in this amended charter, shall be licensed, and to pass ordinances punishing all persons who carry on any of said businesses without first taking out such licenses.

**Town Attorney.** SEC. XLV. *And be it further enacted by the authority aforesaid,* That the Mayor and Aldermen of said town may, at any time, elect annually a Town Attorney, and define his duties and prescribe his salary by proper ordinances or resolutions, and his oath of office; but they may, if they see fit to do so, not regularly employ an attorney by the year, but may in their discretion employ the services of an attorney at law only when in their judgment it is necessary to do so.

**Returns** SEC. XLVI. *Be it further enacted by the authority aforesaid,* That all persons claiming or owning personal property of every or any nature and sort in the limits of said town, or who is engaged in any sort of business shall, on or before the first day of May of each and every year, make a return of the same to the Clerk of **Under oath.** said Council, together with the value of the same, under oath, in which return the following facts shall be set forth:

**Specifications:** 1st.  What and how many businesses are you engaged in, either individually or as a partner, or otherwise, in said town?

2nd.  How much capital have you in any bank or banking house doing business in said town?

3rd.  How much capital has any bank or banking-house in said town of which you are president?

4th.  How much capital or stock have you in any business or loan association in said town?

5th.  How much capital have you in stocks and bonds of any association in said town?

6th.  How much money have you on hand?

7th.  What is the gross value of your notes, accounts or other obligations for money, and the market value thereof—whether the same are against persons or debtors within or without the State?

PART III.—TITLE I.—Municipal Corporations.    261

Amending Charter of Jesup.

8th.  What is the value of your merchandise of all kinds on hand?

9th.  How much capital have you invested in bonds, except Specifica-tious: bonds of the United States as are by law exempt from taxation?

10th.  What is the value of your household furniture, including your table ware?

11th.  What is the value of your kitchen furniture?

12th.  What is the value of your office furniture?

13th.  What is the value of your pianos, organs, or other musical instruments?

14th.  What is the value of your sewing machines?

15th.  What is the value of your gold watches?

16th.  What is the value of your silver watches?

17th.  What is the value of your watches made from material other than gold or silver?

18th.  What is the value of your gold and silverware?

19th.  What is the value of your diamonds and jewelry worn by owner or not?

20th.  What is the value of your horses?

21st.  What is the value of your mules and asses?

22nd.  What is the value of your cattle?

23rd.  What is the value of your sheep?

24th.  What is the value of your goats?

25th.  What is the value of your hogs?

26th.  What is the value of your carriages, wagons and buggies?

27th.  What is the value of your agricultural tools, implements and machinery?

28th.  What is the value of your library, pictures, paintings and statuary?

29th.  What is the value of your cotton, corn and other farm products on hand or for sale?

30th.  What is the value of your guns, pistols, bowie knives and such articles?

31st.  What is the value of your portable saw-mills, saw-mills, gins, engines and other machinery, or of such other machinery, stationary, and otherwise, and not returned as part of the realty?

32nd.  What is the value of your property not herein mentioned?

Sec. XLVII.  *Be it further enacted by the authority aforesaid,* That it shall be the duty of the Clerk of Council to issue an exe- Where no cution against any and all personal property of every kind, describ- return ing it sufficiently, so that it may readily be identified from such made, description, which is not returned for taxation as provided in this Act.  Which execution shall be issued, returned and directed as provided for executions against non-returned property, and that all Execution provisions of this Act applying to the sale of property under tax to issue. executions for returned or unreturned real property respectively

Amending Charter of Jesup.

shall apply to the sale of returned or unreturned personal property and that moneys realized from such sales of returned or un-

**Proceeds of sale—how held and disbursed.** returned property shall be held, disbursed and disposed of and accounted for in the same manner respectively as is provided elsewhere in this Act, for the disbursement, disposition and accounting of moneys received from the sale of returned or unreturned real property respectively, as the case may be, and that the same statute of limitations prescribed in those cases respectively be, and the same hereby, is made to apply respectively in cases of returned or unreturned personal property.

SEC. XLVIII. *And be it further enacted by the authority aforesaid,* **Exemption from street duty.** That all and any persons who have lost one arm, or one leg, or a leg and arm, or both legs and both arms, or a foot or a hand, or an eye, or a foot and hand, or both hands and both feet, and all persons who are physically, from deformity, injury or accident, or disease, unable to perform manual labor, shall be exempt from the performance of street duty as provided in this Act.

SEC. XLIX. *And be it further enacted by the authority aforesaid,* **Salary of Mayor.** That the Mayor of said town shall receive a salary not to exceed two hundred and fifty dollars per annum, and that the Mayor and Aldermen of said town, in Council assembled at their first meeting in each and every year, shall by resolution prescribe the amount of such salary, and they may order payment of the same monthly, quarterly, semi-annually or annually, as to them may seem best, and the resolution fixing the salary shall fix the time of payment.

SEC. L. *And be it further enacted by the authority aforesaid,* That **City Physician.** the Mayor and Aldermen of said town may, at any time, elect annually a City Physician and define his duties and powers by proper ordinances and fix his salary, or, in their discretion, they may only employ the services of one when in their judgment it is necessary, without regularly electing one.

SEC. LI. *Be it further enacted by the authority aforesaid,* That all laws and parts of laws in conflict with this Act be, and the same are hereby, repealed.

Approved December 26, 1888.

AMENDING CHARTER OF THE TOWN OF NORWOOD.

### No. 105.

An Act to amend an Act entitled an Act to incorporate the town of Norwood on the Georgia Railroad, in Warren county, and provide for the election of Mayor and Councilmen of said town, and for other purposes herein contained, approved Oct. 7th 1885.

Section I. *Be it enacted by the General Assembly of the State of Georgia,* That the above recited Act be amended by striking out the word three in the third line, in third section of said Act, and substituting the word five so that said section when so amended shall read as follows: "That an election shall be held in said town on the first Monday in November next for a Mayor and five Councilmen who shall serve for fourteen months, or until their successors are elected and qualified; said election to be held on the first Monday in January stately after the first." <span style="font-size:smaller">Third section of old charter altered. Section as amended.</span>

Sec. II. *Be it futher enacted,* That the figures 779 in the second line of the sixth section of said Act be stricken out and 797 (c) be substituted therefor, so that said section when so amended shall read as follows:   That the provisions of the new Code of Georgia from section 774 to 797 (c) inclusive, and not in conflict with this Act be, and the same are hereby made applicable to said corporation and the officers elected as herein provided and their successors in office. <span style="font-size:smaller">Sixth section altered. Section as amended.</span>

Sec. III. *Be it further enacted,* That all laws and parts of laws in conflict with this Act be, and the same are hereby, repealed.

Approved December 26, 1888.

# EXHIBIT 31

Sec. XXI.   *Be it further enacted,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed. Approved November 11, 1889.

## NEW CHARTER FOR CEDARTOWN.

### No. 640.

An Act to amend, consolidate and supersede the several Acts incorporating the town of Cedartown, in the county of Polk ; to confer additional powers upon the corporate authorities thereof, and otherwise to amend the charter of said town, and for other purposes.

Section I.   *The General Assembly of the State of Georgia do enact,* That, from and after the first Tuesday of February, 1890, the several Acts incorporating the town of Cedartown, in the county of Polk, as well as the various Acts amendatory thereof, be, and the same are hereby amended, consolidated and superceded ; that the town of Cedartown shall continue to exist, but is hereby constituted a city under the name of the "City of Cedartown ;" that from and after the said first Tuesday of February, 1890, the charter of said city shall be and read as contained in the foregoing and following several sections.

*Corporate name.*

Sec. II.   *Be it further enacted,* That the said city of Cedartown is hereby incorporated, and that the inhabitants of the territory hereinafter designated are made a body corporate, and that the municipal government of the city of Cedartown, in the county of Polk, and State of Georgia, shall be vested in a Mayor, Recorder and five Councilmen, who are hereby constituted a body politic under the name and style of the Mayor and Council of the City of Cedartown, and by that name shall succeed to all the rights and liabilities of the present corporation of the town of Cedartown, after the said first Tuesday in February, 1890; that said municipal government shall have perpetual succession, and shall have power and authority to make, ordain and establish from time to time such by-laws, ordinances, resolutions, rules and regulations as shall appear to them necessary and proper for the good government, security, welfare and interest of said city of Cedartown and the inhabitants thereof; and for preserving the health, morals, peace and good order of the same, not in conflict with the Constitution

*Corporate powers.*

New Charter for Cedartown.

and laws of this State or of the United States; and shall have power and authority, and in and by said corporate name to contract and be contracted with, to sue and be sued, to plead and be impleaded in any of the courts of this State; to have and use a common seal; to hold all property, real or personal, now belonging to said town to the use of said city, for the purposes and interests for which the same were granted or dedicated; to acquire by gift or purchase, or otherwise, such other real or personal property, within or without the limits of said city as may hereafter be deemed necessary or proper for corporate purposes; and to use, manage, improve, sell, convey, rent or lease any and all of said property, as may be deemed advisable for corporate interest.

SEC. III.  *Be it further enacted*, That the corporate limits of said city shall extend one-half of a mile in all directions from the court house square in said city, excepting on the east side as hereinafter provided for; the boundary line shall be known and described as follows: Commencing on the north side of Rockmart street at a point one-half of a mile from the court house square and running west, forming a part of a circle, to, and crossing the Rome road (Main street) at a point one-half of a mile from the court house square; thence west to, and crossing Cave Spring street, one-half of a mile from the court house square; thence south and crossing Prior street one-half mile from the court house square; thence south to, and crossing Main street on the south at a point one-half mile from the court house square; thence east to "Vineyard Hill," to the point forming the southeast corner of what is known as the "Eastern Extension;" thence directly north to the south side of Rockmart street and the northeast corner of said Eastern Extension, said last two lines being straight.  The question of extending the city limits shall be submitted to the people of the district to be included; and if two thirds of the tax-payers shall petition the Mayor, Recorder and Council of the city to extend the corporate lines so as to include them, the same shall be done; and in case any individual living beyond the limits of said city shall petition said Mayor, Recorder and Council to be included within the corporate lines, the same shall be done.

*Corporate limits.*

*Boundary line.*

*Question of extending city limits must be submitted to the people.*

SEC. IV.  *Be it further enacted*, That an election under this charter shall be held at the county court house in said city, or at such other place as the Mayor and Council may direct or designate in said city, on the first Tuesday in January, 1890, and on the first Tuesday in January of each year thereafter, for Mayor, Recorder and five Councilmen, who shall hold their office for one year, and until their successors are elected and qualified; and should there

*Annual elections.*

982     PART III.—TITLE I.—Municipal Corporations.

New Charter for Cedartown.

fail to be an election held in said city at the time above specified, from any cause whatever, or should a vacancy in the office of Mayor, Recorder and Councilmen occur, from death, resignation or otherwise, the Mayor (or Mayor *pro tem.*) of said city shall order an election held in said city for Mayor, Recorder and Councilmen (or Mayor, Recorder and Councilman, as the case may be) by publishing said notice in some newspaper of said city. Said notice **Proviso.** shall be given ten days before said election ; *Provided, however,* that if any one of said offices shall become vacant at any time within sixty days of the current annual municipal election, the Mayor *pro tem.* shall act and become Mayor, and his place filled by appointment from the legal voters of said city.

**Superintendents of election.** Sec. V. *Be it further enacted,* That the superintendents of all municipal elections shall be appointed by the old or retiring Council ; that all said elections held under this Act shall be conducted according to parts 1, 2, 3, 4, 6 and 7 of Section 1288 of the Code of 1882 of this State ; and said parts of said section are hereby made applicable to such elections, and which are hereby adopted as a part of this charter ; and the superintendents of such **Returns.** elections shall make return thereof to the Mayor and Council of said city as soon as the same can be consolidated ; and Mayor and Council shall hear and determine and decide all contests within ten days after such election, and their decision shall be final and binding. The superintendents of all municipal elections shall consist of three freeholders within the corporate limits of said city, and said superintendents shall take and subscribe an oath for the due performance of their duty as such, and shall have all the powers incident to superintendents of State and county elections in this State.

**Penalty for illegal voting.** Sec. VI. *Be it further enacted,* That any person who shall vote at any city or municipal election when he has not resided in this State one year, and in the county of Polk for six months, and said city of Cedartown for sixty days, next preceding the election at which he so voted, or who shall vote at such election, who has not paid all taxes, fines and assessments in lieu of street duty, which he has had an opportunity of paying agreeable to law, or who has not registered according to this Act, or who has been convicted in this State of any crime involving moral turpitude, punishable in this State by imprisonment in the penitentiary, unless pardoned, or any person who shall buy or sell a vote, shall be indicted for a misdemeanor, and on conviction in any court in this county having jurisdiction, shall be punished as prescribed in Section 4310 of the Code of Georgia of 1882.

PART III.—TITLE I.—MUNICIPAL CORPORATIONS.    983

SEC. VII.   *Be it further enacted,*   That the Mayor, Recorder and Councilmen shall, before entering upon the discharge of their duties, each take and subscribe an oath to discharge faithfully the duties of their office; and this oath shall be also required to be taken by each person appointed to office by them.   Any officer of this State authorized to administer an oath shall be qualified to administer the same. *Oath of office.*

SEC. VIII.   *Be it further enacted,*   That the Mayor, Recorder and Council of said city shall have special power and authority therein to lay off, vacate, close, open, alter, widen, curb, pave and keep in good order and repair all streets, avenues, alleys, lanes, sidewalks, cross-walks, drains, sewers, gutters for the use of the public, or any citizen of said city, and to improve and light the same, and have them kept free from any obstructions of any kind; to regulate the width of the sidewalks and cross-walks on the streets, and to order the sidewalks, cross-walks and footways to be curbed and paved and kept in good order, free from filth of any kind, by the owners and occupants thereof, or of the real property next adjacent thereto; and if such owner or occupant thereof shall fail or refuse to so curb, pave, remove obstructions, or clean such sidewalk when so ordered, the Mayor and Council shall have the same done, and the cost of the same when done shall become a lien on such adjacent property, and the same shall be collected by execution, to be levied on such property, which shall be sold under the same rules and regulations as govern other Marshal's sales in said city; to establish and regulate markets; to prescribe the time for holding the same; to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome; to prevent hogs, cattle, sheep, horses, mules, goats, asses, and all other animals and fowls of all kinds, from going at large in said city, or in any prescribed territory therein; to protect places of divine worship; to abate or cause to be abated anything which, in the opinion of the Council, is a nuisance; to regulate the keeping and selling of gunpowder, kerosene, and all other combustible and hazardous articles of merchandise; to guard against danger and damage by fire; to regulate the running and management of steam engines and locomotives, whether for factories, furnace, cotton gins or railroads, within the corporate limits of said city, or for any and all sorts of vehicles, howsoever drawn or propelled, that may traverse or cross any streets, avenues, alleys, lanes or roads; to guard against and prevent the fast driving or riding of any horses on the main streets of said city; to provide, lay out, improve and maintain public parks, squares or pleasure *Duties and powers of the Mayor, Recorder and Council.*   *Markets.*   *Nuisances.*

New Charter for Cedartown.

Cemeteries grounds and walks; to provide places for the burial of the dead, and to regulate interments therein; to provide for the regular building of houses, or other structures, and for the making of street and division fences for the owners of adjacent property; the drainage of lots by proper drains and ditches; to define the duties and prescribe the powers of all officers or agents appointed by them; fix their salary and term of office; require and take from them such bonds as will protect the tax-payers of said city, and conditioned for the faithful discharge of their duties; to erect or Gas and authorize the erection of gas works, or prohibit the same; to erect water works. or prohibit the erection of water works in the city; to prevent injury to the springs and water sources within said city; to regulate and provide for the weighing of hay, coal, cotton and all other articles of merchandise bought and sold by weight within said city; to provide a revenue for the city, and appropriate the same to its expenses; to provide suitable ordinances for the annual assessment of taxes on all property, real or personal, subject to State and county tax, within the corporate limits of said city; to levy a special tax on all professions and callings, or business carried on in said city.

SEC. IX.   *Be it further enacted,*  That the Mayor, Recorder and Special li- Council shall have authority to grant licenses to public wagons, cense and drays, carts, trucks and other vehicles conveying persons or property for hire in said city, and to prescribe fees for such licenses, and to levy and collect a special tax from any person, firm or corporation following or carrying on any profession, business, trade or avocation in said city.

SEC. X.   *Be it further enacted,*  That said Mayor, Recorder and Councilmen shall have power to levy and collect by execution or Property other legal process, a tax upon all the property, both real and pertax. sonal, within the corporate limits of said city, and upon all banking, insurance and other capital employed therein, including all cash, notes, mortgages or other evidence of debts held in said city. Proviso. *Provided,* that the rate of tax hereby authorized shall not exceed three-fourths of one per cent. upon the assessed value of such property. Said Mayor, Recorder and Council shall have power to levy Special and collect a special tax upon all shows, circuses and other exhibitaxes. tions; and on all peddlers and itinerant traders and venders of goods or medicines; all keepers of pool and billiard tables and all other like tables; ten-pin alleys, and all other alleys or places kept for the purpose of playing on or renting; also upon all dogs within the corporate limits.

New Charter for Cedartown.

SEC. XI.  *Be it further enacted,* That it shall be the duty of the Mayor, Recorder and Council of said city, on or before the first day of March, 1890, and annually thereafter, on or by said first day of March, to appoint three upright, intelligent and discreet freeholders of said city, to serve as a Board of Tax Assessors for said city for the term of one year, and until their successors are appointed and qualified; and if from any cause the place of any one or more of said Borrd of Assessors is made vacant, said Mayor, Recorder and Councilmen shall cause the same to be supplied by appointment, as before provided; and before entering upon the discharge of their duties, said Board of Assessors shall each take and subscribe an oath to faithfully and impartially report all real estate in said city, subject to taxation, and assess the same at the reasonable and just value thereof, on the first day of May of each year.  It shall be the duty of said assessors, between the first days of May and July of each year, to make out a complete list of all lots in said city, as shown by the maps thereof, and all real estate in said city not divided into lots, and to assess for taxation each lot and parcel of land at its reasonable and just value, on said first day of May of each year; the list so made out shall show the name of the owner, if known, and his residence, the number of the lot, if platted or numbered; if not, then such description shall be given as is necessary to locate the property, opposite which description shall be set its value as assessed by said board. *(margin: Board of Tax Assessors. Assessors oath. Their duties.)*

SEC. XII.  *Be it further enacted,* That all processes, writs, warrants, subpœnas, executions or other papers shall be issued by the Recorder of the Council, in the name of the Mayor of said city, and signed by said Recorder; and it shall be the duty of the Marshal of said city to serve all such processes,, and to levy all exeeutions as may be placed in their hands in favor of said city, and to advertise and sell the property so levied upon in the manner prescribed in section 36 of this Act. *(margin: Writs and processes.)*

SEC. XIII.  *Be it further enacted,* That the Mayor, Recorder and Council shall have power to require every male inhabitant of said city, who is subject to road duty under the laws of this State, to work such length of time on the streets of said city, as said Mayor, Recorder and Council shall by ordinance direct; or they may prescribe a commutation tax to be paid by such persons in lieu of said work; and they shall have power to enforce obedience to their laws and ordinances under this section by a fine, imprisonment, or work on the streets as provided in section 41 of this Act, and no tax paid in lieu of such work, nor any money arising from fines or forfeitures for failure of persons to perform such work, shall *(margin: Street work. Commutation tax.)*

New Charter for Cedartown.

be used for any purpose except in payment for work done, or improvements put on the streets or sidewalks.

SEC. XIV.   *Be it further enacted*, That said Mayor, Recorder and Councilmen shall have power and authority to establish and maintain a system of sewerage and drainage in and around said city, for the health, cleanliness and comfort of its inhabitants; and in all cases where it becomes necessary to take or use private property or injure private rights, and the owners of said property or the persons so injured, and the Mayor, Recorder and Council cannot agree as to the amount of damages to be paid to the injured party, the damages shall be assessed as is provided in section 44 of this Act; and the same rights of appeal, etc., as therein provided, shall also prevail in condemning property in this section.   And said Mayor, Recorder and Council shall have entire and absolute control and jurisdiction of all soil pipes, private drains and sewers, water closets and privy vaults in said city, with full power to prescribe their location, structure, uses and preservations, and to make such regulations concerning them in all particulars as may seem best for the preservation of health and the comfort of the inhabitants of said city, with power also to require changes in or the total discontinuance of any such contrivances and structures.

*[margin note: Sewerage and drainage.]*

*[margin note: Damages for condemned property.]*

SEC. XV.   *Be it further enacted*, That said Mayor, Recorder and Council shall have power and authority to establish and maintain a system of water works for said city and the inhabitants thereof, and they shall have power to acquire any property or rights either within or without said city limits necessary or appropriate for affording a complete and sufficient supply of water for said city; and said Mayor, Recorder and Council shall have power to cause such examinations and surveys to be made for the work contemplated in this section, as shall be necessary or proper to the selection of the most advantageous location or site for locating all the works and appliances for the purpose of bringing the water and distributing it in the city, and for carrying out the object of this section; and for such purpose, said city, by its officers, agents, servants or employes shall have the right and power to enter upon the land or water of any person which might be necessary for the proper construction, operation and security of their works, and condemn and take such land, water and right-of-way, first making just compensation therefor as provided by law for private property taken for public use, and all damages to be assessed as provided for in section 44 of this Act.

*[margin note: System of waterworks.]*

SEC. XVI.   *Be it further enacted*, That said Mayor, Recorder and Council shall have power and authority to light the streets in

PART III.—TITLE I.—MUNICIPAL CORPORATIONS.        987

said city by means of gas, electricity, or such other means as they may see proper to adopt, and for this purpose they shall have power to lay mains and pipes along any street or highway in said city. *Gas and electric lights.*

SEC. XVII.  *Be it further enacted,* That said Mayor, Recorder and Council shall have power and authority to establish and fix fire limits in said city, and from time to time to extend and enlarge the same in their discretion; within which fire limits, when established, it shall not be lawful for any person to erect other than fire-proof buildings; and should any person erect or cause to be erected any building or other structure not fire-proof within the fire limits so established, said Mayor, Recorder and Council, after giving ten days' notice, shall cause the same to be removed at the expense of the owner, to be collected by execution, as provided in section 36 of this Act.  And should the owner of such buildings or structures fail or refuse so to do, such owner may be punished as prescribed in section 41 of this Act.  And should any person, after receiving like notice, continue to work on and aid in erecting such building or other structure, they shall be liable to the like penalties.  Said Mayor, Recorder and Council shall have power to determine, either from their own knowledge or from the advice of competent persons appointed to examine the same, what buildings or other structures are fire-proof, and what buildings are not. *Fire limits.* *Buildings that are not fire-proof may be removed.*

SEC. XVIII.  *Be it further enacted,* That any person, company, or corporation owning real estate in said city, desiring to improve the same, or which has already been improved, located upon any street, avenue or alley, the grade of which has not been fixed and established, shall possess the right to have the grade of such street, avenue or alley permanently established by complying with the following requirement, to-wit: The owner, his agents or attorney shall make affidavit stating the ownership and the description of the property, and the improvements done, or to be done.  That such improvements have, or are to cost, above the sum of two hundred dollars, and that he desires to have the grade of such street or alley permanently established.  Said affidavit, or a copy thereof, shall then be served on the Mayor, Recorder and Council, who shall, within thirty days thereafter, have the necessary surveys made, and fix the grade of such street or alley, and make a plat showing the same, and shall deliver it to the applicant, together with the affidavit of the surveyor, showing that the same is correct and fair, and upon the same being filed, together with the original affidavit of the applicant, in the office of the Clerk of the Superior Court of Polk county for record, the owner shall thereupon have a vested right to such grade, and shall be entitled to recover dam- *Grade of street must be permanently established*

ages from said city for any injury done to said property, should the city thereafter alter such grade.

Sec. XIX. *Be it further enacted,* That said Mayor, Recorder and Council shall have authority to organize and maintain a fire department at the expense of said city.

Sec. XX. *Be it further enacted,* That said Mayor, Recorder and Council shall have authority to regulate, restrict or prohibit the sale of spirituous, malt or intoxicating liquors or bitters in said city, and the violation of any ordinance adopted by authority of this section shall be punished as is prescribed in section 41 of this Act.

Sec. XXI. *Be it further enacted,* That it shall not be lawful for any person holding any office in said city, whether by election or by appointment, to be interested, either directly or indirectly, in any contract to which said city is a party ; and any contract made in violation of this section shall be void as against said city, and any such officer violating this provision shall be dismissed from his office, and, in addition, shall be punished as prescribed in section 41 of this Act.

Sec. XXII. *Be it further enacted,* That said Mayor, Recorder and Council shall have authority to appoint a Board of Health for said city, and also a Board of Water Commissioners and Gas Commissioners, and also Street Commissioners and City Attorney, and such number of Marshals and Deputy Marshals as they shall deem proper and necessary, and such other officers and agents as may be necessary to the interest of said city ; to prescribe their duties and fix their compensation. Any of said officers and agents may be appointed from their body, and they shall have power at any time to remove any of said officers or agents.

Sec. XXIII. *Be it further enacted,* That said Mayor, Recorder and Council may compel the payment of any tax, fine, assessment or forfeiture by execution, levy and sale as prescribed in section 36.

Sec. XXIV. *Be it further enacted,* That said Mayor, Recorder and Council shall provide by ordinance the manner in which bonds for the appearance of offenders against the ordinances may be forfeited and collected.

Sec. XXV. *Be it further enacted,* That the Mayor, Recorder and Council shall require to be kept in books provided for that purpose, full and correct accounts of all the acts and doings of said Mayor, Recorder and Council and all other officers and agents of said city, and such books shall be at all times subject to inspection by any citizen tax-payer of said city ; said Mayor, Recorder and

**Marginal notes:**

Fire department.

Sale of liquors.

Officers prohibited from participating in contracts.

Board of Health.

Subordinate officers.

Executions

Appearance bonds

Minutes.

Council shall also make or cause to be made, by the person having such matters in charge, an annual statement and account, under oath, of the financial condition of said city; such account shall be a full and itemized statement of all moneys collected, when and from what source collected, of all amounts paid out, and when and on what account paid out, the sums due the city and from what source due, the existing liabilities of said city and the balance on hand.   This statement and account shall be made and published on or before the first day of January in each year. *Annual statements.*

SEC. XXVI.  *Be it further enacted,* That said Mayor, and in his absence, the Mayor *pro tem.,* shall preside at all meetings of the Council, but the Mayor shall have no vote except in case of a tie. The Mayor shall have the revision of all ordinances, orders and resolutions passed by the Council, and said Mayor shall have five days after the meeting at which any ordinance and order or resolution was passed, in which to file with the Recorder of the Council, in writing, his dissent thereto, which, when filed, shall have the effect to defeat such ordinance, order or resolution; but, notwithstanding such veto, said Recorder and Council may by a vote of two-thirds of all the members of the Council pass such ordinance, order or resolution, and in the absence of the Mayor, the veto power may be exercised by the Mayor *pro tem. Duties of the Mayor.*

SEC. XXVII.  *Be it further enacted,* That if any person, after having been tried and convicted before the Mayor or Mayor *pro tem.,* shall be dissatisfied with such judgment of conviction, such person shall have the right to *certiorari* the same to the Superior Court of Polk county, under the same rules and regulations as governs in cases of *certiorari* from the Justice to the Superior Court of this State, except that in all cases of *certiorari* the party dependant shall pay the costs which have accrued, and give a good and sufficient bond, to be judged of and approved by the presiding officer, payable to said Mayor, Recorder and Council, conditioned to pay such fine and costs as may have been adjudged against him, as well as all future costs in said case. *Appeal from Mayor's court.*

SEC. XXVIII.  *Be it further enacted,* That the salary of the Mayor and all other officers and agents of said city shall be fixed at the first regular meeting of each newly elected Council, or when elected and appointed to office, and shall not be changed during the year, or the time for which they were elected or appointed; that sections 786, part (a), 794 and 795 of the Code of Georgia for 1882 are hereby adopted and declared to be a part of this Act. *Salaries.*

SEC. XXIX.  *Be it further enacted,* That the Mayor, Recorder and Council shall have authority to pass such ordinances as they

New Charter for Cedartown.

<div style="float:left; width:15%">Manufacturing enterprises may be exempt from taxation.</div>

may deem best for the exempting from city or municipal taxation any manufacturer, person, company or corporation for a period of not longer than eight years.

Sec. XXX. *Be it further enacted,* That the Mayor, Recorder and Council of said city shall have full power, whenever they may deem necessary, to require all railroads in said incorporation to <span>Rrailroad crossings.</span> make crossings on their several roads for the convenience of the traveling public, and to keep the same open for travel; and to pass all ordinances needful for the carrying out of the provision of this section; and in case the railroads, as aforesaid, shall fail and refuse to fix said crossings when notified so to do, the Mayor, Recorder and Council shall have power to put the same across such railroads at the expense of said railroad, and may issue their execution and levy and collect the same, as is provided in section 36 of this Act for issuing, directing, levying and selling property of individuals.

Sec. XXXI. *Be it further enacted,* That it shall be the duty of <span>Books of registration.</span> the Recorder of the city to open books for the registration of voters on the first Saturday in November, 1890, and every year thereafter before each annual election, at 10 o'clock a. m., and keep the same open from day to day, from 10 a. m. to 6 p. m., until the first Saturday in December, when the same shall, at 6 p. m., finally close; in which said book shall be inscribed the names of the persons entitled to vote in said city, and his place of residence, and occupation; and the Recorder must not permit any one to register who is not entitled to do so, and if he does so knowingly he shall be discharged from office. Each person registered shall pay to the Recorder of said city a registration fee of five cents, which shall be <span>Registration fee.</span> used as the Mayor, Recorder and Council of said city may prescribe, and no person who is not registered shall be allowed to vote at any election in said city for officers thereof, or for any measure or matter effecting the same, unless such person has become 21 years of age after said books were closed.

Sec. XXXII. *Be it further enacted,* That the superintendent of all elections for Mayor, Recorder and Council, held by authority <span>Manner of holding elections.</span> of this Act, shall have the same conducted according to parts 1, 2, 3, 4, 6 and 7 of section 1288 of the Code of 1882 of this State, and said parts of said sections are hereby made applicable to such elections, and which are hereby adopted as a part of this charter, and the superintendents of such elections shall make return thereof to the Mayor, Recorder and Council of said city as soon as the same can be consolidated, and said Mayor, Recorder and Councilmen

New Charter for Cedartown.

shall hear and decide all contests within ten days after such elections, and their decisions shall be final. *Contests.*

SEC. XXXIII. *Be it further enacted,* That any person who shall vote at any city or municipal election when he has not resided in this State one year, and in the county of Polk and said city of Cedartown for the space of six months, next preceding the election at which he so voted, or who shall vote at such election who has not paid all taxes, fines and assessments in lieu of street duty, which he has had an opportunity of paying agreeable to law, or who has not registered according to this Act, or who has been convicted in this State of embezzlement of public funds, malpractice, bribery or larceny, or any crime involving moral turpitude punishable in this State by imprisonment in the penitentiary, unless pardoned, or any person who shall buy or sell a vote or votes, shall be indicted for a misdemeanor, and on conviction in any court in this county having jurisdiction, shall be punished as prescribed in section 4310 of the Code of Georgia. *Qualified voters.* *Punishment for illegal voting.*

SEC. XXXIV. *Be it further enacted,* That all taxes, fines and assessments due the city of Cedartown, shall rank as debts due the public, whether in the administration of the assets of the decedent or otherwise; and tax executions in favor of the city shall have the same lien on property as judgments have by law. *Taxes, fines and assessments.*

SEC. XXXV. *Be it further enacted,* That the Mayor, Recorder and Council of said city of Cedartown shall have power and authority to borrow money and contract loans for the public good, when, in their judgment, it shall be for the interest of said city to do so; also to issue bonds and pledge the property, faith and credit of said city for the payment of debts so incurred, where now allowed by law, as prescribed in section 508, parts i, j, k, and l of the Code of Georgia for 1882, which said sections are adopted as part of this Act. *Authority to borrow money.*

SEC. XXXVI. *Be it further enacted,* That all persons owning or claiming personal property of any and every kind, sort or description, subject to taxation, living or residing within the corporate limits of said city, or who is engaged in any sort of business or calling, either by himself or agent, in said city, shall, on or by the first day of July of each year, make a return of the same to the Tax Assessor, together with the value of the same on the first day of May of each year, under oath and upon the blanks furnished by the City Tax Assessor; in which returns all the personal property owned by the person on the first day of May must be included, and all the following facts and questions must be fully set forth and answered: *Tax returns.*

New Charter for Cedartown.

1. What and how many businesses are you engaged in, either individually or as a partner or otherwise, in said town?

2. How much capital have you in any bank or banking house doing business in the city?

3. How much capital has any bank or banking house in said town, of which you are president?

4. How much capital or stock have you in any business or loan association or building and loan association in this city?

5. How much capital have you in stocks and bonds of any association of any kind in this city?

6. How much money have you on hand?

7. What is the gross value of your notes, book accounts, or other obligations for money, and the market value thereof—whether the same are against persons or debtors within or without the State?

8. What is the value of your merchandise of all kinds on hand?

9. How much capital have you invested in bonds—except bonds of the United States—as are by law, exempt from taxation?

10. What is the value of your household furniture, including your tableware?

11. What is the value of your kitchen furniture?

12. What is the value of your office furniture?

13. What is the value of your pianos, organs or other musical instruments?

14. What is the value of your sewing machines?

15. What is the value of your gold watches?

16. What is the value of your silver watches?

17. What is the value of your watches made from material other than gold or silver?

18. What is the value of your gold and silver ware?

19. What is the value of your diamonds and jewelry, worn by owner or not?

20. What is the value of your horses?

21. What is the value of your mules and asses?

22. What is the value of your cattle?

23. What is the value of your sheep?

24. What is the value of your goats?

25. What is the value of your hogs?

26. What is the value of your carriages, wagons and buggies?

27. What is the value of your agricultural tools, implements and machinery?

28. What is the value of your library, pictures, paintings and statuary?

*Questions to be propounded to and answered by all tax payers.*

29. What is the value of yout cotton, corn, and other farm products, on hand and for sale?

30. What is the value of your guns, pistols, bowie knives and such articles?

31. What is the value of your portable saw-mill or saw mills, gins, engines and all other machinery, stationary and otherwise, and not returned as part of the realty?

32. What is the value of all other property not herein mentioned?

SEC. XXXVII.   *Be it further enacted,* That if any person shall fail or refuse to make such returns under oath by the first day of July in each year, the Board of Tax Assessors shall assess the personal property of the person so failing to make returns, at double the actual cash value thereof of said property; and if any person shall make any returns of personal property which the Board of Assessors may deem incorrect, then said Board shall assess such personal property, and fix such value upon it as they may deem just and reasonable.   If the owners of any real or personal property conceive that said assessors have placed too great a value on such property, such owners or their agents may appeal to a Board of Arbitration, provided the same is done within thirty days after the taxes become due; said last named Board of Arbitrators to be selected as follows, and from the freeholders of the city of Cedartown: the party or parties that feel aggrieved shall select one freeholder; the Mayor, Recorder and Council shall select another, and the two thus selected shall agree upon the third freeholder; the Board of Arbitrators thus selected shall proceed to hear and determine the value or values of the property in dispute at the time when the Tax Assessor placed his valuation on the same.   The action of said Board of Arbitrators shall be final in the premises. If any tax payer thinks any property has been assessed too low by the Board of Assessors, then such person can and shall have the right to have such assessment reviewed by a Board of Arbitrators, selected in the manner as herein provided for; where persons appeal iu cases where they think the valuation is too great, the action of said Board of Arbitrators shall be final in the premises. The lists of all real estate assessed as herein provided, and all personal property returned by the owner or owners, or assessed as herein provided, shall be completed by said Board of Assessors and returned by them to the Mayor, Recorder and Council, on or before the first day of August, of each year; and within fifteen days thereafter said City Council shall ascertain and declare the rate to be levied and collected from such assessments and returns, and the tax so levied shall be due and payable on the fifteenth day of September in the

*[marginal notes:]* Penalty for failure to make tax returns.

Right to appeal to board of arbitrators.

How selected.

When assessors lists shall be closed.

year for which they are levied.    And when the taxes so levied are not paid before the fifteenth day of October in each year, the same *Manner of* shall be collected as follows:    An execution shall be issued by the *collecting* Recorder, directed to the Marshal of said city, against the real and *taxes.* personal estate of each defendant or defaulter, and in case of real estate, the owner of which is unknown, against the said real property, describing the same by number and location, which execution shall be levied by a Marshal or his deputy of said city, and after advertising the same once a week for four weeks, in some news-*Marshal's* paper published in said city, he shall sell the property so levied *sales.* on before the door of the Mayor's court house or room in said city, on some regular Sheriff's sale day and within the legal hours of Sheriff's sales; and the deed of said Marshal or his deputy shall be as effectual to pass the title to property thus sold, as the deed *Proviso.* of the owner of such property; *Provided*, that the property thus sold may be redeemed by the owner thereof within six months from such sale, upon such owner paying to the purchaser the amount paid out by him in such purchase, together with twenty per cent. on the same.    The Mayor, Recorder and Council shall prescribe, by ordinance, the compensation to be paid said assessors.

SEC. XXXVIII.    *Be it further enacted*, That the Mayor shall *Mayor's* be chief executive officer of said city, and it shall be his duty to see *duties.* that the ordinances, rules, acts, regulations and resolutions of the Council are faithfully executed, and during any absence or disability of the Mayor, the Recorder and Council shall select one of their number who, during such absence or disability, shall act as *Mayor pro* Mayor *pro tempore*, with all the powers and duties of the Mayor. *tem.*

SEC. XXXIX.    *Be it further enacted*, That the Mayor, Recorder and Councilmen before entering upon the discharge of their *Oath of* duties shall each take and subscribe an oath to discharge the duties *office.* of their office, and this oath they shall also require to be taken by each person appointed by them.

SEC. XL.    *Be it further enacted*, That if the office of Mayor, Recorder or Councilman shall, or any one of them shall become *Vacancies* vacant at any time more than sixty days previous to a regular elec-*—how* tion for Mayor, Recorder and Councilmen, it shall be the duty of *filled.* the Mayor, or, in case of a vacancy in the office of Mayor, the Recorder and remaining Councilmen, to fill said vacancy by selecting a qualified citizen or citizens of said city to fill said vacancies for the balance of the year.

SEC. XLI.    *Be it further enacted*, That in all elections for *Managers* Mayor, Recorder and Councilmen, the election shall be managed *of elec-* and presided over by three freeholders of said city, and the persons *tions.*

New Charter for Cedartown.

elected either as Mayor, Recorder or Councilman shall take and subscribe the oath of office, hereinbefore prescribed, before some officer of this State authorized to administer an oath, and the certificate of such managers shall be sufficient authority to the person elected. The managers of said election shall be selected by the old or retiring Mayor, Recorder and Councilmen.

SEC. XLII.  *Be it further enacted,* That the Mayor of said city shall have jurisdiction to try all persons charged with violation of any law or ordinance, rule or regulation of said city, and to punish such persons when properly convicted, by fine not to exceed one hundred dollars, imprisonment in the calaboose of said city not to exceed fifty days, and to work at hard labor on the streets or such other public works of said city as the Mayor shall adjudge, not to exceed fifty days. Any one, or all of these punishments may be inflicted, in the discretion of said Mayor or person acting as Mayor in the trial of offenses. *(margin: Jurisdiction of the Mayor.)*

SEC. XLIII.  *Be it further enacted,* That the Mayor of said city shall be invested with authority and power of a Justice of the Peace, so as to suppress all riots, breaches of the peace, and commit for violations of the criminal laws of Georgia within the limits of said city, and to arrest, confine or bind over all offenders against the laws of this State, to answer for such offenses before the proper tribunal; and may issue warrants on affidavits made before him, and may hold courts of inquiry, as other Justices of this State, when the offense was committed in said city. *(margin: Mayor has powers of Justice of the Peace.)*

SEC. XLIV.  *Be it further enacted,* That the Mayor's Court of said city is hereby established and declared to be a Court of Record, and shall be presided over and its sessions shall be held by the Mayor or the Mayor *pro tempore* of said city, and shall be held as often as said officer of said court may determine; and the Recorder of said city is hereby declared to be Clerk or Recorder of the Mayor's Court. Said court shall have jurisdiction and cognizance of and over all offenses against any violations of the ordinances and by-laws and rules and regulations of said city, and shall have power to impose on each person convicted thereof such punishment as may be prescribed in the ordinances, rules and regulations of said city, and not inconsistent with the provisions of this Act for violations of the same; and shall have the power to fine or imprison, or fine and imprison, for contempt, and may enforce the collections of fines by execution issued, directed and returned as tax executions are provided to issue in this Act, and shall enforce all such imprisonments by *mittimus,* directed to the Marshal or Deputy Marshal of said city, and in all prosecutions in said city, *(margin: Mayor's Court established; Its powers.)*

996    PART III.—TITLE I.—Municipal Corporations.

and the same shall be commenced by affidavits as prescribed in Section 4715 of the Code of Georgia, upon which a warrant shall issue and be signed by the presiding officer of said Mayor's Court, which shall be in form of warrant described in Section 4716 of the Code of Georgia, except that it shall be directed only to the Marshal or Deputy Marshal, or Policeman of said city, and shall require the person therein named to be taken before the said Mayor's Court of the city of Cedartown for trial; and on this warrant and affidavit the issue of guilty or not guilty shall be formed, and the trial proceed whenever the case is sounded in open court, unless continued under the rules of law as far as they can be applied to said court; and it shall only be necessary, in such affidavit, to describe the offense alleged, with sufficient particularity as that the Judge of said Court may readily understand the nature of the charge and no more; and if such affidavit and warrant should be dismissed for want of informality, either on demurrer before trial or be detected afterwards, and at any time before judgment, and whether the case is pending before the Mayor's Court on appeal before the Mayor and Council, the same will be *nolle prosequied*, and another, and another, and another, be sued out, and so on from each dismissal until one should be drafted sufficient for the purpose, and from the judgment of said Mayor's Court, there shall be an appeal within ten days, to the Mayor and Council of said city after it is entered, unless continued under the rules of law granting continuance in this State, as far as the same can be applicable; and before such appeal is received, the defendant shall pay all costs, and give bond for his personal appearance to abide the final judgment in said case; and whenever a person is arrested by authority of this Act, it shall be lawful for him to enter into a bond to be approved by the Marshal of said city, conditioned for the faithful appearance of such person to answer such charge, when the same shall be heard, and shall be made payable to the City Council of said city of Cedartown; which bond shall be forfeited on the non-appearance of the defendant in the same manner in said court as penal bonds are forfeited in Superior Courts of this State.  And no *certiorari* shall be allowed or granted to the decision of said Mayor's Court until the same has been appealed before the Mayor and Council and the decision there confirmed or sustained in whole or in part until all costs have been paid to the Recorder of the Court of said city and bond given for the appearance of the petitioner in *certiorari* to answer the final judgment of the Court in that matter; but there shall be no appeal or *certiorari* from a fine or commitment for contempt; but such fine for contempt shall not exceed five dollars or

*Marginal notes:*
Form of warrant.
Appeal.
Appearance bond.
*Certiorari.*

PART III.—TITLE I.—Municipal Corporations.        997

imprisonment for contempt not exceeding five days; and the presiding officer of said Mayor's Court, or the presiding officer over the Council when sitting on appeal cases, shall have the power to summon any witness residing in the county of Polk or in said city to appear and testify for prosecution or defense. But the Mayor or Mayor *pro tempore*, who heard the case in the Police Court, shall not be allowed to sit in the trial of the said case in appeal before the Mayor and Council of said city.

Sec. XLV.   *Be it further enacted*, That if, in the judgment of the Mayor, Recorder and Council, it shall at any time become necessary to open, widen, or in any manner alter any street, alley, sidewalk or other passway in said city, they shall have full power to order the same done, upon complying with the following rules :   If the owner of the property to be affected by such alteration conceives that he will be damaged thereby, and if such owner and said Mayor, Recorder and Council shall be unable to agree as to the fact of such damage, or the amount thereof, said Mayor, Recorder and Council shall cause to be served on such owner or his agent, notice of their intention to condemn such property, describing in such notice, the property sought to be condemned, and to state the quantity sought to be taken, and the purpose for which it is to be taken ; which notice shall, also, state the time and place the proceedings to condemn such property will be had, which shall not be less than five nor more than ten days from such time of service.   It shall be the duty of said Mayor, Recorder and Council to select one upright and intelligent freeholder of said city, and the owner of such property, or his agent, may select one such person, or if he shall fail or refuse to make such selection, then it shall be the duty of the Justice of the Peace of the militia district in which said city is situated, to select some intelligent and upright citizen freeholder, as aforesaid ; and it shall be the duty of the two persons selected, in either way above named, to select a third upright and intelligent citizen of said city ; and it shall then be the duty of said three persons to inspect the property sought to be condemned, and to hear such evidence pertaining thereto, as the parties may offer, taking into consideration the enhanced value, if any, of the property by reason of the opening, widening or altering such streets, alleys, sidewalks, or other passways, as the case may be ; and from the decision of said freeholders there shall be an appeal by either party to the Superior Court of Polk county, under the same rules and regulations as govern appeals from Justices' Courts to the Superior Court.   The Mayor, Recorder and Council, upon payment, or tender to the owner, or his agent, of any sum found by said arbitrators, shall have the right to

Authority to open or widen streets.

Damages for condemned property.

Selection of arbitrators.

proceed to open, widen, or alter such street, alley, or sidewalk, not-withstanding any appeal by the owner of such premises.

SEC. XLVI.    *Be it further enacted,* That nothing in this Act shall be construed so as to repeal or annul " An Act to authorize the town of Cedartown, in Polk county, Georgia, to establish and maintain a system of public schools for said town," approved September 9th, 1887, and any and all acts amendatory thereof, but said Act is adopted and made a part of this Act.

*[margin: Does not effect system of public schools.]*

SEC. XLVII.    *Be it further enacted,* That any and all ordinances, rules and regulations now of force in said town of Cedartown, and not inconsistent with this Act, shall be and remain in full force and effect after the first Tuesday of February, 1890, until altered, amended or repealed by said Mayor, Recorder and Council.

*[margin: Ordinances not inconsistent with this Act remain in force.]*

SEC. XLVIII.    *Be it further enacted,* That all laws and parts of laws in conflict herewith, the same be, and are hereby repealed.

Approved November 11, 1889.

---

## AMENDING CHARTER OF ATHENS.

### No. 642.

An Act to amend the charter of the city of Athens, to fix the term of office of the Mayor of said city, and for other purposes.

SECTION I.    *Be it enacted by the General Assembly of the State of Georgia,* That hereafter the Mayor of the city of Athens shall be chosen for a term of two years or until his successor is elected and qualified.   The provisions of this Act shall apply to the Mayor, who shall be chosen at the annual election held on the first Wednesday in December, 1889, and the Mayor of said city shall be elected biennially thereafter on the first Wednesday in December under the same rules and regulations as now govern the election of Mayor and Aldermen of said city.

*[margin: Mayor's term of office.]*

SEC. II.    *Be it further enacted,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

Approved November 11, 1889.

# EXHIBIT 32

SEC. 4. That said association shall have power to make such laws By-laws. and regulations as may be necessary for the government of the association not inconsistent with the laws of North Carolina.

SEC. 5. That the place of business of said association shall be at Location. Red Springs in the county of Robeson and state of North Carolina.

SEC. 6. That said association is founded for the purpose of en- Objects. couraging and fostering all industrial enter prises including manufacturing, agriculture, horticulture, and the raising and improve- Fairs. ment of live stock by holding fairs annually, or oftener, as the interests of said association may require, and by awarding premiums for the exhibition of articles and for other purposes for which said association is created.

SEC. 7. That said association may purchase and hold real estate to May buy and an amount not exceeding twenty-five thousand dollars, and personal personal estate. property to an amount not exceeding five thousand dollars. That said association may purchase real estate and sell the same and convey such real estate to purchasers in fee-simple. That all purchases and sales of real estate shall be determined by a stock vote, and all conveyances shall be signed by the president and secretary of said association.

SEC. 8. That the par value of shares in the stock of said associa- Shares. tion shall be ten dollars per share. That the private property of Stockholders not stockholders shall not be liable for the debts of the association. personally liable.

SEC. 9. That all laws and parts of laws inconsistent with this act Repealing clause. are hereby repealed.

SEC. 10. That this act shall be in force from and after its ratification. Ratified the 9th day of March, A. D. 1891.

---

## CHAPTER 327.

### An act to charter the town of Leicester in the county of Buncombe, North Carolina.

*The General Assembly of North Carolina do enact :*

SECTION 1. That the town of Leicester in the county of Buncombe, Name. be and the same is hereby chartered under the name and style of the town of Leicester, and that J. B. Wilson shall be mayor of said town Commissioners. and that D. F. Summey, R. D. F. Robeson, R. T. Poor, Lon Wells and M. E. Hayes, and their successors in office, shall be commissioners of said town, and shall be and are hereby declared a body corporate and politic, with succession during the corporate existence of said town, and shall be styled the commissioners and aldermen of the town

1414                     1891.—PRIVATE—CHAPTER 327.

Powers.             [of] Leicester; and as such shall have power to sue and be sued, plead
                    and be impleaded, and have and use a common seal and acquire real
                    and personal estate to the amount of ten thousand dollars.   That the
Term of office.     said J. B. Wilson and the commissioners aforesaid shall continue in
                    office as such and perform all the duties pertaining to their offices of
                    mayor and commissioners of said town until their successors shall be
                    elected and qualified as hereinafter provided.
Corporate limits.      SEC. 2. That the corporate limits of said town shall be and are
                    hereby declared to be included within and up to the following boun-
                    daries, to-wit, one-half mile in every direction from the brick store
                    known as the Hampton and Brown house.
Officers.              SEC. 3. That the officers of said town shall consist of a mayor and
                    five commissioners to be elected by the qualified voters of said town
                    annually on the first Monday in May.
Election.              SEC. 4. Said election of said mayor and commissioners shall be held
                    at the brick store of Hampton and Brown in said town and no person
                    shall be entitled to vote at said election or at any election in said town
                    for municipal purposes unless he shall be an elector of the State of
                    North Carolina and shall have resided ninety days next preceding the
                    day of election within the said corporation.
Appointment of         SEC. 5. It shall be the duty of the commissioners of said town, on
registrar.
                    the second Monday in March in each year, to appoint a registrar and
Judges of elec-     two judges of election, who shall be qualified voters of said town,
tion.
                    and who shall within ten days thereafter be notified of their appoint-
                    ment by the constable of said town; the registrar so appointed shall
                    immediately make publication at the door of the brick house and
                    three other public places in said town of his appointment as such.
                    He shall be furnished with a registration book by the commissioners
Duties of regis-    of said town, and it shall be his duty to register the qualified voters
trar.
                    of said town in such a manner that said book shall show an accurate
                    list of the names of the qualified voters residing in said town; he
                    shall also, between the hours of sunrise and sunset on each day (Sun-
                    days excepted), for thirty days preceding each election, keep open
                    said book for the registration of any electors residing in said town
                    entitled to register whose names have never before been registered
                    in said town, or do not appear on the registration book; but the com-
                    missioners of said town may, if they think proper, upon giving
                    thirty days' notice at four public places in said town, require an
                    entirely new registration of voters before any election held therein.
Oath of election       SEC. 6. The registrar and judges of election, before entering upon
officers.
                    the discharge of their duties, shall take the oath prescribed by article
                    six, section four of the constitution of North Carolina, before some
                    justice of the peace of Buncombe county.
Duties of election     SEC. 7. It shall be the duty of [the] registrar and judges of election
officers concern-
ing registration,  to attend at the polling place in said town with the registration book
&c.                 on Monday preceding the election from the hour of nine o'clock

A. M. to the hour of five o'clock P. M., when and where the said book
shall be opened to the inspection of the electors of said town, and
any of the electors shall be allowed to object to the name of any
person appearing in said book. In case of any such objection the
registrar shall enter upon his book opposite the name of the person Challenges.
so objected to the word "Challenged," and shall appoint a time and
place on or before election day, when he, together with said judges
of election, shall hear and decide said objection, giving due notice to
the voter so objected to: *Provided*, that nothing contained in this
section shall be construed to prohibit the right of any elector to
challenge or object to the name of any person registering or offering
to register at any time other than that specified. Any person chal-
lenged or objected to [who] shall be found not duly qualified as pro-
vided for in this charter his name shall be erased from the registra-
tion book, and he shall not be allowed to vote at any election held in
said town for municipal purposes.

SEC. 8. The said judge of election, together with the registrar, who Duties on day of
shall take with him the registration book, shall assemble at the poll- election.
ing place on the day of election held in said town and shall open the
polls at seven o'clock, A. M. They shall superintend said election and
keep the polls open until sunset, when the polls shall be closed and
[the] votes for mayor and commissioners shall be counted out by
them. They shall keep poll-books and write in them the names of
every person voting at said election, and at the close thereof shall
certify said poll-lists and deposit them with the clerk and treas-
urer of said town, and said poll-books shall in any trial for illegal or
fraudulent voting be received as evidence; if for any cause any of
the judges of election shall fail to attend, the registrar shall appoint
some discreet person or persons to fill the vacancy who shall be
sworn by him before acting.

SEC. 9. The voters shall vote by ballot, having the name of the Ballots.
mayor and commissioners on one ballot, either in writing or printing,
on white paper and without any device, and the person having the
highest number of votes shall be declared elected by the judges of
election, who shall certify said fact to the town clerk and treasurer,
and in case of a tie the judges of election shall determine by ballot
who is elected.

SEC. 10. That no person shall be eligible to any office in said town Eligibility to
unless he shall be [a] qualified voter therein. office.

SEC. 11. That immediately after each election it shall be the duty Duty of clerk to
of the town clerk and treasurer to notify in writing the mayor and notify officers
commissioners elect of their election. elect.

SEC. 12. That the mayor and commissioners elect shall, within three Oath of mayor
days after being notified by the town clerk and treasurer, before and commis-
some justice of the peace in said county take the oath prescribed for sioners.

1416                    1891.—PRIVATE—CHAPTER 327.

public officers, and an oath that they will faithfully and impartially discharge the duties imposed on them by law.

**Penalty for refusing to qualify.**
SEC. 13. That any person elected mayor or commissioner of said town under the provisions of this charter refusing to qualify and act as such for one month after such election shall forfeit and pay the sum of ten dollars, one-half to the person suing for the same and the other half to said town, to be applied by the commissioners of said town to the use and benefit thereof; said sum shall be recovered in any ordinary civil action before a justice of the peace of said county in the name of the State of North Carolina.

**Quorum.**
SEC. 14. That a majority of said commissioners shall constitute a quorum for the transaction of business.

**Duties of mayor.**
SEC. 15. That the mayor when present shall preside at all the meetings of the commissioners; he shall also have power to call meetings when he may deem it necessary, and may vote only in case of a tie. In the absence or sickness of the mayor the commissioners of said town shall select one of their own number to act as mayor *pro tempore*, who shall, while acting as such, have all power and authority conferred by this charter on the mayor of said town.

**Vacancies, how filled.**
SEC. 16. If for any cause there should be a vacancy in the office of mayor or commissioner of said town, the board of commissioners thereof shall be and are hereby empowered to fill said vacancy or vacancies, and their appointee or appointees shall hold office until the next regular election herein provided for.

**Election of clerk and treasurer.**
SEC. 17. That said commissioners shall at the first meeting after their election select one of their own number or some other discreet person as town clerk and treasurer, who shall hold office for one year or until a successor shall be elected and qualified. He shall act as secretary to the board of commissioners and treasurer of said town, and before entering upon the discharge of the duties of the office **Bond.** shall give good and sufficient bond with sureties to be approved by the board of commissioners of said town in the sum of such bond as [the] commissioners may require, payable to the state of North Carolina and conditioned upon his faithful accounting for and paying over all moneys that may come into his hands as treasurer of said town and for the faithful discharge of his duties as secretary of said board of commissioners. The commissioners of said town may require of **Monthly statements.** said clerk and treasurer a monthly statement and exhibit of receipts and disbursements, and if he fails for thirty days after having been required to make such exhibit to render the same, it shall be and is hereby declared a breach of his official bond, and the commissioners are authorized and empowered to declare the office vacant and to appoint his successor. All suits entered on the official bond of any of the officers of said town shall be in the name of the state of North Carolina, to the use of the board of commissioners of the town of Leicester against the said official and his sureties.

## 1891.—PRIVATE—CHAPTER 327.     1417

SEC. 18. The said commissioners shall, at the first meeting after their election, select some one to act as constable of said town, who shall hold his office for one year or until his successor is elected and qualified. He shall before entering upon the discharge of the duties of his office enter into bond in such sum as the said commissioners may require, with good and sufficient sureties to be approved by the board of commissioners, payable to the state of North Carolina and conditioned upon his faithfully executing and returning to the proper authorities all process that may come into his hands as said constable, upon his faithfully accounting for and paying over to the proper authority all moneys that may come into his hands from any source as said constable, upon his faithfully collecting and paying over all taxes levied by the commissioners of said town, and in all other respects executing to the best of his ability and honestly and faithfully all the duties imposed upon him by this charter or by the board of commissioners of said town. *Town constable. Duties and term. Bond.*

SEC. 19. The commissioners of said town shall have power to make such by-laws and adopt such regulations or ordinances for the government of said town as a majority of them may deem necessary to promote the interest and insure the good order and government of said town, for the improvement of the streets and the preservation of the health of the same, and to make all such other police regulations as the interest, comfort and convenience of the citizens of the said town may require. *By-laws and ordinances.*

SEC. 20. The commissioners of said town may pass laws for abating and preventing nuisances of any kind therein. *Nuisances.*

SEC. 21. Any person or persons violating any ordinance of said town shall be deemed guilty of a misdemeanor, and shall be punished upon conviction thereof before the mayor of said town by a fine not exceeding fifty dollars or by imprisonment not exceeding thirty days. *Violation of ordinances a misdemeanor.*

SEC. 22. In all cases where an offender has been convicted before the mayor of said town for the violation of any ordinances thereof and a fine has been imposed on such offender [for] the said violation the mayor of said town, at the time of entering judgment agains such offender thereof, may order that on failure to pay such fine to the constable of said town for the space of one day, such offender so convicted shall, by the constable of Leicester, [be] put the [to] work on the streets of said town for a time to be fixed by the mayor, not exceeding ten days, when he shall be discharged. *Offenders may be sentenced to work on streets.*

SEC. 23. The mayor of said town shall have power to hear and determine all charges or indictments against any person or persons for the violation of the ordinances of said town, and in addition thereto shall have all the power, jurisdiction and authority of a justice of the peace over all crimes and criminal offences committed within the corporate limits of said town. *Power of mayor to try warrants.*

## 1418                  1891.—PRIVATE—CHAPTER 327.

Duties and pow-
ers of constable.

SEC. 24. The constable of said town shall execute all process placed
in his hands by the mayor; shall have authority to preserve the peace
of said town, and ithin the corporate limits thereof shall have the
authority in crin .nal matters and be entitled to the same fees as a sheriff
has in the county; and in the collection of the taxes of the said town
levied by the authorities thereof shall have the same power and
authority as are given to sheriff[s] by law, except as hereinafter pro-
vided for by this charter.

Officer cannot
make contract
with corporation.

SEC. 25. It shall not be lawful for the mayor or any commissioner
of said town, clerk or constable, or any other official officer of said
town to demand or receive, either directly or indirectly, any con-
sideration for work or labor done or material furnished to said town
by said official : *Provided, however*, that the commissioners of said
town may determine the compensation or salary of the mayor, town
clerk and treasurer and town constable.

Powers to lay out
streets.

SEC. 26. The commissioners of said town shall have power to open
and lay out any new street or streets within the corporate limits of
said town whenever a majority of them may think necessary, and
shall have power at any time to widen, enlarge, make narrower,
change, extend or discontinue any street or streets or any part
thereof within the corporate limits of said town, and shall have
power to condemn and appropriate any land necessary for the pur-
pose of this section or making compensation as hereinafter provided
to the owner or owners of said lands. It shall be the duty of the
commissioners of said town to tender through their clerk and
treasurer the amount they may think the owner of any land may

Damages.

be entitled to [as] damages for the opening out, changing or discon-
tinuing any street or streets across his lands; and if such amount
shall not be accepted in full satisfaction therefor, the mayor of said
town shall have the power to issue an order directed to the town

Condemnation of
land.

constable, commanding him to summon as jurors six citizens of said
town, freeholders, connected neither by consanguinity nor affinity
with the mayor or commissioners of said town or the person or per-
sons over whose lands said street proposed to be changed or discon-
tinued runs, or over whose lands said proposed new street will run;
said order shall direct the town constable to summon said jurors to
meet on the land over which the proposed street is to be laid out or
changed, or discontinued, on a day not exceeding ten days from the
day of summoning them, and the owner or owners of said lands

Procedure.

shall be notified by the constable of said town of the summoning
of said jurors and the time and place of their meeting and the purpose
of their meeting for five days before the day when the said jurors
will meet to open and lay out any new street or alter, change or
discontinue any street already laid out. Said jurors, attended by the
constable, after being sworn by the mayor to do strict and impartial
justice between the parties, shall proceed to lay open, lay out, change,

narrow or widen such street or streets as the case may be, and shall assess the damages sustained by the owner or owners of such land, and in assessing the damages they shall consider the improvements to said land or lands, caused by the opening, laying out and changing, making narrow or wider of said street or streets, and such estimated improvements shall be deducted from the damages assessed by them. And the said jurors shall under their hands and seals make a return of their proceedings to the mayor of said town, and the board of commissioners of the said town shall make compensation to such owner or owners of said land for the amount of damages so assessing [assessed]. On the return of the report of said jurors to the mayor of said town, and the payment or tender of payment to the owner or owners of said lands by the town clerk and treasurer, under the order and direction of said commissioners of said town, of the amount of damages so assessed, said new street or streets so laid out, altered or changed, made narrower or wider shall be in all respects one of the streets of said town and under the control of the board of commissioners of said town.

Sec. 27. That the said commissioners shall have power to construct and repair sidewalks on any of the streets of said town. *Sidewalks.*

Sec. 28. That the commissioners of said town may establish a market and regulate the same, and prescribe at what place in the corporation shall be sold marketable things, and in what manner, whether by weight or measure. *Market.*

Sec. 29. That they may erect at some suitable place within said corporation public scales for the purpose of weighing fodder, hay, oats or rye in straw, and live stock on foot offered for sale in said town, and for the purpose of weighing the same may appoint a weigher, fix his fees and determine by whom they shall be paid, and they may require all persons buying or selling the articles mentioned in this section within the corporate limits of said town to have the same weighed at said scales by said public weigher. *Public scales. Weigher; fees.*

Sec. 30. That the commissioners of said town may take such measures as they may deem requisite, or pass such ordinances or regulations as they may think necessary to prevent the entrance into or spreading within the limits of said town of any contagious or infectious disease or diseases, and may take any action necessary in their opinion to preserve the public health of said town. *Contagious diseases.*

Sec. 31. The board of commissioners of said town shall have power annually to levy and cause to be collected taxes for necessary town purposes on all real property, all moneys, credits, investments in bonds, stocks, joint stock companies and all other personal property, and on the taxable polls within the limits of said town: *Provided, however,* that the taxes levied by them shall not exceed thirty cents on the hundred dollars valuation on all real and personal property and sixty cents on each taxable poll, and the valuation of all prop- *Taxes. Thirty cents on $100.*

1420 1891.—PRIVATE—CHAPTER 327.

erty within said town as taxed by said town commissioners shall be the same as that at which it is assessed for taxation for state and county purposes.

Taxes, when payable. Duty of constable.

SEC. 32. That all taxes levied by said town commissioner shall be due and payable on the ..... of each year to the constable of said town, and after that time may be collected by him distraining any personal property of the tax-payer to be found in said town.

Advertisement for listing taxes.

SEC. 33. On the first Monday in July of each and every year, the clerk and treasurer of said town shall by advertisement at the court-house door and from [four] other public places in said town notify all persons in said town liable to taxation to come forward and make returns of their tax-list to him within thirty days of publication of said notice; all persons within said town and liable to taxation shall make returns of all their taxable property to said town clerk under oath, and he is hereby authorized and empowered to administer to such tax-payers on oath that he will well and truly return all property owned by him within said town and liable to taxation under the provisions of the charter. Said list so returned shall state the age of the tax-payer and all property real or personal liable to taxation owned by him, with an accurate description of all real property owned by him when he is required by law to return the same to the list-taker of Leicester township to be assessed for taxation for state and county purposes.

Tax-payer to make returns.

Taxes, how listed; in case of infants, &c.

SEC. 34. All persons owning any property within said town liable to taxation for town purposes, shall return the same to the town clerk as provided in section thirty-three of this charter, and all property therein liable to such taxation owned by minors, lunatics or persons non compos mentis shall be returned as herein provided by their guardian, if they have such.

Taxes to be listed by executors, &c.

SEC. 35. All property liable to taxation for town purposes in said town, and held by executors, administrators or trustees, shall be returned by them in that capacity; and the individual property of all such guardians, executors, administrators or trustees shall be first distrained or attached by the constable for the satisfaction of the taxes due on all property so returned by them; and the constable of said town is hereby authorized, at any time after the taxes may be due the town on said property, as aforesaid, to distrain any personal property of said guardian, executor, administrator or trustee to be found in said town.

Tax-list to be made out by clerk.

SEC. 36. The town clerk and treasurer of said town shall make out a full and complete list of all taxable property in said town so returned to him, and of all the taxable polls in said town, and if any person or persons in said town liable to taxation shall fail to make return to the clerk as herein provided for, for thirty days after the third Monday in October of each year, the town clerk shall make return of the taxable property of such person or persons, and his

## 1891.—PRIVATE—CHAPTER 327.

age if he is liable to poll-tax; and such person or persons so failing to make returns of their property and poll shall be liable to double property and poll-tax, to be collected as other property and poll-taxes. *Double-tax, when to be imposed.* The town clerk of the said town shall complete the tax-list and place it or a certified copy thereof in the hands of the constable of said town on the third Monday in November of each year. Such tax-list or copy thereof, certified by the clerk, when placed in the hands of the town constable shall have the force and effect of an execution.

SEC. 37. The lien of the town taxes shall attach to all real property *Lien of taxes.* subject to taxation on and after the third Monday in November of each year, and shall continue until such taxes, together with any penalty that shall accrue thereon, shall be paid. All personal property liable to taxation of tax-payers within the town shall be liable to be seized and sold, after ten days' notice at the court-house and four other public places in said town, in satisfaction of taxes by the town constable after said taxes shall have become due and payable.

SEC. 38. Whenever the taxes due of [to] said town shall be unpaid *Collection of unpaid taxes by distraint.* the constable of said town shall immediately proceed to collect them as follows : First. If the party charged, or his agent, have personal property in said town equal in value to the taxes charged against him, the constable shall seize and sell the same under [the same] rules as sheriffs are required to sell personal property under execution, and his fees for such levy or sale shall be fifty cents. Second. If the party charged has not personal property to be found in said town of sufficient value to satisfy his taxes the constable of said town shall levy upon any lands of the delinquent to be found within the town. The levy shall con- *Levy.* tain an accurate description of the lands, with the name of the owner or owners, the amount of taxes due by the delinquent, and a list thereof shall be by the constable returned by [to] the town clerk and treasurer, who shall enter the same in a book to be kept for that purpose, charging therefor twenty-five cents for each levy. Third. The con- *Notice to tax-payer.* stable shall notify the delinquent of such levy and the day and places of sale by service of a notice stating these particulars on him personally if he be a resident of said town; if the delinquent does not reside in said town, but his residence is known or can by reasonable diligence be ascertained, the notice shall be mailed postpaid to such delinquent; if the residence of the delinquent cannot with reasonable diligence be ascertained, the constable shall post a notice substantially as above described at the court-house door and four other public places in said town at least thirty days before the sale of the land, and this last mentioned notice shall be posted as in all cases of sale of land for taxes in said town. Fourth. The sale shall be made at the court-house in said town and shall be on one of the days prescribed for sale of real estate under execution, and shall be conducted in all respects as are sales under execution. If the delinquent reside out of said town and his address be known to the constable the constable

1891.—PRIVATE—CHAPTER 327.

shall within one month after the sale mail to him notice of the sale and the date thereof, of the name and address of the purchaser of the same, bill and of the amount of the taxes and cost to be paid by such delinquent as a condition on [of] its redemption.

**Sale of land; method.**

SEC. 39. The whole tract or lot of land belonging to a delinquent person or company shall be set up for sale at the same time and shall be struck off to him who will pay the amount of the taxes for the smallest part of the land. At all such sales the mayor may become a bidder and purchase the whole lot or tract of land for the taxes due and expenses for the use of the town in case no one will offer to pay the taxes and cost for a less quantity.

**Time to redeem.**

SEC. 40. The delinquent may retain possession of the property for twelve months after the sale, and within that time may redeem it by paying the purchaser the amount paid by him and twenty-five per centum in addition thereto; at the time of said payment to the purchaser he shall give to the delinquent a receipt thereof [therefor]. If he shall refuse or cannot be found in said town the delinquent may pay the same to the town clerk and treasurer; he shall give a receipt therefor and such payment shall be equivalent to payment to the purchaser. After such payment to the purchaser or town clerk all rights under the purchase shall cease.

**Twenty-five per cent. added.**

**Receipt to purchaser at tax sale.**

SEC. 41. At the time of such purchase of real estate for taxes the town constable on receipt of the amount bid for such real estate shall give the purchaser a receipt, stating the amount bid, by whom, and for what purpose, and describing the land sold, stating further the owner of said land and the amount of taxes due.

**On failure to redeem, deed to be executed.**

SEC. 42. If the delinquent, his agent or attorney, shall fail to redeem as provided in section forty-one hereof for twelve months, at the expiration of that time the purchaser may present his receipt referred to in section forty-one hereof, and the town constable of said town shall execute a deed in fee to the purchaser, and if the purchaser is dead to his heirs at law or assignee for the land for which said purchaser agreed to pay the amount called for in the receipt, and for said service the constable shall be allowed one dollar to be paid by the purchaser. The deed from the constable to the purchaser shall be registered in the register's office of Buncombe county within six months from the time of the executing and delivering thereof, and when so registered shall convey to the grantee all the estate in the land for which the said purchaser bid which the delinquent, his agent or attorney had at the time of the sale for taxes.

**Fee of constable.**

**Redemption of property bid in by mayor.**

SEC. 43. All real estate bid in by the mayor of said town for the use of the town at sales made by the constable for taxes may be redeemed as hereinbefore provided by the payment on the part of the delinquent, his agent or attorney, of the amount bid and twenty-five per centum additional to the town clerk and treasurer within twelve months.

1891.—Private—Chapter 327.                                1423

Sec. 44. The commissioners of said town shall have power to annually levy and cause to be collected for the necessary expenses of said town such privilege taxes as shall seem to them fair and equitable on the professions, callings, trades, occupations, and all other business carried on in said town: that is to say, on every merchant, lawyer, physician, dentist, druggist, artisan, mechanic, daguerrean artist or other picture; on all officers or agents of incorporated companies; on all clerks or employees of other persons or corporations; on every drummer, unless the state license under which he acts shall have been issued to such drummer by the treasurer of the state in the name of such drummer and not in the name of the person, firm or corporation for whom he is acting or doing business; on all editors, printers, butchers, tinners, carpenters, shoemakers, wheel-wrights, carriage, buggy or wagon-makers, jewelers, liquor dealers, confection grocers, bar-tenders, harness-makers, saddlers, black-smiths, billiard or bagatelle-table, public or private boarding inns, or ten-pin alley; on all lectures for reward, on all riding or pleasure vehicles, on all gold, silver or metal watches, on all pianos, on all pistols, dirks, bowie-knives or sword canes, on every livery-stable and every distillery, on every hotel, boarding-house, restaurant or eating saloon, on all draught carts, wagon, carriage, buggies, on all horses, cattle, sheep, hogs, goats or dogs, owned or kept in said town, on every stallion [or] jackass kept or exhibited in said town, on all itinerant traders, peddlers or bankers, on all and every person or persons, company or companies who may exhibit, sing, play, act or perform, or anything for which they charge or receive any gratuity, fee or pay or reward whatsoever within the limits of said town; and the commissioners of said town shall prescribe when the license tax herein provided for shall be due and payable.

*Privilege taxes.*

*Merchants, lawyers, doctors, &c.*

*Drummer.*

*Privilege tax on numerous occupations.*

Sec. 45. The board of commissioners of said town shall have full and complete control of the sale or vending of spirituous or malt liquors, wines or cider within the limits of said corporation, and may permit the same to be sold by persons of good moral character resident therein ; shall prescribe the rules and regulations under which the same may be sold ; shall prescribe the license tax therefor, which shall not be less than one thousand dollars annually, and when the same shall be due and payable, and shall have full power and authority to revoke and amend any license by them granted at any time without refunding any part of the license tax.

*License tax on liquor dealers.*

*Not less than $1,000.*

Sec. 46. That it shall be the duty of the town clerk and treasurer to post all ordinances adopted by the board of commissioners of said town at the court-house and four other public places in said town for five days, and all ordinances shall go into effect from and after the expiration of five days from the time they shall have been posted.

*Ordinances to be posted.*

Sec. 47. That all laws heretofore passed for the better government

*Repealing clause.*

# EXHIBIT 33

# TITLE II.

## TAXES.

## ACTS.

For support of State Government for 1885-86.
For new Capitol.
Record of tax defaulters.
Correct returns of property for taxation.

## FOR SUPPORT OF STATE GOVERNMENT 1885-86.

### No. 52.

An Act to levy and collect a tax for the support of the State Government and the public institutions; to pay the interest and maturing principal of the Public Debt, and for educational and other purposes herein mentioned, for each of the fiscal years eighteen hundred and eighty-five and eighteen hundred and eighty-six, and to prescribe what persons, professions and property are liable to taxation; to prescribe the method of collecting said taxes, and to provide penalties and forfeitures for non-payment of taxes, and for other purposes.

*Tax for 1885-6.* SECTION I. *Be it enacted by the General Assembly of the State of Georgia,* That the Governor be authorized and empowered, with the assistance of the Comptroller General, to assess and levy a tax on the *Three-tenths of one per cent.* taxable property of this State of three-tenths of one per cent. for each of the fiscal years eighteen hundred and eighty-five and eighteen hundred and eighty-six.

*Specific Taxes.* SEC. II. *Be it further enacted by the authority aforesaid,* That in addition to the *ad valorem* tax on real and personal property, as required by the Constitution, and provided for in the preceding section, the following specific taxes shall be levied and collected for each of said fiscal years eighteen hundred and eighty-five and eighteen hundred and eighty-six:

PART I.—TITLE II.—Taxes.          21

*First.*—Upon each and every male inhabitant of the State, on the first day of April, between the ages of twenty-one and sixty years, a poll tax of one dollar for each of said years 1885 and 1886, which tax shall be for educational purposes; *Provided*, this tax shall not be demanded of crippled, maimed and disabled Confederate soldiers, relieved of such tax under and by authority of an Act approved July 23, 1883. [Poll Tax. Proviso. Confederate Soldiers.]

*Second.*—Upon every practitioner of law, medicine or dentistry, ten dollars, and no municipal corporation or county authorities shall levy any additional tax on said professions, either as license fee or otherwise. [Practitioners of Law, Medicine and Dentistry.]

*Third.*—Upon every daguerrean, ambrotype, photographic and similar artist, ten dollars. [Daguerrean and other artist.]

*Fourth.*—Upon every person carrying on the business of auctioneer, twenty-five dollars for each county in which they may carry on such business. [Auctioneers.]

*Fifth.*—Upon every keeper of a pool, billiard or bagatelle table, kept for public use, whether in a saloon, bar-room, hotel or other public place, twenty-five dollars for each table. [Keepers of Pool, Billiard or Bagatelle tables.]

*Sixth.*—Upon every keeper of any other table, stand, or place for the performance of any game or play, and upon the keeper of any flying horses, or any other game or play (unless kept for exercise or amusement, not prohibited by law, and not kept for gain, directly or indirectly), twenty-five dollars in each county. [Keepers of other tables and games.]

*Seventh.*—Upon every keeper of a ten-pin alley, or alley of like character, kept for public play, twenty-five dollars for each place of business. [Ten-pin Alleys.]

*Eighth.*—Upon every traveling vendor of patent or proprietary medicines, special nostrums. jewelry, paper, soap, or other articles of like character, twenty-five dollars in each county where they may offer such articles for sale; *Provided*, this shall not apply to maimed Confederate soldiers who are now, or may hereafter be, licensed by the Ordinaries of the various counties to peddle without license, in conformity with section 534 of the Code of Georgia of 1882. [Traveling Vendors of Medicines. Proviso. Confederate Soldiers.]

*Ninth.*—Upon every person or firm soliciting policies of insurance, or otherwise acting as agent of an insurance company, ten dollars in each county in this State in which such firm, person or agent may solicit business; and upon every person or firm soliciting business, or acting as agent for any matrimonial, natal or nuptial association or company, twenty-five dollars for each company in each county in the State in which such person, firm or agent may solicit business. [Agents of Insurance Companies. Matrimonial, Natal or Nuptial Associations.]

*Tenth.*—Upon each emigrant agent or employer or employee of such agent doing business in this State, the sum of five hundred dollars for each county in which such business is conducted. [Emigrant Agents.]

*Eleventh.*—Upon every traveling vendor using boats for the purpose of selling goods on the rivers within the limits of this State, the sum of fifty dollars in each county where they may sell their [Vendors traveling in boats.]

22        PART. I—TITLE II.—Taxes.

**Proviso, Confederate Soldiers.**
wares, and said tax shall be a lien on the boat and its contents without regard to ownership thereof; *Provided*, this shall not apply to maimed Confederate soldiers, who are now, or may hereafter be, licensed by the Ordinaries of the various counties to peddle without license, in conformity with section 534 of the Code of Georgia of 1882.

**Lightning Rod dealers.**
*Twelfth.*—Upon all itinerant lightning rod dealers, the sum of twenty-five dollars for each and every county in which they may operate.

**Agents for Pianos and Musical Instruments.**
*Thirteenth.*—Upon every person or firm who, as agent for, resident or non-resident owners, holds or keeps for hire or sale any piano or pianos, or other musical instrument, the sum of twenty-five dollars for each county in which such person or firm does business.

**Shows and Exhibitions.**
*Fourteenth.*—Upon all shows and exhibitions (except such as histrionic, musical, dramatical, operatic and elocutionary), including side shows accompanying circus companies, twenty five dollars in each and every city or town of five thousand inhabitants; twenty dollars in cities or towns of four thousand and under five thousand inhabitants, and fifteen dollars in city or town of less than four thousand inhabitants; said tax so collected shall be for educational purposes.

**Circus Companies.**
*Fifteenth*—Upon every circus company, two hundred dollars each day it may exhibit in the State of Georgia; said tax shall be for educational purposes.

**Dealers in Liquors.**
*Sixteenth.*—Upon all dealers in spirituous or malt liquors, intoxicating bitters, or brandy fruits, whether dealing in either or all thereof, the sum of fifty dollars for each place of business in each county where the same are sold; *Provided*, this tax shall not relieve such dealers from any local tax or prohibitory law in reference to the retail of spirituous or intoxicating liquors, nor be required of those who sell by wholesale spirits manufactured of apples, peaches, grapes or other fruits grown on their own lands when sold in quantities not less than five gallons; *Provided*, that nothing in this Act shall be so construed as to levy a tax on domestic wines manufactured from grapes grown on their own lands; said tax shall be for educational purposes.

**Proviso.**

**Proviso, excepting Domestic Wines.**

**Sewing Machine Agents.**
*Seventeenth.*—Upon any person who, as agent of any sewing machine company, or as agent for any dealers in sewing machines, or as a peddler of sewing machines, shall sell sewing machines, ten dollars in each county where said person may do business as such agent or peddler for such sewing machine company, or dealers in sewing machines, for the purpose of selling single machines to consumers, and not for the purpose of selling to other dealers exclusively. The Tax Collector shall issue to such person as pays said tax a license, which the licensee shall keep conspicuously posted at his place of business, or on his peddling vehicle; *Provided*, that the tax of ten dollars shall not apply to maimed Confederate soldiers who are now, or who may hereafter be, licensed by the Ordinaries of

**License.**

**Proviso, Confederate Soldiers.**

For Support of State Government 1885-86.

the various counties to peddle, in conformity with section 534 of the
Code of 1882 ; *Provided further*, that such maimed soldier shall peddle
such machines in his own right, and not as agent or employee of
another.   This tax upon such agents shall operate as a lien upon Lien.
any property of the person or firm (for whom the agent is doing bus-
iness) to be found in this State.   Before such agent or peddler shall
be authorized to sell sewing machines, as agent for any sewing ma-
chine company, or as agent for any dealers in sewing machines, he
shall make record of the fact of his being such agent or peddler with Record of
the Ordinary of the county in which he proposes to do business. Agency.
Upon failure  to do so, or to post  the license as  herein required, he Penalty.
shall  be liable to indictment for a  misdemeanor, and on conviction
shall  be fined in a sum  of  not less than fifty dollars nor  more than
one hundred dollars, at the discretion of the court trying  the same.
One-half of such fine shall go to any person who shall report the vi
olation of this law.

*Eighteenth.*— And upon all dealers in pistols, toy pistols, revolvers, Dealers in
pistol  or  revolver cartridges, dirks or bowie knives, the sum of one Pistols, etc.
hundred dollars for each place of business in each  county where the
same are sold.

*Nineteenth.*—Every  individual or firm, or his or their agents, en- Dealers in
gaged in the business of selling or buying farm products for future Futures.
delivery (commonly called "futures") shall pay a tax of five hun-
dred dollars, each, per annum to the Tax Collector of the county
where each business is carried on ; *Provided*, that this tax shall not Proviso.
be demanded of any cotton warehouseman, dealer in cotton, or any
provision broker who takes orders in the regular course of their
trade only for the actual and *bona fide* delivery of cotton and other
produce so ordered, and where by the terms of the contract it is not
left to the option of the party so ordering, or the party taking such
order, to avoid the delivery of the produce or products by paying
the difference in the market price of such produce or products at
the time of delivery ; *Provided further*, that such cotton warehouse- Proviso.
man, dealer in actual cotton, or any provision broker does not carry
on the business of buying futures in connection with his or their
other business.

*Twentieth.*—On each Iron Safe Company, selling or dealing in new Dealers in
iron safes by itself, or agent, and all dealers in iron safes, selling or Iron Safes.
dealing in new iron safes, and any individual or company making a
regular business of dealing in or selling second-hand iron  safes in
this State, shall pay to the Tax Collector of each  county in which
they may do business, the sum of twenty-five dollars at the time of
commencement of business for each fiscal year or fractional part
thereof, and all safes belonging to such companies, dealers, their Lien.
agents or others shall  be liable to seizure and sale for payment of
such tax.

*Twenty-first.*—Upon all itinerant traders and peddlers in buggies, Buggies,
wagons, carts, carriages or like vehicles, the sum  of twenty-five etc. Wagons,
dollars for each county in which they do business ; *Provided*, that

For Support of State Government 1885-86.

so much of paragraph 17 of this section as relates to obtaining and posting license, and the penalty for failure so to do, shall be applicable to the license required under this paragraph.

**Peddlers of Stoves, etc.** *Twenty-second.*—Upon every peddler of stoves or ranges for cooking purposes, the sum of one hundred dollars in every county in

**Licenses and Penalty.** which such peddler may do business. So much of paragraph ·17, section 2, as relates to obtaining, posting and recording license, and penalty for violating the law in the matter of peddlers of sewing machines, shall apply to peddlers of stoves and ranges, except the tax shall be $100.00 instead of $10.00.

**Hirers or sellers of Billiard tables, etc.** *Twenty-third.*—Upon every person or firm, for himself, or agent for resident or non-resident owners, who holds or keeps for hire or sale any billiard, pool or other table of like character, the sum of fifty dollars for each county in which such person or firm does business.

**Return and payment of taxes.** SEC. III. *Be it further enacted by the authority aforesaid.* That the taxes provided for in paragraphs 1, 2 and 3 of second section of this Act shall be returned to the Tax Receiver in the county of the residence of the person liable for such tax, and shall by the Receiver of Tax Returns be entered upon his digest of taxable property, and that the taxes provided for in paragraphs 4, 5, 6, 7, 8, 9, 10, 11, 12,

**In counties where avocations are carried on.** 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23 of section second of this Act shall be returned and paid to the Tax Collectors of the counties where such vocations are carried on.

**Payment of certain taxes.** SEC. IV. *Be it further enacted by the authority aforesaid,* That the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23 of second section of this Act shall be paid in full for the fiscal years for which they are levied to the Tax Collectors of the counties where such vocations are carried on, as the time of commencing to do business specified in said paragraphs.

**Insurance companies.** SEC. V. *Be it further enacted by the authority aforesaid,* That all foreign and home insurance companies doing business in this State shall pay one per cent. on all premiums in money or otherwise received by them, and in addition to the tax imposed by this Act upon the gross receipts of such insurance companies, all such companies doing brokerage business in this State, such as discounting notes, bills, drafts or exchange, lending money, or in any manner doing a business pertaining to banking or brokerage business, shall be taxed upon the capital so employed in the same manner and at the same rate as other moneyed capital in the hands of private individuals is taxed.

**Building and Loan and like Associations.** SEC. VI. *Be it further enacted by the authority aforesaid,* That the presidents of all building and loan associations, and other associations of like character, shall be required to return to the Tax Receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof, upon which, as shown by the books of such associations, no advance has been made, or money borrowed thereon, by the individual stockholders therein, to be taxed as other moneyed capi-

For Support of State Government 1885-86.

tal in the hands of private individuals is taxed; *Provided,* that no Proviso. tax shall be required of real estate and building associations to be paid upon any portion of its capital which has been loaned or advanced to a shareholder upon real estate, upon which real estate tax is payable by said shareholder.

Sec. VII. *Be it further enacted by the authority aforesaid,* That the Manufacturing and presidents of all manufacturing and other incorporated companies other companies. (or their agents), other than railroad, insurance, telegraph, telephone, express, sleeping and palace car companies, shall be required to return all their property whatever of their respective companies, Returns. at its true market value, to the Tax Receiver of the county where the same is located, or where the principal business of each company is located, to be taxed for State and county purposes as other property in this State is taxed.

Sec. VIII . *Be it further enacted by the authority aforesaid,* That all ex- Express, press, telegraph, telephone and sleeping and palace car companies telegraph, telephone, doing business in this State shall pay a tax of one per cent. of sleeping their gross receipts; and the superintendent or general agent of and palace each express, telegraph, telephone and sleeping and palace car com- nies. pany doing business in this State shall make a quarterly return, Returns. under oath. as follows : on the last day of March, June, September and December in each year to the Comptroller-General, showing an account of their gross receipts during the quarter ending on that day, and said taxes herein levied upon such gross receipts, as shown by said quarterly returns, shall be paid by the respective companies to the Comptroller-General at the time of making said returns.

Sec. IX. *Be it further enacted,* That every sewing machine com- Sewing pany selling or dealing in sewing machines, by itself or its agents. companies. in this State, and all wholesale dealers in sewing machines, selling sewing machines manufactured by companies that have not paid the tax herein required to other wholesale or retail dealers, shall pay the sum of two hundred dollars for each fiscal year. or fractional part thereof, to the Comptroller-General at the time of commencement of business for each fiscal year or fractional part thereof, and all sewing machines belonging to such companies, dealers, or their agents, in possession of such companies, dealers, their agents or others, shall be liable to seizure and sale for the payment of such Lien. tax. This tax shall be for the whole State, and such companies, their general agents and wholesale dealers, shall not be liable for any Wholesale county tax or license fees by the counties for selling sewing ma- different chines therein. In cases where wholesale dealers sell sewing machines companies. manufactured by different companies. such dealers shall pay the tax above provided for separately for each company whose manufacture of machines may be sold by such dealers, unless each of said companies has itself paid such tax. Any person who shall violate the provisions of this section shall be liable to indictment for misdemeanor, Penalty. and on conviction shall be fined in a sum not more than two hundred and fifty dollars and not less than fifty dollars, in the discretion of the court trying the same, and one-half of such fine shall be paid to

26 PART I.—TITLE II.—Taxes.

For Support of State Government 1885-86.

**Banks and Banking Associations.** Sec. X. *Be it further enacted by the authority aforesaid,* That no tax shall be assessed upon the capital of banks or banking associations organized under the authority of this State or of the United States, and located within this State, but the shares of the stockholders of **Shares, how taxed.** such bank or banking association, whether resident or non-resident owners, shall be taxed in the county where such bank or banking associations are located, and not elsewhere, at their true and full market value, at the same rate provided in this Act for the taxation **Proviso.** of moneyed capital in the hands of private individuals; *Provided,* that nothing in this section contained shall be construed to relieve such bank or banking associations from the tax on property owned by them, as provided for in section 7 of this Act.

**Railroad companies.** Sec. XI. *Be it further enacted by the authority aforesaid,* That the presidents of all railroad companies doing business in this State **Returns** shall make returns to the Comptroller-General, as now provided by law, for the taxation of the property or gross receipts or net income of railroads, and shall pay to the Comptroller-General the tax to which such property or gross receipts or net income may be subject according to the provisions of this Act, and the laws now in force relating to the tax on railroads, and on failure to make returns or refusal to pay tax, said companies shall be liable to all the penalties now provided by law.

**Returns to Comptroll-er-General.** Sec. XII. *Be it further enacted by the authority aforesaid,* That the presidents or principal agents of all the incorporated companies herein mentioned, except such as are required to make returns to the Tax Receivers of the counties, shall make returns to the Comptroller-General under the rules and regulations provided by law for such returns and subject to the same penalties and modes of procedure for the enforcement of taxes from companies or persons required by law to make returns to the Comptroller-General.

**Oath in making returns.** Sec. XIII. *Be it further enacted by the authority aforesaid,* That the oath to be administered to all persons making returns of their taxable property shall be in the following words: "You do solemnly swear that you will true answers make to all lawful questions which I may put to you touching the return you are about to make, and that you will make a true return of all your cash or moneyed capital, and every other species of property, as your own or as agent for any other person or persons, at its true and full market value, on the first day of April preceding, to the best of your knowledge and belief, so help you God;" and it shall be the duty of the officer **Duty of receiver of returns.** receiving such returns to require of each and every person taking such oath touching all his taxable property, and the market value of the same, and to propound such questions as may be published by the Comptroller-General under the law, for the purpose of eliciting full and true returns of the taxable property of this State.

**Time for receiving returns.** Sec. XIV. *Be it further enacted by the authority aforesaid,* That the Comptroller-General is authorized and empowered to order the Tax

Receivers of this State to commence receiving the returns of taxable property immediately after the first day of April of the year 1885 and 1886, and that the Comptroller-General is empowered and requested to cause the taxes to be collected and paid into the State Treasury by the 20th of December of each of said years 1885 and 1886. *Time for collection of taxes.*

SEC. XV. *Be it further enacted by the authority aforesaid,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

Approved December 22, 1884.

---

## FOR NEW CAPITOL.

### No. 184.

An Act to provide means for the completion of the new Capitol by authorizing the levy and collection of a special tax therefor, and for other purposes.

SECTION I. *Be it enacted by the General Assembly of this State,* That the Governor be, and he is hereby authorized and empowered, by and with the assistance of the Comptroller-General, to assess and levy, in addition to the general State tax, an annual tax of one-half tenth of one per cent. on all the taxable property of this State, for the purpose of raising the funds necessary to complete the new Capitol now being erected. *Special tax for new capitol. One-half tenth of one per cent.*

SEC. II. *Be it further enacted by the authority aforesaid,* That the tax authorized herein shall be specially levied and collected, and separate accounts shall be kept of the same, and the moneys arising therefrom shall be applied only to the completion of the Capitol building as aforesaid. So soon as the amount required to meet the expenditure yet to become due on the present contract, including the necessary expenses of carrying out the same to the State, shall have been raised, the tax herein authorized shall cease, and shall no longer be levied or collected ; *Provided,* that this tax shall not be estimated by any county authorities in assessing the taxes for county purposes. *Specially levied and collected. Separate accounts to be kept. Application of moneys. When tax shall cease. Proviso.*

SEC. III. *Be it further enacted by the authority aforesaid,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

Approved September 22, 1885.

28     PART I.—TITLE II.—Taxes.

Record of Tax Defaulters —Correct Returns of Property for Taxation.

## RECORD OF TAX DEFAULTERS.

### No. 393.

An Act to require the Tax Collectors of the several counties of this State to record the names of all persons who have not paid their State and county taxes in their respective counties; to prescribe how such record shall be kept and how taxes collected from such persons shall be credited, and for other purposes.

*Record to be kept of tax defaulters.*

SECTION I. *Be it enacted by the General Assembly of the State of Georgia,* That from and after the passage of this Act, it shall be the duty of the Tax Collectors of the several counties of this State to record in a book kept for the purpose, in alphabetical order and by militia districts, the names of all persons who have not paid their taxes, placing opposite the name of such person the amount he is due for such tax, said record to be made in a well-bound book, to be furnished at the expense of the county, and the record so required to *Record to be filed.* be made shall be filed by the first day of July of each year with the court or Board of Commissioners having charge and control of the county affairs.

*Tax collected after record made, how applied.*

SEC. II. *Be it further enacted.* That when any tax shall be collected after said record is made, it shall be applied to oldest tax demand against said person paying the same.

*Pay of tax-collector.*

SEC. III. *Be it further enacted,* That for the service in making said record, the Tax Collector shall have the sum of five dollars for every hundred names so recorded on said book, to be paid out of *Failure to discharge the duty.* the county treasury, and for his failure to discharge the duties herein required of him, such Collector shall forfeit one-fourth of his commissions.

SEC. IV. *Be it further enacted,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

Approved October 15, 1885.

---

## CORRECT RETURNS OF PROPERTY FOR TAXATION.

### No. 457.

An Act to provide for the correct returns of the property in this State for the purpose of taxation, and for other purposes.

*List of questions for tax payers.*

SECTION I. *Be it enacted by the General Assembly of the State of Georgia,* That for the purpose of having a full and correct return of the real and personal property in this State, it shall be the duty of the Receiver of Tax Returns to present a list to each tax-payer, which shall contain the following:

---

Correct Returns of Property for Taxation.

---

How many acres of land, except wild lands, do you own, or of how many are you the holder, either as parent, husband, trustee, executor, administrator, or agent?  Where is the same located by number, district and section?  What is the value thereof?

How many city or town lots, with improvements thereon, and what is the value thereof?

How many shares in the bank of which you are president, and what is the value thereof?

How much capital have you in the bank of which you are president, as a sinking fund, or surplus fund, and not represented in the value of the shares?

How much property, real and personal, does the bank of which you are president own, not used in the banking business, and what is the value thereof?

How much money or capital has the building association, or the building and loan association, of which you are the president, in loans?

How much money on hand?  How many notes, or other obligations for money, and the value thereof?

The value of merchandise of all kinds on hand?

The amount of capital invested in shipping and tonnage?

The amount of capital invested in stocks of companies, other than such companies as are required to be returned by the president, or their agents, either to the Tax Receiver or the Comptroller-General?

How much capital invested in bonds, except bonds of the United States and such bonds of this State as are by law exempt from taxation?

How much capital has the manufacturing company of which you are president, or agent, invested in the manufacture of woolen or cotton fabrics, and what is the value of your stock on hand, and what is your surplus fund?

How much capital have you invested in iron works, foundries and machine shops, including machinery?

How much capital have you invested in mining, and what is your surplus fund?

What is the value of your household furniture, including your tableware?

What is the value of your kitchen furniture?

What is the value of your office furniture?

How many pianos, organs and other musical instruments, and the value of the same?

What is the value of your library, paintings, pictures and statuary?

The value of your gold watches?

The value of your silver watches?

The value of your watches made from materials other than gold or silver?

Correct Returns of Property for Taxation.

The value of gold and silverware ?

The value of diamonds and jewelry ?

The number of horses and the value thereof ?

The number of mules and asses, and the value thereof ?

The number of cattle, and the value thereof ?

The number of sheep, and the value thereof ?

The number of goats, and the value thereof ?

The number of hogs, and the value thereof ?

The number of wagons, carriages and buggies, and the value thereof ?

The value of agricultural tools, implements and machinery ?

The value of cotton, corn and other farm products on hand and for sale?

The value of guns, pistols, bowie-knives and such articles ?

The value of sewing machines ?

The value of all other personal property not herein mentioned ?

**Personal property includes what.** SEC. II. *Be it further enacted,* That personal property shall be construed, for purposes of taxation, to include all goods, chattels, moneys, credits and effects, whatsoever they may be, all ships, boats and vessels belonging to the inhabitants of this State, whether at home or abroad, and all capital invested therein; all money within or without the State due the person to be taxed; all stocks and securities, whether in corporations within this Sate or in other States, owned by citizens of this State, unless exempt by the laws of the United States or of this State.

**Oath of tax payer.** SEC. III. *Be it further enacted,* That the oath to be attached to the lists provided for in this Act shall be as follows: "I do solemnly swear that I have carefully read (or have heard read) and have duly considered the questions propounded in the foregoing tax list, and that the value placed by me on the property returned, as shown by said list, is at the true market value thereof; and I further swear that I returned, for the purposes of being taxed thereon, every species of property that I own in my own right, or have control of, either as agent, executor, administrator or otherwise; and that, in making said return for the purpose of being taxed thereon, I have not attempted, either by transferring my property to another or by any other means sought to evade the laws governing taxation in this State. I do further swear that, in making said return, I have done so by estimating the true worth and value of every species of property contained therein." Which oath shall be subscribed by the persons making the return, and the administration and taking of the oath shall be attested by the Receiver of Tax Returns.

**Signature and attestation of oath.**

**Comptroller-General to furnish lists.** SEC. IV. *Be it further enacted,* That it shall be the duty of the Comptroller-General to have the lists provided for in this Act printed, with the oath required by preceding sections attached thereto, and at the time of forwarding the digests to the Receivers of Tax Returns, as now required by law, he shall forward to each Receiver of Tax Returns a sufficient number of such lists to enable

PART I.—TITLE II.—TAXES.                    31

Correct Returns of Property for Taxation.

them to take the returns of the tax-payers of their respective counties.

SEC. V. *Be it further enacted,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

Approved October 20, 1885.

# EXHIBIT 34

# TITLE II.

## TAXES.

### ACTS.

General Tax Act for 1887 and 1888.
Tax for new capitol.
Providing for correct tax returns.

### GENERAL TAX ACT FOR 1887 AND 1888.

An Act to levy and collect a tax for the support of the State government and the public institutions; to pay the interest of the public debt, and for educational and other purposes herein mentioned, for each of the fiscal years eighteen hundred and eighty-seven and eighteen hundred and eighty-eight, and to prescribe what persons, professions and property are liable to taxation; to prescribe the method of collecting said taxes, and to provide penalties and forfeitures for non-payment of taxes, and for other purposes.

General *ad valorem* tax
SECTION I. *Be it enacted by the General Assembly of the State of Georgia,* That the Governor be authorized and empowered, with the assistance of the Comptroller-General, to assess and levy a tax on the taxable property of this State of two and sixty hundredths of a mill for each of the fiscal years eighteen hundred and eighty-seven and eighteen hundred and eighty-eight.

Specific taxes.
SEC. II. *Be it further enacted by the authority aforesaid,* That in addition to the *ad valorem* tax on real and personal property, as required by the Constitution and provided for in the preceding section, the following specific taxes shall be levied and collected for each of said fiscal years eighteen hundred and eighty-seven and eighteen hundred and eighty-eight:

Poll tax.
First—Upon each and every male inhabitant of the State, on the first day of April, between the ages of twenty-one and sixty years, a poll tax of one dollar for each of said years 1887 and

PART I.—TITLE II.—Taxes.                          15

General Tax Act for 1887 and 1888.

1888, which tax shall be for educational purposes: *Provided*, Exemp-
this tax shall not be demanded of blind persons, nor of crippled, tions.
maimed or disabled Confederate soldiers relieved of such tax
under and by authority of an Act approved July 23d, 1883.

Second—Upon every practitioner of law, medicine or dentistry, Lawyers,
presidents of each of the banks in the State, each agent or firm doctors
negotiating loans and charging therefor, the presidents of each of various
of the railroad companies, presidents of each of the express, companies
telegraph, telephone, electric light and gas companies doing busi-
ness in this State, and in case the president of any such companies
do not reside in this State, then in such case upon the superintend-
ent or general agent of such companies who may reside in this
State, ten dollars, and no municipal corporation or county
authorities shall levy any additional tax on said professions either
as license fee or otherwise.

Third—Upon every daguerrean, ambrotype, photographic and Daguerre-
similar artist, ten dollars. an and
other art-
ists.

Fourth—Upon every person carrying on the business of auc- Auction-
tioneer, for pay or compensation, twenty-five dollars for each eers.
county in which they may carry on such business.

Fifth—Upon every keeper of a pool, billiard or bagatelle table Keepers of
kept for public use, whether in a saloon, bar-room, hotel or other other ta-
public place, twenty-five dollars for each table. bles.

Sixth—Upon every keeper of any other table, stand or place Gaming ta-
for the performance of any game or play, and upon the keeper stands, etc
of any flying horses, or any other game or play (unless kept for
exercise or amusement, not prohibited by law, and not kept for
gain, directly or indirectly), twenty-five dollars in each county.

Seventh—Upon every keeper of a ten-pin alley, or alley of Ten-pin
like character, kept for public play, and upon every keeper of a Shooting
shooting gallery, twenty-five dollars for each place of business. gallery.

Eighth—Upon every traveling vendor of patent or proprietary Traveling
medicines, special nostrums, jewelry, paper, soap or other articles vendors.
of like character, twenty-five dollars in each county where they
may offer such articles for sale.

Ninth—Upon every insurance agent (whether person or firm) Insurance
doing business in this State, ten dollars, and upon every agent of agents.
a matrimonial, natal or nuptial company doing business in this
State, fifty dollars, which said agents must pay for each county
in which he or they shall solicit business for any of their compa-
nies. Said tax shall be paid by said agents to the Comptroller-
General and shall be in addition to the license fee required of in-
surance companies by the Act approved March 19, 1869. The
receipt of the Comptroller-General for the payment of this tax,
together with his certificate as provided by said Act approved

General Tax Act for 1887 and 1888.

March 19, 1869, shall constitute the license for said agents to transact business for their companies in each of the counties designated by said certificates.

**Emigrant agents and their employers.** Tenth—Upon each emigrant agent, or employer or employee of such agent doing business in this State, the sum of five hundred dollars for each county in which such business is conducted.

**Vendors in boats.** Eleventh—Upon every traveling vendor using boats for the purpose of selling goods on the rivers or waters within the limits of this State, the sum of fifty dollars in each county where they may sell their wares, and said tax shall be a lien on the boat and its ownership without regard to the ownership thereof.

**Itinerant lightning-rod dealers** Twelfth—Upon all itinerant lightning-rod dealers or agents, the sum of twenty-five dollars for each and every county in which they may operate.

**Agents for musical instruments.** Thirteenth—Upon every person or firm who, as agent for resident or non-resident owners, holds or keeps for hire or sale any piano or pianos, or other musical instrument, twenty-five dollars for each county in which such person or firm does business.

**Shows and exhibitions.** Fourteenth—Upon all shows and exhibitions (except such as histrionic, musical, dramatic, operatic and elocutionary), including side-shows accompanying circus companies, twenty-five dollars in each and every city or town of five thousand inhabitants; twenty dollars in cities or towns of four thousand and under five thousand inhabitants, and fifteen dollars in cities or towns of less than four thousand inhabitants; said tax, so collected, shall be for educational purposes.

**Circus companies** Fifteenth—Upon every circus company, two hundred dollars each day it may exhibit in the State of Georgia; said tax shall be for educational purposes.

**Liquor dealers.** Sixteenth—Upon all dealers in spirituous or malt liquors, intoxicating bitters or brandy fruits, or domestic wines, whether dealing in either or all thereof, fifty dollars for each place of business in each county where the same are sold: *Provided*, this tax **Proviso.** shall not relieve such dealers from any local tax or prohibitory law in reference to the retail of spirituous or intoxicating liquors, nor be required of those who sell by wholesale spirits manufactured of apples, peaches, grapes, blackberries or other fruits grown on their own lands, when sold in quantities not less than five gallons: *Provided*, that nothing in this Act shall be so construed as to levy a tax on dealers in domestic wines manufactered from grapes grown on their own lands; said tax shall be for educational purposes.

**Sewing machine companies.** Seventeenth—Upon every sewing machine company selling or dealing in sewing machines, by itself or its agents, in this State, and upon all wholesale dealers in sewing machines selling sewing

PART I.—TITLE II.—Taxes.                    17

General Tax Act for 1887 and 1888.

machines manufactured by companies that have not paid the tax *Wholesale dealers.*
herein required, two hundred dollars for each fiscal year or frac-
tional part thereof, to be paid to the Comptroller-General at the
time of commencement of business, and in addition to the above
amount, said companies or wholesale dealers shall furnish the
Comptroller-General a list of all agents authorized to sell machines, *List of agents. Agents' tax.*
and shall pay to said Comptroller-General the sum of ten dollars
for each of their agents, in each county, for each fiscal year or
fractional part thereof, and upon the payment of said sum, the
Comptroller-General shall issue to each of said agents a certifi-
cate of authority to transact business in this State; and all sew-
ing machines belonging to such companies, dealers or their agents,
in possession of such companies, dealers, their agents or others,
shall be liable to seizure and sale for the payment of such license
fees and tax.   This tax shall be for the whole State, and such
companies, their agents and wholesale dealers, shall not be liable
for any county tax or license fees by the counties for selling sew-
ing machines therein; and said agents shall be required to reg- *Registry of sewing machine agents.*
ister their names with the Ordinary and exhibit their license from
the Comptroller-General at the time of registering, and thereaf-
ter keep the same posted on their wagons or vehicles, or at their
places of business.   When a company or wholesale dealer trans-
fers an agent from one county to another, said company or deal-
ers shall notify the Comptroller-General in advance of said trans-
fer.   In cases where wholesale dealers sell sewing machines man- *Dealers for several companies*
ufactured by different companies, such dealers shall pay the
license fees and tax above provided for separately for each com-
pany whose manufacture of machines may be sold by such deal-
ers, unless each of said companies has itself paid such license
fees and tax.   Any person who shall violate the provisions of this *Penalty.*
section shall be liable to indictment for misdemeanor, and on con-
viction shall be fined not more than five hundred dollars and not
less than one hundred dollars, in the discretion of the court try-
ing the same.   If said fine is not paid within the time pre-
scribed by the court, such person so fined shall be imprisoned as
prescribed in section 4310 of the Code.

Eighteenth—Upon all dealers in pistols, toy pistols, revolvers, *Dealers in arms.*
pistol or revolver cartridges, dirks or bowie knives, one hundred
dollars for each place of business in each county where the same
are sold.

Nineteenth—Upon every individual or firm, or his or their *Dealers in futures.*
agents, engaged in the business of selling or buying farm products
for future delivery (commonly called "futures"), five hundred dol-
lars each per annum for the county where each business is carried on:
*Provided*, that this tax shall not be demanded of any cotton ware- *Proviso.*

2

houseman, dealer in cotton or any provision broker who takes orders in the regular course of their trade only for the actual and *bona fide* delivery of cotton and other produce so ordered, and where, by the terms of the contract, it is not left to the option of the party so ordering, or the party taking such order, to avoid the delivery of the produce or products by paying the difference in the market price of such produce or products at the time of delivery: *Provided further*, that such cotton warehouseman, dealer in actual cotton or any provision broker does not carry on the business of buying futures in connection with his or their other business.

**Iron safe companies**

**Dealers.**

Twentieth—Upon each iron safe company selling or dealing in new iron safes by itself or agent, and upon all dealers in iron safes selling or dealing in new iron safes, and upon any individual or company making a regular business of dealing in or selling second-hand iron safes in this State, twenty-five dollars for each county in which they may do business at the time of the commencement of their business for each fiscal year or fractional part thereof, and all safes belonging to such companies, dealers, their agents or others shall be liable to seizure and sale for payment of such tax. Before such agent or dealer shall be authorized to sell iron safes, as agent for any iron safe company, or as agent

**Records.**

for any dealers in iron safes, he shall make record of the fact of his being such agent or dealer with the Ordinary of the county in which he proposes to do business; and it shall be the duty of said Ordinary to immediately notify the Comptroller-General, and upon failure to register with the Ordinary, as herein required,

**Penalty.**

he shall be liable to indictment for a misdemeanor, and on conviction shall be fined not less than fifty dollars nor more than one hundred dollars, at the discretion of the court trying the same, or be imprisoned, as prescribed in section 4310 of the Code.

**Peddlers of vehicles.**

Twenty-first—Upon all itinerant traders and peddlers in buggies, wagons, carts, carriages or like vehicles, twenty-five dollars for each county in which they do business. So much of paragraph 20, section 2, as requires agents or dealers in iron safes to record their agency with the Ordinaries of counties and provides penalties for failing to do so shall apply to the itinerant traders and peddlers named in this paragraph, and it shall be the duty of all Ordinaries to immediately notify the Comptroller-General when such agencies are recorded.

**Peddlers of stoves, etc.**

Twenty-second—Upon every peddler of stoves or ranges for cooking purposes, the sum of one hundred dollars in every county in which such peddler may do business. So much of paragraph 20, section 2, as requires agents or dealers in iron safes

to record their agency with the Ordinaries of counties and provides penalties for failing to do so shall apply to peddlers of stoves and cooking ranges, and it shall be the duty of all Ordinaries to immediately notify the Comptroller-General when such agencies are recorded.

Twenty-third—Upon every person or firm, for himself or agent for resident or non-resident owners, who holds or keeps for hire or sale any billiard, pool or other table of like character, fifty dollars for each county in which such person or firm does business. <span style="float:right">Dealers in billiard and like tables.</span>

Twenty-fourth—*Be it further enacted by the authority aforesaid*, That blind persons and Confederate soldiers relieved by the proviso in paragraph first of this section from the payment of the tax designated in that paragraph shall be relieved also from the payment of the taxes designated in paragraphs 6, 7, 8 and 11 of this section if carrying on and dependent upon the kinds of business designated therein: *Provided*, that before any person shall be entitled to the benefit of any of the exemptions provided for in this paragraph, he shall go before the Ordinary of the county in which he proposes to carry on business and make and file an affidavit setting forth the facts that he is entitled to such exemption, and that he is the proprietor of the business he proposes to conduct and is conducting the same for himself and not for another. <span style="float:right">Relief of blind persons and Confederate soldiers.</span> <span style="float:right">Proviso.</span>

Twenty-fifth—Upon every traveling agent of any nurseryman vending trees or shrubbery in this State, the sum of twenty-five dollars in each county in which said agent may canvass. <span style="float:right">Agents of nurseries, etc.</span>

Sec. III. *Be it further enacted by the authority aforesaid,* That the taxes provided for in paragraphs 1, 2 and 3 of second section of this Act shall be returned to the Tax Receiver in the county of the residence of the person liable for such tax, and shall, by the receiver of tax returns, be entered upon his digest of taxable property, and that the taxes provided for in paragraphs 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22 and 23 of section second of this Act shall be returned and paid to the Tax Collectors of the counties where such vocations are carried on. <span style="float:right">Returns of taxes in par.1,2and 3, sec. 2nd.</span> <span style="float:right">Of other taxes.</span>

Sec. IV. *Be it further enacted by the authority aforesaid,* That the taxes provided for in paragraphs 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22 and 23 of second section of this Act shall be paid in full for the fiscal years for which they are levied to the Tax Collectors of the counties where such vocations are carried on at the time of commencing to do the business specified in said paragraphs. <span style="float:right">Payment of certain taxes.</span>

General Tax Act for 1887 and 1888.

**Insurance companies**

Sec. V. *Be it further enacted by the authority aforesaid,* That all foreign and home insurance companies doing business in this State shall pay one per centum on all premiums in money or otherwise received by them: *Provided,* this shall not include return premiums on canceled policies, and in addition to the tax imposed by this Act upon the gross receipts of such insurance companies, all such companies doing brokerage business in this State, such as discounting notes, bills, drafts or exchange, lending money or in any manner doing a business pertaining to banking or brokerage business, shall be taxed upon the capital so employed in the same manner and at the same rate as other moneyed capital in the hands of private individuals is taxed.

**Building and loan associations.**
**Returns.**

Sec. VI. *Be it further enacted by the authority aforesaid,* That the presidents of all building and loan associations, and other associations of like character, shall be required to return to the Tax Receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof, upon which, as shown by the books of such associations, no advance has been made, or money borrowed thereon, by the individual stockholders therein, to be taxed as other moneyed capital in the hands of private individuals is taxed:

**Proviso.**
*Provided,* that no tax shall be required of real estate and building associations, to be paid upon any portion of their capital which has been loaned or advanced to a shareholder upon real estate, upon which real estate tax is payable by said shareholder.

**Returns of corporations generally.**

Sec. VII. *Be it further enacted by the authority aforesaid,* That the presidents of all manufacturing and other incorporated companies (or their agents), other than railroad, insurance, telegraph, telephone, electric light, express, sleeping and palace car companies, shall be required to return all their property whatever of their respective companies at its true market value to the Tax Receiver of the county where the same is located, or where the principal business of each company is located, to be taxed for State and county purposes as other property in this State is taxed.

**Tax on express, telegraph and electric light companies.**

Sec. VIII. *Be it further enacted,* That all persons or companies, including railroad companies, doing an express, telegraph or electric light business and charging the public therefor in this State, shall pay a tax of one and one-half per cent. on their gross receipts, and all persons, or the superintendent or general agent of each telegraph, express or electric light company, or the president of each railroad company doing such business in this State, shall make a quarterly return under oath as follows:

**Returns.**
on the last day of March, June, September and December in each year to the Comptroller-General, showing a full account of their

gross receipts during the quarter ending on such date, and said taxes herein levied upon such gross receipts, as shown by said quarterly returns, shall be paid by the respective persons or companies to the Comptroller-General at the time of making such returns; the gross receipts herein named shall be construed to mean the full amount of all money received within this State. If any person, superintendent, agent or president, as the case may be, whose duty it is to make returns under this paragraph, shall fail so to do within thirty days after the time herein required, such person, superintendent, agent or president shall be liable to indictment, and upon conviction shall be punished as prescribed in section 4310 of the Code of 1882. <span>Penalty for failure.</span>

*Second*—That each telephone company shall pay a tax for each of the years 1887 and 1888 of one dollar for each telephone station or box with instruments complete rented or used by their subscribers, and the superintendent or general manager of the company shall make returns under oath and payments to the Comptroller-General on the dates named in the first paragraph of this section. <span>Telephone companies. Returns.</span>

*Third*—That each company doing business in this State as a sleeping or palace car company only shall pay a tax of two thousand dollars per year for each of the years 1887 and 1888, which tax shall be payable in quarterly installments to the Comptroller-General on the dates named in the first paragraph of this section. <span>Sleeping or palace car companies</span>

SEC. IX. *Be it further enacted by the authority aforesaid,* That no tax shall be assessed upon the capital of banks or banking associations, organized under the authority of this State, or of the United States, and located within this State, but the shares of the stockholders of such bank or banking associations, whether resident or non-resident owners, shall be taxed in the county where such bank or banking associations are located, and not elsewhere, at their true and full market value, at the same rate provided in this Act for the taxation of moneyed capital in the hands of private individuals: *Proviso,* that nothing in this section contained shall be construed to relieve such banks or banking associations from the tax on property owned by them, as provided for in section VII of this Act. <span>Bank stock. Where taxed. Proviso.</span>

SEC. X. *Be it further enacted by the authority aforesaid,* That the presidents of all railroad companies doing business in this State shall make returns to the Comptroller-General, as now provided by law; for the taxation of the property or gross receipts or net income of railroads, and shall pay to the Comptroller-General the tax to which such property or gross receipts or net income may be subject, according to the provisions of this Act <span>Returns for railroad companies. Payment of their taxes.</span>

and the laws now in force relating to the tax on railroads, and on failure to make returns or refusal to pay tax, said companies shall be liable to all the penalties now provided by law.

**Returns of corpora-tions.** SEC. XI. *Be it further enacted by the authority aforesaid*, That the presidents or principal agents of all the incorporated companies herein mentioned, except such as are required to make returns to the Tax Receivers of the counties, shall make returns to the Comptroller-General, under the rules and regulations provided by law for such returns and subject to the same penalties and modes of procedure for the enforcement of taxes, from companies or persons required by law to make returns to the Comptroller-General.

**Oath for tax returns** SEC. XII. *Be it further enacted by the authority aforesaid*, That the oath to be administered to all persons making returns of their taxable property shall be the oath required under the Act of October 20th, 1885, to be attached to the printed lists furnished under said Act and presented to each tax-payer: *Provided*, that **Proviso.** non-residents, females and sick persons may subscribe to the oath herein required before any person authorized by law to administer oaths, and cause same to be delivered to the Tax Receiver.

**When returns are to be received.** SEC. XIII. *Be it further enacted by the authority aforesaid*, That the Comptroller-General is authorized and empowered to order the Tax Receivers of this State to commence receiving the returns of taxable property immediately after the first day of April of the years 1887 and 1888, and that the Comptroller-General is empowered and required to cause the taxes to be collected and **Time of payment.** paid into the State treasury by the 20th of December of each of said years 1887 and 1888.

SEC. XIV. *Be it further enacted by the authority aforesaid*, That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

Approved December 22d, 1886.

# EXHIBIT 35

# TITLE II.

## TAXES.

### ACTS.

General Tax Act for 1889 and 1890.
Providing for finishing payments on New Capitol.
Providing for furnishing New Capitol.
Creating Sinking Fund to retire maturing Bonds.

## GENERAL TAX ACT FOR 1889 AND 1890.

### No. 123.

An Act to levy and collect a tax for the support of the State gov-
ernment and the public institutions; for educational purposes in
instructing children in the elementary branches of an English
education only; to pay the interest of the public debt, and to
pay maimed Confederate soldiers such amounts as are allowed
them by law, for each of the fiscal years eighteen hundred and
eighty-nine and eighteen hundred and ninety, and to prescribe
what persons, professions and property are liable to taxation;
to describe the method of receiving and collecting said taxes;
to prescribe the method of ascertaining the property of this
State subject to taxation; prescribe additional questions to be
propounded to tax payers, and to provide penalties and for
feitures for non-payment of taxes, and for other purposes.

SECTION 1. *Be it enacted by the General Assembly of the State of* General ad
*Georgia,* That the Governor be authorized and empowered, with valorem tax.
the assistance of the Comptroller-General to assess and levy a tax
on the taxable property of this State of two and seven-tenths
mills per centum for the fiscal year eighteen hundred and eighty-
nine, and two and four-tenths mills per centum for the fiscal year
eighteen hundred and ninety. And the Governor be, and is hereby,
authorized and empowered by and with the assistance of the Comp-

General Tax Act for 1889 and 1890.

**Special educational tax.**

troller-General to assess and levy, in addition to the foregoing general State tax, a tax of one-half of a mill for the year eighteen hundred and eighty-nine, and a tax of one mill for the year eighteen hundred and ninety, on all of the taxable property of this State for the purpose of raising the funds necessary to meet the appropriations by this General Assembly for educational purposes in instructing children in the elementary branches of an English education only.

**Specific taxes.**

SEC. II. *Be it further enacted by the authority aforesaid,* That in addition to the *ad valorem* tax on real and personal property, as required by the Constitution, and provided for in the preceding section, the following specific taxes shall be levied and collected for each of the said fiscal years, eighteen hundred and eighty-nine and eighteen hundred and ninety.

**Poll tax.**

First—Upon each and every male inhabitant of the State, between the ages of twenty-one and sixty years, on the first day of April, a poll tax of one dollar for each of the said years, 1889 and 1890, which tax shall be for educational purposes in instructing children in the elementary branches of an English education

**Exemptions.**

only ; *Provided,* this tax shall not be demanded of blind persons, nor of crippled, maimed or disabled confederate soldiers, relieved of such tax under and by authority of an Act approved July 23, 1883.

**Lawyers, doctors, dentists and officers of various companies.**

Second—Upon every practitioner of law, medicine or dentistry, presidents of each of the banks in the State, each agent or firm negotiating loans, and charging therefor, the presidents of each of the railroad companies, presidents of each of the express, telegraph, telephone, electric light and gas companies, doing business in this State, and in case the presidents of any such companies do not reside in this State, then in such case, upon the superintendent or general agent of such companies who may reside in this State, ten dollars and no muncipal corporation or county authorities shall levy any additional tax on said professions either as license fee or otherwise.

**Photographic and other artists.**

Third—Upon every daguerrean, ambrotype, photographic, and similar artist, ten dollars in each county in which they may carry on business.

**Keepers of billiard and other tables.**

Fourth—Upon every person carrying on the business of auctioneer, for pay or compensation, twenty-five dollars for each county in which they may carry on such business.

**Gaming tables, etc.**

Fifth—Upon every keeper of a pool, billiard or bagatelle table kept for public use, whether in a saloon, bar-room, hotel or other public place, twenty-five dollars for each table.

Sixth—Upon every keeper of any other table, stand or place for the performance of any game or play, and upon the keeper of

PART I.—TITLE II.—Taxes. 21

General Tax Act for 1889 and 1890.

any flying horses, or any other game or play, (unless kept for exercise or amusement not prohibited by law), and not kept for gain, directly or indirectly, twenty-five dollars in each county.

Seventh—Upon every keeper of a ten pin alley, or alley of like character, kept for public play, and upon every keeper of a shooting gallery, twenty-five dollars for each place of business. <span>Ten-pin alleys and shooting galleries.</span>

Eighth—Upon every traveling vendor of patent or proprietary medicines, special nostrums, jewelry, paper, soap, or other articles of like character, twenty-five dollars in each county where they may offer such articles for sale. <span>Traveling vendors.</span>

Ninth—Upon every local insurance agent doing business in this State, ten dollars for each county in which they shall solicit business, and upon every agent of a matrimonial, natal or nuptial company, or traveling, special or general agent, of life, fire, accident, or other insurance company doing business in this State, fifty dollars, which said agents must pay before he or they shall be authorized to act as an agent for any of their companies. Said tax shall be paid by said agents to the Comptroller-General, and shall be in addition to the license fee required of insurance companies by the Act approved October 24, 1887. The receipt of the Comptroller-General for the payment of this tax, together with his certificate, as provided by said Act, approved October 24, 1887, shall constitute the license for said agents to transact business for their companies, as designated by said certificates: *Provided*, this tax shall not be required of agents of assessment, life insurance companies, or mutual aid societies. <span>Insurance agents.</span>

Tenth.—Upon each emigrant agent, or employer or employe of such agent doing business in this State, the sum of five hundred dollars for each county in which such business is conducted. <span>Emigrant agents, etc.</span>

Eleventh —Upon every traveling vendor using boats for the purpose of selling goods on the rivers or waters within the limits of this State, the sum of fifty dollars in each county where they may sell their wares, and said tax shall be a lien on the boat and its contents without regard to the ownership thereof. <span>Vendors in boats.</span>

Twelfth.—Upon all itinerant lightning rod dealers or agents, the sum of twenty-five dollars for each and every county in which they may operate. <span>Itinerant lightning-rod dealers.</span>

Thirteenth.—Upon all shows and exhibitions (except such as histrionic, musical, operatic and elocutionary) including side shows accompanying circus companies, twenty-five dollars in each and every city or town of five thousand inhabitants, twenty dollars in cities or towns of four thousand and under five thousand inhabitants, and fifteen dollars in cities or towns of less than four thousand inhabitants. Said tax, so collected, shall be for educational purposes. <span>Shows and exhibitions</span>

22                    PART I.—TITLE II.—Taxes.

General Tax Act for 1889 and 1890.

**Circus companies.**   Fourteenth—Upon every circus company, two hundred dollars each day it may exhibit in the State of Georgia; said tax shall be for educational purposes.

**Liquor dealers.**   Fifteenth—Upon all dealers in spirituous or malt liquors, intoxicating bitters or brandy fruits or domestic wines, whether dealing in either or all thereof, fifty dollars for each place of business in each county where the same are sold: *Provided*, this tax shall not relieve such dealers from any local tax or prohibitory law in reference to the retail of spirituous or intoxicating liquors, nor be required of those who sell by wholesale spirits manufactured of apples, peaches, grapes, blackberries or other fruits grown on their own lands, when sold in quantities not less than five gallons:

**Proviso.**

**Domestic wines exempt.**   *Provided*, that nothing in this Act shall be so construed as to levy a tax on dealers in domestic wines manufactured from grapes or berries purchased by or grown on lands owned, leased or rented by said dealer. Said tax shall be for educational purposes.

**Sewing machine peddlers.**   Sixteenth—Upon every peddler or traveling agent selling or offering to sell sewing machines, the sum of twenty five dollars for each county in which they do business.

**Dealers in arms.**   Seventeenth—Upon all dealers in pistols, toy pistols shooting with metallic caps, or cartridges, dirks or bowie knives, twenty-five dollars for each place of business in each county where the same are sold.

**Dealers in futures.**   Eighteenth—Upon every individual or firm, or his or their agents, engaged in the business of selling or buying farm products, sugar, coffee and salt and meat for future delivery (commonly called "futures"), five hundred dollars each per annum for the county where such business is carried on: *Provided*, that this tax

**Proviso.**   shall not be demanded of any cotton warehouseman, dealer in cotton, or any provision broker, who takes orders in the regular course of their trade only for the actual and *bona fide* delivery of cotton and other produce so ordered, and where, by the terms of the contract, it is not left to the option of the party so ordering, or the party taking such order, to avoid the delivery of the pro-

**Additional proviso.**   duce or products by paying the difference in the market price of such produce or products at the time of delivery: *Provided further*, that such cotton warehouseman, dealer in actual cotton or any provision broker does not carry on the business of buying futures in connection with his or their other business.

**Stove or clock peddlers.**   Nineteenth—Upon every peddler of stoves or ranges for cooking purposes, or clocks, the sum of one hundred dollars in every county in which such peddler may do business.

**Billiard and pool tables.**   Twentieth—Upon every person or firm, for himself or agent for resident or non resident owners, who holds or keeps for hire or sale any billiard, pool or other table of like character, fifty dollars for each county in which such person or firm does business.

General Tax Act for 1889 and 1890.

Twenty-first—*Be it further enacted by the authority aforesaid,* That blind persons and Confederate soldiers relieved by the proviso in paragraph first of this section, from the payment of the tax designated in that paragraph shall be relieved, also, from the payment of the taxes designated in paragraphs 6, 7, 8 and 11, of this section, if carrying on and dependent upon the kinds of business designated therein : *Provided,* that before any person shall be entitled to the benefit of any of the exemptions provided for in this paragraph, he shall go before the Ordinary of the county in which he proposes to carry on business, and make and file an affidavit, setting forth the facts that he is entitled to such exemption, and that he is the proprietor of the business he proposes to conduct, and is conducting the same for himself and not for another. <sub>Relief of blind persons and Confederate soldiers.</sub>

*Proviso.*

Sec. III. *Be it further enacted by the authority aforesaid,* That the taxes provided for in paragraphs 1 and 2, of section 2, of this Act, shall be returned to the Tax Receiver in the county of the residence of the person liable to such tax, and shall, by the Receiver of Tax Returns, be entered upon his digest of taxable property, and that the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 17, 18, 19 and 20, of section 2, of this Act, shall be returned and paid to the Tax Collectors of the counties where such vocations are carried on. <sub>Return, entry, etc., of certain taxes.</sub>

Sec. IV. *Be it further enacted by the authority aforesaid,* That the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20, of section 2, of this Act, shall be paid in full for the fiscal years for which they are levied to the Tax Collectors of the counties where such vocations are carried on at the time of commencing to do the business specified in said paragraphs.   Before any person taxed by paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 17, 18, 19 and 20, of section 2, of this Act, shall be authorized to carry on said business, they shall go before the Ordinary of the county in which they propose to do business and register their names, place of business, and at the same time pay their taxes to the Tax Collector ; and it shall be the duty of said Ordinary to immediately notify the Comptroller-General and the Tax Collector.   Any person failing to register with the Ordinary, as herein required, shall be liable to indictment for a misdemeanor, and on conviction, shall be fined not less than fifty dollars, nor more than two hundred dollars, at the discretion of the court trying the same, or be imprisoned as prescribed by section 4310 of the Code. <sub>Payment of certain taxes.</sub> <sub>Registry with Ordinary.</sub> <sub>Fine for failure to register.</sub>

Sec. V. *Be it further enacted by the authority aforesaid,* That all foreign and home insurance companies doing business in this State shall pay one per cent. on all premiums in money or otherwise received by them : *Provided,* this shall not include return pre- <sub>Insurance companies.</sub> <sub>Proviso.</sub>

•

General Tax Act for 1879 and 1880.

miums on cancelled policies; and in addition to the tax imposed by this Act upon the gross receipts of such insurance companies, all such companies doing brokerage business in this State, such as discounting notes, bills, drafts or exchange, lending money, or in any manner doing a business pertaining to banking or brokerage business, shall be taxed upon the capital so employed in the same manner and at the same rate as other moneyed capital in the hands of private individuals is taxed.

**Building and Loan Associations.** Sec. VI. *Be it further enacted by the authority aforesaid,* That the presidents of all building and loan associations, and other associations of like character, shall be required to return to the Tax Receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof, (upon which, as shown by the books of such associations, no advance has been made, or money borrowed thereon, by the individual stockholders therein) to be taxed as other moneyed capital in the hands of private individuals is taxed: **Proviso.** *Provided,* That no tax shall be required of real estate and building associations, to be paid upon any portion of their capital which has been loaned or advanced to a shareholder upon real estate, upon which real estate tax is payable by said shareholder.

**Returns of corporations, generally.** Sec. VII. *Be it further enacted by the authority aforesaid,* That the Presidents of all manufacturing and other incorporated companies (or their agents) other than railroad, insurance, telegraph, telephone, express, sleeping and palace car companies, shall be required to return all their property whatever of their respective companies at its true market value to the Tax Receiver of the county where the same is located, or where the principal business of each company is located, to be taxed for State and county purposes as other property in this State is taxed. **President must answer under oath.** The President of every manufacturing company shall be required to answer under oath, in addition to those now provided by law, the following questions:

**Questions specified.** First—What is the value of raw material on hand April 1st?

Second—What is the value of manufactured goods or articles on hand April 1st?

Third—What amount of money, bonds, notes, accounts, and choses-in-action of every kind did you own on April 1st?

Fourth—And what other property of every kind did your company own on April 1st?

And such company shall be taxed upon its entire property so ascertained.

**Tax on express, telegraph and electric light companies.** Sec. VIII. *Be it further enacted,* That all persons or companies, including railroad companies, doing an express or telegraph business, and charging the public therefor, in this State, shall pay two and one-half per cent. on their gross receipts; and all persons, or the Superintendent or General Agent of each telegraph or express

General Tax Act for 1889 and 1890.

company, or the President of each railroad company doing such business in this State shall make a quarterly return under oath as follows: On the last day of March, June, September and December in each year to the Comptroller-General, showing a full account of their gross receipts during the quarter ending on such date, and said taxes herein levied upon such gross receipts as shown by said quarterly returns shall be paid by the respective persons or companies to the Comptroller-General at the same time of making such returns. The gross receipts herein named shall be construed to mean the full amount of all money received from business done within this State. If any person, superintendent, agent or president, as the case may be, whose duty it is to make returns under this paragraph, shall fail to do so within thirty days after the time herein required, such person, superintendent, agent or president, shall be liable to indictment, and upon conviction shall be punished as prescribed in section 4310 of the Code of 1882. *[marginal: Quarterly returns. Showing gross receipts. Penalty for failure.]*

Second—That each telephone company shall pay a tax for each of the years, 1889 and 1890 of one dollar for each telephone station or box with instruments complete, rented or used by their subscribers, and the superintendent or general manager of the company shall make returns under oath and payments to the Comptroller General on the dates named in the first paragraph of section. *[marginal: Telephone companies. Returns.]*

Third—That each non resident person or company whose sleeping cars are run in this State, except the sleeping cars of railroad companies that are taxed as hereinafter provided for, shall be taxed as follows: Ascertain the whole number of miles of the lines of railroads over which such sleeping cars are run, and ascertain the entire value of all the sleeping cars of such person or company, then tax such sleeping cars at the regular tax rate, in the same proportion to the entire value of such sleeping cars that the length of lines in this State, over which such cars run bears to the length of the lines of all the railroads over which such sleeping cars are run. The return shall be made to Comptroller General by the president, manager, general agent or person in control of such cars in this State. The Comptroller General shall frame such questions as will elicit the information sought, and answers thereto shall be made under oath. If the president, manager general agent or person in control of such sleeping cars, shall fail or refuse to answer under oath the questions so propounded, then the Comptroller General shall get the information from such source or sources as he may, and he shall assess a double tax on such sleeping cars. If the taxes herein provided for are not paid, the Comptroller General shall issue execution against the owner of such cars, which may be levied by the sheriff of any county in *[marginal: Non-resident owners of sleeping-cars. How taxed. Returns. Double tax where no return.]*

26                    PART I.—TITLE II.—Taxes.

General Tax Act for 1889 and 1890.

Levy, where tax not paid.

this State upon the sleeping car or cars of the owner who has failed to pay the taxes.

Bank stock.

SEC. IX. *Be it further enacted by the authority aforesaid*, That no tax shall be assessed upon the capital of banks or banking associations organized under the authority of this State or of the United States and located within this State, but the shares of the stockholders of such bank or banking associations, whether resident or non-resident owners, shall be taxed in the county where

Where taxed.

such bank or banking associations are located and not elsewhere, at their true and full market value, at the same rate provided in this Act for the taxation of moneyed capital in the hands of private individuals: *Provided,* that nothing in this section contained shall be construed to relieve such banks or banking associations from the tax on property owned by them as provided for in section

Proviso.

seven of this Act: *Provided further,* that nothing herein contained shall be construed to levy any tax on real and personal property held or owned by any bank or banking association, the value of which is represented in the market value of its shares of stock That each bank and banking association shall pay tax on its surplus and individual profits.

Returns for railroad companies.

SEC. X. *Be it further enacted by the authority aforesaid,* That the presidents of all the railroad companies doing business in this State shall make returns to the Comptroller-General, as now provided by law, for the taxation of the property, of the gross receipts or net income of such railroads, and shall pay to the Comptroller-

Payment of their taxes.

General the tax to which such property or gross receipts or net income may be subject according to the provisions of this Act, and the laws now in force relating to the tax on railroads, and on failure to make returns, or refusal to pay tax, said companies shall

President must answer under oath.

be liable to all the penalties now provided by law. The Comptroller-General shall cause questions to be printed as hereinafter set out, which shall be answered under oath by the president of each railroad company doing business in this State, to-wit:

Value of tracks, etc.

First—What is the value of your tracks, including main, side and spur tracks and road-bed in this State?

Of depot buildings.

Second—What is the value of your depot buildings within this State?

Water tanks, etc.

Third—What is the value of your water tanks, pumps, stationary engines, wood sheds, saws and coal structures within this State?

Other buildings.

Fourth—What is the value of all other buildings owned by your company within this State and used for railroad purposes? And in this way the real value of the road shall be ascertained. All property owned by railroad companies and not used for railroad purposes shall be returned to the Tax Receiver of the county where it is situated.

General Tax Act for 1889 and 1890.

Fifth—How many locomotives does your company own, and <span>Locomotives and cars.</span>
what is the value of each?   How many passenger cars, and the
value of each?   How many sleeping cars, and the value of each?
How many express cars, and the value of each?   How many bag-
gage cars, and the value of each?   How many mail cars, and the
value of each?   How many freight cars, and the value of each?
How many "cab" or "caboose" cars, and the value of each?
How many stock cars, and the value of each?   How many plat-
form cars, and the value of each?   How many of all other kinds
of cars not herein enumerated, and the value of each?

Sixth—What is the value of hand cars, pole cars, crank cars <span>Tools and implements.</span>
and tools and implements of every kind used in railroading that
are kept and used within this State by your company?

Seventh—And the president of every railroad company resi-
dent in this State, and every railroad company whose principal
place of doing business is in this State, shall also pay tax on all <span>Money and unpaid dividends.</span>
money of his railroad company on hand on April 1, in each year,
and on such dividends as have been declared but not paid out on
hand at said date.

Eighth—All the property of railroad companies doing business <span>Tax rate.</span>
in this State shall be taxed at the same rate as property of natural <span>Exceptions</span>
persons is taxed, except as follows:

1st—Except that portion of the property of each railroad <span>First.</span>
company that is exempt by its charter from taxation.

2nd—Except in the case of a railroad company doing busi- <span>Second.</span>
ness in this State, and whose line of road runs into another State,
then its locomotives and cars shall be taxed as follows: The value <span>How ascertained.</span>
of all its locomotives and cars shall be ascertained; the length of
the line of such railroad company shall be ascertained, and loco-
motives and cars of such railroad company shall be taxed at the
regular tax rate in the same proportion to the entire value of its
locomotives and cars that the line in this State bears to the entire
line of said company.

3rd—Except in case of a railroad company chartered by the <span>Third.</span>
laws of another State, but who has a place of general business
here, its money on hand, and declared but unpaid dividends o
hand in this State on April 1st in each year, shall be taxed as fol
lows: Ascertain the entire length of said line of railroad and the <span>How determined.</span>
entire money on hand as aforesaid in this State, then such money
in this State is to be taxed in the same proportion to the entire
money aforesaid that the length of the line in this State bears to
the entire line.

Ninth—In the event the Comptroller-General is dissatisfied with <span>Assessors provided for.</span>
the returns made by any railroad company of its property for tax-
ation, he shall report the same to the Governor, who shall appoint
three competent and disinterested men to examine the property

and assess the same, who shall be paid each, four dollars per diem for the actual number of days so employed. If the railroad company is dissatisfied with such assessment, arbitration can be had as now provided by law.

<div style="float:left; width:20%"><em>Non-resident operators of sleeping cars.</em></div>

Tenth—That every railroad company that pulls over its road sleeping cars of any person or corporation not a resident of this State, and except such sleeping cars as are taxed as property of railroad companies as herein provided, such railroad company shall pay a license for pulling such cars in each of the years 1889 and 1890, as follows: A railroad company whose line is not less than fifty, nor more than one hundred miles long, shall pay a license of one hundred dollars. If more than one hundred and not more than one hundred and fifty miles long, one hundred and fifty dollars. If more than one hundred and fifty, and not more than two hundred miles long, two hundred dollars. If two hundred and fifty miles long, two hundred and fifty dollars, and if longer than two hundred and fifty miles, three hundred dollars. Which license tax shall be paid to the Comptroller-General.

<em>License tax determined.</em>

<em>Returns of corporations.</em>

Sec. XI. *Be it further enacted by the authority aforesaid*, That the presidents or principal agents of all the incorporated companies herein mentioned, except such as are required to make returns to the Tax Receivers of the counties, shall make returns to the Comptroller-General, under the rules and regulations provided by law for such returns, and subject to the same penalties and modes of procedure for the enforcement of taxes from companies or persons required by law to make returns to the Comptroller-General.

<em>Oath for returns.</em>

Sec. XII. *Be it further enacted by the authority aforesaid*, That the oath to be administered to all persons making returns of their taxable property shall be the oath required under the Act of October 20, 1885, to be attached to the printed lists furnished under said Act, and presented to each tax payer: *Provided*, that non-residents, females and sick persons may subscribe the oath herein required before any person authorized by law to administer oaths, and cause same to be delivered to the Tax Receiver.

<em>Proviso.</em>

<em>When returns are to be received.</em>

Sec. XIII. *Be it further enacted by the authority aforesaid*, That the Comptroller-General is authorized and empowered to order the Tax Receivers of this State to commence receiving the returns of taxable property immediately after the first day of April of the years 1889 and 1890, and that the Comptroller-General is empowered and required to cause the taxes to be collected and paid into the State Treasury by the 20th of Decembereach of said of years 1889 and 1890.

<em>Owners of vessels, boats, etc.</em>

Sec. XIV. *Be it further enacted by the authority aforesaid*, That any person or company, resident of this State, who is the owner of a vessel, boats or water craft of any description, shall answer under oath the number of vessels, boats and other water crafts

PART I.—TITLE II.—Taxes.                    29

General Tax Act for 1889 and 1890.

owned by them and the value of each, and make a return of the *Must return same.*
same to the Tax Receiver of the county of the residence of such
person or company, and the same shall be taxed as other property
is taxed: *Provided*, however, that this section shall not apply to *Proviso.*
vessels, boats or other water crafts owned by corporations or joint
stock companies upon whose capital stock a tax is paid as pro-
vided in section seven of this Act.

SEC. XV. *Be it further enacted by the authority aforesaid*, That in *Returns must be for par value.*
returning property for taxes, all property shall be returned at its
value—promissory notes, accounts, judgments, mortgages, liens
of all kinds, and all choses-in-action shall be given in at their value,
whether solvent or partially solvent.  Every person shall return *Property of wife or minor children.*
for taxes all jewelry, and all other property of every kind owned
by his wife and minor children, unless the members of his or her
family return their property for taxation.  In addition to the
questions now propounded to tax payers by the Tax Receivers,
questions shall be framed by the Comptroller General to reach all *Additional questions:*
property upon which a tax is imposed by this Act; and especially
the following questions :

First—The number of horses, mules, oxen, cows, sheep, hogs, *Live stock;*
goats, and of all other animals upon which a tax is imposed by
law, and state the value of each.

Second—The kind and value of property owned by the wife and *Wife's and minor children's property.*
minor children of the tax payer, and not returned for taxes by the
owners thereof.

Third—Whether solvent or partially solvent, give the value of *Securities.*
your bonds, stocks of non resident companies or corporations or
of companies or corporations in this State whose capital stock is
not returned by the president of such company or corporation, all
notes, accounts, judgments, mortgages, liens and other choses in
action of every kind, whether such bonds, stocks, notes, etc., are
held by the tax payer in Georgia or held by some other person for
him, either in or out of this State.  There shall be no deduction
from the value of property returned for taxes on account of any
indebtedness of such tax payer.

SEC. XVI. *Be it further enacted by the authority aforesaid*, That
all laws and parts of laws in conflict with this Act be and they are
hereby repealed.

Approved December 26, 1888.

# EXHIBIT 36

# TITLE II.

## TAXES.

### ACTS.

General Tax Act.
Amending General Tax Act, Increasing Tax Rate.
Amending General Tax Act, Relieving Certain Liquor Dealers.
Amending General Tax Act, Increasing Tax on Liquor Dealers and Relieving Certain Itinerant Doctors, etc.
Amending General Tax Act, as to Peddlers of Merchandise.
Tax Executions of Municipal Corporations, Interest on, Law Amended.
Board of Equalization as to Taxable Property.
Garnishments for Municipal Taxes.

### GENERAL TAX ACT.

### No. 131.

An Act to levy and collect a tax for the support of the State Government and the public institutions; for educational purposes in instructing children in the elementary branches of an English education only; to pay the interest of the public debt, and to pay maimed Confederate soldiers and widows of Confederates such amounts as are allowed them by law, for each of the fiscal years eighteen hundred and ninety-one and eighteen hundred and ninety-two, and to prescribe what persons, professions and property are liable to taxation; to prescribe the methods of receiving and collecting said taxes; to prescribe the method of ascertaining the property of this State subject to taxation; prescribe additional questions to be propounded to tax-payers, and to provide penalties and forfeitures for non-payment of taxes, and for other purposes.

SECTION I. Be it enacted by the General Assembly of the State of Georgia, That the Governor be authorized and empowered, with the assistance of the Comptroller-General, to assess and levy a tax on taxable property of this State for

Rate of general tax

General Tax Act.

the fiscal year of eighteen hundred and ninety-one, two and four-tenths mills, and for the fiscal year eighteen hundred and ninety-two, two and one-half mills, and the Governor be, and is hereby authorized and empowered, by and with the assistance of the Comptroller-General, to assess and levy, in addition to the foregoing general State tax, a tax of one and one-third mills for the year eighteen hundred and ninety-one, and a tax of one and one-third mills for the year eighteen hundred and ninety-two, on all the taxable property of this State, for the purpose of raising the funds necessary to meet the appropriations by this General Assembly for educational purposes in instructing children in the elementary branches of an English education only.

**Tax for educational purposes.**

**Specific taxes.**

SEC. II. Be it further enacted by the authority aforesaid, That in addition to the *ad valorem* tax on real and personal property, as required by the Constitution, and provided for in the preceding section, the following specific taxes shall be levied and collected for each of the said fiscal years, eighteen hundred and ninety-one and eighteen hundred and ninety-two.

**Poll.**

First.—Upon each and every male inhabitant of the State, between the ages of twenty-one and sixty years, on the first day of April, a poll tax of one dollar for each of the said years, in 1891 and 1892, which shall be for educational purposes in instructing children in the elementary branches of an English education only ; *provided,* this tax shall not be demanded of blind persons, nor of crippled, maimed or disabled Confederate soldiers, relieved of such taxes under and by authority of an Act approved July 23, 1883.

**Exemptions.**

**Lawyers, doctors, dentists and presidents of certain corporations.**

Second.—Upon every practitioner of law, medicine or dentistry, presidents of each of the banks of the State, each agent or firm negotiating loans and charging therefor, the presidents of each of the railroad companies, presidents of each of the express, telegraph, telephone, electric light and gas companies doing business in this State, and in case the presidents of any such companies do not reside in this State, then in such case, upon the superintendent or general agent of such companies who may reside in this State, ten dollars, and no municipal corporation or county authorities shall levy any additional tax on said possessions, either as license fee or otherwise.

**If presidents of such corporations be non-residents. Municipal corporations forbidden to tax professions.**

**Photographic and similar artists.**

Third.—Upon every daguerrean, ambrotype, photographic and similar artist, ten dollars in each county in which they may carry on business.

**Auctioneers.**

Fourth.—Upon every person carrying on business of auctioneer for pay or compensation, twenty-five dollars for each county in which they may carry on such business.

Fifth.—Upon every keeper of a pool, billiard or bagatelle table kept for public use, whether in a saloon, barroom, hotel or other public place, twenty-five dollars for each table. Keepers of pool, billiard or bagatelle tables.

Sixth.—Upon every keeper of any other table, stand or place for the peformance of any game or play, and upon the keeper of any flying horses, or any other game or play (unless kept for exercise or amusement not prohibited by law), and not kept for gain, directly or indirectly, twenty-five dollars in each county. Keepers of others tables, games, etc.

Seventh.—Upon every keeper of a ten pin alley or alley of like character, kept for public play, and upon every keeper of a shooting gallery, twenty-five dollars for each place of business. Ten pin and other alleys. Shooting galleries.

Eighth.—Upon every traveling vendor of patent or proprietary medicines, special nostrums, jewelry, paper, soap, or other articles of like character, twenty-five dollars in each county where they may offer such articles for sale. Peddlers.

Ninth.—Upon every local insurance agent or firm of agents doing business in this State, ten dollars for each county in which they shall solicit business, and upon every agent of a matrimonial, natal or nuptial company, one hundred dollars for each county in which they shall do business, and upon every traveling or special or general agent of life, fire, accident or other insurance company doing business in this State, fifty dollars, which said tax must be paid before said agent shall be authorized to act as an agent for any of their companies. Said tax shall be paid by said companies to the Comptroller-General, and shall be in addition to the license fee required of insurance companies by the Act approved October 24, 1887. The receipt of the Comptroller-General for the payment of this tax, together with his certificate, as provided by said Act approved October 24, 1887, shall constitute the license for said agents to transact business for their companies, as designated by said certificates; *provided*, this tax shall not be required of agents of assessments, life insurance companies or mutual aid societies. Local insurance agents. Agents of matrimonial and similar companies. Traveling, special or general insurance agents. Such taxes, how paid. Licenses. Not required of agents of assessment or mutual aid societies.

Tenth.—Upon each emigrant, agent or employer or employee of such agent doing business in this State, the sum five hundred dollars for each county in which such business is conducted. Emigrant agents.

Eleventh.—Upon every traveling vendor using boats for the purpose of selling goods on the rivers or waters within the limits of this State, the sum of fifty dollars in each county where they may sell their wares, and said tax shall be a lien on the boat and its contents, without regard to the ownership thereof. Peddlers in boats. Such tax a lien.

38                          PART I.—TITLE 2.—TAXES.

**Lightning rod dealers or agents.** Twelfth.—Upon all intinerant lightning-rod dealers or agents, the sum of fifty dollars for each and every county in which they operate.

**Shows and exhibitions.** Thirteenth.—Upon all shows and exhibitions (except such as histrionic, musical, operatic and elocutionary), including side-shows accompanying circus companies, fifty dollars in each and every city or town of five thousand inhabitants, forty dollars in cities or towns of four thousand and under five thousand inhabitants, and thirty dollars in towns of less than four thousand inhabitants. Said tax, so collected, shall be for educational purposes.

**Circus companies.** Fourteenth—Upon every circus company, three hundred dollars each day it may exhibit in the State of Georgia. Said tax shall be for educational purposes.

**Liquor dealers.** Fifteenth.—Upon all dealers in spirituous or malt liquors, intoxicating bitters or brandy fruits or domestic wines, whether dealing in any or all thereof, fifty dollars for each place of business in each county where the same are sold ; **Proviso.** *provided*, this tax shall not relieve such dealers from any local tax or prohibitory law in reference to the retail of spirituous or intoxicating liquors, nor be required of those who sell by wholesale spirits manufactured of apples, peaches, grapes, blackberries or other fruits grown on their own lands, when sold in quantities not less than five gallons ; **Dealers in domestic wines exempt.** *provided*, that nothing in this Act shall be so construed as to levy a tax on dealers in domestic wines manufactured from grapes or berries purchased by or grown on lands owned, leased or rented by said dealer. Said tax shall be for educational purposes.

**Dealers in pistols and other weapons.** Sixteenth.—Upon all dealers in pistols, toy pistols, shooting cartridges, dirks or Bowie-knives, one hundred dollars for each place of business in each county where the same are sold.

**Dealers in "futures," etc.** Seventeenth.—Upon every individual or firm, or his or their agents, engaged in the business of selling or buying through regularly organized stock and cotton exchanges or boards of trade, farm products, sugar, coffee, and salt and meat, railroad stock and bonds, and stocks and bonds of all kinds, not intended for *bona fide* sale and delivery, but for future delivery (commonly called "futures"), one thousand dollars each per annum for each county where such business is carried on ; **Provisos.** *provided*, that this tax shall not be demanded of any cotton warehouseman, dealer in cotton, or any provision broker who takes orders in the regular course of their trade only for the actual and *bona fide* delivery of cotton and other produce so ordered, and where, by the terms of the contract, it is not left to the option of the party so ordering,

General Tax Act.

or the party taking such order, to avoid the delivery of the produce or products by paying the difference in the market price of such produce or products at the time of delivery; *provided further*, that such cotton warehouseman, dealer in actual cotton, or any provision broker, does not carry on the business of buying "futures" in connection with his or their other business, and upon every individual or firm, or his or their agents, engaged in a like business when they take orders on their own account and determine the loss or gain between them and their patrons by market reports received from any other source whatever, and whose business is generally denominated "bucket shops," the sum of ten thousand dollars. <sup>"Bucket shops."</sup>

Eighteenth.—Upon every peddler of stoves or ranges for cooking purposes, the sum of one hundred dollars in every county in which such peddler may do business. <sup>Peddlers of stoves or ranges.</sup>

Nineteenth.—Upon every person or firm, for himself or agent for resident or non-resident owners, who holds or keeps for hire or sale any billiard, pool or other table of like character, fifty dollars for each county in which such person or firm does business. <sup>Dealers in billiard tables and tables of like character.</sup>

Twentieth.—Upon each peddler of clocks, one hundred dollars in every county of the State in which said peddler may do business. <sup>Clock peddlers.</sup>

Twenty-first.—Upon all itinerant doctors, dentists, opticians or specialists of any kind, doing business in this State, ten dollars for each county in which they may do business. <sup>Itinerant doctors, dentists, etc.</sup>

Twenty-second.—Upon all packing houses doing a cold storage business in this State, whether carried on by the owners thereof, or by their agents, five hundred dollars in each county where said business is carried on. <sup>Cold storage.</sup>

Twenty-third.—Upon all brewing companies, and upon each agent of non-resident brewing companies, two hundred dollars. <sup>Brewing companies and agents</sup>

Twenty-fourth.—Upon each pawnbroker, fifty dollars for each place of business. <sup>Pawnbrokers.</sup>

Twenty-fifth.—Upon all mercantile and collecting agencies, commercial agencies, and all other agencies of like character, fifty dollars in every county where they have an established office. <sup>Commercial and collecting agencies, etc.</sup>

SEC. III. Be it further enacted by the authority aforesaid, That the taxes provided for in paragraphs 1 and 2 of section 2 of this Act shall be returned to the Tax-Receiver in the county of the residence of the person liable to such tax, and shall by the Receiver of Tax Returns be entered upon his digest of taxable property, and that the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, <sup>Returns of taxes provided for in pars. 1 and 2 of sec. 2.</sup>

PART I.—TITLE 2.—TAXES.

General Tax Act.

17, 18, 19, 20, 21, 22, 23, 24 and 25 of section 2 of this Act shall be returned and paid to the Tax-Collectors of the counties where such vocations are carried on.

Of taxes provided for in other paragraphs of section 2, except par. 9.
To whom and when to be paid.

SEC. IV. Be it further enacted by the authority aforesaid, That the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 of section 2 of this Act shall be paid in full for the fiscal years for which they are levied to the Tax-Collectors of the counties where such vocations are carried on at the time of commencing to do the business specified in said paragraphs. Before any person taxed by paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 of section 2 of this Act shall be authorized to carry on said business, they

Registration of business required.

shall go before the Ordinary of the county in which they propose to do business and register their names, place of business, and at the same time pay their taxes to the Tax-Collector: and it shall be the duty of said Ordinary to immediately notify the Comptroller-General and the Tax-Col-

Failure to register or pay tax.

lector. Any person failing to register with the Ordinary, or, having registered, fail to pay the tax, as herein required, shall be liable to indictment for a misdemeanor, and on conviction, shall be fined not less than double the tax, or be imprisoned as prescribed by section 4310 of the Code, or both, in the discretion of the court; one-half of said fine shall be applied to payment of the tax and the other to fund of fines and forfeitures for use of officers of court.

Insurance companies on gross receipts.
Proviso.

SEC. V. Be it further enacted by the authority aforesaid, That all foreign and home insurance companies doing business in this State shall pay one *per centum* on all premiums, in money or otherwise, received by them: *provided,* this shall not include return premiums on cancelled policies;

On Insurance companies doing brokerage business.

and, in addition to the tax imposed by this Act upon the gross receipts of such insurance companies, all such companies doing brokerage business in this State, such as discounting notes, bills, drafts or exchange, lending money or in any manner doing a business pertaining to banking or brokerage business, shall be taxed upon the capital so employed in the same manner and at the same rate as other moneyed capital in the hands of private individuals is taxed.

Returns of building and loan and similar associations.

SEC. VI. Be it further enacted by the authority aforesaid, That the presidents of all building and loan associations and other associations of like character shall be required to return to the Tax-Receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof (upon which, as shown by the books of such associations, no advance has been made or money borrowed thereon by the individual

stockholders therein), to be taxed as other moneyed capital in the hands of private individuals is taxed; *provided*, that no tax shall be required of real estate and building associations to be paid upon any portion of their capital which has been loaned or advanced to a shareholder upon real estate, upon which real estate tax is payable by said shareholder. Proviso.

SEC. VII. Be it further enacted by the authority aforesaid, That the presidents of all manufacturing and other incorporated companies (or their agents), other than railroad, insurance, telegraph, telephone, express, sleeping and palace car companies, shall be required to return all their property whatever, of their respective companies, at its true market value to the Tax-Receiver of the county where the same is located, or where the principal business of each company is located, to be taxed for State and county purposes as other property in this State is taxed; save and except, that all canals or slackwater navigation companies shall make through their respective executive officers or stockholders in possession of the same returns to the Tax-Receiver of each county in which the same is located, or through which the same shall pass, in whole or in part, of the right of way, locks and dams, toll-houses, structure and all other real estate owned or used by the company, or the stockholders thereof; *provided*, this Act shall not make subject to taxation any property of canals or navigation companies which is not subject to taxation by the laws of the State as now existing. The president of every manufacturing company shall be required to answer under oath, in addition to those now provided by law, the following questions: 1st, What is the value of raw material on hand April 1st? 2d, What is the value of manufactured goods or articles on hand April 1st? 3d, What amount of money, bonds, notes, accounts and choses in action of every kind did you own on April 1st? 4th, What other property of every kind did your company own on April 1st? and such company shall be taxed upon its entire property so ascertained. Returns for corporations generally. Of canal or slackwater companies. Proviso. Oath of presidents of manufacturing companies.

SEC. VIII. Be it further enacted, That all persons or companies, including railroad companies, doing an express or telegraph business, and charging the public therefor, in this State, shall pay two and a half per centum on their gross receipts, and all persons, or the superintendent or general agent of each telegraph or express company, or the president of each railroad company doing such business in this State, shall make a quarterly return, under oath, as follows: On the last day of March, June, September and December, in each year, to the Comptroller-General, showing a full Tax on express and telegraph companies. Returns.

General Tax Act.

Payment of taxes.

account of their gross receipts during the quarter ending on such date; and said taxes herein levied upon such gross receipts as shown by said quarterly returns shall be paid by the respective persons or companies to the Comptroller-General at the same time of making such returns; the gross receipts herein named shall be construed to mean the full amount of all money received from business done within this State. If any person, superintendent, agent or president as the case may be, whose duty it is to make returns under this paragraph, shall fail to do so within thirty days after the time herein required, such person, superintendent, agent or president, shall be liable to indictment, and upon conviction shall be punished as prescribed in section 4310 of the Code of 1882.

Failure to make return.

Telephone companies.

Second.—That each telephone company shall pay a tax for each of the years 1891 and 1892, of one dollar for each telephone station or box with instruments complete, rented or used by their subscribers, and the superintendent or general manager of the company shall make returns under oath and payments to the Comptroller-General on the dates named in the first paragraph of this section.

Returns and payment of tax.

Sleeping car companies.

Third.—Each sleeping car company doing business in Georgia shall pay a tax of two and a half per cent. on gross receipts of said company received in the State of Georgia from sale of sleeping car tickets from a place to a place in said State of Georgia, and the superintendents or general manager shall make return, under oath, to the Comptroller-General, as provided in first paragraph of this section, and pay the taxes required by such returns at the time of making such quarterly statements.

Returns and payment of tax.

Sewing machine companies and dealers.

Sec. IX. Be it further enacted, That every sewing machine company selling or dealing in sewing machines, by itself or its agents, in this State, and all wholesale and retail dealers in sewing machines selling machines manufactured by companies that have not paid the tax required herein, shall pay two hundred dollars for each fiscal year or fractional part thereof, to be paid to the Comptroller-General at the time of commencement of business, and said companies or dealers shall furnish the Comptroller-General a list of all agents authorized to sell machines of their manufacture or under their control, and shall pay to said Comptroller-General the sum of five dollars for each of said agents, for each fiscal year or fractional part thereof, for each county in which said agent may do business for said company. Upon the payment of said additional sum, the Comptroller-General shall issue to each of said agents a certificate of authority to transact business in this State, and such companies, dealers and

Lists of agents to be furnished and tax paid to Comptroller-General

agents, having paid the taxes required herein, shall be ex- <sup>Exemption</sup>
empted from any county or corporation tax for selling said
sewing machines. Before doing business under this Act, all <sup>Registry, etc.</sup>
sewing machine agents shall be required to register their
names with the Ordinaries of those counties in which they
intend to operate, and exhibit to said Ordinaries their
license from the Comptroller-General, and to keep such
license pasted on their vehicles or at their places of business.
Wholesale or retail dealers in sewing-machines shall be re- <sup>Dealers to pay for each manufacture.</sup>
quired to pay the tax provided herein for each manufacture
of sewing machines sold by them, except the manufactures
of such companies as have paid the tax required by this Act. <sup>Machines liable to seizure and sale for tax.</sup>
All unsold sewing machines belonging to sewing machine
companies, dealers or their agents, in possession of said
companies, dealers, their agents or others, shall be liable to
seizure and sale for payment of such license fees and tax. <sup>Penalty for violating this section</sup>
Any person who shall violate the provision of this section
shall be liable to indictment for misdemeanor, and, on con-
viction, shall be fined not more than five hundred dollars
and not less than one hundred, in the discretion of the court
trying the same. If said fine is not paid within the time
prescribed by the court, such person so fined shall be im-
prisoned as prescribed in section 4310 of the Code. None of <sup>Provisions not to apply to auctioneers, etc.</sup>
the provisions of this section shall apply to licensed auc-
tioneers selling second-hand sewing machines, or to officers
of the law under legal process, or to merchants buying and
selling machines on which a license tax has been paid as
herein provided, and who keep the said machines and sell
and deliver them at their places of business, such sales not
being on commission.

SEC. X. Be it further enacted by the authority aforesaid, <sup>No tax on capital of banks.</sup>
That no tax shall be assessed upon the capital of banks or
banking associations organized under the authority of this
State, or of the United States and located within this State, <sup>Shares of stockholders to be taxed.</sup>
but the shares of the stockholders of such bank or banking
associations, whether resident or non-resident owners, shall
be taxed in the county where such bank or banking associa-
tions are located, and not elsewhere, at their true and full
market value, at the same rate provided in this Act for the
taxation of moneyed capital in the hands of private individ-
uals ; *provided*, that nothing in this section contained shall <sup>Provisos.</sup>
be construed to relieve such banks or banking associations
from the tax on property owned by them, as provided for in
section 7 of this Act ; *provided further*, that nothing herein
contained shall be construed to levy any tax on real or per-
sonal property held or owned by any bank or banking asso-
ciation, the value of which is represented in the market value

General Tax Act.

**Surplus and undivided profits.** of its shares of stock, that each bank and banking association shall pay tax on its surplus and undivided profits.

**Returns for railroad companies.** SEC. XI. Be it further enacted by the authority aforesaid, That the presidents of all railroad companies doing business in this State shall make returns to the Comptroller-General, as now provided by law for the taxation of the property, of the gross receipts or net income of such railroads, and shall **Payment of tax.** pay to the Comptroller-General the tax to which such property or gross receipts or net income may be subject according to the provisions of this Act, and the laws now of force relating to the tax on railroads; and on failure to make **Failure to make return or pay tax.** returns or refusal to pay tax, said companies shall be liable to all the penalties now provided by law, and the Comptroller-General is hereby required, upon failure of such companies to make returns, or if made and not satisfactory to said officer, to proceed against such railroads, as provided in section 826(d) of the Code of 1882.

**Returns for all corporations, with certain exceptions, to be made to Comptroller-General** SEC. XII. Be it further enacted by the authority aforesaid, That the presidents or principal agents of all the incorporated companies herein mentioned, except such as are required to make returns to the Tax-Receiver of the counties, shall make returns to the Comptroller-General under the rules and regulations provided by law for such returns, **General rules applicable.** and subject to the same penalties and modes of procedure for the enforcement of taxes from companies or persons required by law to make returns to the Comptroller-General.

**Vessels, boats, etc.** SEC. XIII. Be it further enacted by the authority aforesaid, That any person or company, resident of this State, who is the owner of a vessel, boats or water-craft of any description, shall answer, under oath, the number of vessels, boats and other water-crafts owned by them and the value of each, and make a return of the same to the Tax-Receiver of the county of the residence of such person or company, and the same shall be taxed as other property is taxed.

**Property to be returned at its value.** SEC. XIV. Be it further enacted by the authority aforesaid, That in returning property for taxes, all property shall be returned at its value—promissory notes, accounts, judgments, mortgages, liens of all kinds and all choses in action shall be given in at their value, whether solvent or partially solvent. **Returns for wife and minor children.** Every person shall return for taxes all jewelry and other property of every kind owned by his wife and minor children, unless the members of his or her family return their property for taxation. In addition to the questions **Additional questions for tax-payers.** now propounded to tax-payers by the Tax-Receivers, questions shall be framed by the Comptroller-General to reach all property upon which a tax is imposed by this Act, and especially the following questions:

General Tax Act.

First.—The number of horses, mules, oxen, cows, sheep, hogs, goats, and of all other animals upon which a tax is imposed by law, and state the value of each.

Second.—The kind and value of property owned by the wife and minor children of the tax-payer and not returned for taxes by the owner thereof.

Third.—Whether solvent or partially solvent, give the value of your bonds, stocks of non-resident companies or corporations, or of companies or corporations in this State, whose capital stock is not returned by the president of such company or corporation, all notes, accounts, judgments, mortgages, liens and other choses in action of every kind, whether such bonds, stocks, notes, etc., are held by the tax-payers in Georgia, or held by some other person for him, either in or out of this State. There shall be no deduction from the value of property returned for taxes on account of any indebtedness of such tax-payer.

Sec. XV. Be it further enacted by the authority aforesaid, That the oath to be administered to all persons making returns of their taxable property shall be the oath required under the Act of October 20, 1885, to be attached to the printed list furnished under said Act, and presented to each tax-payer; *provided*, that non-residents, females and sick persons may subscribe the oath herein required before any person authorized by law to administer oaths, and cause same to be delivered to the Tax-Receiver.

Sec. XVI. Be it further enacted by the authority aforesaid, That the Comptroller-General is authorized and empowered to order the Tax-Receivers of this State to commence receiving the returns of taxable property immediately after the 1st day of April of the years 1891 and 1892, and that the Comptroller-General is empowered and required to cause the taxes to be collected and paid into the State Treasury by the 20th of December of each of said years 1891 and 1892.

Sec. XVII. Be it further enacted by the authority aforesaid, That blind persons and Confederate soldiers relieved by the proviso in paragraph 1 of section 2, from the payment of the tax designated in that paragraph, shall be relieved also from the payment of the taxes designated in paragraphs 6, 7, 8 and 11 of section 2, if carrying on and dependent upon the kinds of business designated therein; *provided*, that before any person shall be entitled to the benefit of any of the exemptions provided for it in this section, he shall go before the Ordinary of the county in which he purposes to carry on business, and make and file an affidavit setting forth the facts that he is entitled to such exemptions,

*[marginal notes:]*
No deductions for indebtedness of tax payers.

Oaths to be administered persons making returns.

Oaths of non-residents, females and sick persons.

When returns shall be received

When taxes to be collected.

Relief of blind persons and Confederate soldiers.

Proviso.

# EXHIBIT 37

General Tax Act.

# TITLE II.

## TAXES AND PUBLIC DEBT.

### ACTS.

General Tax Act.
Repealing Act Creating Board of Equalization.
Providing Sinking Fund to Retire Maturing State Bonds.

GENERAL TAX ACT.

No. 133.

An Act to levy and collect a tax for the support of the State
Government and the public institutions; for educational
purposes in instructing children in the elementary branches
of an English education only; to pay the interest on the
public debt, and to pay maimed Confederate soldiers and
widows of Confederates such amounts as are allowed them by
law for each of the fiscal years eighteen hundred and ninety-
three and eighteen hundred and ninety-four, and to prescribe
what persons, professions and property are liable to taxa-
tion; to prescribe the methods of receiving and collecting
said taxes; to prescribe the method of ascertaining the prop-
erty of this State subject to taxation; prescribe additional
questions to be propounded to tax-payers, and to provide
penalties and forfeitures for non-payment of taxes, and for
other pupeses.

General
ad valorem
tax for 1893
and 1894.

SECTION 1.   Be it enacted by the General Assembly of the
State of Georgia, That the Governor be authorized and em-
powered, with the assistance of the Comptroller-General, to
assess and levy a tax on the taxable property of this State for
each of the fiscal years eighteen hundred and ninety-three and
eighteen hundred and ninety-four of two mills and ninety-three
one hundredths of a mill, and the Governor be, and is, hereby

General Tax Act.

authorized and empowered, by and with the assistance of the <sup>[General tax for educational purposes.]</sup>
Comptroller-General, to assess and levy, in addition to the fore-
going general State tax, a tax of one mill and forty-four one
hundredths of a mill for each of the years eighteen hundred and
ninety-three and eighteen hundred and ninety-four on all
of the taxable property of this State, for the purpose of raising
the funds necessary to meet the appropriations of this General
Assembly for educational purposes in instructing children in
the elementary branches of an English education only.

Sec. 2.   Be it further enacted by the authority aforesaid, <sup>[Specific taxes.]</sup>
That in addition to the *ad valorem* tax on real estate and per-
sonal property, as required by the Constitution, and provided
for in the preceding section, the following specific taxes shall
be levied and collected for each of the said fiscal years eighteen
hundred and ninety-three and eighteen hundred and ninety-
four.

*First.*—Upon each and every male inhabitant of the State, <sup>[Poll tax.]</sup>
between the ages of twenty-one and sixty years, on the days
fixed for return of property for taxation, a poll tax of one dol-
lar, which shall be for educational purposes in instructing chil-
dren in the elementary branches of an English education only ;
*provided*, this tax shall not be demanded of blind persons, nor <sup>[Persons exempt.]</sup>
of crippled, maimed or disabled. Confederate soldiers, relieved
of such taxes under and by authority of an act approved July
23, 1883.

*Second.*—Upon every practitioner of law, medicine or den- <sup>[Lawyers, physicians, dentists, loan ag'ts corpora-tion, presidents, superin-tendents or general agents.]</sup>
tistry, presidents of each of the banks of the State, each agent
or firm negotiating loans and charging therefor, the presidents
of each of the railroad companies, presidents of each of the
express, telegraph, telephone, electric light and gas companies
doing business in this State, and in case the presidents of any
such companies do not reside in this State, then in such case,
upon the superintendent or general agent of such companies
who may reside in this State, ten dollars, and no municipal <sup>[No addi-tional tax by munici-pal cor-porations.]</sup>
corporation or county authorities shall levy any additional tax
on said professions either as a license fee or otherwise.

*Third.*—Upon every daguerrean, ambrotype, photographic <sup>[Photo-graphic and similar artists.]</sup>
and similar artist, ten dollars in each county in which they
may carry on business.

*Fourth.*—Upon every person carrying on the business of <sup>[Auction-eers.]</sup>
auctioneer, for pay or compensation, twenty-five dollars for
each county in which they may carry on such business.

*Fifth.*—Upon every keeper of a pool, billiard or bagatelle <sup>[Keepers of billiard ta-bles, etc.]</sup>
table, kept for public use, whether in a saloon, barroom, hotel
or other public place, twenty-five dollars for each table.

24 PART I.—TITLE 2.—Taxes.

General Tax Act.

**Keepers of other tables, games, etc.**

*Sixth.*—Upon every keeper of any other table, stand or place for the performance of any game or play, and upon the keeper of any flying horses, or any other game or play (unless kept for exercise or amusement not prohibited by law and not kept for gain, directly or indirectly), twenty-five dollars in each county.

**Ten pin and other alleys. Shooting galleries.**

*Seventh.*—Upon every keeper of a ten pin alley or alley of like character, kept for public play, and upon every keeper of a shooting gallery, twenty-five dollars for each place of business.

**Travelling venders of patent medicines, etc.**

*Eighth.*—Upon every travelling vendor of patent or proprietary medicines, special nostrums, jewelry, paper, soap or other merchandise, fifty dollars in each county where they may offer such articles for sale.

**Local insurance agents, etc.**

*Ninth.*—Upon every local insurance agent or firm of agents doing business in this State, ten dollars for each county in which they shall solicit business, and upon every agent of a matrimonial, natal or nuptial company, one hundred dollars for each county in which they shall do business, and upon every

**Special or general insurance agents.**

traveling or special or general agent of life, fire, accident or other insurance company doing business in this State, fifty dollars, which said tax must be paid before said agents shall be authorized to act as agents for any of their companies. Said tax

**To whom tax to be paid by such agents.**

shall be paid by said companies to the Comptroller-General, and shall be in addition to the license fee required of insurance companies by the act approved October 24th, 1887. The re-

**What shall constitute the license of such agents.**

ceipts of the Comptroller-General for the payment of this tax, together with his certificate as provided by said act approved October 24th, 1887, shall constitute the license for said agents to transact business for their companies as designated by said

**Not required of agents of assessment or mutual aid companies.**

certificates; *provided*, this tax shall not be required of agents of assessment life insurance companies or mutual aid societies; *provided further*, that railroad ticket agents selling accident in-

**Nor of railroad ticket agents selling accident insurance.**

surance tickets shall not be deemed insurance agents in the sense of this section, and this section shall not apply to railroad ticket agents selling accident insurance tickets, and that railroad ticket agents who sell accident insurance tickets shall not be required to pay the said tax.

**Emigrant agents, etc.**

*Tenth.*—Upon each emigrant agent or employer or employee of such agents doing business in this State, the sum of five hundred dollars for each county in which such business is conducted.

**Venders using boats. Lien for tax.**

*Eleventh.*—Upon every traveling vendor using boats for the purpose of selling goods on the rivers or waters within the limits of the State, the sum of fifty dollars in each county

General Tax Act.

where they may sell their wares, and said tax shall be a lien on the boat and its contents, without regard to the ownership thereof.

*Twelfth.*—Upon all itinerant lightning rod dealers or agents, the sum of fifty dollars for each and every county in which they operate. *[Itinerant lightning rod dealers or agents.]*

*Thirteenth.*—Upon all shows and exhibitions (except such as histrionic, musical, operatic and elocutionary), including the side-shows accompanying circus companies, fifty dollars in each and every city or town of five thousand inhabitants; forty dollars in cities or towns of four thousand and under five thousand inhabitants, and thirty dollars in towns of less than four thousand inhabitants. Said tax, so collected, shall be for educational purposes. *[Shows and exhibitions.]*

*Fourteenth.*—Upon every circus company or others, giving an exhibition beneath or within a canvas enclosure advertised in print or by parade, or in any manner whatsoever as a circus, menagerie, hippodrome, spectacle or show implying a circus, three hundred dollars each day it may exhibit in the State of Georgia. Said tax shall be for educational purposes. *[To be for educational purposes. Circuses, etc.]*

*Fifteenth.*—Upon all dealers in spirituous or malt liquors, intoxicating bitters or brandy fruits or domestic wines, whether dealing in any or all thereof, one hundred dollars for each place of business in each county where the same are sold; *provided*, this tax shall not relieve such dealers from any local tax or prohibitory law in reference to the retail of spirituous or intoxicating liquors, nor be required of those who sell by wholesale spirits manufactured of apples, peaches, grapes, blackberries or other fruits grown on their own lands when sold in quantities not less than five gallons; *provided*, that nothing in this act shall be so construed as to levy a tax on dealers in domestic wines manufactured from grapes or berries purchased by or grown on lands owned, leased or rented by said dealer. Said tax shall be for educational purposes. *[Liquor dealers. Tax to be for educational purposes.]*

*Sixteenth.*—Upon all dealers in pistols, toy pistols shooting cartridges, dirks, Bowie knives or metal knucks, one hundred dollars for each place of business in each county where the same are sold. *[Dealers in pistols, etc.]*

*Seventeenth.*—Upon every individual or firm, or his or their agents, engaged in the business of selling or buying through regularly organized stock and cotton exchanges or boards of trade, farm products, sugar, coffee and salt and meat, railroad stock and bonds, and stock and bonds of all kinds, not intended for *bona fide* sale and delivery, but for future delivery (com- *[Dealers in "futures."]*

monly called "futures"), one thousand dollars each per annum for each county where such business is carried on; *provided*,

**Not applicable to those taking orders for actual delivery, etc.**

that this tax shall not be demanded of any cotton warehouseman, dealer in cotton, or any provision broker who takes orders in the regular course of their trade only for the actual and *bona fide* delivery of cotton and other produce so ordered, and where by the terms of the contract it is not left to the option of the party so ordering, or the party taking such order, to avoid the delivery of the produce or products, by paying the difference in the market price of such produce or products

**If dealing in "futures" not also carried on.**

at the time of delivery; *provided further*, that such cotton warehouseman, dealer in actual cotton, or any provision broker does not carry on the business of buying "futures" in connection with his or their other business, and upon every individual or firm, or his or their agents, engaged in a like business, when they take orders on their own account and determine the loss or gain between them and their patrons by market

**"Bucket shops."**

reports received from any other source whatever, and whose business is generally denominated "bucket shops," the sum of ten thousand dollars.

**Peddlers of stoves or ranges.**

*Eighteenth.*—Upon every peddler of stoves or ranges for cooking purposes, the sum of one hundred dollars in every county in which such peddler may do business.

**Sellers, etc. of billiard and like tables.**

*Nineteenth.*—Upon every person or firm, for himself or agent for resident or non-resident owners, who holds or keeps for hire or sale any billiard, pool or other table of like character, fifty dollars for each county in which such person or firm does business.

**Clock peddlers.**

*Twentieth.*—Upon each peddler of clocks one hundred dollars in each county of the State in which said peddler may do business.

**Itinerant doctors, dentists, etc.**

*Twenty-first.*—Upon all itinerant doctors, dentists, opticians or specialists of any kind, doing business in this State, ten dollars for each county in which they may do business; *provided*, the provisions of this paragraph shall not apply to persons whose fixed place of business is in a county of this State and have paid the tax required by paragraph 2 of section 2.

**Packing houses or cold storage.**

*Twenty-second.*—Upon all packing houses or dealers doing a a cold storage business in this State, whether carried on by the owners thereof or by their agents, five hundred dollars in each county where said business is carried on.

**Breweries.**

*Twenty-third.*—Upon all brewing companies, and upon each agent of non-resident brewing companies, two hundred dollars.

General Tax Act.

*Twenty-fourth.*—Upon each pawnbroker, fifty dollars for each place of business. <span>Pawnbrokers.</span>

*Twenty-fifth.*—Upon all mercantile and collecting agencies, commercial agencies, and all other agencies of like character; fifty dollars in every county where they have an established office. <span>Collecting and commercial agencies, etc.</span>

SEC. 3. Be it further enacted by the authority aforesaid, That the taxes provided for in paragraphs 1 and 2 of section 2 of this act shall be returned to the tax-receiver in the county of the residence of the person liable to such tax, and shall by the receiver of tax returns be entered upon his digest of taxable property, and that the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 of section 2 of this act shall be returned and paid to the tax-collectors of the counties where such vocations are carried on. <span>Tax returns and payment.</span>

SEC. 4. Be it further enacted by the authority aforesaid, That the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 of section 2 of this act shall be paid in full for the fiscal years for which they are levied, to the tax-collectors of the counties where such vocations are carried on at the time of commencing to do business specified in said paragraphs. Before any person taxed by paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25 of section 2 of this act shall be authorized to carry on said business, they shall go before the ordinary of the county in which they propose to do business and register their names, place of business, and at the same time pay their taxes to the tax-collector; and it shall be the duty of said ordinary to immediately notify the Comptroller-General and the tax-collector. Any person failing to register with the ordinary, or having registered, failing to pay the tax as herein required, shall be liable to indictment for misdemeanor, and on conviction shall be fined not less than double the tax, or be imprisoned as prescribed by section 4310 of the Code, or both in the discretion of the court; one-half of said fine shall be applied to the payment of the tax, and the other to the fund of fines and forfeitures for use of officers of court. <span>Payment of taxes on vocations. Registration of business, etc. Penalty for failure to register.</span>

SEC. 5. Be it further enacted by the authority aforesaid, That all foreign and home insurance companies doing business in this State shall pay one *per centum* on all premiums, in money or otherwise, received by them; *provided*, this shall not include return premiums on cancelled policies; and, in addition to the <span>Tax on gross receipts of insurance companies.</span>

**Additional tax where brokerage or banking business is done.** tax imposed by this act upon the gross receipts of such insurance companies, all such companies doing brokerage business in this State, such as discounting notes, bills, drafts or exchange, lending money or in any manner doing a business pertaining to banking or brokerage business, shall be taxed upon the capital so employed in the same manner and at the same rate as other moneyed capital in the hands of private individuals is taxed.

**Tax on gross receipts of guaranty and similar companies.** SEC. 6. Be it further enacted by the authority aforesaid, That all foreign and home fidelity guarantee companies, or other companies furnishing bonds, or similar associations, doing business in this State, shall pay one per centum on all premiums in money or otherwise received by them, and the agents, **How returns to be made.** general, special or local, as the case may be, of said companies shall make returns to the Comptroller-General on the same terms and in the same manner as insurance companies.

**Returns of building and loan and similar associations.** SEC. 7. Be it further enacted by the authority aforesaid, That the presidents of all building and loan associations, and other associations of like character, shall be required to return to the tax-receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof (upon which, as shown by the books of such associations, no advance has been made **Tax upon stock in, etc.** or money borrowed thereon by the individual stockholders therein), to be taxed as other moneyed capital in the hands of private individuals is taxed; *provided,* this shall not exempt such associations from paying the fees required by the act approved October 19th, 1891.

**Returns, generally of corporations.** SEC. 8. Be it further enacted by the authority aforesaid, That the presidents of all manufacturing and other incorporated companies (or their agents), other than railroad, insurance, telegraph, telephone, express, sleeping and palace car companies, shall be required to return all their property whatever, of their respective companies, at its true market value to the tax-receiver of the county where the same is located, or where the principal business of each company is located, to be taxed for State and county purposes as other property in this State **Returns of canal or slack water navigation companies.** is taxed; save and except, that all canal or slackwater navigation companies shall make through their respective executive officers or stockholders in possession of the same, returns to the tax-receiver of each county in which the same is located or through which the same shall pass, in whole or in part, of the right of way, locks and dams, toll houses, structures and all other real estate owned or used by the company or the stockholders

thereof; *provided*, this act shall not make subject to taxation any property of canal or navigation companies which is not subject to taxation by the laws of the State as now existing. The president of every manufacturing company shall be required to answer under oath, in addition to those now provided by law, the following questions: *(Questions to be answered by presidents of manufacturing companies.)*

*First.*—What is the value of raw material on hand on the day fixed for return of property for taxation?

*Second.*—What is the value of manufactured goods or articles on hand on the day fixed for the return of property for taxation?

*Third.*—What amount of money, bonds, notes, accounts and choses in action of every kind did you own on the day fixed for return of property for taxation?

*Fourth.*—What other property of every kind did your company own on the day fixed for the return of property for taxation? And such company shall be taxed upon its entire property so ascertained.

SEC. 9. Be it further enacted by the authority aforesaid, *(Tax on persons or companies doing express or telegraph business.)* That all persons or companies, including railroad companies doing an express or telegraph business and charging the public therefor, in this State, shall pay two and one-half per centum on their gross receipts, and all persons, or the superintendent or general agent of each telegraph or express company, or the president of each railroad company doing such business in this State, shall make a quarterly return, under oath, as follows: *(Returns of such persons or companies.)* On the last day of March, June, September and December, in each year, to the Comptroller-General, showing a full account of their gross receipts during the quarter ending on such date; and said taxes herein levied upon such gross receipts as shown by said quaterly returns, shall be paid by the respective persons or companies to the Comptroller-General at the same time of *(To whom and when tax to be paid.)* making such returns; the gross receipts herein named shall be construed to mean the full amount of all money received from business done within this State. *(Meaning of "gross receipts.")* If any person, superintendent, agent or president, as the case may be, whose duty it is to make returns under this paragraph, shall fail to do so within *(Penalty for failure to make returns.)* thirty days after the time herein required, such person, superintendent, agent or president shall be liable to indictment, and upon conviction shall be punished as prescribed in section 4310 of the Code of 1882.

*Second.*—That each telephone company shall pay a tax of *(Tax on telephone companies.)* one dollar for each telephone station or box with instruments complete, rented or used by their subscribers, and the superin-

General Tax Act.

**Returns and payment of tax.** tendent or general manager of the company shall make returns under oath and payments to the Comptroller-General on the dates named in the first paragraph of this section.

**Sleeping cars.** *Third.*—That each non-resident, person or company whose sleeping cars are run in this State shall be taxed as follows: Ascertain the whole number of miles of railroads over which such sleeping cars are run, and ascertain the entire value of all sleeping cars of such person or company, then tax such sleeping cars at the regular tax rate imposed upon the property of this State, in the same proportion to the entire value of such sleeping cars that the length of the lines in this State over which such cars run bears to the length of the lines of all railroads over which such sleeping cars are run. The **By and to whom returns to be made.** return shall be made to the Comptroller-General by the president, manager, general agent or person in control of such cars in this State. The Comptroller-General shall frame such ques- **Questions to be framed by Comptroller-General.** tions as will elicit the information sought, and answers thereto shall be made under oath. If the officers above referred to in control of such sleeping cars shall fail or refuse to answer under oath the questions so propounded, then the Comptroller-Gen- **Penalty for failure to answer questions.** eral shall obtain the information from such sources as he may, and he shall assess a double tax on such sleeping cars. If **Collection of unpaid tax.** the taxes herein provided for are not paid, the Comptroller-General shall issue executions against the owners of such cars, which may be levied by the sheriff of any county in this State upon the sleeping car or cars of the owner who has failed to pay these taxes.

**Sewing machine companies and dealers in sewing machines. Lists of agents.** Sec. 10. Be it further enacted by the authority aforesaid, That every sewing machine company selling or dealing in sewing machines, by itself or its agents, in this state, and all wholesale and retail dealers in sewing machines selling machines manufactured by companies that have not paid the tax required herein. shall pay two hundred dollars for the fiscal year or fractional part thereof, to be paid to the Comptroller-General at the time of commencement of business, and said companies or dealers shall furnish the Comptroller-General a list of agents authorized to **Tax for agents.** sell machines of their manufacture or under their control, and shall pay to said Comptroller-General the sum of five dollars for each of said agents, for the fiscal year or fractional part thereof, for each county in which said agent may do business **Certificate to be issued to agents.** for said company. Upon the payment of said additional sum, the Comptroller-General shall issue to each of said agents a certificate of authority to transact business in this State, and such companies, dealers and agents, having paid the taxes re-

General Tax Act.

quired herein, shall be exempted from any county or corpora-tion tax for selling said sewing machines. Before doing business under this Act, all sewing machine agents shall be required to register their names with the ordinaries of those counties in which they intend to operate, and exhibit to said ordinaries their license from the Comptroller-General, and to keep such license posted on their vehicles or at their place of business. Wholesale or retail dealers in sewing machines shall be required to pay the tax provided herein for each manufacture of sewing machines sold by them, except the manufacture of such companies as have paid the tax required by this Act. All unsold sewing machines belonging to sewing machine companies, dealers or their agents in possession of said companies, dealers, their agents or others, shall be liable to seizure and sale for payment of such license, fees and tax. Any person who shall violate the provisions of this section shall be liable to indictment for a misdemeanor, and on conviction shall be punished as prescribed in section 4310 of the Code. None of the provisions of this section shall apply to licensed auction-eers selling second-hand sewing machines, or to officers of the law under legal process, or to merchants buying and selling machines on which a license tax has been paid as herein provided, and who keep the said machines and sell and deliver them at their places of business, such sales not being on commission. *[Exemption from county or corporation tax. Registration, etc. of sewing machine agents. Tax to be paid by dealers. Lien on machines for taxes. Penalty for violation of this section. Certain exemptions from provisions of this section.]*

SEC. 11. Be it further enacted, by the authority aforesaid, That no tax shall be assessed upon the capital of banks or banking associations organized under the authority of this State, or, of the United States, and located within this State, but the shares of the stockholders of such bank or banking associations whether resident or non-resident owners, shall be taxed in the county where such bank or banking associations are located, and not elsewhere, at their true and full market value, at the same rate provided in this act for the taxation of moneyed capital in the hands of private individuals; *provided,* that nothing in this section contained shall be construed to relieve such banks or banking associations from the tax on property owned by them and provided for in section 7 of this act; *and provided further,* that nothing herein contained shall be construed to levy any tax on the real or personal property held or owned by any bank or banking association doing business in this State, the value of which is represented in the market value of the shares of its stock as returned to the tax-receiver by said bank and banking associations. *[No tax on capital stock of banks. Shares of stockholders to be taxed. Banks not relieved from property tax. Property not taxed when its value represented in value of stock.]*

32                          · PART I.—TITLE 2.—Taxes.

---
### General Tax Act.
---

**Returns for railroad companies.** Sec. 12. Be it further enacted by the authority aforesaid, That the president of all railroad companies doing business in this State shall make returns to the Comptroller-General, in the manner provided by law for the taxation of the property of the gross receipts on net income of such railroads, and shall **Payment of tax.** pay the Comptroller-General the tax to which such property or gross receipts or net income may be subject according to the provision of this act and the laws now of force relating to the tax on railroads; and on failure to make returns or refusal to pay tax, said companies shall be liable to all penalties now provided by law, and the Comptroller-General is hereby re- **Penalty for failure to make returns or pay tax.** quired, upon failure of such companies to make returns, or if made, and not satisfactory to said office, to proceed against such companies as provided in section 826(d) of the Code of 1882.

**Returns of corporations where not required to be made to tax-receivers, to be made to Comptroller-General.** Sec. 13. Be it further enacted by the authority aforesaid, That the presidents and principal agents of all the incorporated companies herein mentioned, except such as are required to make returns to the tax-receivers of the counties, shall make returns to the Comptroller-General under the rules and regulations provided by law for such returns, and subject to the same penalties and the modes of procedure for the enforcement **General rules for, etc.** of taxes from companies or persons required by law to make returns to the Comptroller-General.

**Returns of owners of vessels,etc.** Sec. 14. Be it further enacted by the authority aforesaid, That any person or company, resident of this State, who is the owner of a vessel, boats, or water-craft of any description, shall answer, under oath, the number of vessels, boats and other water-crafts owned by them and the value of each, and make returns of the same to the tax-receiver of the county of the residence of such person or company, and the same shall be taxed as other property is taxed.

**General rules governing returns of property.** Sec. 15. Be it further enacted by the authority aforesaid, That in returning property for taxes, all property shall be returned at its value; promissory notes, accounts, judgments, mortgages, liens of all kinds and all choses in action shall be given in at their value, whether solvent or partially solvent. Every person shall return for taxes all jewelry and other property of every kind owned by his wife and minor children, unless the members of his or her family return their property **Additional questions to be asked tax-payers.** for taxation. In addition to the questions now propounded to tax-payers by the tax-receivers, questions shall be framed by the Comptroller-General to reach all property upon which a tax is imposed by this Act, and especially the following questions:

General Tax Act.

*First.*—The number of horses, mules, oxen, cows, sheep, hogs, goats, and of all other animals upon which a tax is imposed by law and state the value of each.

*Second.*—The kind and value of property owned by the wife and minor children of the tax-payer and not returned for taxes by the owner thereof.

*Third.*—Whether solvent or partially solvent, give the value of your bonds, stocks of non-resident companies or corporations, or of companies or corporations in this State whose capital stock is not returned by the president of such company or corporation, all notes, accounts, judgments, mortgages, liens and other choses in action of every kind, whether such bonds, stocks, notes, etc., are held by the tax-payers in Georgia, or held by some other person for him, either in or out of this State. There shall be no deduction from the value of property returned for taxes on account of any indebtedness of such taxpayer.

Sec. 16. Be it further enacted by the authority aforesaid, That the oath to be administered to all persons making returns of their taxable property shall be the oath required under the act of October 20th, 1885, to be attached to the printed list furnished under said Act, and presented to each tax-payer; *provided*, that non-residents, females and sick persons may subscribe the oath herein required before any person authorized by law to administer oaths, and cause same to be delivered to the tax-receiver. *(Oath to be taken by persons making returns.)*

Sec. 17. Be it further enacted by the authority aforesaid, That the Comptroller-General is authorized and empowered to order the tax-receivers of this State to commence receiving the returns of taxable property immediately after the first day of April of each of the years eighteen hundred and ninety-three (1893) and eighteen hundred and ninety-four (1894), and that the Comptroller-General is empowered and required to cause the taxes to be collected and paid into the State Treasury by the 20th of December of each of the years 1893 and 1894. *(When returns may be received.)* *(When taxes to be collected.)*

Sec. 18. Be it further enacted by the authority aforesaid, That blind persons and Confederate soldiers, relieved by the proviso in paragraph 1, section 2, from the payment of the tax designated in that paragraph, shall be relieved also from the payment of the taxes designated in paragraphs 6, 7, 8 and 11 of section 2, if carrying on and dependent upon the kinds of business designated therein; *provided*, that before any person shall be entitled to the benefit of any of the exemptions provided for in this section, he shall go before the ordinary of the *(Exemptions of blind persons and Confederate soldiers.)*

3

county in which he purposes to carry on business, and make and file an affidavit setting forth the facts that he is entitled to such exemptions, that he is proprietor of the business he proposes to conduct, and is conducting the same for himself and not for others.

**Day to be fixed for making return of taxes.** SEC. 19. Be it further enacted, That immediately after the first day of April of each of the years 1893 and 1894, the Governor, Comptroller-General and State Treasurer shall fix a day between January 1st and April 1st of each of the years 1893 and 1894 as a day for making a return of taxes instead of April 1st, which day shall not be fixed until after April 1st of each of the years 1893 and 1894.

SEC. 20. Be it further enacted by the authority aforesaid, That all laws and parts of laws in conflict with this Act be, and they are, hereby repealed.

Approved December 23, 1892.

---

## REPEALING ACT CREATING BOARD OF EQUALIZATION.

### No. 113.

An Act to repeal an act approved August 14th, 1891, entitled an act to provide a Board of Equalization of real and personal property subject to taxation in this State, and for other purposes, and to restore the law as it existed prior to August 14th, 1891.

**Act of August 14, 1891, providing for Board of Equalization, repealed.** SECTION 1. Be it enacted by the General Assembly of the State of Georgia, That an act, approved August 14th, 1891, entitled an act to provide a Board of Equalization of real and personal property subject to taxation in this State, be, and the same is, hereby repealed.

**Former laws affected by said Act revived.** SEC. 2. Be it further enacted, That all laws which were, in any way repealed or modified by the act hereby repealed be, and the same are, hereby restored to full force.

SEC. 3. Be it further enacted, That all laws and parts of laws in conflict with this Act be, and the same are, hereby repealed.

Approved December 22, 1892.

# EXHIBIT 38

18      PART I.—TITLE 2.—TAXES AND PUBLIC DEBT.

General Tax Act for 1895 and 1896.

# TITLE II.

## .TAXES AND PUBLIC DEBT.

### ·ACTS.

General Tax Act for 1895 and 1896.
Creation of Sinking Fund to Retire State Bonds.
Manner of Entering on Digest Names of Colored Tax-payers.

GENERAL TAX ACT FOR 1895 AND 1896.

### No. 151.

An Act to levy and collect a tax for the support of the State government and the public institutions, for educational purposes in instructing children in the elementary branches of an English education only; to pay the interest on the public debt, and to pay maimed Confederate soldiers and widows of Confederates such amounts as are allowed them by law for each of the fiscal years eighteen hundred and ninety-five and eighteen hundred and ninety-six; and to prescribe what persons, professions, and property are liable to taxation; to prescribe the methods of receiving and collecting said taxes; to prescribe the method of ascertaining the property of this State subject to taxation; prescribe additional questions to be propounded to tax-payers, and to provide penalties and forfeitures for non-payment of taxes, and for other purposes.

General ad valorem tax.

SECTION I. Be it enacted by the General Assembly of the State of Georgia, That the Governor be authorized and empowered, with the assistance of the Comptroller-General, to assess and levy a tax on the taxable property of this State for each of the fiscal years eighteen hundred and ninety-five and eighteen hundred and ninety-six of two mills and $\frac{80}{100}$ths of a mill, and the Governor be, and is, hereby authorized and empowered, by and with the assistance of the Comptroller-General, to assess and levy, in addition to the foregoing general State tax, a tax of one mill and one-half of a mill for each of the years eighteen hundred and ninety-five and eigh-

Ad valorem tax for school purposes.

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3415   Page 242 of 317

teen hundred and ninety-six on all of the taxable property of this State, for the purpose of raising the funds necessary to meet the appropriations of this General Assembly for educational purposes in instructing children in the elementary branches of an English education only.

Sec. II. Be it further enacted by the authority aforesaid, That, in addition to the *ad valorem* tax on real estate and personal property, as required by the Constitution and provided for in the preceding section, the following specific taxes shall be levied and collected for each of said fiscal years eighteen hundred and ninety-five and eighteen hundred and ninety-six. <span class="margin">Specific taxes.</span>

*First.*—Upon each and every male inhabitant of the State, between the ages of twenty-one and sixty years, on the days fixed for return of property for taxation, a poll tax of one ($1) dollar, which shall be for educational purposes in instructing children in the elementary branches of an English education only ; *provided,* this tax shall not be demanded of blind persons, nor of crippled, maimed, or disabled Confederate soldiers, relieved of such taxes under and by authority of an Act approved July 23, 1883. <span class="margin">Poll tax. Exemptions from poll tax.</span>

*Second.*—Upon every practitioner of law, medicine, or dentistry, presidents of each of the banks of the State, each agent or firm negotiating loans and charging therefor, the presidents of each of the railroad companies, presidents of each of the express, telegraph, telephone, electric light, and gas companies doing business in this State, and in case the presidents of any such companies do not reside in this State, then, in such case, upon the superintendent or general agent of such companies who may reside in this State, ten ($10) dollars, and no municipal corporation or county authorities shall levy any additional tax on said professions either as a license fee or otherwise. <span class="margin">Lawyers, doctors, dentists, corporation presidents, loan agents, etc.</span>

*Third.*—Upon every daguerrean, ambrotype, photographic, and similar artist, ten ($10) dollars in each county in which they may carry on business; *provided,* this tax shall not be required of any ex-Confederate soldier. <span class="margin">Photographic artists. Exemption</span>

*Fourth.*—Upon every person carrying on the business of auctioneer, for pay or compensation, twenty-five ($25) dollars for each county in which they may carry on such business. <span class="margin">Auctioneers.</span>

*Fifth.*—Upon every keeper of a pool, billiard, or bagatelle table, kept for public use, whether in a bar-room, hotel, or other public place, twenty-five ($25) dollars for each table. <span class="margin">Keepers of pool, billiard, or bagatelle tables.</span>

*Sixth.*—Upon every keeper of any other table, stand, or place for the performance of any game or play ; and upon the keeper of any flying-horses, or any other game or play, unless kept for exercise or amusement not prohibited by law, and not kept for gain, directly or indirectly, twenty-five ($25) dollars in each county. <span class="margin">Keepers of gaming places, etc.</span>

General Tax Act for 1895 and 1896.

**Keepers of ten-pin alleys, etc.**

*Seventh.*—Upon every keeper of a ten-pin alley, or alley of like character, kept for public play, and upon every keeper of a shooting-gallery, twenty-five ($25) dollars for each place of business.

**Shooting galleries.**

**Peddlers.**

*Eighth.*—Upon every traveling vendor of patent or proprietary medicines, special nostrums, jewelry, paper, soap, or other merchandise, fifty ($50) dollars in each county where they may offer such articles for sale.

**Local insurance agents.**

*Ninth.*—Upon every local insurance agent or firm of agents, or insurance broker or firm of brokers doing business in this State, ten ($10) dollars for each county in which they shall solicit business; and upon every agent of a matrimonial, natal, or nuptial company, one hundred ($100.00) dollars for each county in which they shall do business; and upon every traveling or special or general agent of life, fire, accident, or other insurance company doing business in this State, fifty ($50) dollars, which said tax must be paid before said agents shall be authorized to act as agents for any of their companies. Said tax shall be paid by said companies to the Comptroller-General, and shall be in addition to the license fee required of insurance companies by the Act approved October 24, 1887. The receipts of the Comptroller-General for the payment of this tax, together with his certificate, as provided by said Act, approved October 24, 1887, shall constitute the license for said agents to transact business for their companies as designated by said certificates; *provided,* this tax shall not be required of agents of assessment life insurance companies or mutual aid societies; *provided further,* that railroad ticket agents selling accident insurance tickets shall not be deemed insurance agents in the sense of this section, and this section shall not apply to railroad ticket agents selling accident insurance tickets, and that railroad ticket agents who sell accident insurance tickets shall not be required to pay the said tax; *provided further,* that this tax shall not be required of agents of industrial life insurance companies writing what are known as industrial life insurance premiums, on which are payable, in weekly instalments, not exceeding $1.05 per week.

**Agents of matrimonial companies, etc.**

**Travelling, special, or general insurance agents.**

**License of such agents.**

**Exemption from.**

**Emigrant agents.**

*Tenth.*—Upon each emigrant agent or employer or employee of such agents doing business in this State, the sum of five hundred dollars for each county in which such business is conducted.

**Vendors using boats**

*Eleventh.*—Upon every traveling vendor using boats for the purpose of selling goods on the rivers or waters within the limits of this State, the sum of fifty ($50.00) dollars in each county where they may sell their wares, and said tax shall be a lien on the boat and its contents, without regard to the ownership thereof.

**Tax to be lien on boat and contents.**

**Itinerant lightning-rod dealers or agents.**

*Twelfth.*—Upon all itinerant lightning-rod dealers or agents, the sum of fifty ($50.00) dollars for each and every county in which they operate.

PART I.—TITLE 2.—TAXES AND PUBLIC DEBT.  21

General Tax Act for 1895 and 1896.

*Thirteenth.*—Upon all shows and exhibitions (except such as histrionic, musical, operatic, and elocutionary), including the side-shows accompanying circus companies, fifty ($50.00) dollars in each and every city or town of five thousand inhabitants; forty dollars in cities or towns of four thousand and under five thousand inhabitants, and thirty dollars in towns of less than four thousand inhabitants; said tax, so collected, shall be for educational purposes. <span>Shows and exhibitions</span> <span>Tax to be used for educational purposes</span>

*Fourteenth.*—Upon every circus company, or others giving an exhibition beneath or within a canvas enclosure, advertised in print or by parade, or in any manner whatsoever as a circus, menagerie, hippodrome, spectacle, or show implying a circus, three hundred dollars each day it may exhibit in the State of Georgia; said tax shall be for educational purposes. <span>Circus companies, etc.</span> <span>Tax to be used for educational purposes</span>

*Fifteenth.*—Upon all dealers in spirituous or malt liquors, intoxicating bitters, or brandy fruits or domestic wines, whether dealing in any or all thereof, one hundred dollars for each place of business in each county where the same are sold; *provided*, that parties engaged in the manufacture of spirituous or malt liquors under license by the government, who are prohibited by any local law from selling the same in the county where manufactured, shall not be subject to this tax unless they carry on the business of retailing or wholesaling such spirituous or malt liquors in some other county where the sale is not prohibited; *provided*, this tax shall not relieve such dealers from any local tax or prohibitory law in reference to the retail of spirituous or intoxicating liquors, nor be required of those who sell by wholesale spirits manufactured of apples, peaches, grapes, blackberries, or other fruits grown on their own lands when sold in quantities not less than five gallons; *provided*, that nothing in this act shall be construed as to levy a tax on dealers in domestic wines manufactured from grapes or berries purchased by or grown on lands owned, leased, or rented by said dealer; said tax shall be for educational purposes. <span>Liquor dealers.</span> <span>Exemptions from tax.</span> <span>Tax to be used for educational purposes</span>

*Sixteenth.*—Upon all dealers in pistols, toy pistols shooting cartridges, pistol or rifle cartridges, dirks, bowie-knives, or metal knucks, twenty-five dollars for each place of business in the county where the same are sold. <span>Dealers in pistols and other weapons.</span>

*Seventeenth.*—Upon every individual or firm, or his or their agents, engaged in the business of selling or buying through regularly organized stock and cotton exchanges, or boards of trade, farm products, sugar, coffee, and salt and meat, railroad stocks and bonds, and stocks and bonds of all kinds, not intended for *bona fide* sale and delivery, but for future delivery (commonly called "futures"), one thousand dollars each per annum for each county where such business is carried on; *provided*, that this tax shall not be demanded of any cotton warehouseman, dealer in cotton, or any pro- <span>Dealers in "futures."</span> <span>Exemptions from tax.</span>

vision broker who takes orders in the regular course of their trade, only for the actual and *bona fide* delivery of cotton and other produce so ordered, and where, by the terms of the contract, it is not left to the option of the party so ordering, or the party taking such order, to avoid the delivery of the produce or products by paying the difference in the market price of such produce or products at the time of delivery ; *provided further,* that such cotton warehouseman, dealer in actual cotton, or any provision broker does not carry on the business of buying " futures" in connection with his or their other business, and upon every individual or firm, or his or their agents, engaged in a like business, when they take orders on their own account and determine the loss or gain between them and their patrons by market reports received from any source whatever, and whose business is generally denominated " bucket shops," the sum of ten thousand dollars.

**Peddlers of stoves or ranges.** *Eighteenth.*—Upon every peddler of stoves or ranges for cooking purposes, the sum of one hundred dollars in every county in which such peddler may do business; and upon each traveling vendor of **Peddlers of churns and fences** patent churns and patent fences, the sum of ten dollars in each county in which they offer such articles for sale.

**Packing houses.** *Nineteenth.*—Upon all packing-houses or dealers doing business in this State, whether carried on by the owners thereof or by their agents, fifty dollars ($50) in each county where said business is carried on.

**Keepers for hire or sale of billiard tables, etc.** *Twentieth.*—Upon every person or firm, for himself or agent for resident or non-resident owners, who keeps or holds for hire or sale any billiard, pool, or other table of like character, fifty ($50) dollars for each county in which such person or firm does business.

**Clock peddlers.** *Twenty-first.*—Upon each peddler of clocks, one hundred dollars in each county of the State in which said peddler may do business.

**Itinerant doctors, dentists, etc.** *Twenty-second.*—Upon all itinerant doctors, dentists, opticians, or specialists of any kind doing business in this State, ten dollars for each county in which they may do business; *provided,* the provi- **Exemptions from.** sions of this paragraph shall not apply to persons whose fixed place of business is in a county of this State and have paid the tax required by paragraph 2 of section 2.

**Brewing companies.** *Twenty-third.*—Upon all brewing companies, two hundred dollars.

**Pawn-brokers.** *Twenty-fourth.*—Upon each pawn-broker, fifty dollars for each place of business.

**Commercial agencies.** *Twenty-fifth.*—Upon all mercantile and collecting agencies, commercial agencies, and all other agencies of like character, fifty dollars in every county where they have established an office.

**General tax returns** Sec. III. Be it further enacted by the authority aforesaid, That the taxes provided for in paragraphs 1 and 2 of section 2 of this Act, shall be returned to the tax-receiver in the county of the resi-

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3419   Page 246 of 317

dence of the persons liable to such tax, and shall, by the receiver of tax-returns, be entered upon his digest of taxable property, and that the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25 of section 2 of this Act shall be returned and paid to the tax-collectors of the counties where such vocations are carried on.

Sec. IV. Be it further enacted by the authority aforesaid, That the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25 of section 2 of this Act shall be paid in full for the fiscal years for which they are levied to the tax-collectors of the counties where such vocations are carried on at the time of commencing to do business specified in said paragraphs. Before any person taxed by paragraphs 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25 of section 2 of this Act shall be authorized to carry on said business, they shall go before the ordinary of the county in which they propose to do business and register their names, place of business, and at the same time pay their taxes to the tax-collector, and it shall be the duty of said ordinary to immediately notify the Comptroller-General and the tax-collector. Any person failing to register with the ordinary, or, having registered, failing to pay the tax as herein required, shall be liable to indictment for misdemeanor, and, on conviction, shall be fined not less than double the tax, or be imprisoned as prescribed by section 4310 of the Code, or both, in the discretion of the court. One-half of said fine shall be applied to the payment of the tax, and the other to the fund of fines and forfeitures for use of officers of court. *General rule as to whom and when taxes to be paid. Registration of business. Failure to register to pay business tax.*

Sec. V. Be it further enacted by the authority aforesaid, That all foreign and home insurance companies, or insurance brokers placing insurance on property in this State, doing business in this State, shall pay one *per centum* on all premiums in money or otherwise received by them ; *provided*, this shall not include return premiums on cancelled policies ; *provided further*, that this shall not apply to mutual, co-operative, or assessment fire companies organized for mutual protection against losses by fire, and receiving no premiums other than the assessment of its own members ; and in addition to the tax imposed by this Act upon the gross receipts of such insurance companies, all such companies doing brokerage business in this State, such as discounting notes, bills, drafts, or exchange, lending money, or in any manner doing a business pertaining to banking or brokerage business, shall be taxed upon the capital so employed in the same manner and at the same rate as other moneyed capital in the hands of private individuals is taxed. *Tax on insurance companies, or brokers. Exemptions from. Insurance companies doing brokerage business.*

Sec. VI. Be it further enacted by the authority aforesaid, That all foreign and home fidelity guarantee companies, or other companies *Fidelity guarantee companies etc.*

furnishing bonds, or similar associations doing business in this State, shall pay one *per centum* on all premiums, in money or otherwise, received by them, and the agents, general or special or local, as the case may be, of said companies shall make returns to the Comptroller-General on the same terms and in the same manner as insurance companies.

Sec. VII. Be it further enacted by the authority aforesaid, That the president of all building and loan associations or other associations of like character shall be required to return to the tax-receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof (upon which, as shown by the books of such association, no advance has been made or money borrowed thereon by the individual stockholders therein), to be taxed as other moneyed capital in the hands of private individuals is taxed; *provided*, that no tax shall be required of building and loan associations to be paid upon any portion of their capital which has been loaned or advanced to a shareholder upon real estate, upon which real estate tax is payable by said shareholders; *and provided further*, that the taxes required by this section shall be in lieu of all other taxes and licenses, whether State, county or municipal, against said associations, except a business license by the town or city in which the principal office of any such association is located, and except a fee required to be paid the State Treasurer by the Act approved October 19, 1891.

*Returns of building and loan associations, etc.*

*Exemption from.*

*This tax to be in lieu of others.*

Sec. VIII. Be it further enacted by the authority aforesaid, That the presidents of all manufacturing and other incorporated companies, or their agents, other than railroad, insurance, telegraph, telephone, express, sleeping and palace car companies, shall be required to return all their property whatever of their respective companies at its true market value to the tax-receiver of the county where the same is located, or where the principal business of each company is located, to be taxed for State and county purposes as other property in this State is taxed; save and except that all canal or slack-water navigation companies shall make, through their respective executive officers or stockholders in possession of the same, returns to the tax-receiver of each county in which the same is located, or through which the same shall pass, in whole or in part, of the right of way, locks and dams, toll-houses, structures, and all other real estate owned or used by the company or the stockholders thereof; *provided*, this Act shall not make subject to taxation any property of canal or navigation companies which is not subject to taxation by the laws of this State as now existing. The president of every manufacturing company shall be required to answer under oath, in addition to those now provided by law, the following questions:

*Returns of corporations, other than railroad, insurance, express, etc., companies.*

*Canal or slack-water navigation companies.*

*Questions to be answered by presidents of manufacturing companies.*

PART I.—TITLE 2.—Taxes and Public Debt.      25

*First.*—What is the value of raw material on hand on the day fixed for return of property for taxation?

*Second.*—What is the value of manufactured goods or articles on hand on the day fixed for the return of property for taxation?

*Third.*—What amount of money, bonds, notes, accounts, and choses in action of every kind did you own on the day fixed for return of property for taxation?

*Fourth.*—What other property of every kind did your company own on the day fixed for the return of property for taxation?

And such company shall be taxed upon its entire property so ascertained.

Sec. IX. Be it further enacted by the authority aforesaid, That all persons or companies, including railroad companies, doing an express or telegraph business and charging the public therefor, in this State, shall pay two and one-half *per centum* on their gross receipts, and all persons, or the superintendent or general agent of each telegraph or express company, or the president of each railroad company doing such business in this State, shall make a quarterly return, under oath, as follows: *[Tax on companies doing express or telegraph business.]* *[Returns of.]*

On the last day of March, June, September, and December, in each year, to the Comptroller-General, showing a full account of their gross receipts during the quarter ending on such date; and said taxes herein levied upon such gross receipts as shown by said quarterly returns shall be paid by the respective persons or companies to the Comptroller-General at the same time of making such returns; the gross receipts herein named shall be construed to mean the full amount of all money received from all business done within this State. If any person, superintendent, agent, or president, as the case may be, whose duty it is to make returns under this paragraph, shall fail to do so within thirty days after the time herein required, such person, superintendent, agent, or president shall be liable to indictment, and upon conviction shall be punished as prescribed in section 4310 of the Code of 1882. *[Failure to make return.]*

*Second.*—That each telephone company shall pay a tax of one dollar for each telephone station or box with instruments complete, rented or used by their subscribers, and the superintendent or general manager of the company, shall make returns, under oath, and payments to the Comptroller-General on the dates named in the first paragraph of this section. *[Tax on telephone companies.]* *[Returns of.]*

*Third.*—That each non-resident person or company, whose sleeping-cars are run in this State, shall be taxed as follows: Ascertain the whole number of miles of railroads over which such sleeping-cars are run, and ascertain the entire value of all sleeping-cars of such person or company, then tax such sleeping-cars at the regular tax rate imposed upon the property of this State, in the *[Sleeping-cars.]*

same proportion to the entire value of such sleeping-cars, that the length of the lines in this State over which such cars run bears to the length of the lines of all railroads over which such sleeping-cars *Returns of.* are run. The returns shall be made to the Comptroller-General by the president, manager, general agent, or person in control of such cars in this State. The Comptroller-General shall frame such questions as will elicit the information sought, and answers thereto shall be made under oath. If the officers above referred to in control of *Failure to make proper return.* such sleeping-cars shall fail or refuse to answer, under oath, the questions so propounded, then the Comptroller-General shall obtain the information from such sources as he may, and he shall assess a *Failure to pay tax.* double tax on such sleeping-cars. If the taxes herein provided for are not paid, the Comptroller-General shall issue executions against the owners of such cars, which may be levied by the sheriff of any county in this State upon the sleeping-car or cars of the owner who has failed to pay these taxes.

*Sewing-machine companies or dealers.* Sec. X. Be it further enacted by the authority aforesaid, That every sewing-machine company selling or dealing in sewing-machines, by itself or its agents in this State, and all wholesale and retail dealers in sewing-machines selling machines manufactured by companies that have not paid the tax required herein, shall pay two hundred dollars for the fiscal year, or fractional part thereof, to be paid to the Comptroller-General at the time of commencement of business, and said companies or dealers shall furnish the Comptroller-*Lists of agents.* General a list of agents authorized to sell machines of their manufacture, or under their control, and shall pay to said Comptroller-*Tax on agents.* General the sum of five dollars for each of said agents for the fiscal year, or fractional part thereof, for each county in which said agent *Agent's certificate* may do business for said company. Upon the payment of said additional sum, the Comptroller-General shall issue to each of said agents a certificate of authority to transact business in this State, and such companies, dealers, and agents, having paid the taxes *Exemption from county or corporation tax.* required herein, shall be exempted from any county or corporation tax for selling said sewing-machines. Before doing business under this act, all sewing-machine agents shall be required to reg-*Registration of agents, etc.* ister their names with the ordinaries of those counties in which they intend to operate and exhibit to said ordinaries their license from the Comptroller-General, and to keep such license posted on their vehicles or at their places of business. *Tax for each manufacture of machines.* Wholesale or retail dealers in sewing-machines shall be required to pay the tax provided herein for each manufacture of sewing-machines sold by them, except the manufacture of such companies as have paid *Lien on unsold machines.* the tax required by this Act. All unsold sewing-machines belonging to sewing-machine companies, dealers, or their agents, in possession

of said companies, dealers, their agents, or others, shall be liable to seizure and sale for payment of such fees, license, and tax. Any person who shall violate the provisions of this section shall be liable to indictment for a misdemeanor, and on conviction shall be punished as prescribed in section 4310 of the Code. None of the provisions of this section shall apply to licensed auctioneers selling second-hand sewing-machines, or to officers of the law under legal process, or to merchants buying and selling machines on which a license tax has been paid, as herein provided, and who keep the said machines and sell and deliver them at their places of business, such sales not being on commission. *Penalty for violations of this section. Exemptions.*

Sec. XI. Be it further enacted by the authority aforesaid, That no tax shall be assessed upon the capital of banks or of banking associations organized under the authority of this State or of the United States, and located within this State; but the shares of the stockholders of such bank or banking associations, whether resident or non-resident owners, shall be taxed in the county where such bank or banking associations are located, and not elsewhere, at their true and full market value at the same rate provided in this Act for taxation of moneyed capital in the hands of private individuals; *provided*, that nothing in this section contained shall be construed to relieve such banks or banking associations from the tax on property owned by them and provided for in section 8 of this Act. *Tax on bank stock.*

Sec. XII. Be it further enacted by the authority aforesaid, That the president of all railroad companies doing business in this State shall make returns to the Comptroller-General in the manner provided by law for the taxation of the property, of the gross receipt or net income of such railroads, and shall pay the Comptroller-General the tax to which such property or gross receipts or net income may be subject according to the provisions of this Act and the laws now of force relating to the tax on railroads; and, on failure to make returns or refusal to pay tax, said companies shall be liable to all the penalties now provided by law, and the Comptroller-General is hereby required, upon failure of such companies to make returns, or if made and not satisfactory to said officer, to proceed against such companies as provided in section 826(d) of the Code of 1882. *Returns of railroad companies. Payment of tax. Failure to make return or pay tax.*

Sec. XIII. Be it further enacted by the authority aforesaid, That the president and principal agents of all the incorporated companies herein mentioned, except such as are required to make returns to the tax-receivers of the counties, shall make returns to the Comptroller-General, under the rules and regulations provided by law for such returns, and subject to the same penalties and the modes of procedure for the enforcement of taxes from companies or persons required by law to make returns to the Comptroller-General. *Corporations to make returns to Comp.-General, etc*

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3424   Page 251 of 317

General Tax Act for 1895 and 1896.

*Questions to be answered by owners of vessels, etc.*

Sec. XIV. Be it further enacted by the authority aforesaid, That any person or company, resident of this State, who is the owner of a vessel, boats, or water-craft of any description, shall answer under oath the number of vessels, boats, and other water-crafts owned by them

*Returns of and tax on.*

and the value of each, and make returns of the same to the tax-receiver of the county of the residence of such person or company, and the same shall be taxed as other property is taxed.

*General rule as to returns for ad valorem tax.*

Sec. XV. Be it further enacted by the authority aforesaid, That in returning property for taxes, all property shall be returned at its value; promissory notes, accounts, judgments, mortgages, liens of all kinds, and all choses in action shall be given in at their value, whether solvent or partially solvent. Every person shall return for taxes all jewelry and other property of every kind owned by his wife and minor children, unless the members of his family or her family return their property for taxation. In addition to the ques-

*Additional questions for to be framed by Comp.-General*

tions now propounded to tax-payers by the tax-receivers, questions shall be framed by the Comptroller-General to reach all property upon which a tax is imposed by this Act, and especially the following questions:

*Especially.*

*First.*—The number of horses, mules, oxen, cows, sheep, hogs, goats, and of all other animals upon which a tax is imposed by law, and state the value of each.

*Second.*—The kind and value of property owned by the wife and minor children of the tax-payer and not returned for taxes by the owner thereof.

*Third.*—Whether solvent or partially solvent, give the value of your bonds, stock of non-resident companies or corporations, or of companies or corporations in this State whose capital stock is not returned by the president of such company or corporation, all notes, accounts, judgments, mortgages, liens, and other choses in action of every kind, whether such bonds, stocks, notes, etc., are held by the

*No deduction on account of indebtedness of tax-payer.*

tax-payers in Georgia, or held by some other person for him either in or out of this State. There shall be no deduction from the value of property returned for taxes on account of any indebtedness of such tax-payer.

*Oath of person making return.*

Sec. XVI. Be it further enacted by the authority aforesaid, That the oath to be administered to all persons making returns of their taxable property shall be the oath required under the Act of October 20, 1885, to be attached to the printed list furnished under said Act and presented to each tax-payer; *provided,* that non-residents, females, and sick persons may subscribe the oath herein required before any person authorized by law to administer oaths, and cause same to be delivered to the tax-receiver.

General Tax Act for 1895 and 1896.

SEC. XVII. Be it further enacted by the authority aforesaid, That the Comptroller-General is authorized and empowered to order the tax-receivers of this State to commence receiving the returns of taxable property immediately after the first day of April of each of the years eighteen hundred and ninety-five (1895) and eighteen hundred and ninety-six (1896), and that the Comptroller-General is empowered and required to cause the taxes to be collected and paid into the State treasury by the 20th of December of each of the years 1895 and 1896. *When returns to be received*

*When taxes to be paid.*

SEC. XVIII. Be it further enacted by the authority aforesaid, That blind persons, Confederate soldiers, and all other persons so deformed by nature as to render them unfit for manual labor, relieved by the proviso in paragraph 1, section 2, from the payment of the tax designated in that paragraph, shall be relieved also from the payment of the taxes designated in paragraphs 6, 7, 8, and 11 of section 2, if carrying on and dependent upon the kinds of business designated therein ; *provided*, that before any person shall be entitled to the benefit of any of the exemptions provided for in this section, he shall go before the ordinary of the county in which he proposes to carry on business, and make and file an affidavit setting forth the facts that he is entitled to such exemption, that he is proprietor of the business he proposes to conduct, and is conducting the same for himself, and not for others. *Exemptions of blind persons, soldiers, and persons deformed.*

SEC. XIX. Be it further enacted by the authority aforesaid, That immediately after the first day of March of each of the years 1895 and 1896, the Governor, Comptroller-General, and State Treasurer shall fix a day between January the 1st and April the 1st of each of the years 1895 and 1896, as a day for making a return of taxes, instead of April 1st, which day shall not be fixed until March 1st of each of the years 1895 and 1896, as provided by Act approved December 20, 1893. *Day for making returns, how fixed.*

SEC. XX. Be it further enacted by the authority aforesaid, That all laws and parts of laws in conflict with this Act be, and the same are, hereby repealed.

Approved December 18, 1894.

# EXHIBIT 39

For Support of State Government 1883-84.

# TITLE II.

## TAXES.

## ACTS.

### FOR SUPPORT OF STATE GOVERNMENT 1883-84.

To extend time for returning wild lands and payment of taxes thereon for 1882.
Taxation of railroads by counties and municipal corporations on property not used in their ordinary business.
For taxing rolling stock and personal property of railroads partly in this and partly in other States.
Amending of Act of, September 28th, 1881, as to record of wild land returns, notification to owner, etc.

### FOR SUPPORT OF STATE GOVERNMENT 1883-84.

## No. 18

An Act to levy and collect a tax for the support of the State Government and the public institutions; to pay the interest and maturing principal of the public debt and for educational and other purposes herein mentioned for each of the fiscal years eighteen hundred and eighty-three and eighteen hundred and eighty-four.

**Tax for 1883-4.**

**Not to exceed two and one-half tenths of one per cent.**

SECTION I. *Be it enacted by the General Assembly of the State of Georgia,* That the Governor be authorized and empowered, with the assistance of the Comptroller-General, to assess and levy a tax on the taxable property of the State, which will not exceed two and one-half tenths of one per cent. for each of the fiscal years eighteen hundred and eighty-three and eighteen hundred and eighty-four.

**Specific taxes.**

SEC. II. *Be it further enacted by the authority aforesaid,* That in addition to the *ad valorem* tax on real and personal property, as required by the Constitution, and provided for in the preceding section, the following specific taxes shall be levied and collected for each of said fiscal years of eighteen hundred and eighty-three and eighteen hundred and eighty-four :

PART I.—TITLE II—Taxes.                    35

First—Upon every practitioner of law, medicine, or dentistry, ten dollars; and no municipal corportion or county authorities, shall levy any additional tax on said professions, either as license, fee or otherwise. *Practitioners of law, medicine and dentistry.*

Second—Upon every daguerrean, ambrotype, photographic and similar artist, ten dollars. *Daguerrean and similar artists.*

Third—Upon every person carrying on the business of an auctioneer, twenty-five dollars for each county in which they may carry on such business. *Auctioneers.*

Fourth—Upon every keeper of a pool, billiard or bagatelle table, kept for public use (whether in a saloon, barroom, hotel or other public place), twenty-five dollars for each table. *Keepers of pool, billiard and bagatelle tables.*

Fifth—Upon every keeper of any other table, stand or place, or any game or play, with or without a name (unless kept for exercise or amusement, not prohibited by law, and not kept for gain, directly or indirectly), fifty dollars in each county. *Of any other table, stand or place for games.*

Sixth—Upon every keeper of a ten pin alley, or other alley of like character kept for public play, twenty-five dollars for each place of business. *Tenpin and other alleys.*

Seventh—Upon every traveling vendor of patent or proprietary medicines, special nostrums, jewelry, paper, soap or other articles of like character, twenty-five dollars in each county where they may offer such articles for sale; *provided*, this shall not apply to maimed Confederate soldiers, who are now, or may hereafter be licensed, by the ordinaries of the various counties to peddle without license, in conformity with section 534, Code of 1872. *Traveling Vendors of patent medicines, etc.*

Eighth—Upon every person or firm soliciting policies of insurance or otherwise acting as agent of an insurance company, ten dollars in each county in this State in which such firm, person or agent may solicit business, and upon every person or firm soliciting business, or acting as agent for any matrimonial, natal, or nuptial association or company, twenty-five dollars for each company in each county in which such person, firm or agent may solicit business. *Agents of insurance companies. Of matrimonial, natal or nuptial associations.*

Ninth—Upon each emigrant agent, employer or emeployé of such agent doing business in this State, the sum of five hundred dollars for each county in which such business is conducted. *Emigrant agents and their employes.*

Tenth—Upon traveling vendors using boats for the purpose of selling goods on the rivers within the limits of this State, the sum of fifty dollars in each county where they may sell their wares, and said tax shall be a lien on the boat and its contents without regard to ownership thereof. *Traveling Vendors using boats.*

Eleventh—Upon all lightning rod dealers, the sum of twenty-five dollars for each and every county in which they may operate. *Lightning-rod dealers.*

Twelfth—Upon every person or firm who, as agent for resident or non-resident owner, holds or keeps for hire or sale on commission any piano or pianos, or other musical instruments, the sum of twenty-five dollars for each county in which such person or firm does business. *Agents for dealers or owners of musical instruments.*

Thirteenth—Upon each and every male inhabitant in this State, on the first day of April, between the ages of twenty-one and sixty *Poll-tax.*

For Support of State Government 1883-84.

years, a poll tax of one dollar for each of said years 1883 and 1884, which tax shall be for educational purposes.

**Shows and Exhibitions.** Fourteenth—Upon all shows and exhibitions (except such as histrionic, musical, dramatical, operatic and elocutionary), including side-shows accompaying circus companies, twenty-five dollars in each and every city or town of five thousand inhabitants; twenty dollars in city or town of four thousand and under five thousand inhabitants; and fifteen dollars in city or town with less than four thousand inhabitants; said tax so collected shall be for educational purposes.

**Circus Companies.** Fifteenth—Upon every circus company, two hundred dollars each day it may exhibit in the State of Georgia; said tax shall be for educational purposes.

**Liquor dealers.** Sixteenth—Upon all dealers in spirituous or malt liquors and intoxicating bitters, whether dealing in either or all thereof, the sum of twenty-five dollars for each place of business in each county where same are sold; **Proviso.** *provided,* this tax shall not relieve such dealers from any local tax or prohibitory law in reference to the retail of spirituous and intoxicating liquors or intoxicating bitters, nor be required of those who sell by wholesale spirits manufactured of apples, peaches, grapes or other fruits grown on their own lands when sold in quantities not less than five gallons; said tax shall be for educational purposes.

**Sewing Machine Agents and dealers.** Seventeenth—Upon every person acting as the agent, other than the general agent or manager of sewing machine companies, or of wholesale dealers in sewing machines, or of the general agent or manager of sewing machine companies, or any person selling for a retail dealer, or any retail dealer who shall peddle sewing machines, ten dollars in each county where said person may do business as such agent of such sewing machine company, or as the agent of any general agent or manager of sewing machine companies, or as the agent of any wholesale or retail dealer in sewing machines, or such peddler for the purpose of selling single machines to consumers, and not for the purpose of selling to other dealers exclusively; **Proviso in favor of maimed confederate soldiers.** *provided,* that this tax of ten dollars shall not apply to maimed Confederate soldiers, who are now or may hereafter be licensed by the ordinaries of the various counties to peddle without license, in conformity with section 534, Code of 1873; *provided, further,* that such maimed soldiers shall peddle said machines in **This tax to be a lien on property of principal.** their own right, and not as agent or employés of another. This tax upon such agents shall operate as a lien upon any property of the person or firm (for whom the agent is doing business) to be found in the State; and before such agent or peddler, being a retail **Record to be made with Ordinary.** dealer, shall be authorized to sell sewing machines as an agent of such sewing machine company, or as the agent of a general agent or manager of sewing machine companies, or as the agent of such wholesale or retail dealer in sewing machines as herein defined, he shall make record of the fact of his being such an agent with the ordinary of the county in which he or she proposes to do business, **Penalty for failure.** and upon failure to do so shall be liable to indictment, and on conviction shall be fined in a sum of not less than fifty dollars, nor

Case 3:23-cv-00474-JES-DDL   Document 36-2   Filed 04/08/24   PageID.3430   Page 257 of 317

For Support of State Government 1883–84.

more than one hundred dollars, at the discretion of the court trying same, and one-half of such fine shall go to any person who shall report the violation of this law.

Eighteenth—And upon all dealers in pistols, revolvers, dirk or Bowie knives, the sum of twenty-five dollars for each place of business in each county where the same are sold, and said tax shall be for educational purposes. The tax provided by this paragraph shall be assessed against all dealers in the articles herein enumerated, on and after the first day of April, 1883, and such dealer shall not be liable for said tax of twenty-five dollars prior to the first of April, 1883. *Dealers in weapons.*

SEC. III. *Be it further enacted by the authority aforesaid,* That the taxes provided for in paragraphs 1, 2 and 13, shall be returned to the tax receiver in the county of the residence of the person liable for such tax, and shall by the receiver of tax returns be entered upon his digest of taxable property; and that the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17 and 18 of section II of this Act, shall be returned and paid to the tax collectors of the counties where such vocations are carried on. *Returns for taxes in certain paragraphs. Of counties where avocations are carried on.*

SEC. IV. *Be it further enacted by the authority aforesaid,* That the taxes provided for in paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17 and 18, of section II of this Act, shall be paid in full for the fiscal years for which they are levied to the tax collectors of the counties where such vocations are carried on at the time of commencing to do business specified in said paragraphs. *Payments of certain taxes.*

SEC. V. *Be it further enacted by the authority aforesaid,* That all foreign and home insurance companies doing business in this State shall pay one per cent. on all premiums in money or otherwise received by them, and in addition to the tax imposed by this Act on the gross receipts of such insurance companies; all such companies doing a brokerage business in this State, such as discounting notes, bills, drafts or exchange, lending money, or in any manner doing a business pertaining to banking or brokerage business, shall be taxed upon the capital so employed in the same manner and at the same rate as other moneyed capital in the hands of *private* individuals is taxed; and every individual or firm engaged in the business of selling or buying farm products for future delivery (commonly called "futures") shall pay a tax of two hundred dollars each per annum; *provided,* that this tax shall not be demanded of any cotton warehouseman, dealer in actual cotton, or any provision broker who takes orders in the regular course of their trade. *Insurance companies. When brokerage business is done. Farm products for future delivery. Proviso.*

SEC VI. *Be it further enacted by the authority aforesaid,* That the president of all building and loan associations, or associations of like character, shall be required to return to the tax receiver of the county where such associations are located, at its true market value, the stock of such associations owned by the stockholders thereof, upon which, as shown by the books of such associations, no advance has been made on money borrowed thereon by the individual stockholders therein, to be taxed as other money capital in the hands of private individuals is taxed; *provided,* that no tax shall be re- *Building and loan associations. Proviso.*

For Support of State Government 1883-84.

quired of real estate and building associations to be paid upon any portion of its capital which has been loaned or advanced to a shareholder upon real estate, upon which real estate tax is payable by said shareholder.

**Returns to be made by Presidents of manufacturing and other corporations.** Sec. VII. *Be it further enacted by the authority aforesaid*, That the president of all manufacturing and other incorporated companies (or their agents), other than railroad, insurance, telegraph, telephone, express, sleeping and palace car companies shall be required to return all of their property whatever of their respective companies, at its true market value, to the tax receiver of the county where same is located (or where the principal business of each company is located), to be taxed for State and county purposes, as other property in this State is taxed.

**Taxes and returns for express, telegraph, telephone, sleeping and palace car companies.** Sec. VIII. *Be it further enacted by the authority aforesaid*, That all express, telegraph, telephone and sleeping and palace car companies doing business in this State shall pay a tax of one per cent. on their gross receipts, and the superintendent or general agent of each express, telegraph, telephone, sleeping and palace car company doing business in this State shall make a quarterly return, under oath, as follows: on the last day of March, June, September and December of each year to the Comptroller-General, showing an account of their gross receipts during the quarter ending on that day, and said taxes herein levied upon such gross receipts, as shown by said quarterly returns, shall be paid by the respective companies to the Comptroller-General at the time of making said return.

**Sewing machine companies and wholesale dealers.** Sec. IX *Be it further enacted*, That each sewing machine company, home or foreign, selling or dealing in sewing machines, of home or foreign manufacture, by itself or its agents, in this State, and all wholesale dealers in sewing machines selling sewing machines of home or foreign manufacture to other wholesale or retail dealers shall pay the sum of two hundred dollars for each fiscal year or fractional part thereof to the Comptroller-General at the time of commencement of business for each fiscal year or fractional part thereof, and all sewing machines belonging to such companies, dealers or their agents, in possession of such companies, dealers, their agents or others, shall be liable to seizure and sale for the payment of such tax. **Not liable for local taxes.** This tax shall be for the whole State, and such companies, their general agents and wholesale dealears, shall not be liable for any county tax or license fees by the counties for selling sewing machines therein. **Tax to be paid for each company.** In cases where wholesale dealers sell sewing machines manufactured by different companies, such dealers shall pay the tax above provided for separately for each company whose manufacture of machines may be sold by such dealers. Any person who, after the first day of April, 1883, shall violate the provisions of this section shall be liable to indictment, and on conviction shall be fined in a sum of not more than two hundred and fifty dollars and not less than fifty dollars, in the discretion of the court trying the same, and one-half of such fine shall be paid to any person who may report the violation of the provisions of this section.

Sec. X. *Be it further enacted by the authority aforesaid*, That each iron safe company selling or dealing in new iron safes, by itself or

agent, and all dealers in iron safes selling or dealing in new iron safes, and any individual or company making a regular business in dealing in or selling second hand iron safes in this State, shall pay to the Comptroller-General two hundred dollars at the time of commencement of business for each fiscal year or fractional part thereof, and all safes belonging to such companies, dealers or their agents, in possession of such companies, dealers, their agents or others, shall be liable to seizure and sale for payment of such tax. *Iron safe companies and dealers in iron safes.*

SEC. XI. *Be it further enacted by the authority aforesaid,* That no tax shall be assessed upon the capital of banks or banking associations organized under the authority of this State, or of the United States, and located in this State, but the shares of the stockholders of such banks or banking associations, whether resident or non-resident owners, shall be taxed in the county where such banks or banking associations, whether resident or non-resident owners, shall be taxed in the county where such banks or banking associations are located, and not elsewhere, at the same rate provided in this Act for the taxation of moneyed capital in the hands of private individuals; *provided,* that nothing in this section contained shall be construed to relieve such banks or banking associations from the tax on property owned by them as provided in section 7 of this Act. *Banks and Banking Associations. Proviso.*

SEC. XII. *Be it further enacted by the authority aforesaid,* That the presidents of all railroad companies doing business in this State shall make return to the Comptroller-General as now provided by law for the taxation of the property or gross receipts or net income of railroads, and shall pay to the Comptroller-General the tax to which such property or gross receipts or net income may be subject, according to the provisions of this Act and the laws now in force relating to tax on railroads; and on failure to make returns or refusal to pay tax, said companies shall be liable to all the penalties now provided by law. *Returns and payment of tax on railroad companies. Penalty for failure to return and pay tax.*

SEC. XIII. *Be it further enacted by the authority aforesaid,* That the president or principal agents of all incorporated companies herein mentioned, except such as are required to make return to the tax receivers of the counties, shall make returns to the Comptroller-General, under the rules and regulations provided by law for such returns, and subject to the same penalties and modes of procedure for the enforcement of taxes from companies or persons required by law to make returns to the Comptroller-General. *Returns for corporations to be made to Comptroller-General, except such as are to be made to tax receivers.*

SEC. XIV. *Be it further enacted by the authority aforesaid,* That the oath to be administered to all persons making returns of their taxable property shall be in the following words: "You do solemnly swear that you will true answers make to all lawful questions which I may put to you touching the return you are about to make; and that you will make a true return of all your cash or moneyed capital, and every other species of property at its true and full market value, on the first day of April, preceding, to the best of your knowledge and belief, so help you God;" and it shall be the duty of the officers receiving such returns to inquire of each and every person taking such oath, touching all his taxable property and the market value of same, and to propound such questions as may be published *Oath to be taken in making returns. Duty of officers to make inquiry.*

by the Comptroller-General under the law for the purpose of eliciting full and true returns of the taxable property of this State.

**Power of Comptroller-General as to time for making returns and payment.** Sec. XV. *Be it further enacted by the authority aforesaid,* That the Comptroller-General is authorized and empowered to order the tax receivers of this State to commence receiving the returns of taxable property immediately after the first day of April of the years 1883 and 1884, and the Comptroller-General is empowered and required to cause the taxes to be collected and paid into the State Treasury by the twentieth day of December of each of said years 1883 and 1884.

Sec. XVI. *Be it further enacted by the authority aforesaid,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

Approved December 9, 1882.

---

## TO EXTEND THE TIME FOR RETURNING WILD LANDS AND PAYMENT OF TAXES THEREON FOR 1882.

### No 38.

An Act to extend the time for returning wild lands for taxation in this State, and for the payment of taxes due on such lands for the year 1882, and for other purposes herein mentioned.

**Act of Sep. 28, 1881, requiring returns made and taxes paid in counties where wild lands lie.** Whereas, the General Assembly of the State of Georgia passed an Act, approved September 28, 1881, providing for the return of wild lands to the receiver of tax returns and the tax thereon to be paid to the tax collectors of the counties where such lands are located; and *whereas,* the said law going into effect before the provisions of the same were generally known to the owners of such lands, thereby causing a large number of such owners to be late in making their returns of such lands to the proper receiver for taxation, as required by the Act above mentioned; and *whereas,* in a number of counties in this State delays have occurred in the levying of the tax for county purposes, whereby owners or their agents of such lands in such counties have been unable to ascertain the amount of tax due for the present year and to pay the same to the tax collector in the time prescribed by law: therefore,

**Time extended for returning wild lands.** Section I. *Be it enacted by the General Assembly of Georgia,* That the time for returning wild lands in this State for the year 1882 be extended until the first day of February, 1883, and the receivers of **Tax receivers to receive returns of wild land for 1882 and report same to Comptroller-General.** the several counties are hereby empowered and required to receive such returns as may be made of such lands as provided by said Act of September 28, 1881, and to enter same upon wild land digest retained in their county showing returns of such lands for the year 1882, and when such returns as may be made under provision of this Act are received by them, they shall forward a copy of same to the Comptroller-General so that he may enter the same on the digest

# EXHIBIT 40

§ 491. *Licenses issued by probate judge : contents ; rights limited ; fee for issuing.*—Upon the payment of such amount to the probate judge, he shall issue the license, which shall set forth the name of the person, firm, company, or corporation, the business which it is proposed to carry on, and the location where it is to be established ; or, if a peddler, whether he proposes to travel on foot, on horse, or in a wagon ; and such license shall not be transferable, nor shall it entitle the holder thereof to carry on or exercise any other business or profession than the one therein named, nor at any other location than the one therein specified ; and the probate judge shall be paid for making out such license a fee of not more than fifty cents by the person receiving the same. (1)

§ 492. *List of licenses granted, and amount of taxes received therefor furnished solicitor for grand jury.*—The probate judge in each county, on the first day of each circuit court, must furnish to the acting solicitor, to be by him laid before the grand jury, a statement in writing showing the licenses granted and the taxes received thereon within the last twelve months preceding such court, to whom and for what such license was granted.

§ 493. *Quarterly list, with money received, certified to auditor : per cent. allowed probate judge.*—In the second week in March, and every three months thereafter, the judge of probate shall forward to the auditor of the state a certified list of all licenses issued by the probate judge, together with the money received by him on such licenses, and shall receive the same per cent. for such services as is allowed by law for receiving and paying out money for the counties.

§ 494. *License for one year : expires December 31 : after July first half prices of licenses, and for what required.*—All licenses shall expire on the thirty-first day of December in each year, and shall be for one year, unless the business licensed shall commence after the first of July, in which case the price of the license shall be one-half the amount of a year's license.   The prices of licenses shall be as follows, to-wit :

1. *a* For each public race track, at or within five miles of any city or town containing less than five thousand inhabitants, one hundred dollars ; at or within five miles of any city or town containing more than five thousand inhabitants, two hundred dollars.

2. For retailers of spirituous, vinous or malt liquors, on any steamboat or water craft, one hundred dollars ; in any city, town or village of less than one thousand inhabitants, or any other place, fifty dollars ; and in any city, town or village of more than one thousand, and less than five thousand inhabitants, one hundred dollars ; in any city of over five thousand inhabitants, one hundred and twenty-five dollars.

Any person who sells or disposes of spirituous, vinous or malt liquors, or intoxicating bitters, in any quantity less than one quart shall be deemed a retail dealer ; but each retailer of spirituous, vinous or malt liquors, outside the following described boundaries in the city of Mobile, to-wit :

Right bank of Mobile river on the east, Church street on the south, Joachim street on the west, St. Michael street on the north, including those settled on the north side of St. Michael street, on the west side of Joachim, and on the south side of Church street, shall be charged a state license of seventy-five dollars ; but dealers in lager beer exclusively shall be charged one-fourth the rates

a As amended.
Feb. 9, 1877, p.
16

(1) In absence of licensed principal, clerk may legally carry on business under the license. – 37 Ala. 151.

charged for license for selling ardent spirits; and any person who takes out and pays for a retail license, shall not be required to take out a license as a wholesale dealer; and when a retail license is taken out after the first of January, the price of the license shall be the same as for a license for twelve months.

3. For wholesale dealers in spirituous, vinous or malt liquors, in any place of less than one thousand inhabitants, thirty dollars; in any place of over one thousand and under three thousand inhabitants, fifty dollars; in any city of over three thousand inhabitants, seventy-five dollars; but wholesale dealers living outside of the limits prescribed in preceding section in the city of Mobile, shall be charged fifty dollars.

Any person dealing in said articles who shall sell, barter or exchange, or in any way dispose of or permit to be taken, spirituous, vinous or malt liquors in any quantity less than one quart, or who shall permit the same to be drunk by the glass or single drink in or about his place of business, shall be deemed a retail dealer; and any dealer so disposing of spirituous, vinous or malt liquors, only in quantity of one quart or more, shall be deemed a wholesale dealer; but any person having taken out a license as a retail dealer, is authorized to sell at wholesale without additional license.

4. For compounders and rectifiers of spirituous or vinous liquors, one hundred dollars. Any person who rectifies, purifies, or refines distilled spirits or wines, by any process, or who mixes distilled spirits or wines with any chemicals, or compounds liquors for sale under any name, shall be deemed a compounder and rectifier; but a wholesale dealer, who pays under the preceding paragraph an equal or larger license tax, shall be exempt from this tax.

5. For distillers of spirituous liquors, fifty dollars; but this shall not apply to the distilling of fruits.

6. For brewers, fifteen dollars.

7. For pawn brokers, fifty dollars.

8. For peddlers in a wagon, forty dollars; for peddlers on a horse, twenty dollars; for peddlers on foot, ten dollars. A peddler's license shall entitle him to peddle only in the county where it is taken out; but this shall not apply to any articles produced or manufactured in this state, except as otherwise provided. And it is hereby made the duty of justices of the peace and notaries public in this state to demand of peddlers in their several precincts their licenses; and unless they exhibit the same, or show that they have a right under the law to peddle the articles carried by them without a license, such justices and notaries public must issue warrants for the arrest of such peddlers, returnable to any court in said county having criminal jurisdiction, which warrants may be executed by the sheriff or any constable of the county. (1) *a* But it shall be lawful for any citizen of this state having but one arm or one leg, or who labors under any other physical disability of making a livelihood by labor, to peddle in any county in this state by taking out a license in any one county, the payment of such license tax to be evidenced by the receipt of any judge of probate. Before such person shall engage in peddling he shall obtain a certificate from two regularly practicing physicians, setting forth the character of the disability under which he labors, and that the same is sufficient to bring him within this provision; *a March 8, 1876, p. 101.*

_____

(1) Making it misdemeanor to peddle without license constitutional.—51 Ala. 52.

and the certificate shall be a condition precedent to this exemption.*

10. For bowling alleys, for the use of which money or other compensation is charged, twenty-five dollars for each alley.

11. For billiard tables, for the use of which money or any compensation is charged, twenty-five dollars for each table ; and this amount for every billiard table on the premises where a bar or drinking saloon is kept, whether its use is charged for or not. (2)

12. For any table on which the game of pool is played, one hundred dollars.

13. For bagatelle or jenny lind tables, fifty dollars ; and the same amount for any other table or device of any kind from which any kind of profit is derived to the keeper.

*b* Amendment, Jan. 22, 1877, p. 12.

14. *b* For theatres in towns or cities containing more than two thousand inhabitants, $50 00; in towns or cities containing less than two thousand inhabitants, $25 00; but the owners or managers of theatres holding such licenses must issue tickets of admission to all persons whom they admit to their exhibitions, and must thereon assign a particular seat to each such visitor in such part of the theatre as the convenience of the owners or managers may require.

15. For dealers in pistols, bowie-knives and dirk-knives, whether the principal stock in trade or not, fifty dollars.

16. For peddlers of medicines or other articles of like character, twenty-five dollars for each county in which they peddle.

17. For each sewing machine company, selling sewing machines by themselves or their agents, one hundred dollars as a state tax. The payment of this tax to the state, evidenced by the receipt of any probate judge, shall exempt the company from payment of this state tax in any other county; but each county in which the company may have an agent, a license of twenty dollars shall be paid for county purposes.

*c* Amendment, Feb. 9, 1877, p. 18.

18. *c* For each exhibition of a circus in towns or cities having more than five thousand inhabitants, one hundred dollars ; in all other places, fifty dollars.

19. For each exhibition of a menagerie or museum, twenty dollars.

20. For each exhibition of a side-show accompanying a circus, menagerie or museum, ten dollars.

21. For each exhibition of feats of legerdemain or slight-of-hand, or other exhibition, or entertainments, ten dollars.

22. For concerts, musical entertainments and public lectures, where charges are made for admission and not given for charitable purposes, each entertainment five dollars.

23. For each shooting gallery, twenty-five dollars.

24. For each chicken or cock pit, twenty-five dollars.

§ 495. *Fifty per cent. may be added by county : commissions of probate judge.*—The courts of county commissioners are hereby authorized to add to the price of licenses, for county purposes, such sums as they may designate, not to exceed fifty per cent. on the state licenses, except as herein otherwise provided, and the judge of probate is allowed two and a half per cent. for the collection and payment of the license money to the officer to whom it is to be paid, to be deducted from his said collections.

§ 496. *Retailing on steamboats ; licenses posted up, and forfeited*

* Subdivision 9, requiring drummers, commercial travelers or agents, who sell by samples, to pay license tax, repealed December 14, 1876, p. 11.
(2) 49 Ala. 37.

# EXHIBIT 41

31                         1886–87.

No. 3.]              AN ACT.          [H. B. 940.

To fix the rate of taxation in this State.

SECTION 1. *Be it enacted by the General Assembly of* Where collec-
*Alabama,* That on all property liable to taxation in this ted.
State, there shall be assessed and collected a tax of five
and one-half tenths of one per centum for the fiscal
year ending September 30th, 1888, and five-tenths of
one per centum for each year thereafter.

Approved February 28th, 1887.

———

No. 4.]              AN ACT          [H. B. 211.

To amend sections 4 and 11, and sub-division 8 of
  section 2, sub-divisions 2, 5 and 6 of section 6, and
  sub-divisions 2, 3, 4, 5, 6, 9, 10, 17, 18, 20, 29, 31, 32,
  33 and 34 of section 14, and to repeal sub-division 8
  of section 6, of an act entitled "An Act to levy taxes
  for the use of the State and the counties thereof,"
  approved December 12, 1884, and for other pur-
  poses.

SECTION 1. *Be it enacted by the General Assembly of*
*Alabama,* That sections 4 and 11, and sub-division 8 of
section 2, and sub-divisions 2, 5 and 6 of section 6, and
sub-divisions 2, 3, 4, 5, 6, 9, 10, 17, 18, 20, 29, 31, 32, 33
and 34 of section 14 of an act to levy taxes for the use Sections
of the State and the counties thereof, approved De- amended.
cember 12, 1884, be and they are hereby amended so as
to read as follows: That sub-division 8 of section 2
be amended so as to read as follows: 8. The follow-
ing property to be selected by the head of each family,
viz: household and kitchen furniture, not to exceed in
value one hundred and fifty dollars; one yoke of oxen, Property ex-
one cart or wagon, two cows and calves, twenty head empt.
of stock hogs, ten head of sheep, all poultry, all agri-
cultural products of the preceding year which are on
hand, in the hands of the producer on the first of
January thereafter, provisions and supplies on hand
for the current year for the use of the family and the
making of the crop, all wearing apparel, all looms and

32

spinning wheels, kept for use of the family, farming tools to the value of twenty-five dollars, tools and implements of mechanics to the value of twenty-five dollars, one sewing machine in each family when the taxable property does not exceed two hundred and fifty dollars; *Provided*, that no property or subject of taxation shall be exempt from taxation, nor shall any credit, abatement, or deduction be allowed therefrom, unless such property or subject of taxation is entered by the tax-payer upon his assessment list and returned by him under oath to the tax assessor.

*Proviso.*

SEC. 2.   That section 4 be amended so as to read as follows:   All taxes, unless otherwise herein directed, shall become due and payable on the first day of October in each year, and shall become delinquent if not paid on or before the thirty-first day of December in each year, except in cases where parties are about to remove from the county, and except also poll taxes, which shall become delinquent if not paid on or before the first day in each year, after which last date as to poll taxes, the tax collector may proceed to enforce payment by garnishment, or the seizure and sale of personal property, as herein provided for the collection of other delinquent taxes.

*When taxes are due.*

SEC. 3.   That sub-divisions 2, 5 and 6 of section 6, be amended so as to read as follows:

2.   On gross amount of premiums (after deducting therefrom the expenditures, losses paid and return premiums) received from their business in this State during each tax year by any life, fire or marine insurance company not chartered by this State, and doing business herein by agents or otherwise, at the rate of one per cent., each agent in this State of any insurance company organized under the laws of any other State or country and doing business in this State, shall annually, in the month of January, return to the assessor of the county in which such agency is located, a sworn statement of the gross receipts of such agency for the year ending on the first day of the month, including all notes, accounts and other things received or agreed upon as a compensation for insurance at such agency, with a statement of expenditures, losses paid and return premiums, and the company shall be charged with taxes at the place of such agency on the amount

*Insurance companies.*

*Agent must make statement.*

1886–87.

so returned, and the agent shall also be personally responsible for such taxes, and may retain in his hand a sufficient amount of the company's assets to pay the same unless the same shall be paid by the company, but no corporation not incorporated under the laws of the State, nor any foreign society, firm or partnership shall do business in this State except through an agent duly authorized, and accrdited for the purposes of said business and for all purposes connected with licenses and taxation and service of process, said agent to be appointed by authentic act, and a certified copy of the act to be deposited in the office of the Auditor of this State. Any person or firm who shall fill up or sign a policy or certificate of insurance, on open marine or fire insurance policy, or otherwise issue by a corporation or association, or persons not located or represented in this State by a legally authorized agent, shall be considered an agent of such corporation, or association, and shall be liable for all licenses, taxes and penalties enforced by the provisions of this act, upon such person, corporation and association, as if represented by a legally appointed agent; any agent or company refusing or failing to make returns within the time prescribed by law or refusing to pay the amount assessed as tax shall forever be debarred from doing business in this State.

*Agent responsible for taxes.*

*Foreign companies must have an agent.*

*Who are agents.*

*Penalty.*

5. On the gross receipts during such tax year of all cotton pickeries, cotton seed oil mills, and from the storage of cotton or merchandise or produce, and on the gross amount of income, of all gas works, electric light companies, water works, ferries, toll bridges, public mills and gins used in ginning for tolls, cotton compresses, after deducting the expense of carrying on such business at the rate of one per cent.

*Oil and gas works.*

6. On the gross amount of the receipts by any and every telegraph, telephone, and express company, derived from the business done by it in this State, at the rate of two dollars on the hundred dollars.

*Telegraph and express companies.*

SEC. 4. That section 11 be amended so as to read as follows: Section 11. On the last secular day in March and every three months thereafter, the judge of probate shall forward to the auditor of the State a certified list of all licenses issued by him, and at the same time pay to the State treasurer the money received by him for

*Judge of probate makes return to auditor.*

3

such licenses belonging to the State, and to the county treasurer the portion belonging to the county, and shall receive two and a half per cent. for the collection and payment of the license money to the officer, State or county, to whom it is to be paid, to be deducted from his said collection. If any probate judge fails to comply with the provisions of this section within ten days after the date at which he is required to make a report of licenses issued and money received by him, the auditor shall forthwith report the facts to the Governor, who shall cite said judge to show why he has not made returns of such certified lists of licenses as required by law, and if such judge fails to show sufficient cause for such failure, the Governor shall direct the attorney general to institute impeachment proceedings against such delinquent probate judge before the Supreme Court of the State.

*Penalty on probate judges for failure.*

SEC. 5. That subdivisions 2, 3, 4, 5, 6, 9, 10, 17, 18, 29, 31, 32 and 34 of section 14 be amended so as to read as follows : Section 14, subdivision—

*Steamboat and railroad license.*

2. For the retail of spirituous, vinous or malt liquors on any steamboat or water craft or on any sleeping, dining or buffet car, two hundred and fifty dollars, for the collection of which the State shall have a preferred lien on all such steamboats or other water crafts and cars named for the amount required by law to be paid for such licenses to retail vinous, spirituous or malt liquors on such steamboat or water craft and cars, to be enforced wherever such liquors are retailed by any person on any such boat or water craft or cars, with the knowledge or consent of the captain or conductor without having first procured a license, as provided by law, and the tax collector of any county, where such vessels may ply or cars run, is required to enforce this lien, in the same manner, and by the same proceedings as are authorized for the collection of taxes on steamboats and on railroad cars.

*How enforced.*

3. For retailers of spirituous, vinous, or malt liquors, except as hereinafter provided in any city, town, village, or any other place of less than one thousand inhabitants, one hundred and twenty-five dollars, and in any city, town or village of more than one thousand inhabitants and less than three thousand inhabitants, one hundred and seventy-five dollars, and any city con-

*Retail license.*

taining three thousand inhabitants or more, and less
than ten thousand inhabitants, two hundred and fifty
dollars, in any city of more than ten thousand inhabit- Lager beer.
ants, three hundred dollars. *Provided, further,* that
dealers in lager beer exclusively, shall be charged one-
fourth of the rates charged for retailers of spirituous,
vinous or malt liquors, as graded above, and any per-
son who takes out and pays for a retail license shall
not be required to take out a license as a wholesale
dealer, and when a retail license is taken out after the
first day of January and before the first day of July,
the price of the license shall be the same as for a
license for twelve months.

4.   For wholesale dealers in spirituous, vinous or
malt liquors in any place, two hundred dollars.   Any
person dealing in said articles, who shall sell, barter Wholesale
or exchange, or in any way dispose of, or permit to be dealers.
taken, spirituous, vinous or malt liquors in any quan-
tity less than one quart, or who shall permit the same
to be drunk by the glass, or single drink, in or about
his place of business, shall be deemed a retail dealer,
and any dealer so disposing of spirituous, vinous or
malt liquors, only in the quantity of one quart or more,
shall be deemed a wholesale dealer, but any person
having taken out a license as a retail dealer, is author-
ized to sell at wholesale without additional license.

5.   For compounders and rectifiers of spirituous, Rectifiers.
or vinous liquors, two hundred dollars; any person
who rectifies, purifies or refines distilled spirits or
wines by any process, or who mixes distilled spirits or
wines with any chemicals, or compounds liquors for
sale under any name, shall be deemed a compounder
and rectifier.

6.   For distillers of spirituous liquors, two hundred
dollars; but this shall not apply to the distilling of Distillers.
fruits.

9.   For peddlers in a wagon drawn by one horse or
other animal, forty dollars; if drawn by two horses or
other animals, fifty-five dollars; for peddlers on a horse Peddlers.
or other animal, twenty-five dollars; for peddlers on
foot, fifteen dollars; for peddlers accompanied by sing-
ers or performers on any musical instrument, one hun-
dred dollars; *provided,* that peddlers of tin ware only,
who shall pay all lawful fees and one-third of the

36

license fees herein provided, shall be entitled to such license; *Provided further*, that peddlers of wooden and stone or clay hollow-ware only, shall not be required to procure a license. A peddler's license shall entitle him to peddle only in the county where it is taken out; and it is hereby made the duty of county court judges, justices of the peace, notaries public, mayors, recorders and intendants of cities or towns, sheriffs, deputy sheriffs, constables, city or town marshals, policemen, and all other officers authorized by law to make arrests, to demand of peddlers, itinerant dealers and travelling agents their licenses, and unless they exhibit same, or show that they have the right to peddle the goods carried by them, or to carry on the business they are engaged in, without a license, such county court judges, justices, notaries, with powers of a justice, mayors, recorders, intendants, must issue warrants for the arrest of such peddlers, itinerant dealers or travelling agents, returnable to any court in the county having criminal jurisdiction, which warrants may be executed by the sheriff, deputy sheriff, any constable of the county, any city or town marshal, policeman or any other officer having authority to make arrests; but it shall be lawful for any person having but one arm, or but one leg, or who labors under any other physical disability, of making a livelihood by labor, to peddle in any county in the State free of license on the filing of the certificates of two regularly licensed physicians, in the office of probate of the county of his permanent residence, to the effect that such cripple is permanently disabled, and that he cannot by labor make a livelihood for himself and family. This shall not be so construed as to require a license on peddlers of fish, oysters, game, fresh meats, poultry, fruit and all farm products raised by the seller.

10. Upon transient or itinerant auctioneers or dealers in goods, wares or merchandise, other than licensed peddlers and traveling agents of wholesale dealers in said articles, making sale thereof by sample, fifty dollars; itinerant dealers in fruit trees, vines, shrubs or plants of any kind, fifty dollars.

*Auctioneers.*

*Fruit tree dealers.*

17. For dealers in pistols or pistol cartridges, or bowie knives, or dirk knives, whether principal stock in trade or not, three hundred dollars.

*Pistols, &c.*

18.   For peddlers of medicines or other articles of like character, spectacles or eye-glasses, one hundred dollars for each county in which they peddle.   For peddlers of medicines, with vocal or instrumental music, or both, two hundred and fifty dollars for each county in which they peddle. *Medicines.*

20.   For each sewing machine, stove, range or clock company selling sewing machines, stoves, ranges or clocks, either themselves or by their agents, or through consignees, and all persons who engage in the business of selling sewing machines, stoves, ranges or clocks, shall pay to the State twenty-five dollars for each county in which they may so sell, but when merchants engaged in a general business keep sewing machines, stoves, ranges or clocks as a part of their stock in trade, they shall not be required to pay the tax herein provided, in the county in which they are engaged in such general business. *Sewing machines, stoves and clocks.*

29.   For each company of traders, or fortune tellers, usually known as gypsies, ten dollars for each county. *Fortune tellers.*

31.   For fortune tellers, twenty-five dollars.

32.   The owner or master of any steamboat or other water craft plying in any rivers of the State, who engage in the business of buying, selling or bartering any goods, wares, merchandise, produce or commodity whatever on or from said boat, must pay a license of two hundred and fifty dollars, and the party so licensed shall thereby be entitled to carry on such business on the boat therein named, in any county in which said boat is navigated, provided cities and towns in which such person engages in such business, may impose such license as is exacted of like business in said city or town.   The owner, conductor, or person in charge of every supply car, or car from which any goods, wares or merchandise are sold, whether to the servants of the railroad company or others, must pay a license of one hundred dollars, and the person so licensed shall thereby be entitled to carry on such business in the car therein named in any county in which said car is run or drawn, but each of said counties may charge a license therefor of ten dollars. *Steamboats.* *Selling goods on cars.*

33.   For travelling agents of wholesale dealers in goods, wares and merchandise a tax of ten dollars, to

**1886–87.**                    38

<div style="text-align:right"></div>

**Drummers.** be taken out in only one county, and should any such agent fail to take out such license all contracts made by him shall be void, and in any proceedings to enforce any such contract, the burden of proof shall be upon the party selling such goods, wares and merchandise, to show that such license has been taken out at the time such contract was made.

**Playing cards.** 34. Each dealer in playing cards, five dollars. Any person who engages in the business of buying or sell-

**Dealing in futures.** ing futures for speculation or on commission, shall pay a license tax of three hundred dollars, provided this shall not be held to legalize any contract which would otherwise be invalid.

SEC. 15. *Be it further enacted,* That sub-division eight of section six is hereby repealed.

SEC. 16. *Be it further enacted,* That the one-fourth of one per cent. levied and assessed in the county of

**Lee county.** Lee for the tax year beginning January 1st, 1886, to reimburse the State for the investment of certain revenues in the compromise and settlement of the railroad bonded indebtedness of said county, shall be collected by the tax commissioner of said county as he collects the State and county tax, and shall be paid into the State Treasury, and the postponement of said tax of one-fourth of one per cent. shall not be construed to be for any other year than the tax years 1887 and 1888.

Approved December 11, 1886.

---

No. 5.]                **AN ACT**               [H. B. 245.

To make appropriations for the ordinary expenses of the Executive, Legislative and Judicial Departments of the State, for interest on the public debt, and for public schools.

SECTION 1. *Be it enacted by the General Assembly of Alabama,* That the following sums of money, or so much of each sum as may be necessary, be and they are hereby appropriated for the purposes hereinafter specified, to be paid out of any moneys in the Treasury not otherwise appropriated, for the fiscal years end-

# EXHIBIT 42

## ARTICLE 15.

LICENSE TAXES ; FROM WHOM AND FOR WHAT BUSINESSES REQUIRED ;
PRICES ; COUNTY LEVY.

**4122** (629). **Persons required to take out licenses, and prices to be paid therefor.**—Licenses are required of all persons engaging in, or carrying on any business, or doing any act in this section specified, for which shall be paid, for the use of the state, the following taxes, to wit:

1. For each public race-track, at or within five miles of any city or town containing less than five thousand inhabitants, one hundred dollars; at or within five miles of any city or town containing more than five thousand inhabitants, two hundred dollars.

2. For the retail of spirituous, vinous, or malt liquors, on any steamboat or other water-craft, or on any sleeping, dining, or buffet car, two hundred and fifty dollars, for which the state shall have a preferred lien on such steamboat or other water-craft, and cars named; and such lien may be enforced whenever any such liquors are retailed by any person on such steamboat or other water-craft, or cars, with the knowledge or consent of the captain, or conductor, without having first procured a license therefor, as provided by law; and the tax-collector of any county in which such steamboat or other water-craft may ply, or cars run, is required to enforce such lien in the same manner, and by the same proceedings, as are authorized for the collection of taxes on steamboats and on railroad-cars.

3. For retailers of spirituous, vinous or malt liquors except as hereinafter provided, in any city, town, village, or any other place of less than one thousand inhabitants, one hundred and fifty dollars; in any city, town, or village of more than one thousand inhabitants and less than three thousand inhabitants, two hundred dollars; in any city containing three thousand inhabitants or more, and less than ten thousand inhabitants, two hundred and seventy-five dollars; and in any city of more than ten thousand inhabitants, three hundred and twenty-five dollars. But 'dealers in lager-beer exclusively shall be charged one-fourth of the above rates. Any person who pays for and takes out a license as a retailer, shall not be required to pay for and take out a license as a wholesale dealer in such liquors; and when a retail license is taken out after the first day of January, and before the first day of July, the price of the license shall be the same as for a license for twelve months. Any person who sells or disposes of spirituous, vinous, or malt liquors, or intoxicating bitters, in any quantity less than a quart, shall be deemed a retail dealer; *Provided*, nothing in this paragraph shall be so construed as to alter, repeal or modify any license now authorized and required to be paid to any district, city or municipality for municipal purposes.

Allred v. State, 89 Ala. 112; State v. Fleming, 112 Ala. 179.

4. For wholesale dealers in spirituous, vinous, or malt liquors in any place, two hundred dollars. Any person dealing in said arti-

Feb. 18,
1895,
p. 1192, §48.

cles, who shall sell, barter, or exchange, or in any way dispose of, or permit to be taken, spirituous, vinous, or malt liquors, in any quantity less than one quart, or who shall permit the same to be drunk by the glass, or single drink, in or about his place of business, shall be deemed a retail dealer; and any dealer so disposing of spirituous, vinous, or malt liquors, only in the quantity of one quart or more, shall be deemed a wholesale dealer; but any person having taken out a license as retail dealer is authorized to sell at wholesale without additional license.

5. For compounders and rectifiers of spirituous or vinous liquors, two hundred dollars. Any person who rectifies, purifies or refines distilled spirits or wines, by any process, or who mixes distilled spirits or wines with any chemicals, or compounds liquors for sale under any name, shall be deemed a compounder and rectifier.

Dec. 10, 1892, p. 71.    6. For distillers of spirituous liquors, twenty-five dollars; but this shall not apply to the distilling of fruits.

Grant v. State, 73 Ala. 13; Johnson v. State, 44 Ala. 414.

Feb. 18, 1895, p. 1192, §45.    7. For brewers, one hundred dollars. Every agency of a brewery of another state doing business in this state, shall pay the same license.

8. For bowling-alleys, for the use of which money or other compensation is charged, twenty-five dollars for each alley; and for each bowling-alley kept in connection with a drinking-saloon, whether compensation is charged or not, twenty-five dollars.

9. For each billiard-table, for the use of which money or other compensation is charged, and which is not kept in connection with the business of a barroom or drinking-saloon, twenty-five dollars.

10. For each billiard-table kept in connection with the business of a barroom or drinking-saloon, whether its use be charged for or not, fifty dollars.

11. For each table upon which the game of pin-pool is played, one hundred dollars.

12. For each table upon which a game of pool is played with fifteen balls, more or less, and not pin-pool, for the use of which money or other thing of value is charged, or when kept in connection with a barroom or drinking-saloon, whether its use be charged for or not, fifty dollars.

13. For each bagatelle or Jenny-Lind table, or any other table or device of any kind from which any kind of profit is derived by the keeper, fifty dollars.

14. For each table or device, or set of domino-bones, kept in connection with a barroom or drinking-saloon for use in playing the game commonly known as dominoes, twenty-five dollars; and for each dice-box and dice kept in a barroom or drinking-saloon, twenty-five dollars.

15. For each theatre in towns or cities containing more than eight thousand inhabitants, one hundred dollars; but this price shall not be charged for licenses for open-air or summer theatres, such as at Mobile on the bay-shore, and known as Frascati, but for each

such open-air or summer theatre, twenty-five dollars; in towns or cities containing less than eight thousand and more than two thousand inhabitants, fifty dollars; and in towns or cities containing less than two thousand inhabitants, twenty-five dollars; but the owner or manager of any theatre holding any such license must issue tickets of admission to all persons whom they admit to their exhibitions, and must thereon assign a particular seat to each such person, in such part of the theatre as the convenience of such owner or manager may require. This license shall only extend to dramatic and operatic exhibitions; and if any doubt arises as to the character of an entertainment proposed to be exhibited in any theatre, the judge of probate of the county in which the theatre is situated shall determine whether or not it is covered by the theatrical license.

16. For each public hall let for hire, twenty-five dollars.

17. For each concert, musical entertainment, public lecture, or other public exhibition or entertainment, where charges are made for admission, or for the use of any instrument or device, or the participation in any exercise or entertainment, not given for charitable, school, or religious purposes, and not otherwise provided for, five dollars; but the provisions of this subdivision shall not apply to exhibitions or entertainments given in theatres, where the owner or manager thereof has taken out license as owner or manager.

Mosby v. State, 98 Ala. 50.

18. For each day's exhibition of a circus in towns or cities having more than five thousand inhabitants, or within two miles thereof, one hundred and fifty dollars; in all other places, one hundred dollars.

19. For each exhibition of a menagerie or museum, twenty dollars.

20. For each exhibition of a side-show accompanying a circus, menagerie, or museum, ten dollars.

21. For each exhibition of feats of legerdemain or sleight of hand, or other exhibition or entertainment of like kind, ten dollars.

22. For each fortune-teller, twenty-five dollars.

23. For each company of traders or fortune-tellers, usually known as gypsies, ten dollars for each county.

24. For each shooting-gallery, twenty-five dollars.

25. For each skating-rink, twenty-five dollars.

26. For dealers in playing-cards, five dollars.

27. For dealers in pistols, or pistol cartridges, or bowie-knives, or dirk-knives, whether principal stock in trade or not, three hundred dollars. Any cartridges, whether called rifle or pistol cartridges, or by any other name, that can be used in a pistol, shall be deemed pistol cartridges within the meaning of this subdivision. Any person or firm who orders for another, or delivers any cartridges within this state, shall be deemed a dealer under this provision.* <sub></sub> Dec. 13, 1892, p. 183.

Porter v. State, 58 Ala. 66.

28. For dealers in cigarettes, whether principal stock in trade or Feb. 18, 1895, p. 1192, §4.

_____

*As amended by revenue committee.

72

# EXHIBIT 43

## REVENUE LAWS.

No. 903)              AN ACT              (H. 935

### To amend the Revenue Laws of the State of Alabama.

Section 1. Be it enacted by the General Assembly of Alabama, That section 3911 of the Code be amended so as to make sub-division four of said Goods, wares section read as follows: 4. "All stocks of goods, or merchan- wares and merchandise, the assessment to be on dise the average amount on hand during the preceding year, but the amount so assessed shall in no case be less than the capital actually employed in the business of the originally invoiced price of said goods, wares and merchandise, to be taken and furnished to the tax assessor as hereinafter provided, and this shall include all goods, wares and merchandise kept on plantations or elsewhere, or by railroad companies or manufacturing companies, or other associations, corporations or persons, for sale or to be dealt out to laborers or employees for profit, or on account of their wages; and shall include all goods, wares and merchandise offered for sale by any person commencing business subsequently to the first day of October of the current year, but in such case the tax shall be apportioned according to the date at which the business shall be commenced, so that if commenced after the first day of January, the tax shall be three-fourths of the tax for the whole year; if commenced after the first day of April, the tax shall be one-half of the tax for the whole year: Provided, that the assessment herein provided for shall not include the products raised on the farms, in the hands of the original producer.

Gross incomes    Sec. 2. Be it further enacted, That section 3912 of the Code be amended so as to make sub-division three of said section read as follows: 3. On the gross incomes of all toll-bridges and ferries, and also all canals, ditches, channels, passes, tram-roads

and poll-roads, used for transporting timber or other valuable commodities of commerce, at the rate that property is taxed.

Sec. 3. Be it further enacted, That section 3915 of the Code be amended so as to read as follows: That each sleeping car company doing business in this State, for one or more passengers, other than interstate, taken up at one point in this State, and delivered at another point in this State, and transported wholly within this State, shall pay in advance on the first day of January of each year, to the State treasurer, a privilege tax of twelve hundred and fifty dollars, and no sleeping car company which has paid the privilege tax hereby required shall be liable to pay any other privilege tax in this State, but its real estate, fixtures and other local property, shall be subject to taxation as other property in this State. *Sleeping car companies*

Sec. 4. Be it further enacted, That section 3916 of the Code be amended so as to read as follows: Each building and loan association organized under the laws of this State or any other State or county, doing business in this State, shall pay in advance, on the first day of each year, to the State treasurer, a privilege tax of one dollar for each one thousand dollars of the first one hundred thousand dollars paid in on its capital stock, and fifty cents for each one thousand dollars paid in on its capital stock over one hundred thousand dollars, but shall not be required to pay taxes upon its mortgages or real estate. And every such association, foreign or domestic, shall also be assessed for taxation, and shall pay taxes upon its office furniture and real estate in this State. *Building and loan associations*

Sec. 5. Be it further enacted, That section 3985 of the Code be amended so as to read as follows. It shall be the duty of the Court of County Commissioners at the term commencing on the first day of the June term to levy the amount of taxes required for the expenses of the county for the current year, not to exceed one-half of one per cent. on the value of the taxable property, and the amount of other subjects of taxation in the county, as assessed for revenue to the State, as shown by the book of assessments after it has been corrected. *County taxes*

Duty of collector

Sec. 6. Be it further enacted, That section 4030 of the Code be amended so as to read as follows: It is the duty of the collector, when engaged in the collection of taxes, for any year, if he discovers that any person or property within his county has not been assessed by the assessor with the tax or taxes lawfully chargeable to such person or property for that year, or any preceding year, not more than five years before that time, forthwith to assess and collect the taxes due on the same, and in writing notify the assessor of the fact so discovered in order that proper assessment of unassessed taxes may be made; and the collector has the same authority to administer oaths and propound questions as the assessor has, and any party failing or refusing to answer such questions or to give in his property shall be liable to the same penalties as provided in cases where parties fail or refuse to give in their property to the assessor, or answer the questions required to be propounded by the assessor: Provided, that in such assessments of escaped taxes the taxpayer on giving notice to the tax collector, shall have the right to have his assessment passed on by the Court of County Commissioners, and such assessment modified, allowed or rejected, as the evidence adduced to said Court shall require.

Redemption of lands

Sec. 7. Be it further enacted, That section 4097 of the Code be amended so as to read as follows: When lands which have been bid in by the State are redeemed, the judge of probate must, during the month in which such redemption is made, remit the State treasurer, at the expense of the State, the proportion of the redemption money belonging to the State, and pay into the county treasury the proportion of such money belonging to the county and to the proper authorities the proportion belonging to the school fund, if any; and upon all such money so paid over during the month of collection, he is entitled to commissions at the rate of two and one-half per cent., which he may deduct therefrom; but he shall not be allowed any commissions on any money not so paid over; and on the last business day in March, and every three months thereafter, the judge of probate shall certify to the auditor and

to the county treasurer, upon blanks to be fur-
nished by the auditor, a full and correct statement
of all real estate bid in by the State and redeemed,
showing separately the amount of State, county
and school taxes, and penalties and costs, received
by him on such redemption.

Sec. 8. Be it further enacted, That section 4132
of the Code be amended, so as to read as follows.
"During the month in which any license money is
received by the judge of probate, he must remit
to the State treasurer, at the expense of the State,
all money received by him for licenses belonging
to the State, and pay to the county treasurer all
money received by him for licenses belonging to
the county; and upon all such money so remitted
or paid during the week of collection, he is enti-
tled to two and one-half per cent., which he may
deduct therefrom; but he shall not be allowed any
commission on any money not so remitted or paid;
and on the last business day in March, and every
three months thereafter, the judge of probate shall
forward to the auditor a certified list of all licenses
issued by him, stating therein for what business
issued, the amount collected for each license, from
whom collected, and the date thereof. If any judge
of probate fails to comply with the provisions of
this section, within ten days after the date at
which he is required to make a report of licenses
issued and money received by him, the auditor
shall forthwith report the facts to the governor,
who shall cite such judge to show why he has not
made returns of such certified list of licenses, as
required by law; and if such judge fails to show
sufficient cause for such failure, the governor shall
direct the attorney general to institute impeach-
ment proceedings against him before the Supreme
Court.

Sec. 9. Be it further enacted, That every person
holding an office under the authority of this State,
shall be required to take out a commission for the
same, to be issued by the secretary of State,
and the following fees shall be paid to said secre-
tary of state for the commissions so issued by him,
to be paid by the secretary of state into the State
treasury, to-wit: Commissioners of deeds in other

*Marginal notes:* License money; Impeachment; Commissions issued to officers; prices of

States, five dollars; members of the General Assembly, county superintendents of education, justices of the peace, constables, notaries public and county tax commissioners, one dollar. And the judges of the several Courts, the chancellors, the attorney general, the solicitors, the secretary of state, the auditor, the State treasurer, the superintendent of education, the commissioner of agriculture, the railroad commissioners, the clerk of the Supreme Court, the clerks of the City Courts, the clerks of the Circuit Courts, registers in chancery, the convict inspectors, the State tax commissioner, examiners of public accounts, the sheriffs, the tax assessors, tax collectors, county treasurers, county commissioners, or members of the board of revenue, two dollars and fifty cents. That any officers, who by virtue of such office, shall receive either fees or salary as compensation for services as such officer not hereinbefore mentioned, whether existing now or hereafter created, shall be commissioned as aforesaid, and shall pay for such commission, one dollar; and any such officer exercising the duties of his office without having first secured a commission, shall be guilty of a misdemeanor. This section shall apply only to officers hereafter elected or appointed.

**Oaths**    Sec. 10. Be it further enacted, That annually, before commencing to perform the duties for the correction of errors in the assessments, on the second Monday in July of each year, each member of the board of revenue, or Court of County Commissioners, shall take and subscribe the oath set out hereinafter. And it shall be the duty of the **Duty of** auditor to forward annually, in June of each year, **Auditor** to the chairman of such boards of Courts, printed forms for such oaths, together with a circular letter, setting out in full section 3982 of the Code, with the penalties provided by law for failure to comply with the same; and directing that said oath shall be taken and entered upon the minutes of the board or Court, said oath shall be in form and substance, as follows: State of Alabama.—Before me (to be administered by any judge, register, justice of the

peace or notary public), personally appeared————
——————————, members of the board of revenue,
or Court of County Commissioners, of ————
county, who on oath declare, and say that while
engaged in the duty of correcting errors in as-
sessments or passing on the assessment of escaped
taxes, they will fix a value on all property assessed
for taxes at its fair cash market value; and that
they will in no case, where the facts are brought
to their knowledge, reduce the value of any prop-
erty for taxation, below the fair market value of
the property, or what the property would sell for
cash, and that they will make diligent effort and
inquiry to ascertain the value of all property to
be passed on by them. Sworn to and subscribed
before me, this ———— day of July, 18—.

Sec. 11. Be it further enacted, That section 3913 Telegraph
of the Code shall be amended, so as to read as fol-       companies
lows: 3913. Each telegraph company doing busi-
ness between points wholly within this State, and
without reference to its interstate commerce or
governmental business, shall pay, in advance, on
the first day of January of each year, to the State
treasurer, a privilege tax, based on the mileage of
the telegraph line operated by it in this State, as
follows: Each telegraph company, whose lines
within the State do not exceed one hundred and
fifty miles, shall pay at the rate of one dollar per
mile; each company whose lines within the State
exceed one hundred and fifty miles, shall pay five
hundred dollars, together with one dollar for each
mile of such lines; and each long-distance telephone
company, whose lines within the State do not
exceed one hundred and fifty miles shall pay at a
rate of fifty cents per mile; and each long-distance
telephone company whose lines within the State
exceed one hundred miles, shall pay two hundred
and fifty dollars; and no telegraph company which
has paid the privilege tax herein required shall
be liable to pay any additional privilege tax or
other tax in this State, except licenses required by
cities and towns; and except upon its real estate,
fixtures and other local property, which shall be
subject to taxation as other property in the State.
The payment of such privilege tax to the treasurer

shall be accompanied by a sworn report to the auditor, showing the number of miles of telegraph line operated by such company within this State; and in default of the payment of such tax or the making of such report for sixty days after the first day of January, a penalty of double the amount of such tax shall be imposed upon and collected of such defaulting company.

Telephone companies

Sec. 12. Be it further enacted, That section 3943 of the Code shall be amended, so as to read as follows: 3943. The president, secretary or manager of every telephone company, except long-distance telephone companies, owning or operating lines, must annually, on or before the first day of February, make, under oath, to the assessor of the county in which such instruments are located, or such lines are operated, a return of the number of miles of telephone wire in the county belonging to such company, and the value thereof, the number of poles, batteries, instruments and articles of like kind in the county, connected with its business,' and the value thereof, and the amount of the gross receipts of such company from its business done in the county during the preceding tax year; and in case such return is not made by any company within the required time, the assessor must ascertain, from the best information he can obtain, the amount and value of such property, and the amount of such receipts; and on the property and receipts so returned or ascertained, the assessor shall assess the taxes against such company; and when there has been a failure on the part of the company to make a return of such property and receipts within the required time, the assessor shall add to the assessment against such company a penalty of fifty per cent. on the amount thereof. Such assessment, as well as the assessment of other taxable property of such company in the county, must be entered by the assessor in the book of assessments.

Long distance telephone

Sec. 13. Be it further enacted, That section 3974 of the Code shall be amended, so as to read as follows: "3974. The president, secretary, auditor or managing agent, in this State, of every telegraph or long-distance telephone company, whose line, or any part thereof, in within the State, must an-

nually, on or before the first day of February of
each year, make under oath, to the auditor, a re-
turn of the number of miles of telegraph wire in
the State belonging to such company, and the num-
ber of poles, batteries, instruments and articles of
all kinds, in the State connected with its business,
specifying the several counties in which such prop-
erty is situated, and the items of property situated
in each of such counties; and if any of such com-
panies, its officers, or agents, fail to make such
return within the time specified, the auditor must
ascertain such items of property and values from
the best information he can obtain."

Sec. 14. Be it further enacted, That section 3975   Report of au-
of the Code shall be amended, so as to read as fol-   ditor to State
lows: "3975.  Report of auditor to State board,   board
assessment and proceedings thereon.  The auditor
must lay before the State board of assessment, at
its next meeting thereafter, such returns; and
when not made by any company, he must report
to the board the items of property and values of
the company failing to make returns, as ascer-
tained by him; and thereupon the board must pro-
ceed to examine such returns and reports, deter-
mine the value of such property, and assess the same
for taxation, as in the case of assessments of the
property of railroad companies; and it may add to
the assessment against any telegraph or long-dis-
tance telephone company, failing to make returns
within the required time, a penalty of not exceeding
fifty per cent. thereon.  Upon the completion of the
assessment against any telegraph or long-distance
telephone company by the board, the auditor shall
give to the tax assessor of the several counties in
which such property is situated, and the superin-
tendent or managing agent of such company in
this State, the same notification touching such as-
sessment as is required of him in case of assess-
ments against railroad companies; and thereupon
such assessors must act in reference to such as-
sessment, and to the assessment of any other prop-
erty of such company taxable in their counties, as
they are directed to act in case of assessments
against railroad companies by the State board of
assessment."

172                                    REVENUE LAW.                          [Gen. Laws,

Exemption    Sec. 15. Be it further enacted, That paragraph 2 of section 3907 of the Code be amended, so as to read as follows: "2. All bonds of the United States and of this State, all property, real and personal, of the State, and of the counties and municipal corporations in the State; all cemeteries, and all lots in incorporated cities or towns, or within one of any city or town, to the extent of one acre, and all lots one mile or more distant from such cities or towns, to the extent of five acres, with the buildings thereon, when the same are used exclusively for religious worship, for schools or for purposes purely charitable; all school furniture and personal property used exclusively for school purposes; and all property, real or personal, to an extent not exceeding twenty-five thousand dollars in value, that may be used exclusively for agricultural or horticultural associations of a public character."

Licenses    Sec. 16. Be it further enacted, That section 4122 of the Code be amended, so as to read as follows: "Licenses are required of all persons engaged in or carrying on any business or doing any act in this section specified, for which shall be paid for the use of the State, the following taxes, to-wit:

## LICENSES.

### ABSTRACTS.

1st. Abstract companies and persons pursuing the business of furnishing abstracts of title, in towns or cities of twenty thousand inhabitants or more, thirty dollars. In towns and cities from ten to twenty thousand inhabitants, twenty dollars. In towns and cities of less than ten thousand inhabitants, ten dollars.

### AUCTIONEERS.

2d. For each auctioneer, in any city or town of twenty thousand inhabitants or over, a license tax of fifty dollars per annum; in cities or towns of eight thousand inhabitants, and less than twenty thousand, thirty dollars per annum; in cities and

towns of five thousand inhabitants, and less than
eight thousand, twenty dollars per annum; in cities
or towns of more than one thousand and less than
five thousand, five dollars per annum.  The term
'auctioneer, within the meaning of the foregoing
provisions, shall be deemed to apply to any person
selling goods, wares, merchandise, live stock, or
other things of value, at public outcry except as
otherwise herein provided, whether a charge is
made for the same or not.  In the following cases,
sales at public outcry may be made for a compensa-
tion, without license: First. The estate of a decedent
by the personal representative or his agent, ac-
cording to law, or by the provisions of the will.
Second. Property conveyed by deed of trust, mort-
gage or decree or order.  Third. Any person may
sell the agricultural products arising from his own
or other labor under his control, or his real or per-
sonal estate, not purchased or sold on speculation.
Fourth. All sales under legal process.  For tran-
sient or itinerant auctioneers or dealers in goods,
wares and merchandise, other than licensed ped-
dlers, and other than traveling agents or wholesale
dealers in said articles, making sale thereof by sam-
ple, fifty dollars.

## BAGATELLE OR JENNY LIND TABLES.

3d. For each bagatelle or Jenny Lind table, or
any other table or device of any kind from which
any kind of profit is derived by the keeper, fifty
dollars.

## BASE BALL PARK.

4th. For each base ball or foot ball park, where
admission fees are charged, fifty dollars.

## BOTTLERS.

5th. For each bottler or bottling association,
other than bottlers of mineral water, twenty-five
dollars.

LICENSES. [Gen. Laws,

## BILLIARD TABLES.

6th. For each billiard table, for the use of which money or other compensation is charged, and which is not kept in conection with the business of a barroom or drinking saloon, twenty-five dollars.

7th. For each billiard table kept in connection with the business of a barroom or drinking saloon, whether its use be charged for or not, fifty dollars.

## BOWLING ALLEYS.

8th. For bowling or ten-pin alleys, for the use of which money or other compensation is charged, twenty-five dollars, for each alley; and for each bowling or ten pin alley, kept in connection with a drinking saloon, whether compensation is charged or not, twenty-five dollars.

## BILL POSTERS.

9th. For each bill poster or person pursuing the business of posting bills, in cities and towns, of twenty thousand inhabitants or more, tweny-five dollars; in towns and cities from ten to twenty thousand inhabitants, fifteen dollars. In towns and cities of less than ten thousand inhabitants, five dollars.

## BROKERS OR COMMISSION MERCHANTS.

10th. For each broker or commission merchant or dealer in merchandise for a commission, in towns and cities of less than five thousand inhabitants, ten dollars. In towns and cities of five thousand and less than ten thousand inhabitants, fifteen dollars. In towns and cities of ten thousand and less than twenty-five thousand inhabitants, twenty-five dollars. In towns and cities of twenty-five thousand inhabitants or more, fifty dollars.

## BICYCLES.

11th. Each person owning and using a bicycle upon any of the streets of any town or city, or upon any of the public roads of any county within this State, shall pay a privilege tax, in lieu of all other taxes, of twenty-five cents for each bicycle, to be levied for the State only; said license to be taken out as other licenses are required to be taken out, and the payment of such license tax, to be evidenced by the certificate of the probate judge, for which he may charge a fee of not more than ten cents.

12th. Each person or firm keeping bicycles for rent or hire, ten dollars.

## BOOK AGENTS.

13th. Any person other than a merchant paying an advalorem tax on his stock of goods, who shall receive subscriptions for or shall in any manner furnish books, maps, prints, pamphlets, or periodicals, shall pay a privilege tax of ten dollars in each county of this State in which he shall do business. Provided, That this shall not apply to persons distributing or selling by subscription any religious books, pamphlets or periodicals. Provided, further, That no license shall be required of any person who was a Federal or Confederate soldier during the civil war, or to any indigent or disabled person who only sells or furnish books, maps, prints, pamphlets or periodicals to persons residing in the county where such indigent or disabled person resides.

## BREWERS.

14th. For breweries, one hundred dollars. Every agency of a brewery of another State doing business in this State shall pay the same license; and any person, whether retail dealer or not, selling the goods or product of any brewery, shall be deemed and held an agent, unless such brewery shall have an established agency in this State.

LICENSES.

## CIGARETTE DEALERS.

15th. For each dealer in cigarettes, whether principal stock in trade or not, in any place outside of the incorporated towns and villages, five dollars. In incorporated towns and cities of five thousand or less, ten dollars. In towns and cities of more than five thousand, and not exceeding ten thousand inhabitants, twenty dollars. In towns and cities of more than ten thousand and not exceeding twenty thousand inhabitants, twenty-five dollars. In all other places thirty-five dollars.

## CIGAR AND TOBACCO STANDS.

16th. For each cigar dealer, whose principal stock in trade is cigars and tobacco, in towns and cities of twenty thousand or more inhabitants, ten dollars. In towns and cities of less than twenty thousand inhabitants, five dollars.

## CIRCUSES.

17th. For each day's exhibition of a circus, in towns or cities having more than five thousand inhabitants, or within two miles thereof, one hundred and fifty dollars; in all other places, one hundred dollars. Every building, space, tent or area, where feats of horsemanship, or acrobatic sports are exhibited, shall be regarded as a circus. For each exhibition of a pony or dog show, exhibiting in towns and cities having more than ten thousand inhabitants, thirty-five dollars. In all other places, twenty-five dollars. For each exhibition of a side show accompanying a circus, menagerie, or museum, ten dollars.

## COLD STORAGE.

18th. Any person doing a cold storage business, ten dollars.

## COMMERCIAL OR MERCANTILE AGENCIES.

19th. Each and every person, partnership, or corporation, who engage in the business of inquiring into and reporting upon the credit and standing of persons engaged in business in this State, shall pay a license tax of three hundred dollars; and the payment of this tax to the State, evidenced by the receipt of any judge of probate, shall exempt such person, partnership, or corporation, from the payment of such tax in any other county; and payment of such tax shall not, when it has been paid by such person, partnership, or corporation, be required of any of their agents or correspondents in the State.

## CONCERTS OR EXHIBITIONS.

20th. For each concert, musical entertainment, public lecture, or other public exhibition or entertainment, where charges are made for admission, or for the use of any instrument or device, or the participation in any exercise or entertainment, not given for charitable, school, or religious purposes, and not otherwise provided for, five dollars; but the provisions of this subdivision shall not apply to exhibitions or entertainments given in theatres, where the owner or manager thereof has taken out a license as owner or manager.

## COLLECTING AGENCIES.

21st. Each collecting agency in towns and cities of twenty thousand inhabitants or more, twenty-five dollars; in towns and cities of less than twenty thousand inhabitants, ten dollars. This tax shall be paid whether such agency has paid the tax as required of commercial, mercantile, mutual benefit, or protective agent or not.

## CONSTRUCTION COMPANIES.

22d. For each construction company doing business in this State, twenty-five dollars.

11

## COMPOUNDERS AND RECTIFIERS.

23d. For compounders and rectifiers of spirituous or vinous liquors, two hundred dollars. Any person who rectifies, purifies or refines distilled spirits or wines by any process, or who mixes distilled spirits or wines with any chemicals, or compounds liquors for sale under any name, shall be deemed a compounder and rectifier.

## COTTON BUYERS.

24th. Each person engaged in the business of buying cotton, other than merchants buying from their customers who are indebted to them, and officers of cotton factories in this State buying cotton for their own factories, ten dollars.

## CORPORATIONS.

25th. All corporations doing business in this State, whether organized in this State or another State or county, not otherwise specifically required to pay a license tax, shall pay annually the following privilege taxes: Corporations whose paid up capital stock is under $10,000, ten dollars. Corporations whose paid up capital stock exceeds $10,000, and does not exceed fifty thousand dollars, twenty-five dollars; when the paid up capital stock exceeds $50,000 and not over one hundred thousand dollars, forty dollars; where the paid up capital stock exceeds one hundred thousand dollars and does not exceed two hundred thousand, seventy-five dollars; where the paid up capital stock exceeds two hundred thousand dollars, and does not exceed three hundred thousand dollars, one hundred and twenty-five dollars; where the paid up capital stock exceeds three hundred thousand dollars and does not exceed four hundred thousand dollars, one hundred and seventy dollars; where the paid up capital stock exceeds four hundred thousand dollars and does not exceed five hundred thousand dollars, two hundred dollars; where the paid up capital stock exceeds five hundred thousand dollars and does not exceed one million

dollars, three hundred dollars; where the paid up capital stock exceeds one million dollars, five hundred dollars. When application is made for the license herein provided, it shall be accompanied by the affidavit of the president or other chief officer of the corporation showing the amount of the capital stock of such corporation, but the payment of this tax in one county in the State, as evidenced by the license or official certificate of the judge of probate shall be sufficient: Provided, That the provisions of this subdivision shall not apply to banks and banking institutions regularly organized as such.

## COAL OR COKE AGENTS OR DEALERS.

26th. Each person, firm or corporation, or their agents, who deal in coal or coke, in towns or cities of twenty thousand or more inhabitants, twenty dollars; in towns and cities over five thousand inhabitants and less than twenty thousand inhabitants, ten dollars. In towns and cities of five thousand inhabitants or less, five dollars. Provided, This shall not apply to persons or companies who sell in quantities of five bushels, or less, or persons who mine their own coal and sell the same in wagon load lots.

## CARDS, DEALERS IN.

27th. For each dealer in playing cards, five dollars.

## CANE RACKS.

28th. (See devices).

## DISTILLERS.

29th. For distillers of spirituous liquors, twenty-five dollars; but this shall not apply to the distilling of fruits.

## DOG SHOWS.

30th. (See circuses).

## DETECTIVE AGENCIES.

31st. For each detective agency, company or corporation doing business in this State, fifty dollars.

## DEVICES.

32d. For each device used by persons as a source of profit to themselves, such as throwing at wooden figures, or any object of like character, cane racks, knife racks, striking an object to test the strength, blowing to test the lungs, or other device of like character, for each county in which it is operated, twenty-five dollars. But this subdivision shall not be so construed as to legalize the operation of any device which is now prohibited by law.

## DUMMY AND ELECTRIC RAILWAYS.

33d. For each dummy railroad or electric railroad or railway, being operated in this State, the following license taxes: In counties of forty thousand inhabitants or over, fifty dollars; in counties of thirty thousand inhabitants and less than forty thousand, forty dollars; in counties of less than thirty thousand inhabitants, ten dollars.

## DICE AND DICE BOXES AND DOMINOES.

34th. For each table or device, or set of domino bones, kept in connection with a barroom or drinking saloon for use in playing the game commonly known as dominoes, twenty-five dollars; and for each dice-box and dice kept in a barroom or drinking saloon, twenty-five dollars.

## ELECTRIC LIGHT, GAS AND WATER WORKS.

35th. For each water works company or corporation, electric light and power company or corporation, gas company or corporation operated by a person or company or corporation for public uses, other than a municipality, shall pay to the State the following license taxes: In cities or towns over twenty thousand inhabitants, one hundred dollars; in cities or towns of ten thousand inhabitants, and less than twenty thousand, fifty dollars; in cities

and towns of five thousand inhabitants and less than ten thousand, twenty-five dollars; in cities or towns of less than five thousand inhabitants, fifteen dollars.

## EYE GLASSES.

36th. (See peddlers).

## EXPRESS COMPANIES.

37th. (Express companies, see Sec. 24).

## FEATHER RENOVATORS.

38th. For each person, firm or agent, soliciting or engaged in cleaning and renovating feathers, in each county, ten dollars.

## FEES.   (See also Stocks and Bonds.)

39th. For dealers in securities, such as notes, accounts, judgments, witness tickets, in counties of fifty thousand inhabitants or over, thirty dollars; in counties of thirty to fifty thousand inhabitants, fifteen dollars; in counties of fifteen to thirty thousand inhabitants, ten dollars; in counties of less than fifteen thousand inhabitants, five dollars. This tax shall apply to the showing of any evidence of indebtedness; but no broker who has paid a privilege tax as such, shall be required to pay this tax.

## FERRIES AND TOLL BRIDGES.

40th. For each toll-bridge, or bridges where thoroughfare tolls are charged for animals or vehicles crossing the same, or ferry, when not within two miles of the corporate limits of a town or city of two thousand inhabitants, where the income is more than three hundred dollars, and less than six hundred dollars per annum, five dollars; for same, where income is over six hundred dollars per annum, ten dollars; for same, in or within two miles of the corporate limits of any town or city of two thousand inhabitants, and less than five thousand,

fifty dollars; for same, in or within two miles of the corporate limits of a town or city of five thousand inhabitants or more, seventy-five dollars.

## FLYING JENNIES.

41st. The operator of set of flying jennies, called also 'hobby horses,' and 'merry-go-rounds,' shall pay to the State the following license tax: In cities and towns of twenty thousand inhabitants or over, or within one mile of such, for each week, five dollars; or for each month, ten dollars; or for each year, thirty dollars; in cities or towns of less than twenty thousand inhabitants, or within one mile of such, for each week, two dollars and fifty cents; for each month, five dollars; for each year, twenty dollars.  In any locality in the State, other than is provided above, for each week, one dollar; or each month, two dollars and fifty cents; or for each year, ten dollars.

## FUTURES, DEALERS IN.

42d. For each person or firm engaged in the business of buying or selling futures for speculation, or on a commission, one hundred dollars; but this shall not be held to legalize any contract which would otherwise be invalid.

## FORTUNE TELLERS.

43d. For each fortune teller, five dollars.

## FRUIT STANDS.

44th. For each fruit stand, in cities and towns over ten thousand inhabitants, five dollars.  In other places, two dollars and fifty cents.

## GYPSIES AND TRADERS.

45th. For each company of traders, usually known as gypsies, ten dollars for each county.

## HORSE DEALERS.

46th. For each person or firm, bringing into any county of this State, for sale, any horses, mules, jacks, or jennets, by the car load, ten dollars on each car: to be paid in the county in which such stock is offered for sale.

## INSURANCE COMPANIES.

47th. For each insurance company filing copy of charter, or deed of settlement, and financial statement, one hundred dollars; to be paid to the insurance commissioner, as prescribed in section 2601 of the Code of 1896. And all taxes and fees shall be paid as is in said section provided. And this act does not amend or repeal in any way the law now existing as to insurance companies.

48th. For each insurance company doing a banking business, in addition to other special tax, fifty dollars.

## ICE FACTORIES.

49th. For each ice factory, with a capacity of ten tons per day, twenty-five dollars; for each ice factory with a greater capacity than ten tons per day, fifty dollars.

## ITINERANT TRADERS, AUCTIONEERS, AND DEALERS.

50th. For transient, or itinerant auctioneers, or traders, or dealers in goods, wares and merchandise, other than licensed peddlers, and other than traveling agents of wholesale dealers in said articles, making sale thereof by sample, fifty dollars; and this tax shall apply to all dealers who are migratory and do not pay an ad valorem tax.

## KNIFE AND CANE RACKS.

51st. Knife and cane racks.  (See devices).

184          LICENSES.          [Gen. Laws,

## LAUNDRIES.

52d. Each laundry, other than those run by hand power, ten dollars; this shall apply to laundries run by hotels for profit, and shall not apply to laundries in towns and villages of less than one thousand inhabitants.

## LIGHTNING ROD AGENTS.

53d. Each company or person who sells, or delivers or erects lightning rods in this State, shall pay to the State a license tax of fifty dollars. The payment of this tax to the State, evidenced by the receipt of any judge of probate, shall exempt such company, or person, from the payment of such tax in any other county; but in each county in which such company, or person, carries on such business, a license tax of ten dollars shall be paid for county purposes.

## LEGERDEMAIN OR SLEIGHT-OF-HAND.

54th. For each exhibition of feats of legerdemain, or sleight-of-hand, or other exhibition or entertainment of like kind, ten dollars.

## LIQUORS, DEALERS IN.

55th. For the retail of spirituous, vinous or malt liquors, on any steamboat, or other water craft, or any sleeping, dining, or buffet car, two hundred and fifty dollars, for which the State shall have a preferred lien on such steamboat, or other water craft, and cars named; and such lien may be enforced whenever any such liquors are retailed by any person on such steamboat, or other water craft, or cars, with the knowledge or consent of the captain, or conductor, without having first procured a license therefor, as provided by law; and the tax collector of any county in which such steamboat, or other water craft, may ply, or cars run, is required to enforce such lien, in the same manner, and by the same proceedings, as are authorized for the collection of taxes on steamboats and on railroad cars.

For retailers of spirituous, vinous, or malt liquors, except as hereinafter provided, in any city, town, village, or any other place of less than one thousand inhabitants, one hundred and seventy-five dollars; in any city, town or village of more than one thousand inhabitants, and less than three thousand inhabitants, two hundred and twenty-five dollars; in any city containing three thousand inhabitants or more, and less than ten thousand inhabitants, three hundred dollars; and in any city of more than ten thousand inhabitants, three hundred and fifty dollars. But dealers in lager beer exclusively shall be charged one-fourth of the above rates. Any person who pays for and takes out a license as a retailer, shall not be required to pay for, and take out a license as a wholesale dealer in such liquors; and when a retail license is taken out, after the first day of January, and before the first day of July, the price of the license shall be the same as for a license for twelve months. Any person who sells, or disposes, of spirituous, vinous, or malt liquors, or intoxicating bitters, in any quantity less than a quart, shall be deemed a retail dealer: Provided, Nothing in this paragraph shall be so construed as to alter, repeal, or modify any license now authorized and required to be paid to any district, city or municipality, or for municipal purposes.

For wholesale dealers in spirituous, vinous, or malt liquors in any place, three hundred and fifty dollars. Any person dealing in said articles, who shall sell, barter, or exchange, or in any way dispose of, or permit to be taken, spirituous, vinous or malt liquors, in any quantity less than one quart, or who shall permit the same to be drunk by the glass, or single drink, in or about his place of business, shall be deemed a retail dealer; and any dealer so disposing of spirituous, vinous, or malt liquors, only in the quantity of one quart or more, shall be deemed a wholesale dealer; but any person having taken out a license as retail dealer is authorized to sell at wholesale without additional license.

LICENSES. [Gen. Laws,

Any person engaged in the business of selling cider at retail, or in quantities of less than one gallon, where he is not the manufacturer thereof, whether it be his principal stock in trade or not, shall pay a license tax of ten dollars: Provided, That this shall not apply to retail liquor dealers.

(See also compounders and rectifiers, distillers, brewers.)

## MENAGERIES AND MUSEUMS.

56th. For each exhibition of menagerie or museum, twenty-five dollars. (See also circuses, concerts and exhibitions).

## MACHINE SLOTS.

57th. For each machine such as nickle-in-the-slot or other device of like character, whether the same is charged for or not, two dollars. This shall apply to phonographs, weighing machines, music boxes, etc., having the nickle, or penny in the slot device.

## MERCANTILE AGENCIES.

58th. Mercantile agencies. (See commercial agencies).

## MONEY LENDERS.

59th. Each company, corporation or association doing business in this State, whose sole or principal business is the loaning of money, whether organized in this State, or in another State or country, and which is not elsewhere subjected to a privilege tax in this section shall pay to the State as other license taxes are paid, one hundred dollars. Provided, the provisions of this sub-division shall not apply to banks, or banking institutions, regularly organized as such.

## NEWS COMPANIES.

60th. Each news company doing business in this
State, three hundred dollars.

## OILS.

61st. Each agency, person, firm or corporation,
selling illuminating or lubricating oils at whole-
sale, that is to say, in quantities of twenty-five gal-
lons or more, shall pay a privilege or license tax
to the State, of one-half of one per centum on their
gross sales; and the State tax comissioner, or his
deputy, is authorized and directed to collect and
pay such privilege tax into the State treasury, re-
taining out of the amount collected ten percentum
thereof for the compensation and fees of himself
and deputies for doing said work; and said State
tax commissioner or said deputies, with the ap-
proval of the State board of compromise, may col-
lect and receive a gross sum as said privilege or
license tax from any corporation, firm, person or
agency, selling oils in this State, and said gross sum
may be so received and collected in place of and
in full settlement of said license tax, so that oils
upon which said gross sum has so been paid in full
settlement, shall not be subject to the license tax
imposed by this section. And this license shall run
as other licenses in the State from January to Jan-
uary: Provided, That for the year 1899 three-
fourths only of the annual license shall be charged
and collected; and the State tax commissioner or
his deputies may require sworn statements to be
made by said agencies, persons, firms, or corpora-
tions, of their gross amounts of sales, for the pre-
vious calendar year which may be accepted with
the approval of the State board of compromise for
fixing the amount of said license for the current
year. Any agency, person, firm, or corporation,
failing to make said sworn statement when so re-
quired, forfeits to the State three times the amount
of said license.

## PAWNBROKERS.

62d. For each pawnbroker, fifty dollars.

## PATENT RIGHTS.

63d. Each person who shall sell or offer to sell the right to manufacture, or use, any machinery or other thing patented under the laws of the United States for each county in which he shall sell or offer to sell such patented machinery or other thing, five dollars.

## PEDDLERS.

64th. For each peddler of medicines or other articles of like character, one hundred dollars for each county in which they peddle; and for each peddler of spectacles or eye glasses, five dollars for each county in which they peddle; for peddlers of medicines with vocal or instrumental music, or both, two hundred and fifty dollars for each county in which they peddle; for peddlers in wagon drawn by one horse, or other animal, forty dollars; in a wagon drawn by two horses, or more, or other animals, fifty-five dollars; on a horse, or other animal, twenty-five dollars; on foot, fifteen dollars; when accompanied by singers or performers on any musical instruments, one hundred dollars; but peddlers of tinware only, and peddlers of wooden and stone or clay hollowware only, and tanners who manufacture leather goods and peddle these only, shall not be required to procure license. A peddlers' license shall entitle him to peddle only in the county where it is taken out. Any person may demand of peddlers, itinerant dealers and traveling agents their license, and unless they exhibit the same, or show that they have a right under the law to peddle the articles carried by them, or to carry on the business they are engaged in without a license, such person may and is hereby authorized to arrest such peddlers, itinerant dealer or traveling agent, and carry him before the nearest county court judge, justice of the peace, mayor, recorder, intendant of any town, or notary public exercising the power of a justice of the peace, and such officer as such peddler, itinerant dealer or traveling agent is car-

ried before must, if he finds such person to be dealing without a license, forthwith issue a warrant for his arrest, returnable to any Court of the county having criminal jurisdiction, which warrant may be executed by the sheriff, or by any constable of the county, any city or town marshal, policeman, or any officer having authority to make arrests. It shall, however, be lawful for any person having but one arm or leg, or whose sight has been impaired as a result of exposure, injury or disease during his service in the Confederate army, or any other disabled Confederate soldier who is permanently disabled from any cause, or any person who has lost his eye sight in any way so that he is incompetent to perform manual labor (if he shall secure the certificate of a physician and the certificate of the judge of probate of such facts), to peddle in any county of the State free of license; nor shall this act be so construed as to require a license of peddlers of fish, oysters, game, fresh meats, poultry, fruit and all farm products raised by the seller, nor any dealer in books or other literature. For each peddler of clocks doing business in this State, a State license tax of five hundred dollars, and a county license tax of two hundred and fifty dollars for each county in which such business is carried on. That all the citizens of this State, who have resided here for five years next before the passage of this act, who were soldiers of the Confederate States of America, or engaged in the naval service thereof, and do not own property exceeding in value one thousand dollars, be allowed to peddle any produce or merchandise, in any and all of the counties of this State, except in any incorporated village, town or city, without the payment of the license required of such peddlers. That any such soldiers or sailors desiring such license to peddle, must apply to the judge of probate of any county in this State, and make and submit his proof of having been such soldier, or sailor and if it is sufficient to satisfy said judge, he will issue the license without payment of money therefor and such license shall be authority to peddle such commodities in any of the counties of this

State:  Provided, That under this act there shall
be no peddling of patent medicines.

## PHOTOGRAPHERS.

65th. For each traveling photograph gallery
going from county to county in railroad car, twenty-
five dollars.

For each traveling photographer, traveling in any
other way, ten dollars.

## PISTOL, BOWIE OR DIRK KNIVES.

66th. For dealers in pistol, bowie or dirk knives,
whether principal stock in trade or not, one hun-
dred dollars.

## PISTOL OR RIFLE CARTRIDGES.

67th. For wholesale dealers in pistol or rifle car-
tridges, in towns or cities of twenty thousand or
more inhabitants, ten dollars.  In all other places,
five dollars:  Provided, That the wholesale dealers
license shall entitle them to sell at retail.

## PUBLIC HALLS.

68th. For each public hall, let to hire, twenty-five
dollars.

## POOL TABLES.

69th. For each pool table upon which the game
of pin pool is played, one hundred dollars.

For each table upon which a game of pool is
played with fifteen balls, more or less, and not pin
pool, for the use of which money or other thing of
value is charged or when kept in connection with a
bar-room or drinking saloon, whether its use is
charged for or not, fifty dollars.

## PLUMBERS OR GAS-FITTERS.

70th. For each person or firm doing the business
of a plumber and gas fitter, or either, in towns or
cities of twenty thousand or more inhabitants, ten
dollars.

In all other places, five dollars.

# EXHIBIT 44

record, book, paper, contract, return, or other document, or of
the official statement of any account between him and the state,
in the office of the auditor or treasurer, certified by the auditor,
if the original is in his office, or by the treasurer, if in his office,
under the great seal of the state, shall be received as evidence
in any case in which the original would be competent, unless
the defendant shall deny under oath that he made or executed
such original.

**627. Assessor and collector may contract for stationery, printing, etc.**—The tax-collector and tax-assessor are authorized to purchase necessary books and stationery, and to contract for the necessary printing in their respective offices, with the approval of the court of county commissioners. *Ib. sec. 132.*

**628. Penalty against officer failing to pay over money collected.**—Upon a verdict being returned in favor of the state, in any suit brought by the state against any officer charged with the collection of any revenue for the state, and his sureties, or either, for the recovery of any such revenue collected by him, a judgment must be rendered for the amount of such verdict, and twenty per cent. thereon. * *Ib. sec. 41.*

---

# CHAPTER 9.

### LICENSES.

ARTICLE 1.—Business and callings for which licenses are required; prices of licenses.

2.—Issue and expiration of licenses, and other general provisions.

## ARTICLE I.

#### BUSINESS AND CALLINGS FOR WHICH LICENSES ARE REQUIRED; PRICES OF LICENSES.

**629. Persons required to take out licenses, and prices to be paid therefor.**—Licenses are required of all persons engaging in, or carrying on any business, or doing any act in this section *Dec. 12, 1884, p. 3, sec. 14.*

---

* On Feb. 18, 1887, "An act to amend section 499 of the Code of Alabama," was approved (Pamph. Acts 1886–7, p. 143); and the section, as amended, is as follows:

"Section 499. **Cities and towns may adopt provisions of this chapter.**—Any incorporated city or town in this state may, by an ordinance, adopt the provisions of this chapter, regulating the assessment and collection of taxes by such city officers or agents, so far as the same may be applicable, and shall have the same right to sell property and make titles to property sold for taxes, as is provided for collecting state and county taxes; but any such city or town must first, by ordinance, adopt such parts of this chapter for said purposes as they desire to put in force; but no city (except Mobile, Montgomery, Marion, Brewton, Cullman and Selma), or town, or county shall assess, levy or collect any license tax on any business or occupation, upon which the state does not assess, levy, or collect such license tax. Nothing herein contained shall affect the provisions of the act for the reduction and funding of the debt of the city of Mobile, approved March 9th, 1875. The city council of Opelika may assess, levy and collect a license tax on banks or bankers, the keepers of livery stables, of meat markets, and those engaged in the business of running drays and hacks for hire." The provisions of the chapter referred to (chapter 2 of title VII. of part 1 of Code of 1876) were superseded by subsequent legislation embodied in this Code, in which no provision of like import to that embraced in section 499 of Code of 1876 was contained; and hence, it was omitted by the commissioners from this Code. The chapter referred to corresponds, in subject-matter, with this title of this Code.

specified, for which shall be paid, for the use of the state, the following taxes, to-wit:

Subd. 1.

1. For each public race-track, at or within five miles of any city or town containing less than five thousand inhabitants, one hundred dollars; at or within five miles of any city or town containing more than five thousand inhabitants, two hundred dollars.

Subd. 2.

2. For the retail of spirituous, vinous, or malt liquors, on any steamboat or other water-craft, or on any sleeping, dining, or buffet-car, two hundred and fifty dollars, for which the state shall have a preferred lien on such steamboat or other water-craft, and cars named; and such lien may be enforced whenever any such liquors are retailed by any person on such steamboat or other water-craft, or cars, with the knowledge or consent of the captain, or conductor, without having first procured a license therefor, as provided by law; and the tax-collector of any county in which such steamboat or other water-craft may ply, or cars run, is required to enforce such lien in the same manner, and by the same proceedings, as are authorized for the collection of taxes on personal property.

Subd. 3.

3. For retailers of spirituous, vinous, or malt liquors in any city, town, village, or any other place, of less than one thousand inhabitants, one hundred and twenty-five dollars; in any city, town, or village of more than one thousand, and less than three thousand inhabitants, one hundred and seventy-five dollars; and in any city or town containing three thousand or more, and less than ten thousand inhabitants, two hundred and fifty dollars; and in any city of more than ten thousand inhabitants, three hundred dollars. But dealers in lager beer exclusively shall be charged one-fourth of the above rates. Any person who pays for and takes out a license as a retailer, shall not be required to pay for, and take out a license as a wholesale dealer in such liquors; and when a retail license is taken out after the first day of January, and before the first day of July, the price of the license shall be the same as for a license for twelve months. Any person who sells or disposes of spirituous, vinous, or malt liquors, or intoxicating bitters, in any quantity less than a quart, shall be deemed a retail dealer.

Subd. 4.

4. For wholesale dealers in spirituous, vinous, or malt liquors in any place, two hundred dollars. Any person dealing in said articles, who shall sell, barter, or exchange, or in any way dispose of, or permit to be taken, spiritous, vinous, or malt liquors, in any quantity less than one quart, or who shall permit the same to be drunk by the glass, or single drink, in or about his place of business, shall be deemed a retail dealer; and any dealer so disposing of spirituous, vinous, or malt liquors, only in the quantity of one quart or more, shall be deemed a wholesale dealer.

Subd. 5.

5. For compounders and rectifiers of spirituous or vinous liquors, two hundred dollars. Any person who rectifies, purifies, or refines distilled spirits or wines, by any process, or who mixes distilled spirits or wines with any chemicals, or compounds liquors for sale under any name, shall be deemed a compounder and rectifier.

# EXHIBIT 45

16

owner thereof; and upon a failure to comply with the
conditions of such delivery bond, the proceedings
thereon shall be as at present prescribed by law in
case of forfeited delivery bonds.

SEC. 5. *Be it further enacted*, That this Act shall
not apply to fiduciaries, or defaulters, or tax sales; and
that it take effect from and after its passage.

EDWIN A. KEEBLE,
*Speaker of the House of Representatives.*
EDWARD S. CHEATHAM,
*Speaker of the Senate.*

Passed, February 5, 1862.

## CHAPTER 22.

AN ACT to dismiss suits in certain cases.

SECTION 1. *Be it enacted by the General Assembly of
the State of Tennessee*, That all suits now pending against
citizens of this State, for a violation of Section 4747
of the Code of Tennessee, shall be dismissed by the
Court before whom the same are pending: *Provided*,
the defendant pay or secure the cost.

EDWIN A. KEEBLE,
*Speaker of the House of Representatives.*
EDWARD S. CHEATHAM,
*Speaker of the Senate.*

Passed, February 4, 1862.

## CHAPTER 23.

AN ACT to amend the law respecting Bowie Knives and other weapons.

*Be it enacted by the General Assembly of the State of
Tennessee*, That all laws forbidding the importation,
manufacture, selling, or giving away of Bowie knives

17

or other weapons, and all laws prohibiting the carrying
of pistols, Bowie knives, or other weapons, openly
and unconcealed, be suspended during the existing
war.

EDWIN A. KEEBLE,
*Speaker of the House of Representatives.*
EDWARD S. CHEATHAM,
*Speaker of the Senate.*

Passed, October 30, 1861.

---

## CHAPTER 24.

AN ACT to amend the Fee Bill and for other purposes.

SECTION 1. *Be it enacted by the General Assembly of
the State of Tennessee,* That the Clerks of the County
Courts of this State be entitled to receive and they are
hereby allowed fifty cents for taking the Bond required
to be executed by the fourth Section of an Act passed
by the General Assembly of the State of Tennessee, on
the 15th day of March, 1860, entitled an Act to prevent
the adulteration of spirituous liquors in this State.

SEC. 2. *Be it further enacted,* That said fee shall be
paid by the person executing the Bond, and that this
Act take effect from and after its passage.

SEC. 3. *Be it further enacted,* That when any of the
Clerks of the Circuit Courts in this State are in the
army of the State or of the Confederate States of
America, or have been for any part of the fiscal year
ending the first day of September last, and their
deputies failed to make a sworn statement to the
Comptroller of the treasury of the taxes and revenue
belonging to the public treasury, and received by them
on or before the first day of October last, or when they
failed to pay over to the Treasurer of the State the
taxes and revenue received by them, and belonging
to the public treasury, on or before the first day of

3

# EXHIBIT 46

[  135  ]

## CHAPTER XCV.

AN ACT to change the day in which the Criminal Docket shall be taken up for Marshall County, Tennessee.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That an Act passed March 22nd, 1877, entitled, "An Act to repeal the Act establishing a Criminal Court in the counties of Williamson, Maury, Giles and Marshall," be so amended that Section 5 of said Act shall hereafter read, that the Criminal Docket shall be taken up on the second Monday of the term of court, instead of the first Thursday of the term, as heretofore fixed by said Act, and that the second Monday of the term shall be the day on which the criminal part of said term of court shall commence for said Marshall County hereafter.

SEC. 2. *Be it further enacted,* That this Act take effect from and after its passage, the public welfare requiring it.

Passed March 14, 1879.

H. P. FOWLKES,
*Speaker of the House of Representatives.*
J. R. NEAL,
*Speaker of the Senate.*

Approved March 17, 1879.

ALBERT S. MARKS,
*Governor.*

———

## CHAPTER XCVI.

AN ACT to Prevent the Sale of Pistols.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That it shall be a misdemeanor for any person to sell, or offer to sell, or to bring into the

[ 136 ]

State for the purpose of selling, giving away, or otherwise disposing of belt or pocket pistols, or revolvers, or any other kind of pistols, except army or navy pistol; *Provided* that this Act shall not be enforced against any persons now having license to sell such articles until the expiration of such present license.

Sale of pistols forbidden.

SEC. 2. *Be it further enacted,* That any person guilty of a violation of this Act, shall be subject to presentment or indictment, and on conviction, shall pay a fine of not less than twenty-five nor more than one hundred dollars, and be imprisoned at the discretion of the court.

Penalty.

SEC. 3. *Be it further enacted,* That it shall be the duty of the Criminal and Circuit Judges, and other Judges whose courts have criminal jurisdiction, to give this Act specially in charge to the grand jury at each term of the court.

Judges to charge.

SEC. 4. *Be it further enacted,* That it shall be the duty of the grand juries to send for witnesses, in all cases where they have good reason to believe, that the provisions of this Act have been violated.   And upon satisfactory evidence of its violation, they shall make presentments of the same without a prosecutor.

Grand jury powers.

SEC. 5. *Be it further enacted,* That all laws and parts of laws in conflict with this Act be, and the same are hereby repealed.

SEC. 6. *Be it further enacted,* That this Act shall take effect from and after its passage, the public welfare requiring it.

Passed March 14, 1879.

H. P. FOWLKES,
*Speaker of the House of Representatives.*
J. R. NEAL,
*Speaker of the Senate.*

Approved March 17, 1879.

ALBERT S. MARKS,
*Governor.*

---

## CHAPTER XCVII.

AN ACT to amend the Law Taxing Wagons.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee,* That sub-Section 38 of Section 553a

# EXHIBIT 47

buildings and grounds shall hereafter be used exclusively for State purposes, the title to the same being in the State.

SEC. 2.    That this act take effect and be in force thirty days after its passage, allowing that time for said county to vacate said rooms, &c.

Approved, April 1st, 1881.

---

## *No. XCVI.*

*AN ACT To Preserve the Public Peace and Prevent Crime.*

SECTION

1  Carrying of certain weapons constituted a misdemeanor; *proviso,* excepting officers, and persons journeying.
2  Carrying such weapons otherwise than in the hand, a misdemeanor.
3  Selling or disposing of such weapons, a misdemeanor.
4  Violation of act punishable by fine from $50 to $200.
5  Justices of the Peace knowing of violations of provisions of act and refusing to proceed, to be fined and removed.
6  Same penalty denounced any other officer knowing of such offense.
7  Violators of act how proceeded against.
8  Conflicting laws repealed; act in force 90 days after passage.

*Be it enacted by the General Assembly of the State of Arkansas:*

SECTION 1.    That any person who shall wear or carry, in any manner whatever, as a weapon, any dirk or bowie knife, or a sword, or a spear in a cane, brass or metal knucks, razor, or any pistol of any kind whatever, except such pistols as are used in the army or navy of the United States, shall be guilty of a misdemeanor; *Provided,* That officers, whose duties require them to make arrests, or to keep and guard prisoners, together with the persons summoned by such officers, to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this act. *Provided, further,* That nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey, or upon his own premises.

Sec. 2.   Any person, excepting such officers, or persons on a journey, and on his premises, as are mentioned in section one of this act, who shall wear or carry any such pistol as  in [is] used in the army or navy of the United States, in any manner except uncovered, and in his hand, shall be deemed guilty of a misdemeanor.

Sec. 3.   Any person who shall sell, barter or exchange, or otherwise dispose of, or in any manner furnish to  any person *any person* any dirk or bowie knife, or a sword or a spear in a cane, brass or metal knucks, or any pistol, of any kind whatever, except  such as  are used in  the army or  navy of the  United States, and known as the navy pistol, or any kind of cartridge, for any pistol, or any person who shall keep  any such arms or cartridges for sale, shall be guilty of a misdemeanor.

Sec. 4.   Any person convicted of a violation of any of the provisions of this act, shall be punished  by a  fine of not less than fifty nor more than two hundred dollars.

Sec. 5.   Any justice of  the peace in this State, who, from his own knowledge, or  from  legal information, knows, or has reasonable grounds to believe, any person guilty of the violation of the  provisions of this  act, and shall fail or refuse to proceed against such person, shall  be deemed guilty of  a nonfeasance in  office, and upon  conviction thereof,  shall be punished by  the same fines and  penalties as  provided in  section four of this act, and shall be removed from office.

Sec. 6.   Any officer in this State, whose duty it is to make arrests, who may have personal  knowledge of  any person carrying arms contrary to the provisions of this act, and shall fail or refuse to arrest such person and  bring him to trial, shall be punished, as provided in section four of this act.

Sec. 7.   All persons violating any of the provisions of this act may be prosecuted in any of  the courts of  this State, having jurisdiction to try the same.

Sec. 8.   All laws or parts of laws, in conflict with the provisions of this act are hereby repealed, and this act to take effect and be in force ninety days after its passage.

Approved, April 1st, 1881.