Rob Bonta
Attorney General of California
R. Matthew Wise
Supervising Deputy Attorney General
Katrina Uyehara
Deputy Attorney General
State Bar No. 349378
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7867
  Fax: (916) 324-8835
  E-mail: Katrina.Uyehara@doj.ca.gov
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KNIFE RIGHTS, INC., ELIOT KAAGAN, JIM MILLER, GARRISON HAM, NORTH COUNTY SHOOTING CENTER, INC., and PWGG L.P.,**<br><br>                    Plaintiffs,<br><br>v.<br><br>**CALIFORNIA ATTORNEY GENERAL ROB BONTA,**<br><br>                    Defendant. | 3:23-cv-00474-JES-DDL<br><br>**DEFENDANT ATTORNEY GENERAL ROB BONTA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      April 22, 2024<br>Time:     10:00 a.m.<br>Dept:     4B<br>Judge:    The Honorable James E. Simmons, Jr.<br>Trial Date: None set<br>Action Filed: 3/15/2023 |

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 2

    I.    Plaintiffs Have Failed to Establish That the Subset of Switchblades at Issue Are in Common Use for Self-Defense .............. 2

        A.    Plaintiffs Fail to Produce Sufficient Evidence to Satisfy Their Burden at *Bruen's* Textual Step ......................................... 3

        B.    The Switchblade Knives Regulated by the Challenged Statutes Are Dangerous and Unusual ........................................... 7

    II.    *Bruen* Requires This Court to Engage in an Independent Historical Analysis and Does Not Require a Historical Twin or Dead Ringer ............................................................................................ 8

        A.    *Bruen* Requires Analogical Reasoning, Not a Historical Twin or Dead Ringer ................................................................... 8

        B.    *Bruen* Endorsed the Use of Analogues Beyond the Founding Era ..................................................................................... 9

        C.    The Challenged Statues Fit Comfortably Within a Long Tradition of Regulating Dangerous and Deadly Weapons ....... 10

Conclusion .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baird v. Bonta*
   81 F.4th 1036 (9th Cir. 2023) ................................................................................ 9

*Bevis v. City of Naperville*
   85 F.4th 1175 (7th Cir. 2023) ................................................................................ 3

*Caetano v. Massachusetts*
   577 U.S. 411 (2006) ........................................................................................... 5, 6

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*
   664 F. Supp. 3d 584 (D. Del. 2023) ...................................................................... 2

*District of Columbia v. Heller*
   554 U.S. 570 (2008) ..................................................................................... *passim*

*Fyock v. Sunnyvale*
   779 F.3d 991 (9th Cir. 2015) ................................................................................ 7

*Hartford v. Ferguson*
   2023 WL 3836230 (W.D. Wa. 2023) ................................................................... 2

*Nat'l Ass'n for Gun Rights v. Lamont*
   ___ F.Supp.3d ___ (D. Conn., Aug. 3, 2023) .................................................. 3, 5

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
   597 U.S. 1 (2022) ......................................................................................... *passim*

*Ocean State Tactical, LLC v. Rhode Island*
   95 F.4th 38 (1st Cir. March 7, 2024) ................................................................ 3, 5

*Or. Firearms Fed'n v. Kotek*
   2023 WL 4541027 (D. Or. July 14, 2023) ........................................................... 2

*Oregon Firearms Fed'n Inc. v. Brown*
   644 F. Supp. 3d 782 (D. Or. Dec. 6, 2022) .......................................................... 3

*Rupp v. Bonta*
   2024 WL 1142061 (C.D. Cal. March 15, 2024) .......................................... 2, 5, 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Alaniz*
   69 F.4th 1124 (9th Cir. 2023) .................................................................. 2, 3, 7, 9

*United States v. Perez-Garcia*
   __ F.4th ___ (9th Cir. March 18, 2024) ............................................................. 8

**STATUTES**

California Penal Code § 17235 ................................................................................ 6

## INTRODUCTION

California's switchblade laws prohibit the public possession, carry, sale, loan, or transfer of switchblade knives with blades two inches in length or longer, allowing a range of other weapons for lawful self-defense while protecting public safety. Plaintiffs mount a facial challenge to these laws. But their Second Amendment claim fails at both steps of the text-and-history analysis set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

At the threshold stage, Plaintiff fail to acknowledge that they bear the burden of showing that the specific subset of switchblade knives at issue are implicated by the plain text of the Second Amendment. As a result, Plaintiffs do not present any evidence addressing whether those specific knives are in common use. Instead, they merely provide a list of automatically opening knife models and data on pocketknife ownership in the United States generally—neither of which are relevant to the knives actually regulated by the challenged laws. Nor do Plaintiffs present any evidence on the primary use or purpose of the regulated knives, such as whether the knives are suitable for ordinary self-defense. Because Plaintiffs fail to show that the challenged laws proscribe a type of weapon that is in common use for self-defense, they have not met their burden at *Bruen*'s textual step.

And Plaintiffs attempt to avoid *Bruen*'s second step altogether by erroneously contending that this Court need not engage in any historical analysis because, in their view, "only dangerous and unusual arms can be categorically banned." ECF 35 at 16. On the contrary, *Bruen* explicitly directs courts to conduct the historical analysis specific to the challenged regulation before it; indeed, the Supreme Court acknowledged that it did not conduct an exhaustive historical analysis of the full scope of the Second Amendment in *Heller* or *Bruen*. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 31 (2022). Here, California's switchblade laws fit comfortably within a tradition of regulating the possession and carry of bladed and dangerous weapons dating back to the Founding and antebellum eras.

For these reasons, and those set forth below, this Court should grant Defendants' motion for summary judgment.

## ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE SUBSET OF SWITCHBLADES AT ISSUE ARE IN COMMON USE FOR SELF-DEFENSE

Plaintiffs make two errors in characterizing *Bruen*'s textual step. First, they mistakenly place the burden on the government. ECF 35 at 5. But under *Bruen*, it is Plaintiffs' burden at the first stage of the analysis. *Bruen*, 597 U.S. at 24 ("When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The *government must then* justify its regulation" by historical analogy. (emphasis added)); *see also Hartford v. Ferguson,* 2023 WL 3836230, *3 (W.D. Wa. 2023) (assuming "that Plaintiffs can produce evidence in support of *Bruen*'s first requirement" and then shifting the burden to government at step two); *Or. Firearms Fed'n v. Kotek*, 2023 WL 4541027, at *5 (D. Or. July 14, 2023) ("First, a plaintiff challenging a firearm regulation must show the plain text of the Second Amendment covers the conduct regulated by the challenged law."); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 664 F. Supp. 3d 584, 593 (D. Del. 2023) (finding that "Plaintiffs have shown" that some of the challenged weapons were in common use, and then shifting the burden to the government at step two).

Second, Plaintiffs argue that the weapon may be in common use for any unspecified "lawful purpose" and claim that *Bruen* "acknowledged that a showing of actual instances of self-defense use is not necessary for Second Amendment protection." ECF 35 at 8. The Ninth Circuit has settled this question: when analyzing common use, the correct inquiry is "whether the weapon at issue is 'in common use' today *for self-defense*." *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008) (emphasis added)); *see also Rupp v. Bonta*, 2024 WL 1142061, at *8 (C.D. Cal.

2

March 15, 2024) (following *Alaniz* in placing the common use for self-defense analysis at step one of the *Bruen* framework).[1]

To determine whether a weapon is in common use for self-defense, courts must consider the suitability of, and actual use of, the weapon for lawful self-defense. *See Heller*, 554 U.S. at 629 (explaining the "reasons that a citizen may prefer a handgun for home defense," including that handguns are easier to store in a location that is readily accessible in an emergency, are easier to lift and aim than a long gun, and can be used with a single hand while the other hand dials the police).

### A. Plaintiffs Fail to Produce Sufficient Evidence to Satisfy Their Burden at *Bruen*'s Textual Step

The specific subset of switchblades that are regulated by the challenged statutes do not constitute "Arms" protected by the Second Amendment because they are not commonly used for self-defense. *Bruen* makes clear that the test for Second Amendment protection of a particular weapon is common use, not common ownership. *See* 597 U.S. at 38 (referring to "commonly used firearms for self-defense"); *see also Ocean State Tactical*, 95 F.4th at 50 ("Depriving citizens of a device that is virtually never used in self-defense imposes less of a burden on that right than does banning a weapon that is, in fact, traditionally used in self-defense").

Plaintiffs do not provide any evidence that any switchblades—much less the particular switchblades California regulates—are in common use for self-defense

---

[1] Other out-of-circuit courts have also held that the correct inquiry is whether a weapon is in common use for self-defense. *See Bevis v. City of Naperville*, 85 F.4th 1175, 1193 (7th Cir. 2023) (recognizing that the singular lawful purpose protected under the Second Amendment is the right to individual self-defense); *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 50 (1st Cir. March 7, 2024) ("*Bruen*…directs us in no uncertain terms to assess the burden imposed by modern gun regulations on the right of armed self-defense"); *see also Nat'l Ass'n for Gun Rights v. Lamont*, ___ F.Supp.3d ___, 2023 WL 4975979, at *13 (D. Conn., Aug. 3, 2023); *see also Oregon Firearms Fed'n Inc. v. Brown*, 644 F. Supp. 3d 782 (D. Or. Dec. 6, 2022).

today. To the contrary, the record in this case clearly establishes that switchblades are not even suitable for "ordinary self-defense." *Bruen*, 597 U.S. at 60. Both Plaintiffs' and Defendant's experts agree that extensive training is required to use a switchblade knife safely and effectively for self-defense. *See* Escobar Decl., ¶ 27, 31, 40; Janich Transcript at pp. 33, 36.[2] A self-defense situation involving a switchblade is inherently a close-combat encounter—one that will likely require the cutting of tissue, ligaments, and muscles, and result in subsequent blood loss. Escobar Decl., ¶ 34–35; *see also* Ex. Janich Transcript at pp. 34–36 (identifying the quadriceps and median and ulnar nerves as prime targets for knife self-defense). The nature of such an encounter raises the significant question of whether an ordinary person would be physically and psychologically capable of effectively using a knife for self-defense. Escobar Decl., ¶ 35–36.[3] In short, a switchblade is a far cry from the "quintessential self-defense weapon" discussed in *Heller* and *Bruen*.[4]

Because Plaintiffs cannot establish that the regulated switchblades are commonly used for self-defense, their claims fail at *Bruen*'s threshold inquiry.

Plaintiffs' declarations stating their preference for using a knife prohibited under the challenged statutes is insufficient to establish common use. ECF 35 at 3. But Plaintiffs cannot rely upon such subjective declarations alone to meet their

---

[2] Plaintiffs argue that this is a misrepresentation of their expert's testimony. ECF 35 at 11. It is not. *See* Ex. Janich Transcript at pp. 31–33 ("Q. In your expert opinion, do you believe it's important for a person to be trained in how to use a knife for self-defense before attempting to use a knife in a real-life self-defense situation? A. Yes. . . . Q. And what kind of training do you believe is necessary? . . . A. It needs to be hands-on training").

[3] Defendant incorporates by reference his arguments on the suitability of switchblades for self-defense, including arguments on the difficulty in deploying the blade and the potential for mechanical malfunction. *See* ECF 36 at 8–10.

[4] Plaintiffs contend that *Heller* rejected the argument that the "use of smaller or different type of knives" is a defense. ECF 35 at 2–3. However, *Heller* was specifically addressing a ban on an entire category of firearms (namely, handguns), and the statues at issue in this case only address a subset of switchblade knives (namely, those with blades two inches or longer and without a detent mechanism). Because California does not impose a wholesale prohibition on all switchblade knives, Plaintiffs' appeal to *Heller* is unpersuasive.

burden. *Rupp*, 2024 WL 1142061, at 16 n. 17 (recognizing that "something more than the number of weapons owned and the subjective intentions of owners is required . . . The Court knows of no other area of constitutional law where an inquiry as to subjective intent, dependent on malleable survey results, is the only touchstone for deciding where the outer bounds of constitutional protections lie"); *see also Lamont*, ___ F.Supp.3d ___, 2023 WL 4975979 at *14 (recognizing the plaintiffs' similar arguments "would mean allowing the analysis to be driven by nebulous subjective intentions"). Moreover, Plaintiffs' testimony that they may possibly choose to utilize one of the regulated switchblades for self-defense does not prove that the subset of switchblade knives is actually in common use for self-defense. *See, e.g. Ocean State Tactical*, 95 F.4th 38, 45 (1st Cir. Mar. 7, 2024) (imagining "Hollywood-inspired scenarios" in which a regulated weapon could theoretically be used in self-defense is not relevant to "how a regulation actually burdens the right of armed self-defense").

Plaintiffs' remaining arguments incorrectly substitute a common ownership standard for the common use test. Plaintiffs rely, in particular, on Justice Alito's concurrence in *Caetano v. Massachusetts* for the proposition that the mere fact that thousands of people own switchblades demonstrates they are in "common use."[5] ECF 35 at 9 (citing *Caetano*, 577 U.S. 411 (2006) (Alito, J., concurring) (per curiam). The First Circuit recently rejected a similar argument in *Ocean State Tactical*, correctly observing that the plaintiffs there erroneously "treat[ed] the concurring opinion as if it were binding authority." 95 F.4th at 51 (recognizing, in

---

[5] And even if Plaintiffs could show that "thousands" of people possess one of the particular switchblades regulated by the challenged statutes "for lawful purposes," that showing would be patently insufficient to establish that the regulated switchblades are in common use. Given that the adult population of the United States was approximately 258.3 million as of 2020,2 "thousands" of individuals owning a particular weapon would not come anywhere close to the number necessary to establish common use. *See, e.g. Rupp, supra*, at 30–31 (holding that ownership by 24.6 million Americans—or 2.59% of the adult population—is not sufficient to establish common use as a matter of law).

addition, that Caetano only addressed stun guns, a non-lethal weapon); *see also Caetano*, 577 U.S. at 420 (Alito, J., concurring) (emphasizing that the case involved non-lethal weapons that were "widely . . . accepted as a legitimate means of self-defense across the country").[6] Plaintiffs make this same error here.

Having misstated the common use standard, Plaintiffs mistakenly rely on national switchblade sale estimates in an attempt to meet their burden. ECF 35 at 14; *see also* ECF 34-1 at 18. But these statistics do not inform the court of how many of those switchblades are being used for self-defense, as Plaintiffs admitted in their motion for summary judgment. ECF 34-1 at 22. Moreover, the sales statistics provided by Plaintiffs are not specific to the particular subset of knives that are regulated by the challenged statutes, and thus have little probative value to the Court's analysis. Plaintiffs' statistics about pocketknives are equally irrelevant and unpersuasive. Not all pocketknives are switchblades, and even fewer are the specific type of switchblades proscribed by the challenged statutes. Pen. Code, § 17235.[7]

Finally, Plaintiffs suggest that automatically opening knives are prevalent in other jurisdictions. ECF 35 at 14; ECF 34-1 at 20–21. This argument again addresses automatically opening knives generally, rather than the specific switchblades that California regulates, and thus is far too overbroad to assist this Court's analysis. Moreover, California need only ensure that its laws pass constitutional muster, not that they mirror the laws of other states.[8] *See* ECF 36-1 at 12.

---

[6] It is not evident that Justice Alito's concurrence even supports a numbers-only approach. The number of stun guns in circulation was in direct response to analysis by the Massachusetts Supreme Judicial Court that observed the number of stun guns was dwarfed by the number of firearms in circulation. *Caetano*, 577 U.S. at 420 (Alito, J., concurring) (recognizing that hundreds of thousands owning stun guns was "[t]he more relevant statistic").

[7] A pocketknife, a folding knife, a one-handed knife, an automatically opening knife, or a knife that shares a combination of these features is legal under section 17235's definition of "switchblade knife."

[8] Plaintiffs argue that there is no material factual dispute that automatically opening knives are commonly owned. This is incorrect. *See infra* pp. 3–6.

In sum, Plaintiffs have failed to meet their threshold burden of establishing that the specific type of switchblades regulated by the challenged statutes are in common use for self-defense.

### B. The Switchblade Knives Regulated by the Challenged Statutes Are Dangerous and Unusual

In addition to being ill-suited for self-defense, the subset of switchblade knives that are regulated by the challenged statutes fall outside the scope of the Second Amendment for the separate reason that they are dangerous and unusual weapons. Plaintiffs mistakenly conflate the "common use" analysis with the "dangerous and unusual" analysis. ECF 35 at 14. But *Heller* made clear that proscribing dangerous and unusual arms was just one of several longstanding weapons traditions that is consistent with the Second Amendment. *Heller*, 554 U.S. at 626; *see also Fyock v. Sunnyvale*, 779 F.3d 991, 996–97 (9th Cir. 2015).

Plaintiffs continue to incorrectly place the dangerous and unusual analysis at the second step of the *Bruen* framework, in defiance of Ninth Circuit precedent. *See Alaniz*, 69 F.4th at 1129; *see also Rupp*, 2024 WL 1142061, at *8 n. 5 (recognizing that placing the dangerous and unusual at the second step of the analysis "was in direct tension with *Fyock*," "directly contradicted *Alaniz*," and "was out of step with most courts that have considered the issue"). Thus, it is Plaintiffs—not Defendant—who bear the burden of showing that switchblades are not dangerous or unusual. In any event, Defendant has presented substantial evidence showing that switchblades are dangerous and unusual, s*ee* ECF 36 at 12–15,[9] and Plaintiffs have failed to rebut this showing.

---

[9] Plaintiffs argue that "Defendant's weapons expert also concedes that switchblades are not unusual, but common." ECF 35 at 13 (citing KR1851–53). This is a mischaracterization of Robert Escobar's testimony. At his deposition Robert Escobar was asked questions about his book, which addressed *obscure historical weapons* like saps, blackjacks, and slungshots. He was then was asked whether certain knives appeared in that book. KR 1852–1853. Plaintiffs erroneously conclude that weapons not in the book must be common.

7

## II. *BRUEN* REQUIRES THIS COURT TO ENGAGE IN AN INDEPENDENT HISTORICAL ANALYSIS AND DOES NOT REQUIRE A HISTORICAL TWIN OR DEAD RINGER

Plaintiffs attempt to dissuade this Court from engaging in any historical analysis, arguing that the Court is limited to the historical analysis set forth in *Heller* and *Bruen*, ECF 35 at 16—notwithstanding the fact that neither case addressed the historical tradition of regulating knives. Indeed, *Bruen* explicitly calls for courts to engage in their own historical analysis particular to the facts of the case before it. *Bruen*, 597 U.S. at 31 ("Like *Heller*, we 'do not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment.'""). It follows that this Court must engage in an independent historical analysis here.

As the Ninth Circuit recently observed in *United States v. Perez-Garcia*, "[i]n applying the Second Amendment, we do not isolate each historical precursor and ask if it differs from the challenged regulation in some way. We emphasize again: *Bruen* does not require the Government to identify a 'historical twin' or an 18th century 'dead ringer' . . . We instead examine the historical evidence as a whole." *United States v. Perez-Garcia*, __ F.4th ___ (9th Cir. March 18, 2024) (quoting *Bruen*, 597 U.S. at 30).

### A. *Bruen* Requires Analogical Reasoning, Not a Historical Twin or Dead Ringer

Plaintiffs plainly err in asserting that "analogical reasoning is not necessary in this case" and that "only straightforward historical prohibitions on the purchase, sale, possession, and carry of knives are relevant." ECF 35 at 19. *Bruen* explicitly directs courts to engage in analogical reasoning: the "historical inquiry that courts must conduct will often involve reasoning by analogy—a commonplace task for any lawyer or judge. Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, 597 U.S. at 29. *Bruen* goes on to clarify that that "analogical reasoning under the

Second Amendment is neither a regulatory straightjacket nor a regulatory blank check" and "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 587 U.S. at 30. Thus, Plaintiffs' insistence that Defendant produce, in essence, a "dead ringer" *id*., directly contradicts *Bruen* and should hold no weight with this Court.

### B. *Bruen* Endorsed the Use of Analogues Beyond the Founding Era

Plaintiffs' contention (ECF 35 at 10, 17) that this Court may only consider Founding-era analogues also contravenes *Bruen*, which recognized that periods outside the Founding era are relevant to the Court's historical analysis. *Bruen*, 142 S. Ct. at 2132 ("The regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868."); *id*. at 2133 (describing a review of the "historical record . . . [of] 18th- and 19th-century 'sensitive places'"). It further ignores the Ninth Circuit's recent decisions treating post-1791 evidence as relevant under *Bruen*. *See Alaniz*, 69 F.4th at 1129 (finding that a "historical tradition is well-established" based on the fact that "several States enacted [analogous] laws throughout the 1800s"); *Baird v. Bonta*, 81 F.4th 1036, 1043 (9th Cir. 2023) (noting the relevance of Reconstruction-era regulations under *Bruen*). Accordingly, this Court should reject Plaintiffs' arbitrary limits on the relevant time period and consider the entirety of the extensive eighteen- and nineteenth-century historical record submitted in support of Defendants' motion.

### C. The Challenged Statues Fit Comfortably Within a Long Tradition of Regulating Dangerous and Deadly Weapons

Defendant incorporate by reference the arguments in their motion providing historical analogues that are representative of our Nation's robust history of regulating dangerous weapons in both the Founding era and throughout American history. ECF 33-1 at 11–19.

# CONCLUSION

As set forth above, Plaintiffs have failed to meet their evidentiary burden at the first stage of the *Bruen* analysis and have further failed to refute Defendant's historical evidence at *Bruen*'s second stage. Accordingly, Defendant is entitled to summary judgment.

Dated:  April 15, 2024                               Respectfully submitted,

                                                     ROB BONTA
                                                     Attorney General of California
                                                     R. MATTHEW WISE
                                                     Supervising Deputy Attorney General


                                                     */s/ Katrina Uyehara*
                                                     KATRINA UYEHARA
                                                     Deputy Attorney General
                                                     *Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

# CERTIFICATE OF SERVICE

| | | | |
|---|---|---|---|
| Case Name: | **Knife Rights, Inc., et al. v. California Attorney General Rob Bonta, et al.** | No. | **3:23-cv-00474-JES-DDL** |

I hereby certify that on <u>April 15, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT ATTORNEY GENERAL ROB BONTA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 15, 2024</u>, at Sacramento, California.

| | |
|---|---|
| Eileen A. Ennis | */s/ Eileen A. Ennis* |
| Declarant | Signature |

SA2023301419
38014059.docx