|   |   |
|---|---|
| 1 | John W. Dillon (SBN 296788) |
| 2 | jdillon@dillonlawgp.com |
|   | **DILLON LAW GROUP APC** |
| 3 | 2647 Gateway Road |
| 4 | Suite 105, No. 255 |
|   | Carlsbad, California 92009 |
| 5 | Phone: (760) 642-7150 |
| 6 | Fax: (760) 642-7151 |

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| KNIFE RIGHTS, INC., ELIOT KAAGAN, JIM MILLER, GARRISON HAM, NORTH COUNTY SHOOTING CENTER, INC., and PWGG L.P., | Case No. 23-CV-0474-JES-DDL |
|---|---|
| Plaintiffs, | **PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT** |
| vs. | Date:         April 22, 2024 |
|   | Time:        10:00 a.m. |
| CALIFORNIA ATTORNEY GENERAL ROB BONTA, ET AL., | Dept:         4B |
|   | Judge:        The Honorable James E. Simmons, Jr. |
| Defendants. | Trial Date:   None set |
|   | Action filed: March 15, 2023 |

Plaintiffs' Reply to Defendant's Opposition to Plaintiffs Motion for Summary Judgment

# TABLE OF CONTENTS

Page

I. INTROCUTION .................................................................................................1

II. CALIFORNIA'S CRIMINALIZATION OF "SWITCHBLADES" .............
    IS A *DE FACTO* BAN/PROHIBITION ON SUCH KNIVES.....................1

III. AUTOMATICALLY OPENING KNIVES ARE "ARMS"
     UNDER THE SECOND AMENDMENT'S PLAIN TEXT—
     AND THE TEXT DOES NOT INCLUDE DEFENDANT'S
     "IN COMMON USE FOR SELF-DEFENSE" AND
     "SUITABILITY" LIMITATIONS ........................................................2

   A. Defendant's "Suitability"/"Primary Use" Encraft On
      The Second Amendment Represents Another Back-Door
      Attempt To Apply Interest-Balancing Tests Rejected By
      *Heller* and *Bruen*. ...............................................................4

   B. Defendant—Not Plaintiffs—Bear The Burden of Proving
      That Automatically Opening Knives Are Not Both Dangerous
      And Unusual (*i.e.*, Not in Common Use) As Part of the *Heller*
      and *Bruen's Second*-Prong Historical Inquiry....................5

IV. THE PENAL CODE SCHEME BANNING SUCH KNIVES IS NOT
    SUPPORTED BY ANY HISTORICALLY RELEVANT
    LAWS PROHIBITING THE POSSESSION AND SALE
    OF ANY KNIFE OR WEAPON ..........................................................8

   A. Such Knives Are Not Both Dangerous
      And Unusual............................................................................9

   B. Plaintiffs Do not Apply A "Divide-and-Conquer" Approach
      To the Historical Record.......................................................10

# TABLE OF AUTHORITIES

Page

**Cases**

*Caetano v. Massachusetts*, 136 S. Ct. 1027 (2016) .......................................... 8, 9

*District of Columbia v. Heller,* 554 U.S. 570 (2008) .................................. Passim

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ...................................... 2, 3, 9

*New York State Rifle & Pistol Association v. Bruen,* 597 U.S. 1 (2022) ...... Passim

*Ocean State Tactical, LLC v. Rhode Island,* 95 F.4th 38 (1st Cir. 2024) .... .......... 9

*Russell Fouts v. Bonta*, 2024 WL 751001 (S.D. Cal. 2024) .............................. 5, 7

*U.S. v. Perez-Garcia,* 96 F.4th 1166 (9th Cir. 2024) .................................. 7, 8, 10

*United States v. Alaniz,* 69 F.4th 1124 (9th Cir. 2023) ........................................ 6

**Cal. Penal Code**

Section 19 ............................................................................................................ 2

Section 17235 ...................................................................................................... 1

Section 21510 ...................................................................................................... 1

Section 21590 ...................................................................................................... 1

**U.S. Constitution**

Second Amendment ..................................................................................... Passim

**Other Authorities**

Alexandra Natapoff, *Misdemeanors* 85 S. Cal. L. Rev. 1313 (2012) ..................... 2

## I. INTRODUCTION

In Plaintiff's summary judgment motion and in their opposition to Defendant's motion Plaintiffs already address Defendant's continued misapplication of the constitutional standard required under *District of Columbia v. Heller,* 554 U.S. 570, 581-595, 627 (2008) and *New York State Rifle & Pistol Association v. Bruen,* 597 U.S. 1, 32-33 (2022).[1] Plaintiffs have shown through undisputed evidence that automatically opening knives are "arms" under the plain text of the Second Amendment and that Defendant has failed to justify its knife ban through a well-established historical tradition of prohibiting the possession and sale of any kind of knife. Plaintiffs' ask that this Court grant Plaintiffs' motion and deny Defendant's motion for all the reasons given in Plaintiffs' briefs.

## II. CALIFORNIA'S ENFORCES A DE FACTO BAN/PROHIBITION ON "SWITCHBLADE" KNIVES

Defendant's claim that California's statutory scheme is anything other than a ban of common bladed arms borders on the frivolous, as the challenged statutes prohibit the possession, carry, sale, offers of sale, loan, transfer, and gifting of automatically opening folding knives. Cal. Penal Code sections 17235, 21510, and 21590. In defense expert Robert Spitzer's own words, restricting certain arms in so many different ways amount to a "*de facto* prohibition" (ECF No. 34-5, KR1461):

> **Q:** So, with regard to this 1881 Arkansas law… restricting…these Bowie knives and other weapons in so many different ways … amounted to an outright prohibition, is that correct?
>
> **A:** I would call it a *de facto* prohibition, yeah. *Id*.

Defendant also trivializes the serious implications of violating the Knife Ban. Violating Penal Code section 21510 results in six months imprisonment in county

---

[1] Plaintiffs incorporate by reference all arguments and evidence submitted in support of Plaintiffs' summary judgment motion (ECF No. 34) and their opposition to Defendant's Motion (*Id*. at 33).

jail, or a substantial fine, or both; and for an individual, a stigma that carries post-conviction implications such as a criminal record, the loss of employment, housing, and educational opportunities. See also Cal. Penal Code § 19; and Alexandra Natapoff, *Misdemeanors*, 85 S. Cal. L. Rev. 1313, 1316-1317, 1323-1327 (2012).

### III. AUTOMATICALLY OPENING KNIVES ARE "ARMS" UNDER THE SECOND AMENDMENT'S PLAIN TEXT—AND THE TEXT DOES NOT INCLUDE DEFENDANT'S "IN COMMON USE FOR SELF-DEFENSE" OR "SUITABILITY" LIMITATIONS

Defendant makes the unsupported claim that automatically opening knives are not "arms" under the plain text of the Second Amendment because they are "not in common use today for self-defense" and "the weapon's objective characteristics render it [un]suitable for self-defense." ECF No. 36 at 7-8.

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Second Amendment's plain text is clear—it protects against infringing on the people's right to "keep and bear arms." *Id*. What are arms? According to the binding authority in *Heller*, arms consist of "weapons of offence, or armour of defence"; in other words, "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581. The expansive scope of this plain text "extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding" (*Id.* 554 U.S. at 582), and "is fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

In fact, *Heller's* analysis of the Second Amendment's plain text specifically repudiates Defendant's baseless claims. "No party has apprised us of an idiomatic meaning of "keep Arms." Thus, the most natural reading of "keep Arms" is to "*have* weapons." *Heller*, 554 U.S. at 582 (emphasis added). "'Keep Arms' was simply a common way of referring to *possessing arms*, for militiamen *and everyone else*."

*Id.*, at 583. In other words, the simple act of possessing or carrying arms for action is all that is needed under the plain text of the Second Amendment. "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons *in case of confrontation*. *Id.*, at 592 (emphasis added). *Bruen* did not alter or contradict *Heller's* conclusions.

It is undisputed that the Second Amendment's plain text covers Plaintiffs' proposed action in seeking to acquire, possess, carry, keep, bear, and offer bearable arms. Plaintiffs have shown they seek to engage in normal, peaceable, commonplace, and constitutionally protected conduct with normal, commonplace, constitutionally protected arms in California and retailer Plaintiffs seek to offer these knives currently prohibited by California law to the public. KR13-17, KR18-2,4 KR21-30, KR2160-65, and KR2154-59. The individual Plaintiffs have sworn they wish and intend to carry automatically opening knives for self-defense and other lawful purposes. *Id*. Retailer Plaintiffs have sworn they wish and intend to sell these knives to their customers for self-defense and other lawful purposes. *Id*. Plaintiff Knife Rights has confirmed that its California members wish and intend to keep and bear these knives for these same purposes. KR32; KR34. Plaintiffs' Complaint and evidence shows that the knives at issue are intended for any lawful purpose, including self-defense.

The "central" holding in *Heller* was "that the Second Amendment protects a personal right to keep and bear arms *for lawful purposes, most notably for self-defense within the home*." *McDonald*, 561 U.S. at 780 (emphasis added). The *Heller* decision controls, and absent from *Heller*'s plain text analysis (and the *Bruen* analysis) is any discussion of whether or not the arms are "commonly used for self-defense" or "suitable for self-defense." ECF No. 36 at 7; *and see*, *Heller*, 554 U.S. at 581-595; *Bruen*, 597 U.S. at 32-33. Neither Defendant, nor any lower court can unilaterally engraft such conditions onto the Second Amendment's plain text or repudiate the Supreme Court's binding authority.

1    Plaintiffs have provided overwhelming evidence that automatically opening
2 knives are "arms" under the Second Amendment's plain text. See ECF No. 34-1 at
3 6-10; ECF No. 35 at 5-10. Defendant has not contradicted this evidence. Instead,
4 Defendant argues the plain text requires more than it says. Not so. Accordingly, since
5 Plaintiffs' action is covered by the Second Amendment's plain text, Defendant must
6 justify its regulations as consistent with the Nation's tradition of firearm regulation.
7 *Bruen*, 597 U.S. at 17-18, 24. As explained further below, the Court's common
8 use/dangerous and unusual considerations came from the Court's historical review
9 under the second prong of the *Heller*/*Bruen* analysis, where the burden is on
10 Defendant to justify their regulation.

        **A.   Defendant's "Suitability" / "Primary Use" Represents Another Back-Door Interest-Balancing Test Rejected By *Heller*/*Bruen*.**

13   In its argument that automatically opening knives are not 'arms' under the
14 plain text, Defendant delves into a full-blown interest-balancing argument explicitly
15 rejected by *Bruen,* asserting the lack of "suitability" of such knives for self-defense.
16 ECF No. 36 at 7-9. *Bruen* already repudiated the lower courts' "two-part test" as
17 "one step too many" and explicitly rejected these policy arguments justifying
18 unconstitutional arms regulations. *Bruen*, 597 U.S. at 2, 19. Defendant again
19 improperly attempts to take the straightforward constitutional analysis from *Heller*
20 and *Bruen*, and split it into a multi-step interest-balancing test. Defendant's argument
21 must be rejected under the binding authority of *Heller* and *Bruen*.

22   Even if the Court were to ignore the Supreme Court's mandates, Defendant
23 falsely claims that "the record in this case clearly establishes, the [regulated]
24 switchblade knives … are not even suitable for 'ordinary self-defense'" ECF No. 36
25 at 8. Plaintiffs' knife expert Michael Janich repeatedly testified that automatically
26 opening knives are legitimate tools for self-defense. KR1981, KR1984, KR 1987,
27 and KR1988. Moreover, Janich repudiated each claim advanced by defense expert

Escobar in his report and deposition. See KR1967-1988, and ECF No. 35 at 11-14. Moreover, in his deposition, defense expert Escobar admitted that his opinions are a personal preference and that his criticisms of automatically opening knives applied to *all* folding knives in general. *Id*. Finally, Defendant misrepresents Plaintiffs' expert Janich's testimony claiming, "he would not recommend switchblades for self-defense given that there are few training knives for switchblades." Not true. See ECF No. 35 at 11-12; see also KR1705, 1758. No such discussion is required under the plain text analysis in either *Heller* or *Bruen*. And, contrary to Defendant's claim, no showing is required that such knives "are actually used for self-defense." ECF No. 36 at 10; *see Russell v. Bonta*, 2024 WL 751001 (S.D. Cal. 2024) at *3 (rejecting Defendant's very same claim that a "billy is not commonly used for self-defense," and holding that, "Use is not required for Second Amendment protection").

  **B.**  **Defendant Bear The Burden Of Proving That Automatically Opening Knives Are Not Both Dangerous And Unusual (*i.e.*, Not in Common Use) As Part of the Historical Inquiry.**

Defendant asserts the Plaintiffs' bear the burden of proving that automatically opening knives are "in common use for self-defense" and not "dangerous and unusual" arms under the first prong of the *Heller* and *Bruen* plain text analysis. ECF No. 36, p. 5-15. Defendant is wrong. Defendant's argument is based on a single sentence from *Bruen* in which the Court briefly mentions that no party "dispute[s] that handguns are weapons 'in common use' today for self-defense." *Bruen*, 597 U.S. at 23. The out-of-context sentence cannot be read to the exclusion of the entirety of the *Heller* and *Bruen* decisions.

Importantly, Defendant's argument ignores the plain text analysis regarding arms conducted by *Heller* described above. Moreover, in *Bruen*, after this statement, the Court applied the plain text of the Second Amendment, "The Court has little difficulty concluding also that the plain text of the Second Amendment protects Koch's and Nash's proposed course of conduct—carrying handguns publicly for

self-defense…" and concludes "the Second Amendment guarantees an "individual right to possess and carry weapons *in case of confrontation*." *Id*. There is no discussion regarding "common use for self-defense" or "dangerous and unusual arms." The Court then moved to the next prong shifting the burden to the government to justify the State's "proper cause" requirement through a historical tradition of firearms regulation. In this stage, both *Heller* and *Bruen* addressed arms in the context of dangerous and unusual arms (*e.g.*, not in common use) as a limitation on the Second Amendment's protections based on the historical record. *Heller*, 554 U.S. at 581-595; *Bruen*, 597 U.S. at 32-33.

Defendant also relies on *United States v. Alaniz* to support its baseless argument that Plaintiffs bear the burden of proving the knives in question are "in common use for self-defense" and that they are not both "dangerous and unusual." *Alaniz* does not support Defendant's claim. After providing an extremely brief (and inaccurate) summary of the *Bruen* standard, *Alaniz* did not conduct the plain text analysis under *Bruen*: "We assume, without deciding, that step one of the *Bruen* test is met." *Id*. 69 F.4th at 1128-29. As such, its dicta provides no support.  Regardless, the U.S. Supreme Court is the binding precedent this Court must apply. And while *Alaniz* considered more nuanced analogues due to the finding that the case "implicat[ed] unprecedented societal concerns" (*e.g.,* drug trafficking), this is not the case here. Defendant has not alleged, let alone shown, any "unprecedented societal concern" or "technological advancement" warranting  a nuanced approach. This Court must to apply a straightforward historical analysis. ECF No. 35, p. 16-20 (*i.e.*, Plaintiffs' argument that no nuance is required).

In fact, *U.S. v. Perez-Garcia*—for which Defendant relies (ECF No. 36, p. 16)—contradicts Defendant's claims that the dangerous and unusual/common use analysis belongs under the first prong of the *Bruen* analysis. Relying on the *second* prong of the Bruen analysis, the Ninth Circuit  states:

> "We instead examine the *historical evidence* as a whole, determining whether it establishes a *tradition of permissible regulation (such as "dangerous and unusual weapons"* or "sensitive places"), and whether the historical precedent and the modern regulation are 'relevantly similar,' so as to 'evince[ ] a comparable tradition of regulation." U.S. v. Perez-Garcia, 96 F.4th 1166 (9th Cir. 2024) at 18 (citing *Bruen*, 597 U.S. at 27, 29, and emphasis added).

*Bruen* did not create a "new" test, but merely applied the test that the *Heller* Court established in 2008. *Bruen* expressly states, "*The test that we set forth in Heller and apply today* requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text *and* historical understanding." 597 U.S. at 26 (emphasis added). The dangerous and unusual/not in common use standard was based on history, not the text of the Second Amendment, and considerations of historical tradition arise under *Bruen*'s second prong analysis, *not* the first prong. *Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 38-39; *U.S. v. Perez-Garcia*, 96 F.4th at 18; *Fouts*, 2024 WL 751001 at *3.

Here, the State cannot meet its burden that the current knife ban is part of an "historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19. The plain text of the knife ban prohibits conduct infringing on the right to keep bearable arms. And moreover, there is no appropriate analogue in history that supports California's ban on keeping and bearing such knives.

### IV. THE KNIFE BAN IS NOT SUPPORTED BY ANY HISTORICALLY RELEVANT LAWS PROHIBITING THE POSSESSION AND SALE OF ANY KNIFE OR WEAPON

As Plaintiffs have shown, *Heller* has established the relevant contours of the historical tradition analysis affirmed in *Bruen*: Bearable arms that are presumptively protected by the Second Amendment cannot be banned unless they are *both* dangerous *and* unusual. *Bruen*, 597 U.S. at 21. *Bruen* spelled out that this was a historical analysis. *Id*. ("we found it 'fairly supported by the *historical tradition* of prohibiting the carrying of dangerous and unusual weapons that the Second

Amendment protects the possession and use of weapons that are in common use at the time") (emphasis added, internal quotation marks omitted). See also *U.S. v. Perez-Garcia*, 96 F.4th at 18.

*Bruen* examined common use while analyzing the relevant historical analogues, finding that historical laws regulating "dangerous and unusual" weapons could not be analogous to the licensing regime's restriction on carrying handguns, because handguns were "indisputably in common use." *Bruen*, 597 U.S. at 39. Under *Heller*, history is used to establish the scope of the right. But here, *Heller* has done the historical analysis, and determined the scope of the right when it comes to protected arms—those that include arms in common use for lawful purposes *such as* self-defense—because the only bearable arms that are not protected are those that are both dangerous *and* unusual at the time the analysis is done. *Heller*'s categorical analysis asks simply whether the arms regulated or banned are in common use for lawful purposes. *Heller,* 554 U.S. at 570.

"A weapon may not be banned unless it is *both* dangerous *and* unusual;" it "is a conjunctive test." *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1031 (2016) (Alito, J., concurring). Because the banned knives are not unusual, the Court need not consider if they are "dangerous" in a manner different from the inherent "danger" of firearms or weapons in general—such "danger" to those who pose a threat, of course, being the very reason arms are protected and useful in the first place. *Id.* Accordingly, like D.C.'s ban on handguns in *Heller* and Chicago's ban on handguns in *McDonald*, California's knife ban is categorically unconstitutional—full stop.

**A. Such Knives Are Not Both Dangerous and Unusual.**

The "dangerous and unusual" test is simply the corollary of the common use test, directly derived from *Heller*. See ECF No. 34-1 at 10-21 and ECF No. 35 at 10-16. And if a class of arm is established to be in common use—and overwhelmingly so—it cannot, by definition, be "unusual."

1    Defendant discounts Plaintiffs' reliance on Justice Alito's concurrence in *Caetano v. Massachusetts* "for the proposition that the mere fact that thousands own switchblades demonstrates they are in 'common use.'" ECF No. 36 at 6. Defendant cites *Ocean State Tactical*. However, it is not Plaintiffs' view that the common use analysis detailed in *Caetano* is the proper application, but rather the Supreme Court's holding. In referencing whether handguns are weapons "in common use today" the *Bruen* Court explicitly cited *Caetano*. *See Bruen*, 597 U.S. at 31-32.

Though not Plaintiffs' burden, they have nonetheless offered overwhelming and undisputed evidence that automatically opening knives have been and continue to be owned in the millions throughout the United States. ECF No. 34-1, at 16-19. Plaintiffs have also provided undisputed evidence that the knives in question are common jurisdictionally (*Id.*, at 20-21) and categorically (*Id.*, at 19-20). They are merely a kind of pocketknife. This fact is not only undisputed, but supported by all defense experts. KR1153; KR1155; KR1875; KR1977; KR1986; KR2044; KR2064; KR2067. Instead of offering evidence to the contrary, Defendant boldly asserts Plaintiffs' evidence doesn't mean anything. ECF No. 36 at 11. Defendant relies on inapposite cases mentioning "switchblades, nothing more. See Plaintiffs' opposition. ECF No. 34-1 at 14-16.

### B. No "Divide-and-Conquer" Approach Has Been Applied.

Defendant relies on *U.S. v. Perez-Garcia* to claim Plaintiffs have taken a "divide-and-conquer" approach to *Bruen's* historical analysis and have not "examine[d] the historical evidence as a whole" "focusing on immaterial distinctions between each of Defendant's historical analogues and the challenged statutes. ECF No. 36 at 16. Defendant is wrong. Plaintiffs have thoroughly reviewed all Defendant's purported historical justifications for the knife ban. Taken as a whole, they do not come close to the justification required under either *Heller* or *Bruen*.

  Defendant's experts identified a total of two state laws that regulated the sale of any kind of knife (1837 Tennessee and 1881 Arkansas). Both came *after* the Founding and one was *a decade after* the Civil War. Defense experts were also *not* able to identify a single law in the entire history of this Nation that prohibited the possession of any knife. All the concealed carry restrictions relied on by defense experts explicitly allowed the purchase, sale, transfer, possession and at least one form of carrying in public. This is not a "divide-and-conquer approach,", but rather a summary of the historical record as a whole—this record is lacking to say the least.

  Defendant argues *Bruen* "endorsed the use of analogues outside of the Founding Era." ECF No. 36 at 16. While *Heller* and *Bruen* considered analogues outside the Founding, the Court placed *limitations* on what analogues could be considered and the ability to *contradict* the Second Amendment plain text and the more relevant Founding era. ECF Nos. 35 at 16-20. These limitations cannot be ignored.

  In *Heller*, the government sought to ban handguns in the home. *Heller* reviewed the same historical laws offered then as Defendant's offer now. After reviewing these same *concealed carry* restrictions, the Supreme Court held that such restrictions did not justify the ban. Like here, the government in *Heller* argued the ban was not a ban as they allowed for the possession of a handgun as long as it was stored inoperable and because other firearms were lawful to purchase and possess. *Heller rejected* these arguments. *Heller*, 554 U.S. at 629; and see *Bruen*, 597 U.S. at 34-70 (the very same concealed carry restrictions were not sufficient to justify the good cause concealed carry restrictions as not analogous). The very same arguments can't be resurrected here. For the foregoing reasons*,* Plaintiffs' request that this Court *deny* Defendant's summary judgment motion and grant Plaintiffs cross-motion.

| | | |
|---|---|---|
| 1 | April 15, 2024 | Respectfully submitted, |
| 2 | | DILLON LAW GROUP, APC |
| 3 | | |
| 4 | | */s/ John W. Dillon*_____ |
|  | | John W. Dillon |