John W. Dillon (SBN 296788)
**DILLON LAW GROUP APC**
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Phone: (760) 642-7150
Fax: (760) 642-7151
E-mail: jdillon@dillonlawgp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KNIFE RIGHTS, INC., et al., | Case No. 23-cv-0474-JES-DDL |
| Plaintiffs, | Hon. James E. Simmons, Jr. |
| vs. | Magistrate Judge Hon. David D. Leshner |
| ROB BONTA, in his official capacity as Attorney General of California, et al., | **PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |
| Defendants. | |

Plaintiffs Knife Right, Inc., *et al*. ("Plaintiffs") hereby submit the following additional legal authority in support of (1) their claims for relief, (2) their pending motion for summary judgment, and (3) their opposition to Defendants' summary judgment motion: *United States v. Duarte*, 2024 WL 2068016 (9th Cir. May 9, 2024), attached hereto as **Exhibit A**.

In this decision, the Ninth Circuit vacated Steven Duarte's conviction for violating 18 U.S.C. § 922(g)(1), which makes it a crime for any person to possess a firearm if he has been convicted of an offense punishable by imprisonment for a term exceeding one year. The panel held that section 922(g)(1) violates the Second Amendment under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

Applying *Bruen's* text-and-history framework, the panel concluded (1) Duarte's weapon, a handgun, is an "arm" within the meaning of the Second Amendment's text, that Duarte's "proposed course of conduct—carrying [a] handgun[] publicly for self-defense"—fell within the Second Amendment's plain language, and that Duarte is part of "the people" whom the Second Amendment protects because he is an American citizen; and (2) the government failed to prove that section 922(g)(1)'s categorical prohibition, as applied to Duarte, "is consistent with this Nation's historical tradition of firearm regulation." *Id*. 2024 WL 2068016 at *4.

According to the Ninth Circuit, *Bruen* replaced the tiers-of-scrutiny framework with one grounded exclusively in text and history. *Id*. at *4, quoting *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023), rehearing *en banc* granted, 86 F.4th 1038 (4th Cir.2024).

The Ninth Circuit also made clear that the "threshold inquiry" is "whether 'the Second Amendment's plain text covers' the person challenging the law, the 'arm' involved, and the person's 'proposed course of conduct.'" *Id*. 2024 WL 2068016 at *4, citing *Bruen*, 597 U.S. at 17. "If the Second Amendment's 'bare text' covers the person, his arm, and his conduct, 'the government must [then] demonstrate that the [challenged]

1  regulation is consistent with this Nation's historical tradition of firearm regulation.'" *Id*.
2  at *4.

3        The Ninth Circuit applied the textual analysis required by *Bruen* and held "we easily conclude that Duarte's weapon, a handgun, is an 'arm' within the meaning of the Second Amendment's text and that Duarte's 'proposed course of conduct—carrying [a] handgun[] publicly for self-defense'— falls within the Second Amendment's plain language, two points the Government never disputes." *Id*. at *2, citing *Bruen*, 597 U.S. at 32. The Ninth Circuit also stated it was "mindful" that "'[t]he Constitution was written to be understood by the voters,' [so] *we begin with the '"normal and ordinary" meaning of the Second Amendment's language.*" *Id*. at *10, quoting *Heller*, 554 U.S. at 557 (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). The Ninth Circuit further considered "the same pre- and post-ratification sources" that *Heller* looked to "because when it comes 'to determin[ing] the *public understanding* of a legal text in the period after its enactment or ratification,' the historical record serves as 'a critical tool of constitutional interpretation.'" *Id*. quoting *Bruen*, 597 U.S. at 20 (emphasis in original).

      Analyzing the plain text's meaning of "the people," the Ninth Circuit stated that "*Bruen* and *Heller*… both recognized the 'strong presumption' that the text of the Second Amendment confers an individual right to keep and bear arms that belongs to 'all Americans,' not an 'unspecified subset.' *Id*. at *2, quoting *Bruen*, 597 U.S. at 70 (which, in turn, quoted *Heller*, 554 U.S. at 581. The Ninth Circuit further clarified, "Our own analysis of the Second Amendment's publicly understood meaning also confirms that the right to keep and bear arms was every citizen's fundamental right. Because Duarte is an American citizen, he is "part of 'the people' whom the Second Amendment protects." *Id*. at *2, quoting *Bruen*, 597 U.S. at 32.

      The Ninth Circuit further found that "*Heller* defined 'the people' in the **broadest of terms**: the phrase 'unambiguously refer[red]' to 'all Americans,' not 'an unspecified subset.' *Id*. at *5 quoting *Heller*, 554 U.S. at 581 (emphasis added). *Bruen* also

"expressly reaffirmed that broad definition, quoting *Heller's* language directly and holding that "'[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public[].'" *Id.* at * 9, quoting *Bruen*, 597 U.S. at 70 (which, in turn, quoted *Heller*, 554 U.S. at 581.

According to the Ninth Circuit, "[o]ur own analysis of the Second Amendment's text and history, also confirms that 'the people' in the Second Amendment included, at a minimum, all American citizens"—without qualification. *Id.* at * 9.

Indeed, the Ninth Circuit provides an in-depth discussion of the meaning of the term, "the people" in the Second Amendment (*Id.* at * 9-13), and concludes, "We are confident that, 'by founding-era consensus,' the 'right of the people' to keep and bear arms was publicly understood as the fundamental right of every citizen." *Id.* at * 12, quoting *United States v. Huitron-Guizar*, 678 F.3d 1164, 1168 (10th Cir. 2012).

This application of the plain text with regard to the meaning of "the people" in the Second Amendment's plain text is the same bare text analysis applied in *Fouts v. Bonta*, when it rejected the "in common use for self-defense" argument offered by the government, stating: "Even if such evidence did exist, it would only be an argument if the Second Amendment said, 'the right of the people to keep and bear only those Arms that are commonly used for self-defense, shall not be infringed.' Of course, that is not the case. *Use is not required* for Second Amendment protection." *Fouts v. Bonta*, 2024 WL 751001, at *3 (S.D. Cal. 2024) (emphasis added).

Additionally, the Ninth Circuit provided guidance on what historical laws are properly analogous under the *Bruen* standard. The Court made clear that "[w]hile the Government does not have to find a historical 'dead ringer' to § 922(g)(1), a law that 'remotely resembles' a felon firearm ban is not enough." *Id.* 2024 WL 2068016 at * 13. Instead, the Ninth Circuit clarified that it was "looking for something in between these two endpoints. On that score, *Bruen* offers some additional guidance. If the law at issue is a "distinctly modern firearm regulation[]" because it addresses a societal problem "unimaginable at the founding," the Government's historical analogues need only be "relevantly similar" to the challenged law. *Id.* at * 13; *see also Perez-Garcia*, 96 F.4th

at 1182; *Alaniz*, 69 F.4th at 1129–30. However, the Ninth Circuit found that the statute at issue took aim at "gun violence" and that "problem … has persisted [in this country] since the 18th century.' *Id*. 2024 WL 2068016 at *14, quoting *Bruen*, 597 U.S. at 26, 27. And that section 922(g)(1) "'confront[s] that problem' with 'a flat ban on the possession of []guns' by the formerly incarcerated, which no one here disputes is something 'that the Founders themselves could have adopted.' *Id*. 2024 WL 2068016 at *14.

Thus, the Ninth Circuit stated that while "'[t]he Founding generation had no laws limiting gun possession by . . . people convicted of crimes' [citation omitted]—while not fatal to the Government's case—means that 'the lack of a . . . historical regulation' that is 'distinctly similar' to § 922(g)(1) is strong if not conclusive 'evidence' that the law 'is inconsistent with the Second Amendment'" [Citations omitted]. *Id*. at *14.

Each of the above points in *Duarte* address issues squarely presented in the pending cross-motions for summary judgment, including, among other issues: (i) how *Bruen*'s textual analysis is centered on the plain text of the Second Amendment; (ii) whether Plaintiffs' arms in question are "arms" under the plain text; (iii) whether Plaintiffs' proposed course of conduct falls within the plain text; and (iv) whether or not a nuanced approach is warranted in the historical analysis under the *Bruen* standard.

May 17, 2024

**DILLON LAW GROUP APC**

*/s/ John W. Dillon*
John W. Dillon

Attorney for Plaintiffs

– 5 –
PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY
CASE NO. 23-cv-0474-JES-DDL