John W. Dillon (SBN 296788)
**DILLON LAW GROUP APC**
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Phone: (760) 642-7150
Fax: (760) 642-7151
E-mail: jdillon@dillonlawgp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KNIFE RIGHTS, INC., et al., | Case No. 23-cv-0474-JES-DDL |
| Plaintiffs, | Hon. James E. Simmons, Jr. |
| vs. | Magistrate Judge Hon. David D. Leshner |
| ROB BONTA, in his official capacity as Attorney General of California, et al., | **PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |
| Defendants. | |

Plaintiffs Knife Rights, Inc., *et al.* ("Plaintiffs") submit the following additional legal authority in support of (1) their claims for relief, (2) their pending motion for summary judgment, and (3) their opposition to Defendants' summary judgment motion: *United States v. Rahimi*, No. 22-915, slip op. (U.S. Supreme Court, June 21, 2024) attached hereto as **Exhibit A**.

In the decision, the Supreme Court reversed and remanded the Fifth Circuit opinion, holding that "when an individual has been found by a court to pose a credible threat to the physical safety of another, that individual may be temporarily disarmed consistent with the Second Amendment. *Rahimi*, at 5, 13-17.

Applying *Bruen's* text-and-history framework, the Supreme Court reiterated several clear instructions for lower courts when considering Second Amendment challenges.

**First**, the Supreme Court confirmed that, "when a firearm regulation is challenged under the Second Amendment, the Government must show that the restriction 'is consistent with the Nation's historical tradition of firearm regulation.'" *Id*. at 4. When considering the historical tradition, the Supreme Court also made clear that the "why and how the regulation burdens the right are central to this inquiry." *Id*. at 7. However, the Court limited this statement, clarifying that "[e]ven when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent *beyond what was done at the founding*." *Id*. at 7 (emphasis added).

**Second**, the Supreme Court made clear that, "[t]he reach of the Second Amendment is not limited only to those arms that were in existence at the founding [Citation omitted]. Rather, it 'extends, prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence." *Ibid*.

**Third**, the Supreme Court's concurring opinions shed further light on the proper application of the *Bruen* standard:

> "The Second Amendment protects the 'right of the people to keep and bear Arms.' '[T]ext and history' dictate the contours of that right. Ante, at 6 (quoting *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U. S. 1, 22 (2022)). As this Court has recognized, too, the Amendment's text "'guarantee[s] the individual right to possess and carry weapons in case of confrontation.'" *Id*. at 32 (quoting *District of Columbia v. Heller*, 554 U. S. 570, 592 (2008)). And where that "text covers an individual's conduct," a law regulating that conduct may be upheld only if it is "consistent with this Nation's historical tradition of firearms regulation. [Citation omitted].'"

*Id*. Gorsuch, J. concurring, at 1.

Justice Gorsuch further clarified:

> "Just as here, too, we have expressly rejected arguments that courts should proceed differently, such as by trying to glean from historic exceptions overarching "policies," "'purposes,'" or "values" to guide them in future cases. [Citation omitted]. We have rejected those paths because the Constitution enshrines the people's choice to achieve certain policies, purposes, and values "through very specific means": the right of confrontation as originally understood at the time of the founding. [Citation omitted]. As we have put it, a court may not "extrapolate" from the Constitution's text and history 'the values behind [that right], and then . . . enforce its guarantees only to the extent they serve (in the courts' views) those underlying values.' [Citation omitted]. Proceeding that way, we have warned, risks handing judges a license to turn 'the guarantee of confrontation' into 'no guarantee at all.' [Citation omitted]. As there, so too here: *Courts must proceed with care in making comparisons to historic firearms regulations, or else they risk gaming away an individual right the people expressly preserved for themselves in the Constitution's text*."

*Id*. at 3 (emphasis added).

Justice Kavanaugh's concurring opinion also highlighted the importance of the Second Amendment's plain text and its controlling authority. Specifically, "[t]he American people established an enduring American Constitution. The first and most important rule in constitutional interpretation is to heed the text—that is, the actual words of the Constitution—and to interpret that text according to its ordinary meaning as originally understood. … As a general matter, the text of the Constitution says what

1  it means and means what it says. And unless and until it is amended, that text controls."
2  *Id*. Kavanaugh, J., concurring, at 1-2.

3  Justice Kavanaugh's concurring opinion provides additional insight, "when the
4  'framers of the Constitution employed words in their natural sense; and where they are
5  plain and clear, resort to collateral aids to interpretation is unnecessary and cannot be
6  indulged in to narrow or enlarge the text.'" *Id*. at 2 (citation omitted).

> "The historical approach applies when the text is vague. But the text of the Constitution always controls. So history contrary to clear text is not to be followed [citations omitted].… The basic principle remains: Text controls over contrary historical practices. *Id*. Kavanaugh, J., concurring, at 5, n. 2.

11  Justice Barrett's concurring opinion mirrored this same analysis explaining that,
12  "the Amendment does not apply only to the catalogue of arms that existed in the 18th
13  Century, but rather to all weapons satisfying the 'general definition' of 'bearable
14  arms.'" *Id*. Barrett, J., concurring at 4.

15  Finally, when considering analogous historical laws and regulations, Justice
16  Barrett's concurring opinion noted that "a court must be careful not to read a principle
17  at such a high level of generality that it waters down the right." *Id*. Barrett, J., concurring
18  at 4.

19  Each of the above points in *Rahimi* address issues squarely presented in the
20  pending cross-motions for summary judgment, including, among other issues: (i) how
21  *Bruen's* textual analysis is centered on the plain text of the Second Amendment; (ii)
22  whether Plaintiffs' arms in question are "arms" under the plain text; (iii) whether
23  Plaintiffs' proposed course of conduct falls within the plain text, and (iv) the proper
24  application of the historical inquiry under *Bruen*.

| | | |
|---|---|---|
| 1 | June 27, 2024 | **DILLON LAW GROUP APC** |
| 2 | | |
| 3 | | */s/ John W. Dillon* |
| | | John W. Dillon |
| 4 | | |
| 5 | | Attorney for Plaintiffs |